UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE NAUGHTYS LLC<br><br>    Plaintiff,<br><br>v.<br><br>DOES 1-580<br><br>    Defendants | Civil Action No. 4:21-CV-00492-O |

**PLAINTIFF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

On May 20, 2021, Defendant DOE #s 383, 384, 387, 392, 393, 400, 405, 409, 410, 415, 418, 425, 440, 445, 449, 450, 452, 453, 455, 457-459, 461, 462, 464, 467, 468, 470, 473, 479, 480, 482, 485, 487, 488, 491-494, 497-500, 504, 508, 513, 517, 519, 524, 529, 530, 534, 543, 547, 571, and 577-579 (collectively, the "Responding Defendants") filed their Response (Dkt. 65, "Response") to The Naughtys' ("Plaintiff's") Motion for Preliminary Injunction (Dkt. 20, "Motion"). In their Response, the Responding Defendants claim that Plaintiff's Motion should be denied because (1) the test for a preliminary injunction has allegedly not been met, and, alternatively, because (2) Plaintiff has allegedly not paid a sufficient bond for preliminary relief. Plaintiff now files this Reply, and as this Court already issued *ex parte* temporary injunctive relief (Dkt. 9, "TRO"), Plaintiff respectfully requests a hearing to show cause "at the earliest possible time" pursuant to Fed. R. Civ. P. 65(b)(3), and as discussed in the TRO (Dkt. 9 pg. 8).

**ARGUMENT**

**I.**     **Plaintiff Meets Each Element Required for Preliminary Injunctive Relief**

As a preliminary matter, this Court already found in the TRO that Plaintiff has met the elements sufficient for issuance of a preliminary injunction. Dkt. 9 pg. 3. In light of the Response, Plaintiff provides further explanation as to why these elements are indeed met below.

### A. There is a Substantial Threat That Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief

Courts in the Fifth Circuit have found that "[w]hen a plaintiff seeks an injunction under the Copyright Act, the plaintiff establishes a rebuttable presumption of irreparable harm when the plaintiff shows that a valid copyright has been infringed." *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, No. CIV.A.4:04-CV-445-Y, 2004 WL 2187143, at *2 (N.D. Tex. Sept. 28, 2004); *see also Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351, 356 (N.D. Tex. 1986) ("[a] showing of a reasonable likelihood of success on the merits of a copyright infringement claim raises a presumption of irreparable harm"). Courts have also asserted that this presumption of irreparable harm has not been officially adopted by the Fifth Circuit. *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *12 (N.D. Tex. Sept. 16, 2016). This inconsistency can be rationalized by a plaintiff establishing irreparable harm without "relying solely on the presumed irreparable injury." *Id.* at *13; *see also Value Grp., Inc. v. Mendham Lake Ests., L.P.*, 800 F. Supp. 1228, 1234 (D.N.J. 1992); *Worlds of Wonder, Inc.*, 658 F. Supp. at 356–57 (finding that irreparable injury is established, in part, because the plaintiff showed that the infringing conduct was harming the commercial value of its products). The Northern District of Texas has also found irreparable harm where the defendants "have produced no evidence that the infringing materials have all been removed from the Internet and that they will not repost the infringing materials. *Designer Techs., Inc. v. Killett*, No. 3:12-CV-5277-L, 2014 WL 25518, at *3 (N.D. Tex. Jan. 2, 2014).

As Plaintiff established in its Motion, it has already suffered irreparable harm due to the Responding Defendants' unauthorized reproduction, display, and commercial distribution of the products subject to Plaintiff's copyright infringement claims in this suit (the "Infringing Products"), and Responding Defendants will continue to cause irreparable injury to Plaintiff if not

2

enjoined. Plaintiff has been unable to control the quality of the Infringing Products that Responding Defendants have distributed for sale—this inherently harms the purchasers of the Infringing Products and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Dkt. 21-2 at ¶ 13. Further, Responding Defendants have produced no evidence that the Infringing Products have all been removed and will not be reposted—indeed, Responding Defendants actually suggest that it is common practice for copyright defendants to modify and reintroduce allegedly infringing products to the market. Dkt. 65 pg. 8. Plaintiff, therefore, suffers irreparable injury in the absence of preliminary injunctive relief.

In light of the fact that Defendants trade in infringing goods, it is reasonable to believe that Defendants will quickly withdraw monies subject to an equitable accounting to locations which neither Plaintiff nor this Court will ever discover. *See Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds"). Indeed, in an email to undersigned counsel, an attorney who represents many of the defendants in this suit warned that his clients would seek to "spend all the frozen money" in his clients' accounts if Plaintiff did not agree to his clients' settlement offers. Ex.1, Appx. 2-3 .[1] This highlights Plaintiff's urgent need for preliminary injunctive relief, as many defendants in this lawsuit are poised to imminently reduce the amount Plaintiff's future recoverable damages. An asset restraining order limiting the transfer of Defendants' assets is thus critical to maintain the status quo, preserve Plaintiffs' right to an equitable accounting, and prevent the Responding Defendants from taking measures to avoid

---

[1] Portions of this email have been redacted to prevent public dissemination of some defendants' settlement offers.

3

satisfaction of a judgment. *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (a district court has sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity "to preserve the status quo pending final determination").

It follows that, even if monetary damages are somewhat quantifiable, Responding Defendants should be preliminarily enjoined from accessing their illegally-obtained funds—including additional funds that may be necessary to satisfy a judgment. *See Olan Mills, Inc. v. Eckerd Drug of Texas, Inc.*, No. CA3-88-0333-D, 1988 WL 161314, at *2 (N.D. Tex. Dec. 14, 1988) (where a plaintiff proves a substantial likelihood of success on the merits of a copyright infringement claim, "a preliminary injunction should not be denied simply because plaintiffs can recover monetary damages"). Responding Defendants argue that a claim of irreparable harm is undermined if there is a "chance that the movant may receive adequate compensation at the end of the litigation." *GTE Card Servs. Inc. v. AT&T Corp.*, No. CIV.A.3:96-CV-1970-D, 1997 WL 74712, at *2 (N.D. Tex. Feb. 12, 1997), *aff'd sub nom. GTE Card Servs. v. A T & T*, 124 F.3d 191 (5th Cir. 1997). Plaintiff agrees. If Responding Defendants are allowed access to their accounts used to collect on sales of the Infringing Products (the "Accounts"), Responding Defendants will immediately withdraw all funds that Plaintiff may otherwise recover—rendering Plaintiff unable to recover from Responding Defendants' infringement. Furthermore, Responding Defendants present the Court with their alleged sales figures relating to the sale of the Infringing Products (Dkt. 65 pg. 8), but they fail to address Plaintiff's claim for statutory damages, Plaintiff's damaged goodwill, brand confidence, reputation, and Plaintiff's loss of exclusivity and of future sales. Plaintiff is unlikely to recover adequate compensation at the conclusion if this litigation in the absence of preliminary injunctive relief, as Plaintiff would be irreparably damaged if Responding Defendants are allowed to access and drain their Accounts to mitigate their eventual damages.

The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of

customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through preliminary injunctive relief. If preliminary injunctive relief is granted, any inconvenience or confusion experienced by users trying to locate Plaintiff's products will be minimized, Plaintiff will be able to control the sale and quality of its Products, and Plaintiff will benefit from ownership of its valid and valuable Registrations. Plaintiff is thus entitled to preliminary relief under the "irreparable harm" factor.

      **B.**      **Plaintiff Will Likely Succeed on Its Copyright Infringement Claims**

"A plaintiff is likely to succeed on a claim for copyright infringement if the plaintiff can establish: (1) ownership in a valid copyright and (2) copying by the defendant." *MGE UPS Sys., Inc.*, 2004 WL 2187143 at *1; *see also Lakedreams v. Taylor,* 932 F.2d 1103, 1007-08 (5th Cir.1991) ("To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities"). There are two ways to prove copying: (1) with proof of direct evidence of copying or (2) through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the two works are "probatively" similar. *Gen. Univ. Sys., Inc. v. Lee,* 379 F.3d 131, 141-142 (5th Cir. 2004). Access need not be shown in some cases where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142.

As stated in its Motion, Plaintiff's products subject to protection (the "Products") under U.S. Copyright Registration Nos. VA 2-058-421, VA 2-058-419, VA 2-237-579, and VA 2-237-338 (collectively, the "Registrations") are wholly original to Plaintiff, who has never granted any rights or licenses in the Products to any third party. Dkt. 21-2 ¶ 9. The Products are thus "original" to Plaintiff. Plaintiff's ownership of the Registrations establishes that the U.S. Copyright Office has attested to the validity of the Registrations; the facts in the certificates of registration; and that Plaintiff is the rightful owner of the Registrations. *See Gen. Universal Sys., Inc.*, 379 F.3d at 141.

Plaintiff has sold tens of thousands of its Products online over the past 13 years (Dkt. 21-2 ¶ 5), which establishes circumstantially that Responding Defendants had access to the Products. Further, in viewing Plaintiff's and Responding Defendants' products side-by-side, a layman would clearly view these works as substantially similar to one another. *See, e.g.,* Dkt. 20 pg. 11; *see also* Dkt. 4-10; Dkt. 4-11; Dkt. 4-12.

Responding Defendants attempt to undermine Plaintiff's Registrations by directing the Court's attention to screenshots of a date-restricted Google search, with no declaration to support the screenshots' authenticity, showing a number of adult-themed ornaments for sale. Dkt. 65-2. Responding Defendants fail to explain to the Court that these screenshots prominently display <u>current</u> advertisements and recommendations for adult-themed ornaments, rather than advertisements and recommendations published during the date range Responding Defendants specified. Ex. 2, Appx. 4-9.[2] As proven in the Complaint, TRO, and Motion, Plaintiff owns the Registrations, and Responding Defendants have not (and indeed cannot) produce any evidence to the contrary. Plaintiff has thus proven the first prong—that it owns a valid copyright in each of the Registrations.

Responding Defendants even admit that the Infringing Products constitute a "portion of the products Defendants sell[,]" that "[Responding] Defendants first started selling the accused product in November 2020," and that "[Responding] Defendants have sold a total of 789 units of the accused product[.]" Dkt. 65 pg. 3. Responding Defendants themselves have thus unequivocally proven the second prong—copying—as Responding Defendants have now admitted to copying, selling, distributing, and making money from the sale of the Infringing Products on the record. There is no possibility that Responding Defendants independently created the Infringing Products,

---

[2] Exhibits 1 and 2 are supported by the Declaration of Charles A. Wallace, attached as Exhibit 3. Appx. 10.

as the Infringing Products are "so strikingly similar," and in fact, are identical, to Plaintiff's Products. Through Responding Defendants' infringing conduct, including Responding Defendants willful and unauthorized reproduction, display, and commercial distribution of the Infringing Products, Responding Defendants have directly infringed Plaintiff's exclusive rights under the Copyright Act. Plaintiff is therefore likely to succeed on the merits of its copyright infringement claims against Responding Defendants.

### C.     The Balance of Harm Tips Decisively In Plaintiff's Favor

Courts in this Circuit have found that the balance of hardships weighs in a plaintiff's favor when the defendant is infringing the plaintiff's copyright. *See, e.g., Olan Mills, Inc*., 1988 WL 161314, at *3 (finding that the defendant's infringing conduct resulted in the loss of a primary source of the plaintiff's income, and that the defendant will suffer minimal hardship if enjoined from further infringing on the plaintiff's copyright); *see also Worlds of Wonder, Inc.,* 658 F. Supp. at 357 (finding that even if an infringing defendant could establish that an "injunction would have a devastating effect on its business," the court should not permit an infringer to construct its business around its infringement and deny the plaintiff preliminary injunctive relief).

Plaintiff is entitled to protect the integrity of its intellectual property and of its Products, and it continues to suffer hardship as long as Defendants are allowed to promote, advertise, market, distribute, offer for sale, and sell the Infringing Products. Responding Defendants argue only that, if this Court grants Plaintiff's Motion, they will be unable to pay the restrained amounts to their suppliers and employees, and may undergo the hardship of having to "modify" or "reintroduce[]" the Infringing Products to market. Dkt. 65 pgs. 8, 9. As willful infringers intent on withdrawing and using the funds received from sales of the Infringing Products, Responding Defendants are entitled to little equitable consideration. *See Designer Techs., Inc*., 2014 WL 25518, at *3 (finding that the plaintiff's injury "outweighs any harm" to defendants who engage in conduct which

Congress has declared to be illegal, such as copyright infringement).

In addition, the monetary damages Plaintiff is seeking far exceeds any amount likely contained in any of the Responding Defendants' merchant accounts or other U.S. financial accounts (Plaintiff's prayer for relief requests statutory damages in excess of $300,000 from each Defendant). In collecting such a judgment, Plaintiff would be entitled to a greater portion of Defendants' finances, not just those monies attributable to sales of the Infringing Products, as Responding Defendants seem to suggest. Thus, the balance of harm tips decisively in Plaintiff's favor, and equity requires Defendants to be ordered to cease their infringing conduct, and for their Accounts to be frozen.

### D.    Issuance of the Injunction Is In the Public Interest

As stated in the Motion, there is a public interest in preserving rights provided by federal copyright law. *Lakedreams v. Taylor*, 932 F.2d at 1110; *Designer Techs., Inc.*, 2014 WL 25518, at *3 (issuance of injunctive relief barring conduct that Congress has declared to be unlawful is in the public interest, as "[t]he public has an interest in knowing or being assured that persons do not violate laws regarding trademarks, copyrights, and fair competition"); *Live Nation Motor Sports, Inc. v. Davis*, No. CIVA 3"06CV276L, 2006 WL 3616983, at *5 (N.D. Tex. Dec. 12, 2006) ("The public expects laws passed by Congress to be enforced. The court believes it serves the public interest to enforce the Copyright Act, which, in this case, necessitates a preliminary injunction"); *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, No. CIV.A. 302CV0034-M, 2002 WL 32157203, at *2 (N.D. Tex. Apr. 19, 2002) ("the public interest will be served by preserving rights protected by the federal Copyright Act"); *Olan Mills, Inc.*, 1988 WL 161314, at *3 ("an injunction will in fact serve the public interest by protecting copyrights created by Congress").

The public interest factor thus also weighs in favor of an injunction because the public interest—and the Copyright Act itself—would be undermined if Responding Defendants'

infringing conduct is allowed to go unabated. Responding Defendants do not rely on any authority, but instead only argue that the public interest would be disserved by injunctive relief because Plaintiff allegedly failed to show a likelihood of success and irreparable harm. Dkt. 64 pg. 9. Responding Defendants' argument is unavailing. Not only has Plaintiff clearly demonstrated that it will succeed on the merits and that it has been, and will continue to be irreparably harmed in the absence of injunctive relief, but Plaintiff has clearly demonstrated how a preliminary injunction will actually *advance* the public interest by protecting copyrighted works, maintaining the integrity of the Copyright Act, protecting unknowing consumers from purchasing unlicensed and low-quality Infringing Products, and promoting businesses prosperity and fair trade.

## II.     Security Pursuant to Federal Rule of Civil Procedure 65(c)

Responding Defendants are correct that, under Fed. R. Civ. P. 65, the party seeking a preliminary injunction must "give[ ] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been *wrongfully enjoined or restrained*." Fed. R. Civ. P. 65(c) (emphasis added). However, Responding Defendants cite no authority or reasoning to back up its claim that a $5,000,000 bond is appropriate in this lawsuit. Indeed, in the very next sentence, Responding Defendants again admit to infringing Plaintiff's Registrations (Dkt. 65 pg. 10), demonstrating that none of the Responding Defendants have been, or will be, "wrongfully enjoined or restrained" as provided by Fed. R. Civ. P. 65(c).

Plaintiff again respectfully requests that this Court exercise its discretion in imposing any further security amount, and that the "proper" amount of security be zero. *See Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302–03 (5th Cir. 1978) ("The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all"); *see also Rohm & Haas Co. v. Cumberland Chem. Corp.*, No. H-82-1241, 1983 WL 52378, at *6 (S.D. Tex. Jan. 21, 1983) (the parties may respond if the injunction is ultimately overturned). Plaintiff already

provided this Court with the security amount ordered in the TRO (Dkt. 9 pg. 4), and not a single Defendant—8 weeks after the Court issued the TRO—has denied that it infringed Plaintiff's Registrations to-date. Plaintiff thus respectfully requests that this Court exercise its discretion to require no further security from Plaintiff in ruling on the Motion. In the alternative, should this Court, in its discretion, require Plaintiff to post additional security, due to the strong and unequivocal evidence of Defendants' infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than $10,000.[3]

## CONCLUSION

Defendants have illegally benefitted from the unauthorized reproduction, display, and commercial distribution of the Infringing Products, and unless preliminarily enjoined as requested in Plaintiff's Motion, Defendants will continue to irreparably harm Plaintiff's hard-earned business and jeopardize Plaintiff's reputation as a seller of quality, hand-made products. Therefore, entry of preliminary injunctive relief is necessary to protect Plaintiff's Registrations and the integrity of the Copyright Act, and to prevent further irreparable harm to Plaintiff and to the consuming public. In view of the foregoing, Plaintiff respectfully requests that this Court enter a preliminary injunction against all of the Defendants after a hearing to show cause "at the earliest possible time" pursuant to Fed. R. Civ. P. 65(b)(3), and as discussed in the TRO (Dkt. 9 pg. 8).[4]

---

[3] *See also Farouk Sys., Inc.*, No. 4:10-cv-02672 ($10,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 459 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc., v. Xiaokang Lee*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 18, 2011) ($10,000 bond); *The Nat'l Football League v. Chen*, No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011) ($10,000 bond); *Chanel, Inc. v. Zhixian*, No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) ($10,000 bond); *Gucci Am., Inc. v. Curveal Fashion*, No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) ($10,000 bond).

[4] The Clerk issued summonses for almost all of the Defendants in this suit (Dkt. 25-31, 36-44, 46, 49-62), and Plaintiff is prepared to serve each of the Defendants at the email addresses provided in the issued summonses. Plaintiff will, therefore, be filing a separate Motion for Alternative Service of Process to expedite proper prosecution of this matter, and to avoid the threat of the Defendants reclaiming their illegally-obtained funds mentioned in the attached Exhibit 1. Appx. 2-3.

Dated: May 26, 2021

Respectfully submitted,

**CREEDON PLLC**

By: */s/ Charles A. Wallace*
James H. Creedon
Texas Bar No. 24092299
Charles A. Wallace
Texas Bar No. 24110501
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel.    972.850.6864
Fax    972.920.3290
jhcreedon@creedonpllc.com
cwallace@creedonpllc.com

ATTORNEYS FOR PLAINTIFF
THE NAUGHTYS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2021, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

By: */s/ Charles A. Wallace*
Charles A. Wallace