## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **THE NAUGHTYS, LLC.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Cause No. 4:21-cv-00492** |
| | § | |
| **DOES 1-580,** | § | |
| *Defendants.* | § | |

**Defendants' Response to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction**

### APPENDIX

– **Declaration of Yali Niu**

– **Declaration of Wu Rong**

– **Declaration of Huizhang Wang**

– **Declaration of Luo Ningbo**

– **Declaration of Wu Shuqi**

– **Declaration of Xie Tong**

– **Declaration of Xie Huichang**

– **Declaration of Yanfang Zeng**

– **Declaration of Zhao Dan**

– **Declaration of Tan Long**

– **Declaration of Jiang Weijun**

– **Declaration of Donge Jia**

– **Declaration of Fan Yang**

– **Declaration of Xiaofeng Cheng**

– **Declaration of Xiaochao Liu**

– **Declaration of Yingli Li**

– **Exhibit 1**

– **Errata, Unreported Opinions**

# Declaration of Yali Niu

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:21-cv-00492 |
| DOES 1-580 | ) | |
| Defendants. | ) | Judge Reed C. O'Connor |

**Declaration of Yali Niu**

I, Yali Niu, of the City of Luoyang, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Amazon stores: Clearance&100%quality, NyaKLI, Fhci-HR, who-canside 😎 90% Discount Fast Delivery😎, GJK-SION, douk-Quite, much MUCHYOU 👹 90% Discount Cyber Monday👹Direct, Vdaye, and OFMWBN (the "Stores"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3.  The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, OFMWBN never sold the accused products to Texas, and the other Stores sold 9 items of the accused products to Texas in total. Four of the sales were shipped to WILLS POINT TX 75169-9329 and are believed to be test purchases by the Plaintiff. Attached as **Exhibit A** is the Store's complete sale record of the accused product.

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 24, 2021 in Luoyang, China.

_Yali Niu_
Yali Niu

# Exhibit A





We're building a better Seller Central. Experience it for yourself.    Use new navigation

| Catalog | Inventory | Pricing | Orders | Advertising | Stores | Growth | Reports | Performance | Apps & Services | B2B |

much MUCHYOU | United States    English ▾    Search

## Manage Orders   Learn more | Video tutorials

ASIN   B08N69CPQQ

⚠ Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

Go back to order list

**4 orders**   Custom Date Range

Order date (descending)   100   Set Tab

From: 5/5/18   To: 6/11/21

Action on 0 selected:   Buy shipping   Print packing slip   Confirm shipment

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **3 months ago** 2/24/2021 10:49 PM PST | 111-6601655-0889826 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | Muchy Christmas Decor Ornaments Naughty Naked Santa Christmas Tree Hanging Decoration Pendant Stocking Cap Santa Ornament Naked Santa (A, 1 pcs) ASIN: **B08N69CPQQ** SKU: MuchyWHA201031081A Quantity: **1** Item subtotal: $9.99 | **Standard** Ship by date: Mar 11, 2021 to Mar 17, 2021 Deliver by date: Mar 18, 2021 to Mar 29, 2021 | Shipped |
| ☐ **7 months ago** 11/20/2020 3:17 AM PST | 111-7830330-7344222 Buyer name: Michelle Fulfillment method: Seller Sales channel: Amazon.com | | Muchy Christmas Decor Ornaments Naughty Naked Santa Christmas Tree Hanging Decoration Pendant Stocking Cap Santa Ornament Naked Santa (A, 1 pcs) ASIN: **B08N69CPQQ** SKU: MuchyWHA201031081A Quantity: **1** Item subtotal: $9.99 | **Standard** Ship by date: Nov 23, 2020 to Nov 24, 2020 Deliver by date: Dec 14, 2020 to Jan 6, 2021 | Shipped |
| ☐ **7 months ago** 11/18/2020 4:50 PM PST | 111-7570696-4468258 Buyer name: Alice Fulfillment method: Seller Sales channel: Amazon.com | | Muchy Christmas Decor Ornaments Naughty Naked Santa Christmas Tree Hanging Decoration Pendant Stocking Cap Santa Ornament Naked Santa (A, 1 pcs) ASIN: **B08N69CPQQ** SKU: MuchyWHA201031081A Quantity: **1** Item subtotal: $9.99 | **Standard** Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Dec 10, 2020 to Jan 4, 2021 | Shipped |
| ☐ **7 months ago** 11/17/2020 9:37 PM PST | 111-8834900-6177861 Buyer name: juanita Fulfillment method: Seller Sales channel: Amazon.com | | Muchy Christmas Decor Ornaments Naughty Naked Santa Christmas Tree Hanging Decoration Pendant Stocking Cap Santa Ornament Naked Santa (A, 1 pcs) ASIN: **B08N69CPQQ** SKU: MuchyWHA201031081A Quantity: **4** Item subtotal: $9.99 | **Standard** Ship by date: Nov 18, 2020 to Nov 19, 2020 Deliver by date: Dec 9, 2020 to Dec 31, 2020 | Shipped |

← Previous   1   Next →

Showing orders 1 - 4 of 4 total orders.

Help   Program Policies   English ▾      © 1999-2021, Am

FEEDBACK



We're building a better Seller Central. Experience it for yourself.   | Use new navigation |

Vdaye | United States   |   English ▼   | Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

# Manage Orders   Learn more | Video tutorials

ASIN | B08NVMVJ7V

> Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in Archived order report

| Go back to order list |

**5 orders** Custom Date Range

Ship-by date (ascending) | Results per page: 15 | Set Tab

From: 1/1/19   To: 6/11/21   Date Ra

Action on 0 selected:   | Buy shipping |   | Print packing slip |   | Confirm shipment |

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ 7 months ago<br>11/21/2020<br>7:19 PM PST | **112-0259679-8641063**<br>Buyer name:<br>reyna<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: B08NVMVJ7V<br>SKU: 2020WJH111918A<br>Quantity: 1<br>Item subtotal: US$49.90 | **Standard**<br>Ship by date: Nov 23, 2020 to Nov 24, 2020<br>Deliver by date: Dec 14, 2020 to Jan 6, 2021 | Shipped |
| ☐ 7 months ago<br>11/22/2020<br>4:48 AM PST | **113-5810409-8731430**<br>Buyer name:<br>julie<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: B08NVMVJ7V<br>SKU: 2020WJH111918A<br>Quantity: 1<br>Item subtotal: US$49.90 | **Standard**<br>Ship by date: Nov 23, 2020 to Nov 24, 2020<br>Deliver by date: Dec 14, 2020 to Jan 6, 2021 | Shipped |
| ☐ 7 months ago<br>11/22/2020<br>9:58 AM PST | **113-6853458-9166646**<br>Buyer name:<br>joel<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: B08NVMVJ7V<br>SKU: 2020WJH111918A<br>Quantity: 1<br>Item subtotal: US$49.90 | **Standard**<br>Ship by date: Nov 23, 2020 to Nov 24, 2020<br>Deliver by date: Dec 14, 2020 to Jan 6, 2021 | Shipped |
| ☐ 6 months ago<br>11/26/2020<br>3:53 PM PST | **112-5923523-6646606**<br>Buyer name:<br>Angie<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: B08NVMVJ7V<br>SKU: 2020WJH111918A<br>Quantity: 1<br>Item subtotal: US$49.90 | **Standard**<br>Ship by date: Nov 27, 2020 to Nov 30, 2020<br>Deliver by date: Dec 17, 2020 to Jan 11, 2021 | Shipped |
| ☐ 3 months ago<br>2/24/2021<br>7:15 PM PST | **113-6485810-4807459**<br>Buyer name:<br>John<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: B08NVMVJ7V<br>SKU: 2020WJH111918A<br>Quantity: 1<br>Item subtotal: US$4.99 | **Standard**<br>Ship by date: Feb 25, 2021 to Feb 26, 2021<br>Deliver by date: Mar 17, 2021 to Apr 7, 2021 | Shipped |

← Previous   | 1 |   Next →

Showing orders 1 - 5 of 5 total orders.

Help   Program Policies   | English ▼ |   © 1999-2021, Am

| FEEDBACK |









who-canside

114-6274078-0890621

Dorothy TN threefivefive

21504 INTERSTATE 20

+1 619-854-2705 ext. 81016

WILLS POINT TX 75169-9329

Manage Orders

We're building a better Seller Central. Experience it for yourself.    Use new navigation

much MUCHYOU | United States     English ▼     Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.

## Order details   Order ID: # **114-6601655-0889826**   Your Seller Order ID: # Edit

Go back to order list

Print packing slip   Refund Order   Request a Review

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Thu, Mar 11, 2021 to Wed, Mar 17, 2021** | Shipping service: | **Standard** |
| Deliver by: | Thu, Mar 18, 2021 to Mon, Mar 29, 2021 | Fulfillment: | **Seller** |
| | | Sales channel: | **Amazon.com** 🇺🇸 |
| Purchase date: | **Wed, Feb 24, 2021, 10:49 PM PST** | | |

### Ship to

Joseph
WILLS POINT, TX 75169-9329
United States
Address Type: **Commercial**

Contact Buyer:   **John**

### More details

Tax Collection Model: **MarketplaceFacilitator**    Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | Muchy Christmas Decor Ornaments Naughty Naked Santa Christmas Tree Hanging Decoration Pendant Stocking Cap Santa Ornament Naked Santa (A, 1 pcs) ASIN: **B08N69CPQQ** SKU: MuchyWHA201031081A | Condition: New Listing ID: 1111X59WDPD Order Item ID: 65129744906242 | 1 | $9.99 | Item subtotal: Shipping total: Tax: Item total: | $9.99 $3.49 $0.84 **$14.32** |

## Package 1

Action on package 1     Edit shipment   Print packing slip

| | |
|---|---|
| **Ship date** | Wed, Mar 10, 2021 |
| **Carrier** | USPS |
| **Shipping service** | Air Mail |

**Tracking ID**   9200190289730302914340

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | Muchy Christmas Decor Ornaments Naughty Naked Santa Christmas Tree Hanging Decoration Pendant Stocking Cap Santa Ornament Naked Santa (A, 1 pcs) ASIN: **B08N69CPQQ** SKU: MuchyWHA201031081A | Condition: New Listing ID: 1111X59WDPD Order Item ID: 65129744906242 | 1 | Item subtotal: Shipping total: Tax: Item total: | $9.99 $3.49 $0.84 **$14.32** |

Help   Program Policies   English ▼

© 1999-2021, Am

FEEDBACK

amazon seller central    Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B    douk-Quite | United States    English ▼    [Search]    Messages  Help  Settings

Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 17 of 236   PageID 12224

ℹ  MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.    ✕

# Order details    Order ID: # 112-0665080-9025013    Your Seller Order ID: # Edit

[Go back to order list]                                                    [Print packing slip]  [Refund Order]  [Request a Review]

## Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Fri, Nov 20, 2020 to Mon, Nov 23, 2020** | Shipping service: | Standard |
| Deliver by: | Fri, Dec 11, 2020 to Tue, Jan 5, 2021 | Fulfillment: | Seller |
| Purchase date: | Thu, Nov 19, 2020, 6:16 pm PST | Sales channel: | Amazon.com 🇺🇸 |

## Ship to
janice
SOUTHLAKE, TEXAS 76092-8134
United States
Address Type: Residential

Contact Buyer:  jan

## More details

Tax Collection Model: MarketplaceFacilitator          Tax Collection Responsible Party: Amazon Services LLC

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped |  | PWU 2PC Christmas Decorations,Naughty Santa Christmas Hanging Ornaments Cap Santa Ornament Naked Santa Creative Decorating Gifts<br>ASIN: **B08N1FJYYL**<br>SKU: WQ201031082A | Condition: New<br>Listing ID: 1109XZB8Z0A<br>Order Item ID: 54365175093890 | 1 | $14.88 | Item subtotal:<br>Tax:<br>Promotion:<br>Item total: | $14.88<br>$1.10<br>-$1.49<br>$14.49 |

# Package 1

Action on package 1    [Edit shipment]  [Print packing slip]

| | | | |
|---|---|---|---|
| Ship date | Mon, Nov 23, 2020 | | |
| Carrier | SF Express | Tracking ID | SF6043047211985 |
| Shipping service | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | PWU 2PC Christmas Decorations,Naughty Santa Christmas Hanging Ornaments Cap Santa Ornament Naked Santa Creative Decorating Gifts<br>ASIN: **B08N1FJYYL**<br>SKU: WQ201031082A | Condition: New<br>Listing ID: 1109XZB8Z0A<br>Order Item ID: 54365175093890 | 1 | Item subtotal:<br>Tax:<br>Promotion:<br>Item total: | $14.88<br>$1.10<br>-$1.49<br>$14.49 |

## Sales proceeds
Payment methods: Standard

| | |
|---|---|
| Items total: | $14.88 |
| Tax total: | $1.10 |
| Promotion total: | -$1.49 |
| **Grand total:** | **$14.49** |

## Seller Notes
For your records only, will not be displayed to the buyer.

## Manage Feedback
jan has not left you feedback for this order yet.

FEEDBACK ✕

We're building a better Seller Central. Experience it for yourself.    [ Use new navigation ]

| Vdaye | United States | English ▼ | Search |

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.

# Order details    Order ID: # 113-6485810-4807459    Your Seller Order ID: # Edit

[ Go back to order list ]                                      [ Print packing slip ]  [ Refund Order ]  [ Request a Review ]

## Order summary

| | | | | |
|---|---|---|---|---|
| Ship by: | **Thu, Feb 25, 2021 to Fri, Feb 26, 2021** | Shipping service: | Standard | |
| Deliver by: | Wed, Mar 17, 2021 to Wed, Apr 7, 2021 | Fulfillment: | Seller | |
| Purchase date: | Wed, Feb 24, 2021, 7:15 PM PST | Sales channel: | Amazon.com 🇺🇸 | |

## Ship to

Christine
WILLS POINT, TX 75169-9329
United States

Contact Buyer:    **John**

Address Type:  **Commercial**

## More details

Tax Collection Model: **MarketplaceFacilitator**    Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: **B08NVMVJ7V**<br>SKU: 2020WJH111918A | Condition: New<br>Listing ID: 1119XWC4C01<br>Order Item ID: 51770976814578 | 1 | US$4.99 | Item subtotal: | US$4.99 |
| | | | | | | Tax: | US$0.31 |
| | | | | | | Item total: | **US$5.30** |

## Package 1

| Action on package 1 | [ Edit shipment ]  [ Print packing slip ] |
|---|---|

| | | | |
|---|---|---|---|
| **Ship date** | Fri, Feb 26, 2021 | | |
| **Carrier** | Taiwan Post | **Tracking ID** | LAOUS0000416420YQ |
| **Shipping service** | Taiwan Post | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | Vdaye Santa Claus Christmas Tree Decoration Pendant 2020 Naughty Santa Christmas Decorations Creative Doll Gifts for Party (Santa Claus A)<br>ASIN: **B08NVMVJ7V**<br>SKU: 2020WJH111918A | Condition: New<br>Listing ID: 1119XWC4C01<br>Order Item ID: 51770976814578 | 1 | Item subtotal: | US$4.99 |
| | | | | Tax: | US$0.31 |
| | | | | Item total: | **US$5.30** |

Help    Program Policies    [ English ▼ ]                                      © 1999-2021, Am

[ FEEDBACK ]



**amazon** seller central    Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    Brands

Fhci-HR | United States    English ▼    Search 🔍    Messages | Help | Settings

ⓘ MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.    ✕

## Order details    Order ID: # 113-1889046-2118655 | Your Seller Order ID: # Edit

**Sales proceeds**
Payment methods: Standard

| | |
|---|---|
| Items total: | $7.99 |
| Tax total: | $0.50 |
| **Grand total:** | **$8.49** |

Go back to order list

Print packing slip    Refund Order    Request a Review

### Order summary

| | | | | | |
|---|---|---|---|---|---|
| Ship by: | Thu, Feb 25, 2021 to Fri, Feb 26, 2021 | Shipping service: | Standard | | |
| Deliver by: | Mon, Mar 1, 2021 to Thu, Mar 4, 2021 | Fulfillment: | Seller | | |
| Purchase date: | Wed, Feb 24, 2021, 7:12 PM PST | Sales channel: | Amazon.com 🇺🇸 | | |

### Ship to

Catherine
WILLS POINT, TX 75169-9329
United States

Address Type: **Commercial**

Contact Buyer:    John

**Seller Notes**

For your records only, will not be displayed to the buyer.

### More details

Tax Collection Model: MarketplaceFacilitator    Tax Collection Responsible Party: Amazon Services LLC

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | 2020 Annual Events Christmas Ornament - Unique Xmas Hanging Ornament for Christmas Tree Decorations Gift for Holiday – 2020 Pandemic Ornament Naughty<br>ASIN: **B08MQBGY3Y**<br>SKU: hr114WHA201102082A | Condition: New<br>Listing ID: 1104XLSDZFM<br>Order Item ID: 03678323581114 | 1 | $7.99 | Item subtotal:<br>Tax:<br>**Item total:** | $7.99<br>$0.50<br>**$8.49** |

**Manage Feedback**

John has not left you feedback for this order yet.

## Package 1

| Action on package 1 | Edit shipment | Print packing slip |
|---|---|---|

| | | | |
|---|---|---|---|
| Ship date | Fri, Feb 26, 2021 | | |
| Carrier | Yanwen | **Tracking ID** | UF771965991YP |
| Shipping service | Fisrt Class | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | 2020 Annual Events Christmas Ornament - Unique Xmas Hanging Ornament for Christmas Tree Decorations Gift for Holiday – 2020 Pandemic Ornament Naughty<br>ASIN: **B08MQBGY3Y**<br>SKU: hr114WHA201102082A | Condition: New<br>Listing ID: 1104XLSDZFM<br>Order Item ID: 03678323581114 | 1 | Item subtotal:<br>Tax:<br>**Item total:** | $7.99<br>$0.50<br>**$8.49** |

Help    Program Policies    English ▼

© 1999-2021, Amazon.com, Inc. or its affiliates


FEEDBACK ✕



amazon seller central    Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   Brands    Fhci-HR United States   English   Search   Messages  Help  Settings

ⓘ   MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.   ✕

## Order details    Order ID: # 111-7826282-2460233   |   Your Seller Order ID: # Edit

**Sales proceeds**

Payment methods: Standard

| | |
|---|---|
| Items total: | $12.97 |
| Shipping total: | $2.98 |
| Tax total: | $1.27 |
| Promotion total: | -$0.65 |
| **Grand total:** | **$16.57** |

Print packing slip   Refund Order   Request a Review

### Order summary

| | | | | |
|---|---|---|---|---|
| Ship by: | Mon, Nov 30, 2020 to Tue, Dec 1, 2020 | Shipping service: | Standard | |
| Deliver by: | Mon, Dec 7, 2020 to Fri, Dec 11, 2020 | Fulfillment: | Seller | |
| Purchase date: | Fri, Nov 27, 2020, 11:33 PM PST | Sales channel: | Amazon.com 🇺🇸 | |

### Ship to

Alicia
BUNA, TX 77612-3148
United States
Address Type: Residential

Contact Buyer:   Alicia

### More details

Tax Collection Model: MarketplaceFacilitator          Tax Collection Responsible Party: Amazon Services LLC

**Seller Notes**

For your records only, will not be displayed to the buyer.

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | 2020 Annual Events Christmas Ornament – Unique Xmas Hanging Ornament for Christmas Tree Decorations Gift for Holiday – 2020 Pandemic Ornament Naughty<br>ASIN: B08MQ3P66Y<br>SKU: hr114WHA201102082B | Condition: New<br>Listing ID: 1104XLLBNNX<br>Order Item ID: 68553090965490 | 1 | $4.98 | Item subtotal:<br>Shipping total:<br>Tax:<br>Promotion:<br>**Item total:** | $4.98<br>$2.98<br>$0.64<br>-$0.25<br>**$8.35** |
| Shipped | | Hedgx Cussing Snowflake 2020 Christmas Snowflake Ornament, Acrylic and Wood, Christmas Ornament, 3.7 Inch Rustic Country Style<br>ASIN: B08NS4F529<br>SKU: hr1110DLF201105555 | Condition: New<br>Listing ID: 1110X393HXJ<br>Order Item ID: 36509257096554 | 1 | $7.99 | Item subtotal:<br>Tax:<br>Promotion:<br>**Item total:** | $7.99<br>$0.63<br>-$0.40<br>**$8.22** |

**Manage Feedback**

Alicia has not left you feedback for this order yet.

## Package 1

Action on package 1    Edit shipment   Print packing slip

| | | | |
|---|---|---|---|
| Ship date | Tue, Dec 1, 2020 | | |
| Carrier | Yanwen | **Tracking ID** | UF573634569YP |
| Shipping service | Fisrt Class | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | 2020 Annual Events Christmas Ornament – Unique Xmas Hanging Ornament for Christmas Tree Decorations Gift for Holiday – 2020 Pandemic Ornament Naughty<br>ASIN: B08MQ3P66Y<br>SKU: hr114WHA201102082B | Condition: New<br>Listing ID: 1104XLLBNNX<br>Order Item ID: 68553090965490 | 1 | Item subtotal:<br>Shipping total:<br>Tax:<br>Promotion:<br>**Item total:** | $4.98<br>$2.98<br>$0.64<br>-$0.25<br>**$8.35** |
| | Hedgx Cussing Snowflake 2020 Christmas Snowflake Ornament, Acrylic and Wood, Christmas Ornament, 3.7 Inch Rustic Country Style<br>ASIN: B08NS4F529<br>SKU: hr1110DLF201105555 | Condition: New<br>Listing ID: 1110X393HXJ<br>Order Item ID: 36509257096554 | 1 | Item subtotal:<br>Tax:<br>Promotion:<br>**Item total:** | $7.99<br>$0.63<br>-$0.40<br>**$8.22** |

Help   Program Policies   English

© 1999-2021, Amazon, Inc. or its affiliates.



GJK-SION

114-3660561-4024242

6925 SUNFLOWER CIR S

+1 415-851-9136 ext. 24771

FORT WORTH TEXAS 76120-1330





amazon seller central   Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   Brands        **NyaKLI | United States**   English ▼   Search 🔍   Messages | Help | Settings

ⓘ   **MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**   ✕

## Order details   Order ID: # **114-5486801-6551461**   | Your Seller Order ID: # Edit

[Go back to order list]        [Print packing slip]   [Refund Order]   [Request a Review]

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Wed, Dec 9, 2020 to Thu, Dec 10, 2020** | Shipping service: | Standard |
| Deliver by: | Wed, Dec 16, 2020 to Tue, Dec 22, 2020 | Fulfillment: | Seller |
| Purchase date: | Tue, Dec 8, 2020, 5:23 PM PST | Sales channel: | Amazon.com 🇺🇸 |

### Ship to

Rachelle
Round Rock, TX 78664
United States

Address Type: Residential

Contact Buyer:     **Jennifer**

### Sales proceeds

Payment methods: Standard

| | |
|---|---|
| Items total: | $9.99 |
| Tax total: | $0.82 |
| **Grand total:** | **$10.81** |

### Seller Notes

For your records only, will not be displayed to the buyer.

### More details

Tax Collection Model: MarketplaceFacilitator          Tax Collection Responsible Party: Amazon Services LLC

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped |  | Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa Naughty Santa Claus Christmas Ornament Stocking Cap Santa Ornament Naked Sant ASIN: **B08PCJX7X2** SKU: NyaKL1201WHA201031082 | Condition: New Listing ID: 1201XL32MDU Order Item ID: 47715512087570 | 1 | $9.99 | Item subtotal: Tax: Item total: | $9.99 $0.82 **$10.81** |

## Package 1

| Action on package 1 | [Edit shipment]   [Print packing slip] |
|---|---|

| | | | |
|---|---|---|---|
| Ship date | Wed, Dec 9, 2020 | **Tracking ID** | YT203442126301140 |
| Carrier | Yun Express | | |
| Shipping service | Standard | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa Naughty Santa Claus Christmas Ornament Stocking Cap Santa Ornament Naked Sant ASIN: **B08PCJX7X2** SKU: NyaKL1201WHA201031082 | Condition: New Listing ID: 1201XL32MDU Order Item ID: 47715512087570 | 1 | Item subtotal: Tax: Item total: | $9.99 $0.82 **$10.81** |

### Manage Feedback

Jennifer has not left you feedback for this order yet.

Help   Program Policies   English ▼

© 1999-2021, Amazon.com, Inc. or its affiliates.

FEEDBACK ✕

# Declaration of Wu Rong

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00492 |
| | ) | |
| DOES 1-580 | ) | Judge Reed C. O'Connor |
| | ) | |
| Defendants. | ) | |

### Declaration of Wu Rong

I, Wu Rong, of the City of Shenzhen, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Amazon stores: Debouor and S5E5X (the "Stores"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3.  The Stores solely operate at address in China and sends and receives mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, the Stores sold 35 items of the accused products for $375.88, and only 1 item was shipped to Texas in each Store. Attached as **Exhibit A** is a complete sale record of the accused product. The Texas sales were shipped to WILLS POINT TX 75169-9329 and are believed to be test purchases by the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 24, 2021 in Shenzhen, China.

_Wu_ _Rong_
Wu Rong

Exhibit A

Manage Orders

S5E5X | United States     Search

## Manage Orders  Learn more | Video tutorials

Product name | naughty santa

Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

Go back to order list

**14 orders** Custom Date Range

Status (descending) | Results per page: 50 | Set Tab

From: 11/24/17  To: 6/10/21  Date Ra

Action on 0 selected:  Buy shipping   Print packing slip   Confirm shipment

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **3 months ago** 2/24/2021 8:09 PM PST | **113-7311310-3533002** Buyer name: **John** Fulfillment method: Seller Sales channel: Amazon.com | | S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus - Funny Naked Santa - 2x0.5in (A) ASIN: B08MPP7YT2 SKU: QZQWHA201031081A Quantity: **1** Item subtotal: US$3.98 | **Standard** Ship by date: Mar 1, 2021 to Mar 2, 2021 Deliver by date: Mar 19, 2021 to Apr 9, 2021 | Shipped |
| **4 months ago** 1/25/2021 5:17 PM PST | **702-8515642-3808242** Buyer name: **Kim** Fulfillment method: Seller Sales channel: Amazon.ca | | S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus Wearing a Face Mask - Funny Naked_Santa - 2x0.5in (B) ASIN: B08MPPBVD4 SKU: QZQWHA201102082B Quantity: **1** Item subtotal: CA$0.99 | **Standard** Ship by date: Jan 26, 2021 to Jan 27, 2021 Deliver by date: Feb 16, 2021 to Mar 9, 2021 | Shipped |
| **5 months ago** 1/7/2021 4:54 AM PST | **702-9723011-6529025** Buyer name: **Ilene** Fulfillment method: Seller Sales channel: Amazon.ca | | S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus Wearing a Face Mask - Funny Naked_Santa - 2x0.5in (B) ASIN: B08MPPBVD4 SKU: QZQWHA201102082B Quantity: **1** Item subtotal: CA$0.01 | **Standard** Ship by date: Jan 8, 2021 to Jan 11, 2021 Deliver by date: Jan 28, 2021 to Feb 19, 2021 | Shipped |
| **5 months ago** 12/30/2020 5:59 PM PST | **702-2394583-1169032** Buyer name: **versramonil** Fulfillment method: Seller Sales channel: Amazon.ca | | S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus Wearing a Face Mask - Funny Naked_Santa - 2x0.5in (B) ASIN: B08MPPBVD4 SKU: QZQWHA201102082B Quantity: **1** Item subtotal: CA$0.01 | **Standard** Ship by date: Dec 31, 2020 to Jan 4, 2021 Deliver by date: Jan 21, 2021 to Feb 11, 2021 | Shipped |
| **5 months ago** 12/26/2020 7:29 AM PST | **701-7354989-8225815** Buyer name: **scott** Fulfillment method: Seller Sales channel: Amazon.ca | | S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus Wearing a Face Mask - Funny Naked_Santa - 2x0.5in (B) ASIN: B08MPPBVD4 SKU: QZQWHA201102082B Quantity: **1** Item subtotal: CA$0.01 | **Standard** Ship by date: Dec 28, 2020 to Dec 29, 2020 Deliver by date: Jan 18, 2021 to Feb 8, 2021 | Shipped |
| **6 months ago** 12/19/2020 10:02 PM PST | **702-3949446-2385801** Buyer name: **ashleigh** Fulfillment method: Seller Sales channel: Amazon.ca | | S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus Wearing a Face Mask - Funny Naked_Santa - 2x0.5in (B) ASIN: B08MPPBVD4 SKU: QZQWHA201102082B Quantity: **1** Item subtotal: CA$0.01 | **Standard** Ship by date: Dec 21, 2020 to Dec 22, 2020 Deliver by date: Jan 12, 2021 to Feb 2, 2021 | Shipped |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **6 months ago**<br>12/16/2020<br>1:51 PM PST | **111-8638328-4211464**<br>Buyer name:<br>**Fran**<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (A)**<br>ASIN: **B08MPWBBLB**<br>SKU: QZQWHA201102082A<br>Quantity: **1**<br>Item subtotal: US$0.01 | **Standard**<br>Ship by date: Dec 17, 2020 to Dec 18, 2020<br>Deliver by date: Jan 8, 2021 to Feb 1, 2021 | Shipped |
| **6 months ago**<br>12/14/2020<br>11:33 AM PST | **701-2474384-6908263**<br>Buyer name:<br>**kristinpgreen**<br>Fulfillment method: Seller<br>Sales channel: Amazon.ca |  | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (A)**<br>ASIN: **B08MPWBBLB**<br>SKU: QZQWHA201102082A<br>Quantity Shipped: **1**<br>Item subtotal: CA$0.01 | **Standard**<br>Ship by date: Dec 15, 2020 to Dec 16, 2020<br>Deliver by date: Jan 6, 2021 to Jan 27, 2021 | Shipped |
| | |  | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (A)**<br>ASIN: **B08MPPBVD4**<br>SKU: QZQWHA201102082B<br>Quantity Shipped: **1**<br>Item subtotal: CA$0.01 | | |
| **6 months ago**<br>12/13/2020<br>12:11 PM PST | **113-2604228-9942616**<br>Buyer name:<br>**maryjane**<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus -**<br>**Funny Naked Santa - 2x0.5in (C)**<br>ASIN: **B08MQ9VV2R**<br>SKU: QZQWHA201031082<br>Quantity: **1**<br>Item subtotal: US$7.98 | **Standard**<br>Ship by date: Dec 16, 2020 to Dec 17, 2020<br>Deliver by date: Jan 7, 2021 to Jan 29, 2021 | Shipped |
| **6 months ago**<br>12/10/2020<br>7:27 PM PST | **112-7039233-6713804**<br>Buyer name:<br>**riste**<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (B)**<br>ASIN: **B08MPPBVD4**<br>SKU: QZQWHA201102082B<br>Quantity Shipped: **1**<br>Item subtotal: US$0.01 | **Standard**<br>Ship by date: Dec 11, 2020 to Dec 14, 2020<br>Deliver by date: Jan 4, 2021 to Jan 26, 2021 | Shipped<br>**Refund applied (2)** |
| | | | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (A)**<br>ASIN: **B08MPWBBLB**<br>SKU: QZQWHA201102082A<br>Quantity Shipped: **1**<br>Item subtotal: US$0.01 | | |
| **6 months ago**<br>12/9/2020<br>8:00 AM PST | **702-6039363-0340223**<br>Buyer name:<br>**Cristina**<br>Fulfillment method: Seller<br>Sales channel: Amazon.ca |  | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (A)**<br>ASIN: **B08MPWBBLB**<br>SKU: QZQWHA201102082A<br>Quantity Shipped: **1**<br>Item subtotal: CA$0.01 | **Standard**<br>Ship by date: Dec 10, 2020 to Dec 11, 2020<br>Deliver by date: Dec 31, 2020 to Jan 22, 2021 | Shipped |
| | | | **S5E5X 2020 Christmas Ornament -**<br>**Naughty Santa Claus and Mrs. Claus**<br>**Wearing a Face Mask - Funny**<br>**Naked_Santa - 2x0.5in (B)**<br>ASIN: **B08MPPBVD4**<br>SKU: QZQWHA201102082B<br>Quantity Shipped: **1**<br>Item subtotal: CA$0.01 | | |

FEEDBACK

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **6 months ago**<br>12/7/2020<br>1:27 PM PST | 702-7229068-4866621<br>Buyer name:<br>Jacinthe<br>Fulfillment method: Seller<br>Sales channel: Amazon.ca |  | S5E5X 2020 Christmas Ornament -<br>Naughty Santa Claus and Mrs. Claus<br>Wearing a Face Mask - Funny<br>Naked_Santa - 2x0.5in (B)<br>ASIN: **B08MPPBVD4**<br>SKU: QZQWHA201102082B<br>Quantity: **1**<br>Item subtotal: CA$0.01 | **Standard**<br>Ship by date: Dec 8, 2020 to Dec 9, 2020<br>Deliver by date: Dec 29, 2020 to Jan 20,<br>2021 | Shipped |
| ☐ **6 months ago**<br>12/4/2020<br>7:49 PM PST | 114-3174096-6959454<br>Buyer name:<br>Jeremy<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | S5E5X 2020 Christmas Ornament -<br>Naughty Santa Claus and Mrs. Claus -<br>Funny Naked Santa - 2x0.5in (C)<br>ASIN: **B08MQ9VV2R**<br>SKU: QZQWHA201031082<br>Quantity: **1**<br>Item subtotal: US$7.98 | **Standard**<br>Ship by date: Dec 9, 2020 to Dec 10,<br>2020<br>Deliver by date: Dec 30, 2020 to Jan 22,<br>2021 | Shipped |
| ☐ **6 months ago**<br>12/12/2020<br>8:47 AM PST | 701-5946470-9980267<br>Fulfillment method: Seller<br>Sales channel: Amazon.ca |  | S5E5X 2020 Christmas Ornament -<br>Naughty Santa Claus and Mrs. Claus<br>Wearing a Face Mask - Funny<br>Naked_Santa - 2x0.5in (B)<br>ASIN: **B08MPPBVD4**<br>SKU: QZQWHA201102082B<br>Item subtotal: CA$0.01 | | Canceled |

← Previous   **1**   Next →

Showing orders 1 - 14 of 14 total orders.

Help   Program Policies   English

© 1999-2021, Am

FEEDBACK

Debouor | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

## Manage Orders   Learn more | Video tutorials

Product name    naughty santa

**Go back to order list**

**29 orders** Custom Date Range

Status (descending)    Results per page: 100    Set Tab

From:  6/8/20    To:  6/10/21    Date Ra

| Action on 0 selected: | Buy shipping | Print packing slip | Confirm shipment |

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | 3 months ago<br>2/24/2021<br>6:33 PM PST | **113-4015745-6229013**<br>Buyer name:<br>John<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: B08MVYTZWQ<br>SKU: cwj1106WHA201031082<br>Quantity: 1<br>Item subtotal: $10.99 | **Standard**<br>Ship by date: Feb 25, 2021 to Feb 26, 2021<br>Deliver by date: Mar 4, 2021 to Mar 10, 2021 | Shipped |
| ☐ | 4 months ago<br>2/17/2021<br>5:38 AM PST | **114-5585898-2515468**<br>Buyer name:<br>catherine<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: B08MVYTZWQ<br>SKU: cwj1106WHA201031082<br>Quantity: 1<br>Item subtotal: $10.99 | **Standard**<br>Ship by date: Feb 18, 2021 to Feb 19, 2021<br>Deliver by date: Feb 25, 2021 to Mar 3, 2021 | Shipped |
| ☐ | 6 months ago<br>12/22/2020<br>11:32 AM PST | **111-4995388-4219435**<br>Buyer name:<br>Mohammad<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: B08MVYTZWQ<br>SKU: cwj1106WHA201031082<br>Quantity: 1<br>Item subtotal: $10.99 | **Standard**<br>Ship by date: Dec 23, 2020 to Dec 24, 2020<br>Deliver by date: Dec 31, 2020 to Jan 7, 2021 | Shipped |
| ☐ | 6 months ago<br>12/14/2020<br>6:02 PM PST | **113-3242269-0518641**<br>Buyer name:<br>samantha<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: B08MVYTZWQ<br>SKU: cwj1106WHA201031082<br>Quantity: 1<br>Item subtotal: $10.99 | **Expedited**<br>Ship by date: Dec 15, 2020 to Dec 16, 2020<br>Deliver by date: Dec 18, 2020 to Dec 23, 2020 | Shipped |
| ☐ | 6 months ago<br>12/13/2020<br>9:59 PM PST | **114-2945385-6365048**<br>Buyer name:<br>Justine<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: B08MW4M41K<br>SKU: CWJ1106WHA201102082A<br>Quantity: 1<br>Item subtotal: $6.89 | **Standard**<br>Ship by date: Dec 14, 2020 to Dec 15, 2020<br>Deliver by date: Dec 21, 2020 to Dec 28, 2020 | Shipped<br>**Refund applied (1)** |
| ☐ | 6 months ago<br>12/13/2020<br>3:14 PM PST | **112-5213601-3666641**<br>Buyer name:<br>amy<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: B08MVYTZWQ<br>SKU: cwj1106WHA201031082<br>Quantity: 1<br>Item subtotal: $10.99 | **Standard**<br>Ship by date: Dec 14, 2020 to Dec 15, 2020<br>Deliver by date: Dec 21, 2020 to Dec 28, 2020 | Shipped |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **6 months ago** 12/12/2020 9:19 AM PST | Buyer name: Chris Fulfillment method: Seller Sales channel: Amazon.com |  | 112-7445521-3593823 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: **1** Item subtotal: $10.99 | **Standard** Ship by date: Dec 14, 2020 to Dec 15, 2020 Deliver by date: Dec 21, 2020 to Dec 28, 2020 | Shipped |
| **6 months ago** 12/11/2020 11:41 PM PST | Buyer name: Margaret Fulfillment method: Seller Sales channel: Amazon.com |  | 114-9584472-7985852 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: **1** Item subtotal: $10.99 | **Standard** Ship by date: Dec 14, 2020 to Dec 15, 2020 Deliver by date: Dec 21, 2020 to Dec 28, 2020 | Shipped |
| **6 months ago** 12/7/2020 5:47 PM PST | Buyer name: melisse Fulfillment method: Seller Sales channel: Amazon.com |  | 113-2505915-3685010 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: **1** Item subtotal: $10.99 | **Standard** Ship by date: Dec 8, 2020 to Dec 9, 2020 Deliver by date: Dec 15, 2020 to Dec 21, 2020 | Shipped |
| **6 months ago** 12/7/2020 4:18 PM PST | Buyer name: Sharon Fulfillment method: Seller Sales channel: Amazon.com | | 113-5183459-0593030 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity Shipped: **1** Item subtotal: $10.99 | **Standard** Ship by date: Dec 8, 2020 to Dec 9, 2020 Deliver by date: Dec 15, 2020 to Dec 21, 2020 | Shipped |
| | |  | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYDQ72 SKU: CWJ1106WHA201102083 Quantity Shipped: **1** Item subtotal: $10.99 | | |
| **6 months ago** 11/30/2020 2:16 PM PST | Buyer name: Peter Fulfillment method: Seller Sales channel: Amazon.com | | 112-7763272-3992261 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: **1** Item subtotal: $10.99 | **Standard** Ship by date: Dec 1, 2020 to Dec 2, 2020 Deliver by date: Dec 21, 2020 to Jan 13, 2021 | Shipped |
| **6 months ago** 11/25/2020 11:25 PM PST | Buyer name: robert Fulfillment method: Seller Sales channel: Amazon.com | | 112-4253973-7421011 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: **1** Item subtotal: $10.99 | **Standard** Ship by date: Nov 27, 2020 to Nov 30, 2020 Deliver by date: Dec 17, 2020 to Jan 11, 2021 | Shipped |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|

**7 months ago**
11/20/2020
12:26 PM PST

113-8739188-4889830
Buyer name:
Robin
Fulfillment method: Seller
Sales channel: Amazon.com

2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYDQ72
SKU: CWJ1106WHA201102083
Quantity: 1
Item subtotal: $10.99

**Standard**
Ship by date: Nov 23, 2020 to Nov 24, 2020
Deliver by date: Dec 14, 2020 to Jan 6, 2021

Shipped

---

**7 months ago**
11/20/2020
8:04 AM PST

111-0388329-8266618
Buyer name:
Christina
Fulfillment method: Seller
Sales channel: Amazon.com

2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYDQ72
SKU: CWJ1106WHA201102083
Quantity: 1
Item subtotal: $10.99

**Standard**
Ship by date: Nov 23, 2020 to Nov 24, 2020
Deliver by date: Dec 14, 2020 to Jan 6, 2021

Shipped

---

**7 months ago**
11/19/2020
3:10 PM PST

113-9026339-6738626
Buyer name:
Lisa
Fulfillment method: Seller
Sales channel: Amazon.com

2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYDQ72
SKU: CWJ1106WHA201102083
Quantity: 1
Item subtotal: $10.99

**Standard**
Ship by date: Nov 20, 2020 to Nov 23, 2020
Deliver by date: Dec 11, 2020 to Jan 5, 2021

Shipped

---

**7 months ago**
11/17/2020
8:49 AM PST

113-5106848-3566664
Buyer name:
Ashley
Fulfillment method: Seller
Sales channel: Amazon.com



2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYTZWQ
SKU: cwj1106WHA201031082
Quantity: 1
Item subtotal: $10.99

**Standard**
Ship by date: Nov 18, 2020 to Nov 19, 2020
Deliver by date: Dec 9, 2020 to Dec 31, 2020

Shipped

---

**7 months ago**
11/15/2020
5:47 AM PST

114-6904813-4197034
Buyer name:
Brian
Fulfillment method: Seller
Sales channel: Amazon.com



2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYTZWQ
SKU: cwj1106WHA201031082
Quantity: 1
Item subtotal: $9.99

**Standard**
Ship by date: Nov 16, 2020 to Nov 17, 2020
Deliver by date: Dec 7, 2020 to Dec 29, 2020

Shipped

---

**7 months ago**
11/14/2020
4:50 PM PST

112-7243052-3669826
Buyer name:
Megan
Fulfillment method: Seller
Sales channel: Amazon.com



2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYTZWQ
SKU: cwj1106WHA201031082
Quantity: 1
Item subtotal: $9.99

**Standard**
Ship by date: Nov 16, 2020 to Nov 17, 2020
Deliver by date: Dec 7, 2020 to Dec 29, 2020

Shipped

---

**7 months ago**
11/9/2020
2:45 PM PST

114-9232721-1863432
Buyer name:
Robert
Fulfillment method: Seller
Sales channel: Amazon.com



2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging
ASIN: B08MVYTZWQ
SKU: cwj1106WHA201031082
Quantity: 1
Item subtotal: $9.99

**Standard**
Ship by date: Nov 10, 2020 to Nov 12, 2020
Deliver by date: Dec 2, 2020 to Dec 23, 2020

Shipped

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **7 months ago** 11/9/2020 12:05 PM PST | 113-2910035-2555439 Buyer name: Schuyler Fulfillment method: Seller Sales channel: Amazon.com |  | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYDQ72 SKU: CWJ1106WHA201102083 Quantity: 1 Item subtotal: $10.99 | **Standard** Ship by date: Nov 10, 2020 to Nov 12, 2020 Deliver by date: Dec 2, 2020 to Dec 23, 2020 | Shipped **Refund applied (1)** |
| **7 months ago** 11/9/2020 10:38 AM PST | 114-0456327-2337824 Buyer name: james Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVQYS4X SKU: CWJ1106WHA201031081A Quantity: 1 Item subtotal: $6.99 | **Standard** Ship by date: Nov 10, 2020 to Nov 12, 2020 Deliver by date: Dec 2, 2020 to Dec 23, 2020 | Shipped |
| **7 months ago** 11/9/2020 6:41 AM PST | 112-0393173-3473015 Buyer name: David Fulfillment method: Seller Sales channel: Amazon.com |  | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: 1 Item subtotal: $9.99 | **Standard** Ship by date: Nov 10, 2020 to Nov 12, 2020 Deliver by date: Dec 2, 2020 to Dec 23, 2020 | Shipped |
| **7 months ago** 11/8/2020 11:47 PM PST | 113-4087217-1507423 Buyer name: Ashley Fulfillment method: Seller Sales channel: Amazon.com |  | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVS3DBS SKU: CWJ1106WHA201031081B Quantity: 1 Item subtotal: $6.99 | **Standard** Ship by date: Nov 9, 2020 to Nov 10, 2020 Deliver by date: Dec 1, 2020 to Dec 22, 2020 | Shipped |
| **7 months ago** 11/8/2020 7:50 PM PST | 113-0758962-9931425 Buyer name: Anna Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: 1 Item subtotal: $9.99 | **Standard** Ship by date: Nov 9, 2020 to Nov 10, 2020 Deliver by date: Dec 1, 2020 to Dec 22, 2020 | Shipped |
| **7 months ago** 11/6/2020 9:37 PM PST | 114-8352937-3782624 Buyer name: Rebecca Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging ASIN: B08MVYDQ72 SKU: CWJ1106WHA201102083 Quantity: 1 Item subtotal: $9.99 | **Standard** Ship by date: Nov 9, 2020 to Nov 10, 2020 Deliver by date: Dec 1, 2020 to Dec 22, 2020 | Shipped **Refund applied (1)** |
| **6 months ago** 12/12/2020 7:42 AM PST | 112-6099524-5297827 Fulfillment method: Seller |  | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging Decoration Gifts for Family Friend (C(2 PC)) ASIN: B08MVYTZWQ SKU: cwj1106WHA201031082 Quantity: 1 Item subtotal: $10.99 | | Canceled |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **6 months ago**<br>12/5/2020<br>9:09 PM PST | 112-0647042-9724242<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging Decoration Gifts for Family Friend (C(2 PC))<br>ASIN: **B08MVYTZWQ**<br>SKU: cwj1106WHA201031082<br>Item subtotal: $10.99 | | Canceled |
| **6 months ago**<br>12/3/2020<br>1:32 PM PST | 111-4655196-5386666<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging Decoration Gifts for Family Friend (C(2 PC))<br>ASIN: **B08MVYTZWQ**<br>SKU: cwj1106WHA201031082<br>Item subtotal: $10.99 | | Canceled |
| **7 months ago**<br>11/13/2020<br>9:41 PM PST | 111-7176162-2949032<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging Decoration Gifts for Family Friend (C(2 PC))<br>ASIN: **B08MVYTZWQ**<br>SKU: cwj1106WHA201031082<br>Item subtotal: $9.99 | | Canceled |

← Previous | 1 | Next →

Showing orders 1 - 29 of 29 total orders.

Help    Program Policies    [English ▼]                                    © 1999-2021, Am

FEEDBACK

S5E5X | United States    *Search*

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 113-7311310-3533002   Your Seller Order ID: # Edit

| | |
|---|---|
| Go back to order list | Print packing slip  Refund Order  Request a Review |

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Mon, Mar 1, 2021 to Tue, Mar 2, 2021** | Shipping service: | Standard |
| Deliver by: | Fri, Mar 19, 2021 to Fri, Apr 9, 2021 | Fulfillment: | Seller |
| Purchase date: | Wed, Feb 24, 2021, 8:09 PM PST | Sales channel: | Amazon.com 🇺🇸 |

### Ship to

Willie
WILLS POINT, TX 75169-9329
United States
Address Type: **Commercial**

Contact Buyer: **John**

### More details

Tax Collection Model: MarketplaceFacilitator    Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped |  | **S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus - Funny Naked Santa - 2x0.5in (A)**<br>ASIN: **B08MPP7YT2**<br>SKU: QZQWHA201031081A | Condition: New<br>Listing ID: 1104XL9LGD5<br>Order Item ID: 35213748385554 | 1 | US$3.98 | Item subtotal:<br>Shipping total:<br>Tax:<br>Item total: | US$3.98<br>US$2.95<br>US$0.43<br>**US$7.36** |

## Package 1

| | | |
|---|---|---|
| Action on package 1 | Edit shipment | Print packing slip |

| | | | |
|---|---|---|---|
| **Ship date** | Tue, Mar 2, 2021 | | |
| **Carrier** | USPS | **Tracking ID** | LY666874544CN |
| **Shipping service** | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | **S5E5X 2020 Christmas Ornament - Naughty Santa Claus and Mrs. Claus - Funny Naked Santa - 2x0.5in (A)**<br>ASIN: **B08MPP7YT2**<br>SKU: QZQWHA201031081A | Condition: New<br>Listing ID: 1104XL9LGD5<br>Order Item ID: 35213748385554 | 1 | Item subtotal:<br>Shipping total:<br>Tax:<br>Item total: | US$3.98<br>US$2.95<br>US$0.43<br>**US$7.36** |

Help   Program Policies   [English]    © 1999-2021, Am

**Debouor | United States**    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

# Order details   Order ID: # 113-4015745-6229013    Your Seller Order ID: # Edit

[Go back to order list]      [Print packing slip] [Refund Order] [Request a Review]

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Thu, Feb 25, 2021 to Fri, Feb 26, 2021** | Shipping service: | Standard |
| Deliver by: | Thu, Mar 4, 2021 to Wed, Mar 10, 2021 | Fulfillment: | Seller |
| | | Sales channel: | Amazon.com 🇺🇸 |
| Purchase date: | Wed, Feb 24, 2021, 6:33 PM PST | | |

### Ship to

Hannah
WILLS POINT, TX 75169-9329    Contact Buyer:   **John**

Address Type: **Commercial**

### More details

Tax Collection Model: **MarketplaceFacilitator**    Tax Collection Responsible Party: **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: **B08MVYTZWQ**<br>SKU: cwj1106WHA201031082 | Condition: New<br>Listing ID: 1106XRZ0KC3<br>Order Item ID: 53722459211842 | 1 | $10.99 | Item subtotal:<br>Tax:<br>Item total: | $10.99<br>$0.69<br>**$11.68** |

## Package 1

| Action on package 1 | [Edit shipment] [Print packing slip] |
|---|---|

| | | | |
|---|---|---|---|
| **Ship date** | Sun, Feb 28, 2021 | | |
| **Carrier** | USPS | **Tracking ID** | - |
| **Shipping service** | | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,Xmas Tree Decoration,Stylish Pendant,for Indoor Home Desk Decor Hanging<br>ASIN: **B08MVYTZWQ**<br>SKU: cwj1106WHA201031082 | Condition: New<br>Listing ID: 1106XRZ0KC3<br>Order Item ID: 53722459211842 | 1 | Item subtotal:<br>Tax:<br>Item total: | $10.99<br>$0.69<br>**$11.68** |

---

Help    Program Policies    English ▼      © 1999-2021, Am

[FEEDBACK]

# Declaration of Huizhang Wang

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00492 |
| | ) | |
| DOES 1-580 | ) | Judge Reed C. O'Connor |
| | ) | |
| Defendants. | ) | |

## Declaration of Huizhang Wang

I, Huizhang Wang, of the City of Shenzhen, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Amazon store: CO CO-US, a.k.a. relax CO CO (the "Store"). I have access and control of the Store. The Store is not associated or co-operated with any other defendants in this case.

3.  The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction.  The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, the Store sold 51 items of the accused products for $805.8, and only 1 item was shipped to the State of Texas. Attached as **Exhibit A** is a complete sale record of the accused product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 23, 2021 in Shenzhen, China.

<u>Huizhang Wang</u>
Huizhang Wang

Exhibit A

relax CO CO | United States     English ▾   Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

> **MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 111-5612277-3807434   Your Seller Order ID: # Edit

[ Go back to order list ]        [ Print packing slip ]  [ Refund Order ]  [ Request a Review ]

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Mon, Dec 7, 2020 to Tue, Dec 8, 2020** | Shipping service: | Standard |
| Deliver by: | Fri, Dec 11, 2020 to Fri, Dec 18, 2020 | Fulfillment: | Seller |
| Purchase date: | Tue, Dec 1, 2020, 6:44 AM PST | Sales channel: | Amazon.com 🇺🇸 |

### Ship to

Elizabeth
HOUSTON, TX 77084-3075        Contact Buyer:   **Elizabeth**

Address Type:  **Residential**

### More details

Tax Collection Model: MarketplaceFacilitator        Tax Collection Responsible Party: **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 | Condition: New Listing ID: 1104XL9HQC3 Order Item ID: 51447930518146 | 2 | US$15.00 | Item subtotal: Tax: Item total: | US$30.00 US$2.48 **US$32.48** |

## Package 1

| Action on package 1 | [ Edit shipment ]  [ Print packing slip ] |
|---|---|

| | |
|---|---|
| **Ship date** | Tue, Dec 8, 2020 |
| **Carrier** | USPS |
| **Shipping service** | Fisrt Class |

**Tracking ID**   420770849200190252930539422113

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 | Condition: New Listing ID: 1104XL9HQC3 Order Item ID: 51447930518146 | 2 | Item subtotal: Tax: Item total: | US$30.00 US$2.48 **US$32.48** |



Help    Program Policies    English        © 1999-2021, Am

FEEDBACK

**relax CO CO** | United States    English ▾    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

# Manage Orders   *Learn more* | *Video tutorials*

ASIN    B08MQM6ZQ6

Go back to order list    **2 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 100    Set Tab

From:   11/1/20    To:   6/30/21

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **7 months ago** 11/8/2020 12:31 PM PST | **112-2441923-7751440** Buyer name: **robert** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MQM6ZQ6** SKU: BSJ202030A Quantity: **1** Item subtotal: US$7.99 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped |
| ☐ **7 months ago** 11/14/2020 7:00 PM PST | **114-8344183-5328218** Buyer name: **Virginia** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPXH9F9** SKU: BSJ202033B Quantity Shipped: **1** Item subtotal: US$9.99 | **Standard** Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped **Refund applied (3)** |
| | |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MQ5ZVTG** SKU: BSJ202033A Quantity Shipped: **1** Item subtotal: US$9.99 | | |
| | | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MQM6ZQ6** SKU: BSJ202030A Quantity Shipped: **1** Item subtotal: US$7.99 | | |

← Previous    **1**    Next →

Showing orders 1 - 2 of 2 total orders.

Help    Program Policies    English ▾      © 1999-2021, Am

FEEDBACK

relax CO CO | United States    English ▾    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

# Manage Orders   Learn more | Video tutorials

ASIN   B08MPXH9F9

Go back to order list    **5 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 100    Set Tab

From: 11/1/20    To: 6/30/21

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **7 months ago** 11/8/2020 1:20 PM PST | **111-4606090-9861046** Fulfillment method: Seller Sales channel: Amazon.com |  | 2020 Christmas Omaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Omaments, Perfect Omament Creative Blessing Gift for ASIN: **B08MPXH9F9** SKU: BSJ202033B Quantity: 1 Item subtotal: US$9.99 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped |
| ☐ **7 months ago** 11/14/2020 7:00 PM PST | **111-8344183-5328218** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Omaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Omaments, Perfect Omament Creative Blessing Gift for ASIN: **B08MPXH9F9** SKU: BSJ202033B Quantity Shipped: 1 Item subtotal: US$9.99 | **Standard** Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped |
| | | | 2020 Christmas Omaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Omaments, Perfect Omament Creative Blessing Gift for ASIN: **B08MQ5ZVTG** SKU: BSJ202033A Quantity Shipped: 1 Item subtotal: US$9.99 | | |
| | | | 2020 Christmas Omaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Omaments, Perfect Omament Creative Blessing Gift for ASIN: **B08MQM6ZQ6** SKU: BSJ202030A Quantity Shipped: 1 Item subtotal: US$7.99 | | |
| ☐ **7 months ago** 11/15/2020 5:57 PM PST | **111-2099140-6326636** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Omaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Omaments, Perfect Omament Creative Blessing Gift for ASIN: **B08MPXH9F9** SKU: BSJ202033B Quantity: 1 Item subtotal: US$9.99 | **Standard** Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped |
| ☐ **7 months ago** 11/19/2020 6:56 AM PST | **114-8773474-7793018** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Omaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Omaments, Perfect Omament Creative Blessing Gift for ASIN: **B08MQ5ZVTG** SKU: BSJ202033A Quantity Shipped: 1 Item subtotal: US$9.99 | **Standard** Ship by date: Nov 25, 2020 to Nov 27, 2020 Deliver by date: Dec 2, 2020 to Dec 9, 2020 | Shipped |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|



2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for

ASIN: **B08MPXH9F9**
SKU: BSJ202033B
Quantity Shipped: **1**
Item subtotal: US$9.99

---

**6 months ago**
12/14/2020
8:21 PM PST

**111-4925909-7339457**

Fulfillment method: Seller
Sales channel: Amazon.com



2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for Family,Friend (DD)

ASIN: **B08MPXH9F9**
SKU: BSJ202033B
Item subtotal: US$9.99

Canceled



2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for Family,Friend (CC)

ASIN: **B08MQ5ZVTG**
SKU: BSJ202033A
Item subtotal: US$9.99



← Previous    | 1 |    Next →

Showing orders 1 - 5 of 5 total orders.

---

Help     Program Policies     [English ▾]                                                          © 1999-2021, Am

FEEDBACK

relax CO CO | United States    | English ▼ |    Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

# Manage Orders   Learn more | Video tutorials

ASIN    | B08MQ5ZVTG

| Go back to order list |   **3 orders**  Custom Date Range

Ship-by date (ascending)   Results per page: 100   Set Tab

From:  11/1/20   To:  6/30/21

Action on 0 selected:   | Buy shipping |   | Print packing slip |   | Confirm shipment |

| ☐ | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | 7 months ago<br>11/14/2020<br>7:00 PM PST | 114-8344183-5328218<br>Buyer name:<br>Virginia<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPXH9F9<br>SKU: BSJ202033B<br>Quantity Shipped: 1<br>Item subtotal: US$9.99 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped<br>**Refund applied (3)** |
| | | | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MQ5ZVTG<br>SKU: BSJ202033A<br>Quantity Shipped: 1<br>Item subtotal: US$9.99 | | |
| | | | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MQM6ZQ6<br>SKU: BSJ202030A<br>Quantity Shipped: 1<br>Item subtotal: US$7.99 | | |
| ☐ | 7 months ago<br>11/19/2020<br>6:56 AM PST | 114-8773474-7793018<br>Buyer name:<br>Erin<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MQ5ZVTG<br>SKU: BSJ202033A<br>Quantity Shipped: 1<br>Item subtotal: US$9.99 | **Standard**<br>Ship by date: Nov 25, 2020 to Nov 27, 2020<br>Deliver by date: Dec 2, 2020 to Dec 9, 2020 | Shipped |
| | | | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPXH9F9<br>SKU: BSJ202033B<br>Quantity Shipped: 1<br>Item subtotal: US$9.99 | | |
| ☐ | 6 months ago<br>12/14/2020<br>8:21 PM PST | 111-4925909-7339457<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for Family,Friend (DD)<br>ASIN: B08MPXH9F9<br>SKU: BSJ202033B<br>Item subtotal: US$9.99 | | Canceled |

| FEEDBACK |

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|

2020 Christmas Ornaments,Naughty
Santa Christmas Decorations,Christmas
Tree Hanging Naked Santa Ornaments,
Perfect Ornament Creative Blessing Gift
for Family,Friend (CC)
ASIN: **B08MQ5ZVTG**
SKU: BSJ202033A
Item subtotal: US$9.99

← Previous  **1**  Next →

Showing orders 1 - 3 of 3 total orders.

Help | Program Policies | English ⌄

© 1999-2021, Am

FEEDBACK

relax CO CO | United States   English ▾   Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

# Manage Orders  *Learn more* | *Video tutorials*

ASIN   B08MPRVRB2

Go back to order list

**41 orders**  Custom Date Range

Ship-by date (ascending)   Results per page: 100   Set Tab

From: 11/1/20   To: 6/30/21

Action on 0 selected:   Buy shipping   Print packing slip   Confirm shipment

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **7 months ago** 11/5/20 2:04 PM PST | 111-5515675-9738629 Buyer name: Norma Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: B08MPRVRB2 SKU: BSJ202031 Quantity: 1 Item subtotal: US$15.00 | **Standard** Ship by date: Nov 12, 2020 to Nov 13, 2020 Deliver by date: Nov 18, 2020 to Nov 25, 2020 | Shipped |
| ☐ | **7 months ago** 11/7/2020 1:05 PM PST | 112-0336602-2648270 Buyer name: Bobbi Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: B08MPRVRB2 SKU: BSJ202031 Quantity: 1 Item subtotal: US$15.00 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped **Refund applied (1)** |
| ☐ | **7 months ago** 11/7/2020 5:14 PM PST | 114-4166194-6837842 Buyer name: Holly Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: B08MPRVRB2 SKU: BSJ202031 Quantity: 1 Item subtotal: US$15.00 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped |
| ☐ | **7 months ago** 11/8/2020 10:15 AM PST | 111-8587981-9093052 Buyer name: erin Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: B08MPRVRB2 SKU: BSJ202031 Quantity: 1 Item subtotal: US$15.00 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped **Refund applied (1)** |
| ☐ | **7 months ago** 11/8/2020 1:01 PM PST | 114-0442420-3281822 Buyer name: kelley Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: B08MPRVRB2 SKU: BSJ202031 Quantity: 1 Item subtotal: US$15.00 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped |
| ☐ | **7 months ago** 11/8/2020 1:21 PM PST | 114-2538006-8745020 Buyer name: DONNA Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: B08MPRVRB2 SKU: BSJ202031 Quantity: 1 Item subtotal: US$15.00 | **Standard** Ship by date: Nov 13, 2020 to Nov 16, 2020 Deliver by date: Nov 19, 2020 to Nov 27, 2020 | Shipped **Refund applied (1)** |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|

**7 months ago**
11/8/2020
3:07 PM PST
Buyer name:
Sunny
Fulfillment method: Seller
Sales channel: Amazon.com



2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 13, 2020 to Nov 16, 2020
Deliver by date: Nov 19, 2020 to Nov 27, 2020

Shipped

---

111-3881120-0954622

**7 months ago**
11/8/2020
3:16 PM PST
Buyer name:
angie
Fulfillment method: Seller
Sales channel: Amazon.com



114-1316214-9651436

2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 13, 2020 to Nov 16, 2020
Deliver by date: Nov 19, 2020 to Nov 27, 2020

Shipped
**Refund applied (1)**

---

**7 months ago**
11/8/2020
3:42 PM PST
Buyer name:
heather
Fulfillment method: Seller
Sales channel: Amazon.com



111-3190388-4593849

2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 13, 2020 to Nov 16, 2020
Deliver by date: Nov 19, 2020 to Nov 27, 2020

Shipped
**Refund applied (1)**

---

**7 months ago**
11/8/2020
5:48 PM PST
Buyer name:
Crystal
Fulfillment method: Seller
Sales channel: Amazon.com



112-5296353-3235441

2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 13, 2020 to Nov 16, 2020
Deliver by date: Nov 19, 2020 to Nov 27, 2020

Shipped

---

**7 months ago**
11/9/2020
6:52 PM PST
Buyer name:
Casey
Fulfillment method: Seller
Sales channel: Amazon.com



111-4377687-1696206

2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 16, 2020 to Nov 17, 2020
Deliver by date: Nov 20, 2020 to Nov 30, 2020

Shipped

---

**7 months ago**
11/10/2020
7:54 PM PST
Buyer name:
Sandra
Fulfillment method: Seller
Sales channel: Amazon.com

111-1546855-9867433

2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 17, 2020 to Nov 18, 2020
Deliver by date: Nov 23, 2020 to Dec 1, 2020

Shipped

---

**7 months ago**
11/11/2020
10:24 AM PST
Buyer name:
Denee
Fulfillment method: Seller
Sales channel: Amazon.com

114-5488796-1573817

2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for
ASIN: **B08MPRVRB2**
SKU: BSJ202031
Quantity: **1**
Item subtotal: US$15.00

**Standard**
Ship by date: Nov 17, 2020 to Nov 18, 2020
Deliver by date: Nov 23, 2020 to Dec 1, 2020

Shipped

FEEDBACK

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **7 months ago**<br>11/11/2020<br>7:58 PM PST | **113-8156978-8965029**<br>Buyer name:<br>Ada<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **4**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 17, 2020 to Nov 18, 2020<br>Deliver by date: Nov 23, 2020 to Dec 1, 2020 | Shipped |
| ☐ | **7 months ago**<br>11/12/2020<br>11:02 AM PST | **113-4732929-3869045**<br>Buyer name:<br>judy<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 18, 2020 to Nov 19, 2020<br>Deliver by date: Nov 24, 2020 to Dec 2, 2020 | Shipped |
| ☐ | **7 months ago**<br>11/12/2020<br>12:49 PM PST | **114-3700522-2569842**<br>Buyer name:<br>Rue<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 18, 2020 to Nov 19, 2020<br>Deliver by date: Nov 24, 2020 to Dec 2, 2020 | Shipped |
| ☐ | **7 months ago**<br>11/12/2020<br>12:49 PM PST | **112-5307723-9228202**<br>Buyer name:<br>Mark<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 18, 2020 to Nov 19, 2020<br>Deliver by date: Nov 24, 2020 to Dec 2, 2020 | Shipped |
| ☐ | **7 months ago**<br>11/13/2020<br>9:54 AM PST | **111-6733759-4093865**<br>Buyer name:<br>Amy<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped |
| ☐ | **7 months ago**<br>11/13/2020<br>5:25 PM PST | **113-3456511-5254616**<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for Family,Friend (A+B)<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Item subtotal: US$15.00 | | Canceled |
| ☐ | **7 months ago**<br>11/13/2020<br>5:55 PM PST | **111-8781698-7517803**<br>Buyer name:<br>Gina<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped |

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **7 months ago**<br>11/13/2020<br>7:23 PM PST | Buyer name:<br>Vernaleana<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 113-7416322-2671451<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped |
| **7 months ago**<br>11/14/2020<br>7:51 AM PST | Buyer name:<br>Julie<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 111-0153054-5565038<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **3**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped |
| **7 months ago**<br>11/14/2020<br>11:31 AM PST | Buyer name:<br>Matthew<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 114-7878341-5365059<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Nov 25, 2020 to Dec 3, 2020 | Shipped<br>**Refund applied (1)** |
| **7 months ago**<br>11/16/2020<br>4:39 AM PST | Buyer name:<br>Heather<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 112-0346066-0610645<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 20, 2020 to Nov 23, 2020<br>Deliver by date: Nov 27, 2020 to Dec 4, 2020 | Shipped |
| **7 months ago**<br>11/16/2020<br>5:17 PM PST | Buyer name:<br>Jason<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 113-0877047-5864257<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **2**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 20, 2020 to Nov 23, 2020<br>Deliver by date: Nov 27, 2020 to Dec 4, 2020 | Shipped |
| **7 months ago**<br>11/18/2020<br>6:35 PM PST | Buyer name:<br>Jason<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 113-1963632-5281010<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 24, 2020 to Nov 25, 2020<br>Deliver by date: Dec 1, 2020 to Dec 8, 2020 | Shipped |
| **7 months ago**<br>11/18/2020<br>9:03 PM PST | Buyer name:<br>Nicole<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | 111-5347300-6909841<br>2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: **B08MPRVRB2**<br>SKU: BSJ202031<br>Quantity: **1**<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Nov 24, 2020 to Nov 25, 2020<br>Deliver by date: Dec 1, 2020 to Dec 8, 2020 | Shipped |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **7 months ago** 11/19/2020 8:13 PM PST | **114-4478912-3053067** Buyer name: **Kristi** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **1** Item subtotal: US$15.00 | **Standard** Ship by date: Nov 25, 2020 to Nov 27, 2020 Deliver by date: Dec 2, 2020 to Dec 9, 2020 | Shipped |
| **7 months ago** 11/21/2020 6:22 PM PST | **111-0046368-7193018** Buyer name: **Gina** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **1** Item subtotal: US$15.00 | **Standard** Ship by date: Nov 27, 2020 to Nov 30, 2020 Deliver by date: Dec 3, 2020 to Dec 10, 2020 | Shipped |
| **7 months ago** 11/22/2020 5:01 AM PST | **113-9457643-0312262** Buyer name: **Tammy** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **1** Item subtotal: US$15.00 | **Standard** Ship by date: Nov 27, 2020 to Nov 30, 2020 Deliver by date: Dec 3, 2020 to Dec 10, 2020 | Shipped |
| **7 months ago** 11/23/2020 6:57 AM PST | **114-5204166-6900264** Buyer name: **Alexis** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **1** Item subtotal: US$15.00 | **Standard** Ship by date: Nov 30, 2020 to Dec 1, 2020 Deliver by date: Dec 4, 2020 to Dec 11, 2020 | Shipped |
| **7 months ago** 11/23/2020 12:53 PM PST | **112-2495138-4123432** Buyer name: **ashley** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **2** Item subtotal: US$15.00 | **Standard** Ship by date: Nov 30, 2020 to Dec 1, 2020 Deliver by date: Dec 4, 2020 to Dec 11, 2020 | Shipped |
| **6 months ago** 11/24/2020 8:16 PM PST | **114-4635994-9997854** Buyer name: **troy** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **1** Item subtotal: US$15.00 | **Standard** Ship by date: Dec 1, 2020 to Dec 2, 2020 Deliver by date: Dec 7, 2020 to Dec 14, 2020 | Shipped |
| **6 months ago** 11/25/2020 12:05 AM PST | **112-1541207-1460259** Buyer name: **Santos** Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for ASIN: **B08MPRVRB2** SKU: BSJ202031 Quantity: **1** Item subtotal: US$15.00 | **Standard** Ship by date: Dec 1, 2020 to Dec 2, 2020 Deliver by date: Dec 7, 2020 to Dec 14, 2020 | Shipped |

FEEDBACK

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **6 months ago**<br>11/25/2020<br>7:21 PM PST | Order details<br>112-9655339-9013806<br>Buyer name:<br>Bridget<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Quantity: 1<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Dec 2, 2020 to Dec 3, 2020<br>Deliver by date: Dec 8, 2020 to Dec 15, 2020 | Shipped<br>Refund applied (1) |
| **6 months ago**<br>12/1/2020<br>6:44 AM PST | 111-5612277-3807434<br>Buyer name:<br>Elizabeth<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Quantity: 2<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Dec 7, 2020 to Dec 8, 2020<br>Deliver by date: Dec 11, 2020 to Dec 18, 2020 | Shipped |
| **6 months ago**<br>12/4/2020<br>5:56 PM PST | 113-8718651-1013060<br>Buyer name:<br>Jennifer<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Quantity: 1<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Dec 10, 2020 to Dec 11, 2020<br>Deliver by date: Dec 16, 2020 to Dec 23, 2020 | Shipped |
| **6 months ago**<br>12/7/2020<br>8:18 AM PST | 111-5510617-6368252<br>Buyer name:<br>meagan<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Quantity: 1<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Dec 11, 2020 to Dec 14, 2020<br>Deliver by date: Dec 17, 2020 to Dec 24, 2020 | Shipped |
| **6 months ago**<br>12/12/2020<br>8:25 PM PST | 114-1589858-8988223<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for Family,Friend (A+B)<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Item subtotal: US$15.00 | | Canceled |
| **6 months ago**<br>12/14/2020<br>9:59 AM PST | 112-9421171-9991424<br>Buyer name:<br>Marcey<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Quantity: 1<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Dec 18, 2020 to Dec 21, 2020<br>Deliver by date: Dec 24, 2020 to Jan 4, 2021 | Shipped |
| **4 months ago**<br>2/1/2021<br>10:01 PM PST | 114-4838053-2724268<br>Buyer name:<br>christina<br>Fulfillment method: Seller<br>Sales channel: Amazon.com |  | 2020 Christmas Ornaments,Naughty Santa Christmas Decorations,Christmas Tree Hanging Naked Santa Ornaments, Perfect Ornament Creative Blessing Gift for<br>ASIN: B08MPRVRB2<br>SKU: BSJ202031<br>Quantity: 1<br>Item subtotal: US$15.00 | **Standard**<br>Ship by date: Feb 5, 2021 to Feb 8, 2021<br>Deliver by date: Feb 11, 2021 to Feb 19, 2021 | Shipped |

← Previous    1   Next →

Showing orders 1 - 41 of 41 total orders.

Help   Program Policies   English        © 1999-2021, Am

FEEDBACK

Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 54 of 236   PageID 12261

# Declaration of Luo Ningbo

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00492 |
| | ) | |
| DOES 1-580 | ) | Judge Reed C. O'Connor |
| | ) | |
| Defendants. | ) | |

**<u>Declaration of Luo Ningbo</u>**

I, Luo Ningbo, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following Amazon stores: Chenjbo (aka Halloween clearance&Christm as clearance), Mariee, and Shan-s (the "Stores"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3. The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Stores sold 6 items of the accused products for $77.8, and only 1 item was shipped to Texas in each Store.  Attached as **Exhibit A** is the Store's complete sale record of the accused product.  The Texas sales were all shipped to WILLS POINT TX 75169-9329 and are believed to be test purchases by the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 24, 2021 in Shenzhen, China.

Luo Ningbo
_____
Luo Ningbo

Exhibit A

chenJBO | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

## Manage Orders   Learn more | Video tutorials

| Product name | naughty Santa |

> Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

Go back to order list

**3 orders** Custom Date Range

| Order date (descending) | Results per page: 50 | Set Tab |

From: 8/23/18    To: 6/10/21    Date Ra

Action on 0 selected:   Buy shipping   Print packing slip   Confirm shipment

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **3 months ago** 2/25/2021 12:33 AM PST | **114-1499963-7694629** Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | Cnebo Christmas Ornaments, 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa for Christmas Tree Decorations Hanging Orname ASIN: B08N6SNZG5 SKU: MIA2020WHA201102082A Quantity: **1** Item subtotal: $3.99 | **Standard** Ship by date: Feb 26, 2021 to Mar 1, 2021 Deliver by date: Mar 18, 2021 to Apr 8, 2021 | Shipped |
| ☐ | **3 months ago** 2/24/2021 7:40 PM PST | **113-1520661-3697830** Fulfillment method: Seller Sales channel: Amazon.com | | Cnebo Christmas Ornaments, 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa for Christmas Tree Decorations Hanging Ornaments Home Décor ASIN: B08N6SNZG5 SKU: MIA2020WHA201102082A Item subtotal: $3.99 | | Canceled |
| ☐ | **5 months ago** 1/11/2021 8:38 PM PST | **113-1859284-5589038** Buyer name: James Fulfillment method: Seller Sales channel: Amazon.com | | Cnebo Christmas Ornaments, 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa for Christmas Tree Decorations Hanging Orname ASIN: B08N6QQ3DB SKU: MIA2020WHA201107082A Quantity: **1** Item subtotal: $3.99 | **Standard** Ship by date: Jan 12, 2021 to Jan 13, 2021 Deliver by date: Feb 2, 2021 to Feb 24, 2021 | Shipped |

← Previous   1   Next →

Showing orders 1 - 3 of 3 total orders.

Help    Program Policies    English ▼      © 1999-2021, Am

FEEDBACK

Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 60 of 236   PageID 12267

Mariee | United States   English ▼   Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

## Manage Orders   Learn more · Video tutorials

ASIN   B08NVTBKSY

Go back to order list

**1 orders** Custom Date Range

Ship-by date (ascending)   Results per page: 15   Set Tab

From:   5/28/20   To:   6/10/21   Date Ra

Action on 0 selected:   Buy shipping   Print packing slip   Confirm shipment

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **3 months ago** 2/24/2021 7:00 PM PST | 113-8613826-6286618 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | MZRI 2Pc Christmas Ornament Doll Naughty Naked Santa Christmas Tree Decorations Merry Christmas and Happy New Years Deco Toy ASIN: **B08NVTBKSY** SKU: MR2011110092 Quantity: **1** Item subtotal: $9.80 | **Standard** Ship by date: Mar 1, 2021 to Mar 2, 2021 Deliver by date: Mar 8, 2021 to Mar 12, 2021 | Shipped |

← Previous   1   Next →

Showing orders 1 - 1 of 1 total orders.

Help   Program Policies   English ▼   © 1999-2021, Am

FEEDBACK

https://sellercentral.amazon.com/orders-v3/search?page=1&date-range=1590595200000-1623340799000&q=B08NVTBKSY&qt=asin   1/1

Shan-S | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

## Manage Orders   Learn more | Video tutorials

| Product name | naughty  Santa |

⚠ Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

Go back to order list

**3 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 100    Set Tab

From: 8/24/17   To: 6/10/21   Date Ra

Action on 0 selected:   Buy shipping   Print packing slip   Confirm shipment

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **6 months ago**<br>11/28/2020<br>4:12 PM PST | **112-9856607-5164213**<br>Buyer name:<br>Yvetta<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Shan-S Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa 2020 Christmas Ornament Decorating Kit, Cute and Unique Decorations, I<br>ASIN: **B08MWF3HBV**<br>SKU: Peng123WHA201102082B<br>Quantity: **3**<br>Item subtotal: $5.98 | **Standard**<br>Ship by date: Nov 30, 2020 to Dec 1, 2020<br>Deliver by date: Dec 18, 2020 to Jan 12, 2021 | Shipped |
| ☐ | **6 months ago**<br>11/29/2020<br>3:45 PM PST | **112-9619265-1739403**<br>Buyer name:<br>Yvetta<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Shan-S Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa 2020 Christmas Ornament Decorating Kit, Cute and Unique Decorations, I<br>ASIN: **B08MWF3HBV**<br>SKU: Peng123WHA201102082B<br>Quantity: **2**<br>Item subtotal: $5.98 | **Standard**<br>Ship by date: Nov 30, 2020 to Dec 1, 2020<br>Deliver by date: Dec 18, 2020 to Jan 12, 2021 | Shipped |
| ☐ | **3 months ago**<br>2/24/2021<br>6:06 PM PST | **113-3481639-7538615**<br>Buyer name:<br>John<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Shan-S Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa 2020 Christmas Ornament Decorating Kit, Cute and Unique Decorations, I<br>ASIN: **B08MWF3HBV**<br>SKU: Peng123WHA201102082B<br>Quantity: **1**<br>Item subtotal: $5.98 | **Standard**<br>Ship by date: Feb 25, 2021 to Feb 26, 2021<br>Deliver by date: Mar 17, 2021 to Apr 7, 2021 | Shipped |

← Previous   1   Next →

Showing orders 1 - 3 of 3 total orders.

Help    Program Policies    English ▼    © 1999-2021, Am

FEEDBACK

chenJBO | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 114-1499963-7694629    Your Seller Order ID: # Edit

Go back to order list        Print packing slip    Refund Order    Request a Review

### Order summary

| | | |
|---|---|---|
| Ship by: | **Fri, Feb 26, 2021 to Mon, Mar 1, 2021** | Shipping service:   Standard |
| Deliver by: | Thu, Mar 18, 2021 to Thu, Apr 8, 2021 | Fulfillment:   Seller |
| Purchase date: | Thu, Feb 25, 2021, 12:33 AM PST | Sales channel:   Amazon.com 🇺🇸 |

### Ship to

Abigail
WILLS POINT, TX 75169-9329
United States

Address Type: **Commercial**

Contact Buyer:   **John**
See all 2 orders from this buyer

### More details

Tax Collection Model:   MarketplaceFacilitator     Tax Collection Responsible Party:   **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | Cnebo Christmas Ornaments, 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa for Christmas Tree Decorations Hanging Orname<br>ASIN: **B08N6SNZG5**<br>SKU: MIA2020WHA201102082A | Condition: New<br>Listing ID: 1111X5YOJH5<br>Order Item ID: 03073723186082 | 1 | $3.99 | Item subtotal:<br>Tax:<br>Item total: | $3.99<br>$0.25<br>**$4.24** |

## Package 1

| | |
|---|---|
| Action on package 1 | Edit shipment    Print packing slip |

| | | | |
|---|---|---|---|
| **Ship date** | Sun, Feb 28, 2021 | | |
| **Carrier** | Taiwan Post | **Tracking ID** | LAOUS0000393198YQ |
| **Shipping service** | Taiwan Post | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | Cnebo Christmas Ornaments, 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa for Christmas Tree Decorations Hanging Orname<br>ASIN: **B08N6SNZG5**<br>SKU: MIA2020WHA201102082A | Condition: New<br>Listing ID: 1111X5YOJH5<br>Order Item ID: 03073723186082 | 1 | Item subtotal:<br>Tax:<br>Item total: | $3.99<br>$0.25<br>**$4.24** |

---

Help    Program Policies    English ▼          © 1999-2021, Am

FEEDBACK

**Mariee | United States**        English ▼        Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 113-8613826-6286618    Your Seller Order ID: # Edit

Go back to order list                                            Print packing slip    Refund Order    Request a Review

### Order summary
Ship by:     **Mon, Mar 1, 2021 to Tue, Mar 2, 2021**
Deliver by:  Mon, Mar 8, 2021 to Fri, Mar 12, 2021
Purchase date:     **Wed, Feb 24, 2021, 7:00 PM PST**

Shipping service:   Standard
Fulfillment:        Seller
Sales channel:      Amazon.com 🇺🇸

### Ship to
Emily
WILLS POINT, TX 75169-9329
United States
Address Type:   **Commercial**

Contact Buyer:   **John**

### More details
Tax Collection Model:   MarketplaceFacilitator        Tax Collection Responsible Party:   **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|--------|-------|--------------|------------------|----------|-----------|----------|--|
| Shipped | | **MZRI 2Pc Christmas Ornament Doll Naughty Naked Santa Christmas Tree Decorations Merry Christmas and Happy New Years Deco Toy** ASIN: **B08NVTBKSY** SKU: MR2011110092 | Condition: New Listing ID: 1119XWGQWAF Order Item ID: 68068107182690 | 1 | $9.80 | Item subtotal: Shipping total: Tax: Item total: | $9.80 $2.99 $0.80 **$13.59** |

## Package 1

| Action on package 1 | Edit shipment    Print packing slip |
|---|---|

Ship date        Tue, Mar 2, 2021
Carrier          SF Express                    Tracking ID    SF6043109621850
Shipping service Air Mail



| Image | Product name | More information | Quantity | Proceeds | |
|-------|--------------|------------------|----------|----------|--|
| | **MZRI 2Pc Christmas Ornament Doll Naughty Naked Santa Christmas Tree Decorations Merry Christmas and Happy New Years Deco Toy** ASIN: **B08NVTBKSY** SKU: MR2011110092 | Condition: New Listing ID: 1119XWGQWAF Order Item ID: 68068107182690 | 1 | Item subtotal: Shipping total: Tax: Item total: | $9.80 $2.99 $0.80 **$13.59** |

---

Help    Program Policies    English ▼                                            © 1999-2021, Am

Shan-S | United States      English ▼      Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 113-3481639-7538615    Your Seller Order ID: # Edit

| Go back to order list |

Print packing slip    Refund Order    Request a Review

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Thu, Feb 25, 2021 to Fri, Feb 26, 2021** | Shipping service: | Standard |
| Deliver by: | Wed, Mar 17, 2021 to Wed, Apr 7, 2021 | Fulfillment: | Seller |
| | | Sales channel: | Amazon.com 🇺🇸 |
| Purchase date: | Wed, Feb 24, 2021, 6:06 PM PST | | |

### Ship to

Adam
WILLS POINT, TX 75169-9329
United States
Address Type: **Commercial**

Contact Buyer:    **John**

### More details

Tax Collection Model: **MarketplaceFacilitator**       Tax Collection Responsible Party: **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | Shan-S Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa 2020 Christmas Ornament Decorating Kit, Cute and Unique Decorations, I ASIN: **B08MWF3HBV** SKU: Peng123WHA201102082B | Condition: New Listing ID: 1106XST6HCR Order Item ID: 43783204936106 | 1 | $5.98 | Item subtotal: Shipping total: Tax: Item total: | $5.98 $2.99 $0.56 **$9.53** |

## Package 1

| Action on package 1 | Edit shipment    Print packing slip |
|---|---|

| | | |
|---|---|---|
| **Ship date** | Thu, Feb 25, 2021 | |
| **Carrier** | Yanwen | **Tracking ID**    UF772839694YP |
| **Shipping service** | Fisrt Class | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | Shan-S Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa 2020 Christmas Ornament Decorating Kit, Cute and Unique Decorations, I ASIN: **B08MWF3HBV** SKU: Peng123WHA201102082B | Condition: New Listing ID: 1106XST6HCR Order Item ID: 43783204936106 | 1 | Item subtotal: Shipping total: Tax: Item total: | $5.98 $2.99 $0.56 **$9.53** |

---

Help    Program Policies    English ▼                                         © 1999-2021, Am

FEEDBACK

# Declaration of Wu Shuqi

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

THE NAUGHTYS LLC     )
           )
     Plaintiff,  )
           )
     v.     )  Case No. 4:21-cv-00492
           )
DOES 1-580      )  Judge Reed C. O'Connor
     Defendants. )
           )

**<u>Declaration of Wu Shuqi</u>**

I, Wu Shuqi, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following Amazon store: YHCWJZP (the "Store"). I have access and control of the Store. The Store is not associated or co-operated with any other defendants in this case.

3. The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction.  The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Store sold 3 items of the accused products for $22.11, only 1 shipped to the State of Texas. Attached as **Exhibit A** is the Store's complete sale record of the accused product.  The Texas sale was shipped to WILLS POINT TX 75169-9329 and is believed to be a test purchase by the Plaintiff.

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 23, 2021 in Shenzhen, China.

吴书棋

Wu Shuqi

Exhibit A

**YHCWJZP | United States**     English ▼     Search

Catalog   **Inventory**   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

## Manage Orders   Learn more   Video tutorials

ASIN   B08NX37STB

> Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

Go back to order list

**2 orders**   Custom Date Range

Ship-by date (ascending)    Results per page: 50    Set Tal

From:   12/29/18    To:   6/10/21    Date Ra

Action on 0 selected:   Buy shipping   Print packing slip   Confirm shipment

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **6 months ago** 12/12/2020 2:45 PM PST | 112-8428679-4424231 Buyer name: Jill Fulfillment method: Seller Sales channel: Amazon.com | | YHCWJZP Christmas Ornament, Naughty Naked Santa Claus Doll Xmas Tree Decor Pendant New Year Gift 11 8cm ASIN: B08NX191RG SKU: PY4OXH4VMS8WJ97K62OXY551L Quantity Shipped: 1 Item subtotal: $4.09 | **Standard** Ship by date: Dec 14, 2020 to Dec 15, 2020 Deliver by date: Jan 5, 2021 to Jan 27, 2021 | Shipped |
| | | | YHCWJZP Christmas Ornament, Naughty Naked Santa Claus Doll Xmas Tree Decor Pendant New Year Gift 22 8cm ASIN: B08NX37STB SKU: RAAY46YKF4BHY88 Quantity Shipped: 1 Item subtotal: $4.09 | | |
| ☐ **3 months ago** 2/24/2021 8:06 PM PST | 113-7231437-4717018 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | YHCWJZP Christmas Ornament, Naughty Naked Santa Claus Doll Xmas Tree Decor Pendant New Year Gift 22 8cm ASIN: B08NX37STB SKU: RAAY46YKF4BHY88 Quantity: 1 Item subtotal: $4.09 | **Standard** Ship by date: Feb 25, 2021 to Feb 26, 2021 Deliver by date: Mar 17, 2021 to Apr 7, 2021 | Shipped |

← Previous   1   Next →

Showing orders 1 – 2 of 2 total orders.

---

Help   Program Policies   English ▼          © 1999–2021, Am

FEEDBACK

YHCWJZP | United States     English ▼     Search

Catalog   **Inventory**   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # **113-7231437-4717018**   Your Seller Order ID: # Edit

[Go back to order list]                                          [Print packing slip]   [Refund Order]   [Request a Review]

### Order summary

| | | |
|---|---|---|
| Ship by: | **Thu, Feb 25, 2021 to Fri, Feb 26, 2021** | |
| Deliver by: | Wed, Mar 17, 2021 to Wed, Apr 7, 2021 | |
| Purchase date: | Wed, Feb 24, 2021, 8:06 PM PST | |

Shipping service: **Standard**
Fulfillment: **Seller**
Sales channel: **Amazon.com** 🇺🇸

### Ship to

Scott
WILLS POINT, TX 75169-9329
United States
Address Type: **Commercial**

Contact Buyer: **John**

### More details

Tax Collection Model: **MarketplaceFacilitator**     Tax Collection Responsible Party: **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | YHCWJZP Christmas Ornament, Naughty Naked Santa Claus Doll Xmas Tree Decor Pendant New Year Gift 22 8cm <br> ASIN: **B08NX37STB** <br> SKU: RAAY46YKF4BHY88 | Condition: New <br> Listing ID: 1120XYMT4I7 <br> Order Item ID: 23682807799010 | 1 | $4.09 | Item subtotal: <br> Shipping total: <br> Tax: <br> Promotion: <br> Item total: | $4.09 <br> $2.99 <br> $0.44 <br> -$0.08 <br> **$7.44** |

## Package 1

Action on package 1     [Edit shipment]   [Print packing slip]

| | | | |
|---|---|---|---|
| **Ship date** | Thu, Feb 25, 2021 | | |
| **Carrier** | YunExpress | **Tracking ID** | YT2105621272122708 |
| **Shipping service** | Standard | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | YHCWJZP Christmas Ornament, Naughty Naked Santa Claus Doll Xmas Tree Decor Pendant New Year Gift 22 8cm <br> ASIN: **B08NX37STB** <br> SKU: RAAY46YKF4BHY88 | Condition: New <br> Listing ID: 1120XYMT4I7 <br> Order Item ID: 23682807799010 | 1 | Item subtotal: <br> Shipping total: <br> Tax: <br> Promotion: <br> Item total: | $4.09 <br> $2.99 <br> $0.44 <br> -$0.08 <br> **$7.44** |

---

Help   Program Policies     English ▼                                          © 1999–2021, Am

# Declaration of Xie Tong

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 4:21-cv-00492 |
| v. | ) | |
| | ) | Judge Reed C. O'Connor |
| | ) | |
| DOES 1-580 | ) | |
| | ) | |
| Defendants. | ) | |

### Declaration of Xie Tong

I, Xie Tong, of the City of Huainan, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the Amazon store xatos (the "Store").  I have access and control of the Store.  The Store is not associated or co-operated with any other defendants in this case.

3.  The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction.  The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, the Store sold 2 items of the accused products for $10.96, only 1 shipped to the State of Texas.  Attached as **Exhibit A** is the Store's complete sale record of the accused product.  The Texas sale was shipped to WILLS POINT TX 75169-9329 and is believed to be a test purchase by the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 23, 2021 in Huainan, China.

Xie Tong
Xie Tong

Exhibit A

Case 4:21-cv-00492-O    Document 108-1    Filed 06/28/21    Page 75 of 236    PageID 12282

xatos | United States    English ▼    Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

## Manage Orders   Learn more   |   Video tutorials

ASIN    B08MZNNXHF

> Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

Go back to order list

**2 orders**   Custom Date Range

Ship-by date (ascending)    Results per page: 15    Set Tab

From:   3/1/19    To:   6/30/21    Date Ra

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| **7 months ago** 11/21/2020 12:42 PM PST | **113-2190589-8511465** Buyer name: **Audris** Fulfillment method: Seller Sales channel: Amazon.com | | **xatos Hallmark Christmas Ornaments 2020,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa** ASIN: **B08MZNNXHF** SKU: XTHFL0110901A Quantity: 1 Item subtotal: $5.48 | **Standard** Ship by date: Dec 8, 2020 to Dec 14, 2020 Deliver by date: Dec 17, 2020 to Jan 5, 2021 | Shipped |
| **3 months ago** 2/24/2021 8:11 PM PST | **113-4090868-3400215** Buyer name: **John** Fulfillment method: Seller Sales channel: Amazon.com | | **xatos Christmas Ornaments 2020,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa** ASIN: **B08MZNNXHF** SKU: XTHFL0110901A Quantity: 1 Item subtotal: $5.48 | **Standard** Ship by date: Mar 11, 2021 to Mar 17, 2021 Deliver by date: Mar 22, 2021 to Apr 6, 2021 | Shipped |

← Previous   1   Next →

Showing orders 1 – 2 of 2 total orders.

Help    Program Policies    English ▼       © 1999–2021, Am

FEEDBACK



xatos | United States        English ▼        Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.

## Order details   Order ID: # 113-4090868-3400215   Your Seller Order ID: # Edit

Go back to order list                                          Print packing slip   Refund Order   Request a Review

### Order summary

| | |
|---|---|
| Ship by: | **Thu, Mar 11, 2021 to Wed, Mar 17, 2021** |
| Deliver by: | Mon, Mar 22, 2021 to Tue, Apr 6, 2021 |
| Purchase date: | Wed, Feb 24, 2021, 8:11 PM PST |

| | |
|---|---|
| Shipping service: | Standard |
| Fulfillment: | Seller |
| Sales channel: | Amazon.com 🇺🇸 |

### Ship to

Steven
WILLS POINT, TX 75169-9329
United States

Address Type: **Commercial**

Contact Buyer:   **John**

### More details

Tax Collection Model: MarketplaceFacilitator          Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | xatos Christmas Ornaments 2020,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa<br>ASIN: **B08MZNNXHF**<br>SKU: XTHFL0110901A | Condition: New<br>Listing ID: 1109XY64WOQ<br>Order Item ID: 37559183689066 | 1 | $5.48 | Item subtotal:<br>Tax:<br>Item total: | $5.48<br>$0.34<br>**$5.82** |

## Package 1

| Action on package 1 | Edit shipment   Print packing slip |
|---|---|

| | | | |
|---|---|---|---|
| **Ship date** | Wed, Mar 17, 2021 | | |
| **Carrier** | Other | **Tracking ID** | HHWKO1057000536YQ |
| **Shipping service** | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | xatos Christmas Ornaments 2020,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa<br>ASIN: **B08MZNNXHF**<br>SKU: XTHFL0110901A | Condition: New<br>Listing ID: 1109XY64WOQ<br>Order Item ID: 37559183689066 | 1 | Item subtotal:<br>Tax:<br>Item total: | $5.48<br>$0.34<br>**$5.82** |

Help   Program Policies      English ▼                                                © 1999-2021, Am

FEEDBACK

xatos | United States          English ▼        Search

Catalog   **Inventory**   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.

# Order details  Order ID: # 113-2190589-8511465    Your Seller Order ID: # Edit

| Go back to order list |

[ Print packing slip ]   [ Refund Order ]   [ Request a Review ]

## Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Tue, Dec 8, 2020 to Mon, Dec 14, 2020** | Shipping service: | Standard |
| Deliver by: | Thu, Dec 17, 2020 to Tue, Jan 5, 2021 | Fulfillment: | Seller |
| Purchase date: | **Sat, Nov 21, 2020, 12:42 PM PST** | Sales channel: | Amazon.com 🇺🇸 |

## Ship to

Audris
AYER, MA 01432-1430
United States

Address Type: **Residential**

Contact Buyer:    **Audris**

## More details

Tax Collection Model: MarketplaceFacilitator        Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | xatos Hallmark Christmas Ornaments 2020,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa ASIN: **B08MZNNXHF** SKU: XTHFL0110901A | Condition: New Listing ID: 1109XY64WOQ Order Item ID: 25137252263898 | 1 | $5.48 | Item subtotal: Tax: **Item total:** | $5.48 $0.34 **$5.82** |

# Package 1

| Action on package 1 | [ Edit shipment ]   [ Print packing slip ] |
|---|---|

| | | | |
|---|---|---|---|
| **Ship date** | Mon, Dec 14, 2020 | | |
| **Carrier** | Other | **Tracking ID** | HHWKO0328002257YQ |
| **Shipping service** | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | xatos Hallmark Christmas Ornaments 2020,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa ASIN: **B08MZNNXHF** SKU: XTHFL0110901A | Condition: New Listing ID: 1109XY64WOQ Order Item ID: 25137252263898 | 1 | Item subtotal: Tax: **Item total:** | $5.48 $0.34 **$5.82** |

Help    Program Policies        English ▼                                    © 1999-2021, Am

# Declaration of Xie Huichang

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00492 |
| | ) | |
| DOES 1-580 | ) | Judge Reed C. O'Connor |
| | ) | |
| Defendants. | ) | |

**<u>Declaration of Xie Huichang</u>**

I, Xie Huichang, of the City of Shenzhen, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Amazon stores: Ikevan and SurgicaL (the "Stores"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3.  The Stores solely operate at address in China and sends and receives mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, Ikevan never sold an item of the accused product and has never shipped it to the State of Texas. SurgicaL sold 1 item of the accused products for $12.63, and the order was shipped to Texas. Attached in **Exhibit A** is a complete sale record of the accused product. The Texas sale was shipped to WILLS POINT TX 75169-9329 and is believed to be a test purchase by the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this June 23, 2021 in Shenzhen, China.

*Xie Huichang*
Xie Huichang

# Exhibit A

**B08MVSJY9K**



**B08MVQ4NX3**



**B08MVQWSWF**



**B08MVPBJQC**



**B08MVP63Y9**



B08MVPRLM8



Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

**SurgicaL** | United States    English ▼    Search

# Manage Orders    Learn more | Video tutorials

ASIN    B08NTQM3MX

Go back to order list

**0 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 15    Set Tab

From:    5/1/18    To:    6/11/21    Date Ra

No orders were found that match the given search criteria.

Help    Program Policies    English ▼                                    © 1999-2021, Am

FEEDBACK

Case 4:21-cv-00492-O    Document 108-1    Filed 06/28/21    Page 85 of 236    PageID 12292

**SurgicaL** | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

# Manage Orders   Learn more | Video tutorials

ASIN    B08NTPRYGP

Go back to order list

Ship-by date (ascending)    Results per page: 15    Set Tab

**0 orders** Custom Date Range

From:   5/1/18   To:   6/11/21    Date Ra

No orders were found that match the given search criteria.

Help    Program Policies    English ▼

© 1999-2021, Am

FEEDBACK

SurgicaL | United States          English ▼          Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

# Manage Orders    Learn more | Video tutorials

ASIN          B08NTP32WZ

Go back to order list

**0 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 15    Set Tab

From:    5/1/18    To:    6/11/21    Date Ra

No orders were found that match the given search criteria.

Help    Program Policies    English ▼                                              © 1999-2021, Am

FEEDBACK

**SurgicaL** | United States        English ▼        Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

## Manage Orders   Learn more | Video tutorials

ASIN        B08NTMTJXW

Go back to order list

**0 orders**  Custom Date Range

Ship-by date (ascending)    Results per page: 15    Set Tab

From:   5/1/18    To:   6/11/21    Date Ra

No orders were found that match the given search criteria.

Help    Program Policies    English ▼        © 1999-2021, Am

FEEDBACK

**SurgicaL** | United States    English ▼    Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

# Manage Orders   Learn more | Video tutorials

ASIN    B08NTM82LG

Go back to order list

Ship-by date (ascending)    Results per page: 15    Set Tab

**0 orders** Custom Date Range

From:    5/1/18    To:    6/11/21    Date Ra

No orders were found that match the given search criteria.

Help    Program Policies    English ▼

© 1999-2021, Am

FEEDBACK

SurgicaL | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

## Manage Orders  Learn more | Video tutorials

ASIN    B08NTLJYRT

**1 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 15    Set Tab

From:   5/1/18    To:   6/11/21    Date Ra

Go back to order list

| | Action on 0 selected: | Buy shipping | Print packing slip | Confirm shipment |

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **3 months ago** 2/24/2021 11:12 PM PST | 114-7446608-0732221 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | Byedog Santa Ornaments, Naughty Santa Christmas Tree Ornament, Stocking Cap Naked Santa for Christmas Decorations (C+D) ASIN: B08NTLJYRT SKU: B94h96yujkj8CD Quantity: 1 Item subtotal: $11.89 | **Standard** Ship by date: Feb 25, 2021 to Feb 26, 2021 Deliver by date: Mar 4, 2021 to Mar 10, 2021 | Shipped |

← Previous    **1**    Next →

Showing orders 1 - 1 of 1 total orders.

Help    Program Policies    English ▼

© 1999-2021, Am

FEEDBACK

**SurgicaL | United States**    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 114-7446608-0732221    Your Seller Order ID: # Edit

| Go back to order list |

Print packing slip | Refund Order | Request a Review

### Order summary

| Ship by: | **Thu, Feb 25, 2021 to Fri, Feb 26, 2021** | Shipping service: | Standard |
| Deliver by: | Thu, Mar 4, 2021 to Wed, Mar 10, 2021 | Fulfillment: | Seller |
| | | Sales channel: | Amazon.com 🇺🇸 |
| Purchase date: | Wed, Feb 24, 2021, 11:12 PM PST | | |

### Ship to

Noah
WILLS POINT, TX 75169-9329
United States

Address Type: **Commercial**

Contact Buyer:    John

### More details

Tax Collection Model: MarketplaceFacilitator        Tax Collection Responsible Party: **Amazon Services LLC**

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | **Byedog Santa Ornaments, Naughty Santa Christmas Tree Ornament, Stocking Cap Naked Santa for Christmas Decorations (C+D)** ASIN: **B08NTLJYRT** SKU: B94h96yujkj8CD | Condition: New Listing ID: 1118XUFGMKK Order Item ID: 68832612257690 | 1 | $11.89 | Item subtotal: Tax: Item total: | $11.89 $0.74 **$12.63** |

## Package 1

| Action on package 1 | Edit shipment | Print packing slip |

| **Ship date** | Fri, Feb 26, 2021 | | |
| **Carrier** | USPS | **Tracking ID** | 9200190289730302640416 |
| **Shipping service** | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | **Byedog Santa Ornaments, Naughty Santa Christmas Tree Ornament, Stocking Cap Naked Santa for Christmas Decorations (C+D)** ASIN: **B08NTLJYRT** SKU: B94h96yujkj8CD | Condition: New Listing ID: 1118XUFGMKK Order Item ID: 68832612257690 | 1 | Item subtotal: Tax: Item total: | $11.89 $0.74 **$12.63** |

---

Help    Program Policies    English ▼                                    © 1999-2021, Am

FEEDBACK

# Declaration of Yanfang Zeng

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

THE NAUGHTYS LLC           )
                                )
                 Plaintiff,    )
                                )
                 v.         )   Case No. 4:21-cv-00492
                                )
DOES 1-580                )   Judge Reed C. O'Connor
                                )
                Defendants.  )

**<u>Declaration of Yanfang Zeng</u>**

I, Yanfang Zeng, of the City of Shenzhen, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Amazon store: Hilyo, a.k.a. dingulasi (the "Store"). I have access and control of the Store. The Store is not associated or co-operated with any other defendants in this case.

3.  The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction.  The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, the Store sold 9 items of the accused products for $99.55, and only 1 item was shipped to Texas. Attached at **Exhibit A** is a complete sale record of the accused product. The Texas sale was shipped to WILLS POINT TX 75169-9329 and is believed to be a test purchase by the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 23, 2021 in Shenzhen, China.

<u>Yan fang Zeng</u>
Yanfang Zeng

Exhibit A

dingulasi | United States    English ▾    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

# Manage Orders   Learn more | Video tutorials

Product name    naughty santa

> Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in **Archived order report**

| Go back to order list | **9 orders** Custom Date Range |

Ship-by date (ascending)    Results per page: 50    Set Tab

From: 1/1/18    To: 6/1/21    Date Ra

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **7 months ago** 11/17/2020 4:32 PM PST | 113-7341651-7362615 Buyer name: Candice Fulfillment method: Seller Sales channel: Amazon.com | | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPV5BN5 SKU: Tang2020111731B Quantity: 1 Item subtotal: US$8.99 | **Standard** Ship by date: Nov 18, 2020 to Nov 19, 2020 Deliver by date: Dec 9, 2020 to Dec 31, 2020 | Shipped |
| ☐ **7 months ago** 11/17/2020 5:13 PM PST | 113-3813102-8506613 Buyer name: Ed Fulfillment method: Seller Sales channel: Amazon.com | | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPV5BN5 SKU: Tang2020111731B Quantity: 1 Item subtotal: US$8.99 | **Standard** Ship by date: Nov 18, 2020 to Nov 19, 2020 Deliver by date: Dec 9, 2020 to Dec 31, 2020 | Shipped |
| ☐ **7 months ago** 11/18/2020 10:23 AM PST | 113-9084321-8773024 Buyer name: Alexa Fulfillment method: Seller Sales channel: Amazon.com | | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPT5W42 SKU: Tang2020111731AB Quantity: 1 Item subtotal: US$5.75 | **Standard** Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Dec 10, 2020 to Jan 4, 2021 | Shipped |
| ☐ **7 months ago** 11/18/2020 11:28 AM PST | 114-0887267-0549811 Buyer name: Shannon Fulfillment method: Seller Sales channel: Amazon.com | | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPT5W42 SKU: Tang2020111731AB Quantity: 2 Item subtotal: US$5.75 | **Standard** Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Dec 10, 2020 to Jan 4, 2021 | Shipped |
| ☐ **6 months ago** 11/25/2020 3:28 PM PST | 113-3268838-5686618 Buyer name: Wendolynn Fulfillment method: Seller Sales channel: Amazon.com | | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPV5BN5 SKU: Tang2020111731B Quantity: 1 Item subtotal: US$9.99 | **Standard** Ship by date: Nov 27, 2020 to Nov 30, 2020 Deliver by date: Dec 17, 2020 to Jan 11, 2021 | Shipped |

FEEDBACK

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|
| ☐ | **6 months ago** 12/11/2020 8:45 PM PST | 113-7787035-1981826 Buyer name: NGHANGHIA Fulfillment method: Seller Sales channel: Amazon.com |  | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPV3SVY SKU: Tang2020111731CB Quantity: **2** Item subtotal: US$5.75 | **Standard** Ship by date: Dec 14, 2020 to Dec 15, 2020 Deliver by date: Jan 5, 2021 to Jan 27, 2021 | Shipped |
| ☐ | **6 months ago** 12/12/2020 10:12 AM PST | 114-1971541-8127423 Buyer name: haley Fulfillment method: Seller Sales channel: Amazon.com |  | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPT5W42 SKU: Tang2020111731AB Quantity: **1** Item subtotal: US$5.75 | **Standard** Ship by date: Dec 14, 2020 to Dec 15, 2020 Deliver by date: Jan 5, 2021 to Jan 27, 2021 | Shipped |
| ☐ | **6 months ago** 12/22/2020 8:30 AM PST | 113-2137884-8157003 Buyer name: Becky Fulfillment method: Seller Sales channel: Amazon.com |  | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPV5BN5 SKU: Tang2020111731B Quantity: **1** Item subtotal: US$9.99 | **Standard** Ship by date: Dec 23, 2020 to Dec 24, 2020 Deliver by date: Jan 14, 2021 to Feb 5, 2021 | Shipped |
| ☐ | **3 months ago** 2/24/2021 10:15 PM PST | 116-6384307-4033819 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen ASIN: B08NPT5W42 SKU: Tang2020111731AB Quantity: **1** Item subtotal: US$5.75 | **Standard** Ship by date: Feb 25, 2021 to Feb 26, 2021 Deliver by date: Mar 17, 2021 to Apr 7, 2021 | Shipped |

← Previous    | 1 |    Next →

Showing orders 1 - 9 of 9 total orders.

Help    Program Policies    English ▾                    © 1999-2021, Am

FEEDBACK

**dingulasi | United States**        English ▾        Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

---

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details    Order ID: # 114-6384307-4033819    Your Seller Order ID: # Edit

[ Go back to order list ]                    [ Print packing slip ]  [ Refund Order ]  [ Request a Review ]

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Thu, Feb 25, 2021 to Fri, Feb 26, 2021** | Shipping service: | Standard |
| Deliver by: | Wed, Mar 17, 2021 to Wed, Apr 7, 2021 | Fulfillment: | Seller |
| | | Sales channel: | Amazon.com 🇺🇸 |
| Purchase date: | Wed, Feb 24, 2021, 10:15 PM PST | | |

### Ship to

Russell
WILLS POINT, TX 75169-9329
United States

Address Type: **Commercial**

Contact Buyer:    **John**
See all 2 orders from this buyer

### More details

Tax Collection Model: **MarketplaceFacilitator**          Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | 🎅 | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen<br>ASIN: **B08NPT5W42**<br>SKU: Tang2020111731AB | Condition: New<br>Listing ID: 1117XPRXT43<br>Order Item ID: 38320914033674 | 1 | US$5.75 | Item subtotal:<br>Shipping total:<br>Tax:<br>Item total: | US$5.75<br>US$2.99<br>US$0.55<br>**US$9.29** |

## Package 1

| Action on package 1 | [ Edit shipment ]  [ Print packing slip ] |
|---|---|

| | | | |
|---|---|---|---|
| **Ship date** | Fri, Feb 26, 2021 | | |
| **Carrier** | Yun Express | **Tracking ID** | YT2105721266068631 |
| **Shipping service** | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| 🎅 | UpdateClassic Christmas Ornaments 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Hanging Christmas Tree Decoration Pen<br>ASIN: **B08NPT5W42**<br>SKU: Tang2020111731AB | Condition: New<br>Listing ID: 1117XPRXT43<br>Order Item ID: 38320914033674 | 1 | Item subtotal:<br>Shipping total:<br>Tax:<br>Item total: | US$5.75<br>US$2.99<br>US$0.55<br>**US$9.29** |

---

Help    Program Policies      English ▾                                   © 1999-2021, Am

# Declaration of Zhao Dan

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 4:21-cv-00492 |
| v. | ) | |
| | ) | Judge Reed C. O'Connor |
| | ) | |
| DOES 1-580 | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Declaration of Zhao Dan</u>**

I, Zhao Dan, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following Amazon stores: Shimigy, COL beans, milkcha (a/k/a Shangshancoco), PIKAqiu33, and cocounut (the "Stores"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3. The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction. The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, Shimigy made no sale to Texas, and COL beans, milkcha (a/k/a Shangshancoco), PIKAqiu33, and cocounut had 8 sales to Texas in total.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 23, 2021 in Shenzhen, China.

Zhao Dan

Zhao Dan

Exhibit A

**Shimigy | United States**     English ▾     Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services

# Manage Orders   Learn more | Video tutorials

ASIN    B08ML2Z48T

Go back to order list

**3 orders** Custom Date Range

| | |
|---|---|
| Ship-by date (ascending) | Results per page: 50 | Set Tab |
| From: 4/18/19   To: 6/11/21 | Date Ra |

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **7 months ago**<br>11/18/2020<br>6:30 AM PST | 111-3076849-4049822<br>Buyer name:<br>Pamela<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Shimigy Naughty Santa Christmas Ornament Stocking Cap Naked Santa Xmas Tree Pendant Decro<br>ASIN: B08ML2Z48T<br>SKU: CXXWHA201031082<br>Quantity: **2**<br>Item subtotal: $3.99 | **Standard**<br>Ship by date: Nov 19, 2020 to Nov 20, 2020<br>Deliver by date: Dec 10, 2020 to Jan 4, 2021 | Shipped |
| ☐ **6 months ago**<br>12/13/2020<br>9:38 PM PST | 111-4846067-8829849<br>Buyer name:<br>Tammy<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Shimigy Naughty Santa Christmas Ornament Stocking Cap Naked Santa Xmas Tree Pendant Decro<br>ASIN: B08ML2Z48T<br>SKU: CXXWHA201031082<br>Quantity: **1**<br>Item subtotal: $3.99 | **Standard**<br>Ship by date: Dec 14, 2020 to Dec 15, 2020<br>Deliver by date: Jan 5, 2021 to Jan 27, 2021 | Shipped |
| ☐ **5 months ago**<br>12/26/2020<br>9:57 AM PST | 111-2716005-2935406<br>Buyer name:<br>Debbie<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | Shimigy Naughty Santa Christmas Ornament Stocking Cap Naked Santa Xmas Tree Pendant Decro<br>ASIN: B08ML2Z48T<br>SKU: CXXWHA201031082<br>Quantity: **5**<br>Item subtotal: $3.99 | **Standard**<br>Ship by date: Dec 28, 2020 to Dec 29, 2020<br>Deliver by date: Jan 19, 2021 to Feb 9, 2021 | Shipped |

← Previous    1    Next →

Showing orders 1 - 3 of 3 total orders.

Help    Program Policies    English ▾      © 1999-2021, Am

FEEDBACK

COL beans | United States    English ▾    Search    Messages | Help | Settings

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

## Manage Orders   Learn more   Video tutorials

| Product name | Naughty Santa | Search |

Go back to order list

**8 orders** Custom Date Range

Ship-by date (ascending)    15    Set Table Preferences    Refresh

From: 11/20/19    To: 6/10/21    Custom Date Range

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| Order date | Order details | Image | Product name | Customer option | Order Status | Action |
|---|---|---|---|---|---|---|
| 7 months ago 11/16/2020 4:26 AM PST | 112-3942513-2346647 Buyer name: Tabitha Fulfillment method: Seller Sales channel: Amazon.com | | Christmas Decor DIY Hanging Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christ ASIN: B08ML313J3 SKU: cl110320 Quantity: 6 Item subtotal: $9.87 | Standard Ship by date: Nov 19, 2020 to Nov 20, 2020 Deliver by date: Nov 27, 2020 to Dec 3, 2020 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 7 months ago 11/20/2020 9:44 AM PST | 115-9794032-3259446 Buyer name: chris Fulfillment method: Seller Sales channel: Amazon.com | | Christmas Decor DIY Hanging Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christ ASIN: B08ML313J3 SKU: cl110320 Quantity: 1 Item subtotal: $9.87 | Standard Ship by date: Nov 25, 2020 to Nov 27, 2020 Deliver by date: Dec 3, 2020 to Dec 9, 2020 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 7 months ago 11/24/2020 5:31 PM PST | 115-5050103-9425066 Buyer name: EMMA Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christmas Tree Hang ASIN: B08MKRJTW7 SKU: cl110319B Quantity Shipped: 2 Item subtotal: $6.99  2020 Christmas Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christmas Tree Hang ASIN: B08MKTSD24 SKU: cl110319A Quantity Shipped: 2 Item subtotal: $6.99 | Expedited Ship by date: Nov 30, 2020 to Dec 1, 2020 Deliver by date: Dec 3, 2020 to Dec 8, 2020 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 6 months ago 11/28/2020 9:26 AM PST | 114-0810976-6731403 Buyer name: Amanda Fulfillment method: Seller Sales channel: Amazon.com | | Christmas Decor DIY Hanging Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christ ASIN: B08ML313J3 SKU: cl110320 Quantity: 1 Item subtotal: $9.87 | Standard Ship by date: Dec 2, 2020 to Dec 3, 2020 Deliver by date: Dec 9, 2020 to Dec 15, 2020 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 6 months ago 12/3/2020 2:30 PM PST | 115-0864804-4114645 Buyer name: Amanda Fulfillment method: Seller Sales channel: Amazon.com | | Christmas Decor DIY Hanging Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christ ASIN: B08ML313J3 SKU: cl110320 Quantity: 1 Item subtotal: $9.87 | Standard Ship by date: Dec 8, 2020 to Dec 9, 2020 Deliver by date: Dec 15, 2020 to Dec 21, 2020 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 6 months ago 12/5/2020 10:08 AM PST | 115-6832696-8213069 Buyer name: susan Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christmas Tree Hang ASIN: B08MKTSD24 SKU: cl110319A Quantity: 1 Item subtotal: $6.99 | Standard Ship by date: Dec 9, 2020 to Dec 10, 2020 Deliver by date: Dec 16, 2020 to Dec 22, 2020 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 5 months ago 1/6/2021 5:29 PM PST | 112-3368138-1621833 Buyer name: darcykennedy Fulfillment method: Seller Sales channel: Amazon.com | | Christmas Decor DIY Hanging Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christ ASIN: B08ML313J3 SKU: cl110320 Quantity: 1 Item subtotal: $9.87 | Standard Ship by date: Jan 11, 2021 to Jan 12, 2021 Deliver by date: Jan 19, 2021 to Jan 25, 2021 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |
| 3 months ago 2/24/2021 6:58 PM PST | 115-7042052-6499437 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | 2020 Christmas Ornaments, Classic Elements Design, Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Funny Christmas Tree Hang ASIN: B08MKTSD24 SKU: cl110319A Quantity: 1 Item subtotal: $7.30 | Standard Ship by date: Mar 1, 2021 to Mar 2, 2021 Deliver by date: Mar 8, 2021 to Mar 12, 2021 | Shipped | Edit shipment Print packing slip Refund Order More information ▾ |

← Previous    1    Next →

Showing orders 1 – 8 of 8 total orders.

Results per page: 15

Help    Program Policies    English ▾

© 1999-2021, Amazon, Inc. or its affiliates

FEEDBACK

shangshancoco | United States          English ▾          Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B

# Manage Orders   Learn more   Video tutorials

| | ASIN | B08MKJYMVW |
|---|---|---|

**12 orders**  Custom Date Range

| | Order date (descending) | Results per page: 15 | Set Tab |
|---|---|---|---|

From:  3/1/20    To:  6/1/21    Date Ra

Action on 0 selected:   [Buy shipping]   [Print packing slip]   [Confirm shipment]

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ 3 months ago<br>2/24/2021<br>7:24 PM PST | 113-1455187-6996222<br>Buyer name:<br>John<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor<br>ASIN: B08MKJYMVW<br>SKU: MILKCHAWHA201031082<br>Quantity: **1**<br>Item subtotal: $0.01 | Standard<br>Ship by date: Feb 25, 2021 to Feb 26, 2021<br>Deliver by date: Mar 17, 2021 to Apr 7, 2021 | Shipped |
| ☐ 4 months ago<br>2/5/2021<br>6:57 AM PST | 111-9533370-0721841<br>Buyer name:<br>Pam<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor<br>ASIN: B08MKJYMVW<br>SKU: MILKCHAWHA201031082<br>Quantity: **1**<br>Item subtotal: $0.01 | Standard<br>Ship by date: Feb 8, 2021 to Feb 9, 2021<br>Deliver by date: Mar 1, 2021 to Mar 22, 2021 | Shipped |
| ☐ 6 months ago<br>12/16/2020<br>8:39 PM PST | 111-9902956-5165849<br>Buyer name:<br>Jeannette<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor<br>ASIN: B08MKJYMVW<br>SKU: MILKCHAWHA201031082<br>Quantity: **1**<br>Item subtotal: $0.01 | Standard<br>Ship by date: Dec 17, 2020 to Dec 18, 2020<br>Deliver by date: Jan 8, 2021 to Feb 1, 2021 | Shipped |
| ☐ 6 months ago<br>12/14/2020<br>7:58 AM PST | 112-9007817-6500220<br>Buyer name:<br>kathy<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor<br>ASIN: B08MKJYMVW<br>SKU: MILKCHAWHA201031082<br>Quantity: **1**<br>Item subtotal: $0.01 | Standard<br>Ship by date: Dec 15, 2020 to Dec 16, 2020<br>Deliver by date: Jan 6, 2021 to Jan 28, 2021 | Shipped |
| ☐ 6 months ago<br>12/12/2020<br>6:19 AM PST | 113-3902077-3256242<br>Buyer name:<br>Dan<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor<br>ASIN: B08MKJYMVW<br>SKU: MILKCHAWHA201031082<br>Quantity: **1**<br>Item subtotal: $0.01 | Standard<br>Ship by date: Dec 14, 2020 to Dec 15, 2020<br>Deliver by date: Jan 5, 2021 to Jan 27, 2021 | Shipped |
| ☐ 6 months ago<br>12/4/2020<br>5:38 PM PST | 114-0901374-8688230<br>Buyer name:<br>Sheri<br>Fulfillment method: Seller<br>Sales channel: Amazon.com | | milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor<br>ASIN: B08MKJYMVW<br>SKU: MILKCHAWHA201031082<br>Quantity: **1**<br>Item subtotal: $0.01 | Standard<br>Ship by date: Dec 7, 2020 to Dec 8, 2020<br>Deliver by date: Dec 28, 2020 to Jan 20, 2021 | Shipped |

[FEEDBACK]

| | Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|---|

☐ **6 months ago**
11/27/2020
6:28 PM PST

111-2542535-9809829
Fulfillment method: Seller
Sales channel: Amazon.com



milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor
ASIN: B08MKJYMVW
SKU: MILKCHAWHA201031082
Item subtotal: $0.01

Canceled

---

☐ **7 months ago**
11/22/2020
10:27 AM PST

113-9662103-6762604
Buyer name:
Eric
Fulfillment method: Seller
Sales channel: Amazon.com



milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor
ASIN: B08MKJYMVW
SKU: MILKCHAWHA201031082
Quantity Shipped: 1
Item subtotal: $0.01

**Standard**
Ship by date: Nov 23, 2020 to Nov 24, 2020
Deliver by date: Dec 14, 2020 to Jan 6, 2021

Shipped



milkcha Christmas Ornaments 2020,Personalized Survived Family of Ornament 2020 Christmas Holiday Decorations Hallmark Christmas Ornaments 2020
ASIN: B08L9F4B1
SKU: MILKCHALIP200925002
Quantity Shipped: 1
Item subtotal: $0.01

---

☐ **7 months ago**
11/22/2020
9:59 AM PST

114-0143593-5277803
Buyer name:
kim
Fulfillment method: Seller
Sales channel: Amazon.com

milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor
ASIN: B08MKJYMVW
SKU: MILKCHAWHA201031082
Quantity: 1
Item subtotal: $0.01

**Standard**
Ship by date: Nov 23, 2020 to Nov 24, 2020
Deliver by date: Dec 14, 2020 to Jan 6, 2021

Shipped

---

☐ **7 months ago**
11/21/2020
7:33 PM PST

113-7255475-2837852
Buyer name:
JASON
Fulfillment method: Seller
Sales channel: Amazon.com

milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor
ASIN: B08MKJYMVW
SKU: MILKCHAWHA201031082
Quantity: 1
Item subtotal: $0.01

**Expedited**
Ship by date: Nov 23, 2020 to Nov 24, 2020
Deliver by date: Nov 27, 2020 to Dec 2, 2020

Shipped

---

☐ **7 months ago**
11/20/2020
8:56 AM PST

111-3112431-2142618
Buyer name:
craig
Fulfillment method: Seller
Sales channel: Amazon.com

milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor
ASIN: B08MKJYMVW
SKU: MILKCHAWHA201031082
Quantity: 1
Item subtotal: $0.01

**Standard**
Ship by date: Nov 23, 2020 to Nov 24, 2020
Deliver by date: Dec 14, 2020 to Jan 6, 2021

Shipped

---

☐ **7 months ago**
11/15/2020
4:00 PM PST

111-7368603-3317047
Buyer name:
Sara
Fulfillment method: Seller
Sales channel: Amazon.com

milkcha New Year Decorations,Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,for Desk Decor
ASIN: B08MKJYMVW
SKU: MILKCHAWHA201031082
Quantity: 1
Item subtotal: $0.01

**Standard**
Ship by date: Nov 16, 2020 to Nov 17, 2020
Deliver by date: Dec 7, 2020 to Dec 29, 2020

Shipped

---

← Previous   | 1 |   Next →

Showing orders 1 - 12 of 12 total orders.

---

Help     Program Policies     English ▼          © 1999-2021, Am



We're building a better Seller Central. Experience it for yourself.   **Use new navigation**

cocomut | United States          English          Search 🔍    Messages | Help | Settings

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B

## Manage Orders   Learn more | Video tutorials

ASIN    B08MBW2ZZQ    **Search**

⚠ Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in Archived order report

Go back to order list

**1 orders** Custom Date Range

Ship-by date (ascending)   Results per page: 15   Set Table Preferences   Refresh

From: 6/1/19    To: 6/10/21    Date Range: Custom Date Range



| | Order date | Order details | Image | Product name | Customer option | Order Status | Action |
|---|---|---|---|---|---|---|---|
| Action on 0 selected: | Buy shipping | Print packing slip | Confirm shipment | | | | |
| ☐ | **3 months ago** 2/24/2021 8:20 PM PST | 113-2293617-4186607 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa,2020 Santa Ornaments Tree Santa On The Throne Christmas Ornaments (A) ASIN: **B08MBW2ZZQ** SKU: WHA201031081A Quantity: 1 Item subtotal: US$8.99 | **Standard** Ship by date: Mar 4, 2021 to Mar 10, 2021 Deliver by date: Mar 24, 2021 to Apr 19, 2021 | **Shipped** | Edit shipment Print packing slip Refund Order More information ⌄ |

← Previous    **1**    Next →

Showing orders 1 - 1 of 1 total orders.

Results per page: 15

Help    Program Policies    English

© 1999-2021, Amazon.com, Inc. or its affiliates

FEEDBACK

# Declaration of Tan Long

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

THE NAUGHTYS LLC                )
                                )
                Plaintiff,      )
                                )
                                )   Case No. 4:21-cv-00492
                v.              )
                                )   Judge Reed C. O'Connor
                                )
DOES 1-580                      )
                                )
                Defendants.     )

**<u>Declaration of Tan Long</u>**

I, Tan Long, of the City of Shenzhen, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Amazon store: ZEFOTIM Big Promotion!!! (the "Store"). I have access and control of the Store. The Store is not associated or co-operated with any other defendants in this case.

3.  The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction.  The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4.  After a diligent search of sale record and to the best of my knowledge, the Store sold 6 items of the accused products for $110.75, and none of the sales were made to Texas. Attached at **Exhibit A** is a complete sale record of the accused product.

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 24, 2021 in Shenzhen, China.

Tan Long
Tan Long

# Exhibit A

ZEFOTIM | United States     English  ▼   Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B    Brands

## Manage Orders   Learn more   Video tutorials

| Product name | naughty santa |
|---|---|

Your search date range starts from an archived date. For orders were placed before 1/1/2016, you can find them in Archived order report

Go back to order list

**6 orders** Custom Date Range

Ship-by date (ascending)    Results per page: 100    Set Tab

From: **8/25/18**    To: **6/11/21**    Date Ra

Action on 0 selected:    Buy shipping    Print packing slip    Confirm shipment

| Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| 6 months ago 12/9/2020 1:58 PM PST | 112-2894149-0735458 Buyer name: Denae Fulfillment method: Seller Sales channel: Amazon.com | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 Quantity: 1 Item subtotal: $19.96 | Standard Ship by date: Dec 10, 2020 to Dec 11, 2020 Deliver by date: Dec 16, 2020 to Dec 23, 2020 | Shipped |
| 6 months ago 12/12/2020 8:53 AM PST | 112-3013207-1638656 Buyer name: Alison Fulfillment method: Seller Sales channel: Amazon.com | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 Quantity: 1 Item subtotal: $19.96 | Standard Ship by date: Dec 14, 2020 to Dec 15, 2020 Deliver by date: Dec 18, 2020 to Dec 28, 2020 | Shipped |
| 5 months ago 12/25/2020 2:35 PM PST | 114-9036214-4773819 Buyer name: Erik Fulfillment method: Seller Sales channel: Amazon.com | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 Quantity: 1 Item subtotal: $19.96 | Standard Ship by date: Dec 28, 2020 to Dec 29, 2020 Deliver by date: Jan 4, 2021 to Jan 11, 2021 | Shipped |
| 5 months ago 12/26/2020 3:27 PM PST | 114-3400951-9217021 Buyer name: Patrick Fulfillment method: Seller Sales channel: Amazon.com | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC83F1V SKU: cqlWHA201102083 Quantity: 1 Item subtotal: $8.73 | Standard Ship by date: Dec 28, 2020 to Dec 29, 2020 Deliver by date: Jan 4, 2021 to Jan 11, 2021 | Shipped |
| 5 months ago 12/28/2020 8:22 AM PST | 111-8097170-4686641 Buyer name: carmen Fulfillment method: Seller Sales channel: Amazon.com | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 Quantity: 1 Item subtotal: $19.96 | Standard Ship by date: Dec 29, 2020 to Dec 30, 2020 Deliver by date: Jan 5, 2021 to Jan 12, 2021 | Shipped |
| 5 months ago 1/3/2021 12:25 AM PST | 114-9653667-7153066 Buyer name: Mary Fulfillment method: Seller Sales channel: Amazon.com | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 Quantity: 1 Item subtotal: $19.96 | Standard Ship by date: Jan 4, 2021 to Jan 5, 2021 Deliver by date: Jan 8, 2021 to Jan 15, 2021 | Shipped Refund applied (1) |

ZEFOTIM | United States     English   ▾    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B    Brands

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**



## Order details   Order ID: # 114-3400951-9217021    Your Seller Order ID: # Edit

Go back to order list

Print packing slip    Refund Order    Request a Review

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | Mon, Dec 28, 2020 to Tue, Dec 29, 2020 | Shipping service: | Standard |
| Deliver by: | Mon, Jan 4, 2021 to Mon, Jan 11, 2021 | Fulfillment: | Seller |
| | | Sales channel: | Amazon.com 🇺🇸 |
| Purchase date: | Sat, Dec 26, 2020, 3:27 PM PST | | |

### Ship to

Heather      Contact Buyer:   Patrick
WATERLOO, NE 68069-2060
United States
Address Type: Residential

### More details

Tax Collection Model: MarketplaceFacilitator      Tax Collection Responsible Party: Amazon Services LLC

### Order contents

| Status | Image | Product name | More information | | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|---|
| Shipped | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant<br>ASIN: B08PC83F1V<br>SKU: cqlWHA201102083 | Condition: New<br>Listing ID: 1206X1PYX7F<br>Order Item ID: 26047749700154 | | 1 | $8.73 | Item subtotal:<br>Tax:<br>Item total: | $8.73<br>$0.65<br>$9.38 |

### Package 1



Action on package 1     Edit shipment    Print packing slip

| | | | |
|---|---|---|---|
| Ship date | Tue, Dec 29, 2020 | | |
| Carrier | Yun Express | Tracking ID | YT2036221216004736 |
| Shipping service | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant<br>ASIN: B08PC83F1V<br>SKU: cqlWHA201102083 | Condition: New<br>Listing ID: 1206X1PYX7F<br>Order Item ID: 26047749700154 | 1 | Item subtotal:<br>Tax:<br>Item total: | $8.73<br>$0.65<br>$9.38 |

Help    Program Policies    English ▾

© 1999-2021, Am

ZEFOTIM | United States          English  ▼          Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B   Brands

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 114-9036214-4773819   Your Seller Order ID: # Edit

[ Go back to order list ]          Print packing slip    Refund Order    Request a Review

### Order summary

| | | | | | |
|---|---|---|---|---|---|
| Ship by: | **Mon, Dec 28, 2020 to Tue, Dec 29, 2020** | Shipping service: | Standard | **Ship to** | |
| Deliver by: | Mon, Jan 4, 2021 to Mon, Jan 11, 2021 | Fulfillment: | Seller | Erik | |
| | | Sales channel: | Amazon.com 🇺🇸 | Penn, PA 15675-1103 | Contact Buyer: |
| Purchase date: | Fri, Dec 25, 2020, 2:35 PM PST | | | United States | Erik |
| | | | | Address Type: Residential | |

### More details

Tax Collection Model:  MarketplaceFacilitator      Tax Collection Responsible Party:  Amazon Services LLC

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped |  | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant<br>ASIN: B08PCBQFH9<br>SKU: cqlWHA201107084 | Condition: New<br>Listing ID: 1206X1PWNHM<br>Order Item ID: 32818637062362 | 1 | $19.96 | Item subtotal: | $19.96 |
| | | | | | | Tax: | $1.20 |
| | | | | | | **Item total:** | **$21.16** |

## Package 1

Action on package 1          Edit shipment    Print packing slip

| | | | |
|---|---|---|---|
| Ship date | Tue, Dec 29, 2020 | | |
| Carrier | Yun Express | Tracking ID | YT2036121216002572 |
| Shipping service | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant<br>ASIN: B08PCBQFH9<br>SKU: cqlWHA201107084 | Condition: New<br>Listing ID: 1206X1PWNHM<br>Order Item ID: 32818637062362 | 1 | Item subtotal: | $19.96 |
| | | | | Tax: | $1.20 |
| | | | | **Item total:** | **$21.16** |

Help    Program Policies      English  ▼

© 1999-2021, Am

ZEFOTIM | United States        English ▼        Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B   Brands

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 111-8097170-4686641   Your Seller Order ID: # Edit

Go back to order list        Print packing slip   Refund Order   Request a Review

### Order summary

| | | **Ship to** |
|---|---|---|
| Ship by: | **Tue, Dec 29, 2020 to Wed, Dec 30, 2020** | Joshua |
| Deliver by: | Tue, Jan 5, 2021 to Tue, Jan 12, 2021 | WOODSTOCK, GA 30188-2263 |
| Purchase date: | Mon, Dec 28, 2020, 8:22 AM PST | United States |

Shipping service:  Standard
Fulfillment:  Seller
Sales channel:  Amazon.com

Contact Buyer:  carmen

Address Type:  Residential

### More details

Tax Collection Model:  MarketplaceFacilitator        Tax Collection Responsible Party:  Amazon Services LLC

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 26753867184722 | 1 | $19.96 | Item subtotal: | $19.96 |
| | | | | | | Tax: | $1.20 |
| | | | | | | Item total: | $21.16 |

## Package 1

Action on package 1        Edit shipment   Print packing slip

| | | | |
|---|---|---|---|
| Ship date | Wed, Dec 30, 2020 | | |
| Carrier | Yun Express | Tracking ID | YT2036421216002267 |
| Shipping service | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 26753867184722 | 1 | Item subtotal: | $19.96 |
| | | | | Tax: | $1.20 |
| | | | | Item total: | $21.16 |

Help      Program Policies      English ▼        © 1999-2021, Ar

ZEFOTIM | United States          English    ▼        Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B    Brands

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

# Order details  Order ID: # 114-9653667-7153066    Your Seller Order ID: # Edit

Go back to order list

Print packing slip    Refund Order    Request a Review

## Order summary

| | | | | | | |
|---|---|---|---|---|---|---|
| Ship by: | Mon, Jan 4, 2021 to Tue, Jan 5, 2021 | Shipping service: | Standard | **Ship to** | | |
| Deliver by: | Fri, Jan 8, 2021 to Fri, Jan 15, 2021 | Fulfillment: | Seller | Mary | Contact Buyer: | Mary |
| Purchase date: | Sun, Jan 3, 2021, 12:25 AM PST | Sales channel: | Amazon.com 🇺🇸 | CASS LAKE, MN 56633-3152 United States | | |
| | | | | Address Type:  Residential | | |

## More details

Tax Collection Model: MarketplaceFacilitator      Tax Collection Responsible Party:  Amazon Services LLC

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 55478770318602 | 1 | $19.96 | Item subtotal: Tax: Refund: | $19.96 $1.47 -$21.43 |

## Package 1

Action on package 1       Edit shipment    Print packing slip

| | | | | |
|---|---|---|---|---|
| Ship date | Tue, Jan 5, 2021 | | | |
| Carrier | Yun Express | Tracking ID | YT2100421216006264 | |
| Shipping service | Air Mail | | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 55478770318602 | 1 | Item subtotal: Tax: Refund: | $19.96 $1.47 -$21.43 |

Help    Program Policies    English    ▼

© 1999-2021, Am



ZEFOTIM | United States          English   ▼   Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services   B2B   Brands

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details   Order ID: # 112-3013207-1638656          Your Seller Order ID: # Edit

Go back to order list                                    Print packing slip | Refund Order | Request a Review

### Order summary

| | | | | **Ship to** |
|---|---|---|---|---|
| Ship by: | Mon, Dec 14, 2020 to Tue, Dec 15, 2020 | Shipping service: | Standard | Francis |
| Deliver by: | Fri, Dec 18, 2020 to Mon, Dec 28, 2020 | Fulfillment: | Seller | Westerly, RI 02891 |
| | | Sales channel: | Amazon.com 🇺🇸 | United States |
| Purchase date: | Sat, Dec 12, 2020, 8:53 AM PST | | | Address Type: Residential |

Contact Buyer:  Alison

### More details

Tax Collection Model: MarketplaceFacilitator          Tax Collection Responsible Party:  Amazon Services LLC

### Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 07449015194082 | 1 | $19.96 | Item subtotal: Tax: **Item total:** | $19.96 $1.40 **$21.36** |

## Package 1

Action on package 1     Edit shipment | Print packing slip



| | | | |
|---|---|---|---|
| Ship date | Tue, Dec 15, 2020 | | |
| Carrier | Yun Express | **Tracking ID** | YT2034821216005906 |
| Shipping service | Air Mail | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 07449015194082 | 1 | Item subtotal: Tax: **Item total:** | $19.96 $1.40 **$21.36** |

Help   Program Policies          English   ▼                                        © 1999-2021, Am

ZEFOTIM | United States

English ▾        Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services    B2B    Brands

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

# Order details  Order ID: # 112-2894149-0735458    Your Seller Order ID: # Edit

[ Go back to order list ]

Print packing slip    Refund Order    Request a Review

## Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Thu, Dec 10, 2020 to Fri, Dec 11, 2020** | Shipping service: | Standard |
| Deliver by: | **Wed, Dec 16, 2020 to Wed, Dec 23, 2020** | Fulfillment: | Seller |
| | | Sales channel: | Amazon.com 🇺🇸 |
| Purchase date: | Wed, Dec 9, 2020, 1:58 PM PST | | |

## Ship to

Denae
REXBURG, ID 83440-4251
United States
Address Type:  Commercial

Contact Buyer:    Denae

## More details

Tax Collection Model:  MarketplaceFacilitator

Tax Collection Responsible Party:  Amazon Services LLC

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped | | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 23210285053650 | 1 | $19.96 | Item subtotal: Tax: Item total: | $19.96 $1.20 $21.16 |

## Package 1

Action on package 1        Edit shipment    Print packing slip

| | | | | |
|---|---|---|---|---|
| Ship date | Fri, Dec 11, 2020 | | | |
| Carrier | Yun Express | Tracking ID | YT2034521216008215 | |
| Shipping service | Air Mail | | | |

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | BATKKM 2020 Naughty Santa Christmas Ornament Stocking Cap Santa Ornament Naked Santa, Christmas Tree Decoration Pendant ASIN: B08PC8QFH9 SKU: cqlWHA201107084 | Condition: New Listing ID: 1206X1PWNHM Order Item ID: 23210285053650 | 1 | Item subtotal: Tax: Item total: | $19.96 $1.20 $21.16 |

Help    Program Policies    English ▾

© 1999-2021, Am

# Declaration of Jiang Weijun

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

THE NAUGHTYS LLC        )
                                      )

                 Plaintiff,     )

                                     )

                 v.          )   Case No. 4:21-cv-00492

DOES 1-580              )

                                     )   Judge Reed C. O'Connor

               Defendants.   )

                                     )

### Declaration of Jiang Weijun

I, Jiang Weijun, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following Amazon store: GREFER (the "Store"). I have access and control of the Store. The Store is not associated or co-operated with any other defendants in this case.

3. The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction. The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Store sold 1 items of the accused products for $3.99, and the sale was to Texas. Attached in **Exhibit A** is a complete sale record of the accused product. The Texas sale was shipped to WILLS POINT TX 75169-9329 and is believed to be a test purchase by the plaintiff investigator.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

Executed this June 23, 2021 in Shenzhen, China.

（signature）
Jiang Weijun

Exhibit A

GREFER | United States    English ▼    Search

Catalog    Inventory    Pricing    Orders    Advertising    Stores    Growth    Reports    Performance    Apps & Services

**MSS currently does not support multi-package shipping for certain areas. You can use Ship Confirmation to ship out multiple packages for single order.**

## Order details    Order ID: # 114-9554756-0120264    Your Seller Order ID: # Edit

| Go back to order list |

Print packing slip    Refund Order    Request a Review

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | **Fri, Feb 26, 2021 to Mon, Mar 1, 2021** | Shipping service: | Standard |
| Deliver by: | Thu, Mar 18, 2021 to Thu, Apr 8, 2021 | Fulfillment: | Seller |
| Purchase date: | Thu, Feb 25, 2021, 12:03 AM PST | Sales channel: | Amazon.com 🇺🇸 |

### Ship to

John
WILLS POINT, TX 75169-9329
United States

Contact Buyer:    John

Address Type: **Commercial**

### More details

Tax Collection Model: MarketplaceFacilitator        Tax Collection Responsible Party: **Amazon Services LLC**

## Order contents

| Status | Image | Product name | More information | Quantity | Unit price | Proceeds | |
|---|---|---|---|---|---|---|---|
| Shipped |  | Christmas Decorations Naughty Santa Ornaments Stocking Cap Naked Santa Christmas Tree Pendant Xmas Decoration-1/2 Pack<br>ASIN: **B08NPYY8WV**<br>SKU: USJWJWHA201031081B | Condition: New<br>Listing ID: 1117XPJNGAZ<br>Order Item ID: 28976871959026 | 1 | $3.99 | Item subtotal:<br>Shipping total:<br>Tax:<br>Item total: | $3.99<br>$3.99<br>$0.50<br>**$8.48** |

## Package 1

| Action on package 1 | Edit shipment | Print packing slip |
|---|---|---|

| | |
|---|---|
| **Ship date** | Mon, Mar 1, 2021 |
| **Carrier** | Other |
| **Shipping service** | Air Mail |

**Tracking ID**    HHWKO1056000475YQ

| Image | Product name | More information | Quantity | Proceeds | |
|---|---|---|---|---|---|
| | Christmas Decorations Naughty Santa Ornaments Stocking Cap Naked Santa Christmas Tree Pendant Xmas Decoration-1/2 Pack<br>ASIN: **B08NPYY8WV**<br>SKU: USJWJWHA201031081B | Condition: New<br>Listing ID: 1117XPJNGAZ<br>Order Item ID: 28976871959026 | 1 | Item subtotal:<br>Shipping total:<br>Tax:<br>Item total: | $3.99<br>$3.99<br>$0.50<br>**$8.48** |

Help    Program Policies    English ▼    © 1999-2021, Am

FEEDBACK

Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 124 of 236   PageID 12331



GREFER | United States          English ▼      Search

Catalog   Inventory   Pricing   Orders   Advertising   Stores   Growth   Reports   Performance   Apps & Services

# Manage Orders   Learn more | Video tutorials

ASIN          B08NPYY8WV

Go back to order list

**1 orders** Custom Date Range

Ship-by date (ascending)      Results per page: 15      Set Tab

From:   1/1/20      To:   6/10/21      Date Ra

| | | | | | |
|---|---|---|---|---|---|
| Action on 0 selected: | Buy shipping | Print packing slip | Confirm shipment | | |

| ☐ Order date | Order details | Image | Product name | Customer option | Order Status |
|---|---|---|---|---|---|
| ☐ **3 months ago** 2/25/2021 12:03 AM PST | 114-9554756-0120264 Buyer name: John Fulfillment method: Seller Sales channel: Amazon.com | | Christmas Decorations Naughty Santa Ornaments Stocking Cap Naked Santa Christmas Tree Pendant Xmas Decoration-1/2 Pack ASIN: **B08NPYY8WV** SKU: USJWJWHA201031081B Quantity: **1** Item subtotal: $3.99 | **Standard** Ship by date: Feb 26, 2021 to Mar 1, 2021 Deliver by date: Mar 18, 2021 to Apr 8, 2021 | Shipped |

← Previous    **1**    Next →

Showing orders 1 - 1 of 1 total orders.

Help    Program Policies        English ▼                                    © 1999-2021, Am

FEEDBACK

# Declaration of Donge Jia

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

THE NAUGHTYS LLC )
)
        Plaintiff, )
)
        v. )   Case No. 4:21-cv-00492
)
DOES 1-580 )   Judge Reed C. O'Connor
)
        Defendants. )

**Declaration of Donge Jia**

I, Donge Jia, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following eBay stores: Atlanta1816, CincinatiStore, globalfashion2010, wishmart2014, bodhi1998, hongyinlon0, eridu905, eriophoroidesxx, rockfoilcrabbh, SZbhkei12, Yupaxxs, and Nannouth (the "Store"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3. The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Stores sold 0 items of the accused products for $0. The Stores made 0 sale of the accused products to the U.S. or the State of Texas.

5. The Stores are non-U.S. eBay stores that were set up to serve markets in foreign countries.

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 23, 2021 in Shenzhen, China.

*Donge Jia*
Donge Jia

# Declaration of Fan Yang

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

THE NAUGHTYS LLC )
)
Plaintiff, )
)
v. ) Case No. 4:21-cv-00492
)
DOES 1-580 ) Judge Reed C. O'Connor
)
Defendants. )
)

**<u>Declaration of Fan Yang</u>**

I, Fan Yang, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following eBay stores: AtlantaMart2005, xxzfalcon849, and e1xytrep (the "Store"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3. The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction. The Stores never advertised, held telephone listing, or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Stores sold 14 items of the accused products for 115.6AUD and 11.84GBP, and none of the sales were made to the U.S. or State of Texas.

1

5. The Stores were non-U.S. eBay store that were set up to serve markets in foreign countries.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this June 23, 2021 in Shenzhen, China.

Fan Yang

Fan Yang

# Declaration of Xiaofeng Cheng

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 4:21-cv-00492 |
| v. | ) | |
| | ) | Judge Reed C. O'Connor |
| | ) | |
| DOES 1-580 | ) | |
| | ) | |
| Defendants. | ) | |

## <u>Declaration of Xiaofeng Cheng</u>

I, Xiaofeng Cheng, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following eBay stores: bigbigshow2012, KansasDeal, GreatSpringfield, watch_deal, gilroy2012, hotdeal320, yishengmall2014, Denver0806, hutrsate51, and ppktjfa8612 (the "Store"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3. The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing,

1

or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Stores sold 0 items of the accused products for $0, and made no sale to the U.S. or the State of Texas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 28, 2021 in Shenzhen, China.


Xiaofeng Cheng
Xiaofeng Cheng

# Declaration of Xiaochao Liu

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 4:21-cv-00492 |
| v. | ) | |
| | ) | Judge Reed C. O'Connor |
| | ) | |
| DOES 1-580 | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Declaration of Xiaochao Liu</u>**

I, Xiaochao Liu, of the City of Shenzhen, China, declare as follows:

1. I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am a manager supervising the operations of the following eBay store: easyshopping66 (the "Store"). I have access and control of the Store. The Store is not associated or co-operated with any other defendants in this case.

3. The Store solely operates at address in China and sends and receives mail from such address. The Store has never owned, leased, or utilized an office in Illinois. The Store has never been liable to the Illinois tax jurisdiction.  The Store never advertised, held telephone listing, or maintained bank account in Illinois, and has no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Store sold 2 items of the accused products for $11.81, and none of the sales were made to Texas.

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 23, 2021 in Shenzhen, China.

Xiaochao Liu

# Declaration of Yingli Li

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 4:21-cv-00492 |
| v. | ) | |
| | ) | Judge Reed C. O'Connor |
| | ) | |
| DOES 1-580 | ) | |
| | ) | |
| Defendants. | ) | |

## Declaration of Yingli Li

I, Yingli Li, of the City of Shenzhen, China, declare as follows:

1.  I am over eighteen (18) years of age.  I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.  I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am a manager supervising the operations of the following Wish stores: yingli520, yangsuiqwe, aishengheji, LiusaIuy, Bakheng, Bismarck, adriaticgo, ashur80, and montgomery (the "Stores"). I have access and control of the Stores. The Stores are not associated or co-operated with any other defendants in this case.

3.  The Stores solely operate at address in China and send and receive mail from such address. The Stores have never owned, leased, or utilized an office in Illinois. The Stores have never been liable to the Illinois tax jurisdiction.  The Stores never advertised, held telephone listing,

1

or maintained bank account in Illinois, and have no agents, employees, or contractors in Illinois.

4. After a diligent search of sale record and to the best of my knowledge, the Stores sold 0 items of the accused products for $0, and no item was shipped the State of Texas. Attached in Exhibit A is a complete sale record of the accused product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this June 28, 2021 in Shenzhen, China.

Yingli Li

Yingli Li

Exhibit A



















# Exhibit 1

| Def. No. | Store Name | Declarant | City (China) | Total Sales | Total Sale revenue | Texas sales | Notes |
|---|---|---|---|---|---|---|---|
| 250 | xatos | Xie Tong | Anhui Huainan | 2 | $ 10.96 | 1 | Purchase made by Plaintiff investigator |
| 248 | YHCWJZP | Wu Shuqi | Shenzhen | 3 | $ 22.11 | 1 | Purchase made by Plaintiff investigator |
| 201 | Clearance&100%quality,NyaKLI | Yali Niu | Luoyang | 4 | $ 39.96 | 2 | Purchase made by Plaintiff investigator + 1 sale |
| 225 | Fhci-HR | | | 12 | $ 82.81 | 2 | Purchase made by Plaintiff investigator + 1 sale |
| 355 | who-canside 😎 90% Discount Fast Delivery😎 | | | 22 | $ 175.56 | 1 | Purchase made by Plaintiff investigator |
| 218 | GJK-SION | | | 6 | $ 83.94 | 1 | 1 sale |
| 244 | douk-Quite | | | 1 | $ 14.88 | 1 | 1 sale |
| 313 | much MUCHYOU 㲍 90% Discount Cyber Monday㲍Direct | | | 4 | $ 50.00 | 1 | Purchase made by Plaintiff investigator |
| 226 | Vdaye | | | 1 | $ 5.30 | 1 | Purchase made by Plaintiff investigator |
| 348 | OFMWBN | | | 1 | $ 9.99 | 0 | |
| 335 | ZEFOTIM Big Promotion!!! | Tan Long | Shenzhen | 6 | $ 110.75 | 0 | Evidence shows no offer for sale to TX. |
| 238 | Chenjbo (Halloween clearance&Christm as clearance ) | Luo Ningbo | Shenzhen | 2 | $ 10.74 | 1 | Purchase made by Plaintiff investigator |
| 221 | Mariee | | | 1 | $ 12.69 | 1 | Purchase made by Plaintiff investigator |
| 189 | Shan-s | | | 3 | $ 54.38 | 1 | Purchase made by Plaintiff investigator |
| 206 | Debouor | Wu Rong | Shenzhen | 29 | $ 329.70 | 1 | Purchase made by Plaintiff investigator |
| 249 | S5E5X | | | 6 | $ 46.18 | 1 | Purchase made by Plaintiff investigator |
| 302 | Shimigy | Zhao Dan | Shenzhen | 8 | $ 95.11 | 0 | Evidence only has shown offer to sell to IL in this store |
| 220 | COL beans | | | 16 | $ 263.87 | 1 | Purchase made by Plaintiff investigator |
| 232 | milkcha | | | 12 | $ 142.79 | 1 | Purchase made by Plaintiff investigator |
| 342 | PIKAqiu33 | | | 45 | $ 422.06 | 5 | Purchase made by Plaintiff investigator + 4 sales |
| 256 | cocounut | | | 1 | $ 11.66 | 1 | Purchase made by Plaintiff investigator |
| 285 | Ikevan | Xie Huichang | Shenzhen | 0 | $ - | 0 | |
| 333 | SurgicaL | | | 1 | $ 12.63 | 1 | Purchase made by Plaintiff investigator |
| 228 | CO CO-US | Huizhang Wang | Shenzhen | 51 | $ 805.80 | 1 | 1 sale |
| 301 | Hilyo | Yanfang Zeng | Shenzhen | 9 | $ 99.55 | 1 | Purchase made by Plaintiff investigator |
| 367 | GREFER | Jiang Weijun | Shenzhen | 1 | $ 3.99 | 1 | Purchase made by Plaintiff investigator |
| 412 | easyshopping66 | Xiaochao Liu | Shenzhen | 2 | $ 11.81 | 0 | 0 US sales |
| 391 | AtlantaMart2005 | Fan Yang | Shenzhen | 10 | 115.6 AUD | 0 | 0 US sales; The stores in this group are non-U.S. ebay sites that caters to consumers outside of the U.S. |
| 511 | xxzfalcon849 | | Shenzhen | 1 | 3.1GBP | 0 | |
| 411 | e1xytrep | | Shenzhen | 3 | 8.74GBP | 0 | |
| 390 | Atlanta1816 | Donge Jia | Shenzhen | 0 | 0 | 0 | The stores in this group are non-U.S. ebay sites that caters to consumers outside of the U.S. |
| 402 | CincinatiStore | | | 0 | 0 | 0 | |
| 423 | globalfashion2010 | | | 0 | 0 | 0 | |
| 505 | wishmart2014 | | | 0 | 0 | 0 | |
| 396 | bodhi1998 | | | 0 | 0 | 0 | |
| 433 | hongyinlon0 | | | 0 | 0 | 0 | |
| 413 | eridu905 | | | 0 | 0 | 0 | |
| 414 | eriophoroidesxx | | | 0 | 0 | 0 | |

| 474 | rockfoilcrabbh | | | 0 | 0 | 0 |
| 486 | SZbhkei12 | | | 0 | 0 | 0 |
| 516 | yupaxxs | | | 0 | 0 | 0 |
| 460 | Nannouth | | | 0 | 0 | 0 |
| 395 | bigbigshow2012 | Xiaofeng Cheng | Shenzhen | 0 | 0 | 0 |
| 443 | KansasDeal | | | 0 | 0 | 0 |
| 426 | GreatSpringfield | | | 0 | 0 | 0 |
| 501 | watch_deal | | | 0 | 0 | 0 |
| 422 | gilroy2012 | | | 0 | 0 | 0 |
| 434 | hotdeal320 | | | 0 | 0 | 0 |
| 515 | yishengmall2014 | | | 0 | 0 | 0 |
| 406 | Denver0806 | | | 0 | 0 | 0 |
| 437 | hutrsate51 | | | 0 | 0 | 0 |
| 466 | ppktjfa8612 | | | 0 | 0 | 0 |
| 560 | yingli520 | Yingli Li | Shenzhen | 0 | 0 | 0 |
| 561 | yangsuiqwe | | | 0 | 0 | 0 |
| 575 | aishengheji | | | 0 | 0 | 0 |
| 576 | Liusaluy | | | 0 | 0 | 0 |
| 532 | Bakheng | | | 0 | 0 | 0 |
| 526 | bismarck | | | 0 | 0 | 0 |
| 533 | adriaticgo | | | 0 | 0 | 0 |
| 538 | ashur80 | | | 0 | 0 | 0 |
| 527 | montgomery | | | 0 | 0 | 0 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE NAUGHTYS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:21-cv-00492 |
| v. | ) | |
| | ) | Judge Reed C. O'Connor |
| DOES 1-580, | ) | |
| | ) | |
| Defendants. | ) | |

**Unreported Opinions Cited in Support of
Defendants' Response to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction**

2009 WL 9120113
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas,
Waco Division.

APPLIED FOOD SCIENCES, INC. and
Oncology Sciences Corporation, Plaintiffs,
v.
NEW STAR 21, INC. and Piacere
International, Inc., Defendants.

Civil Action No. W–07–CA–359.
|
Jan. 23, 2009.

**Attorneys and Law Firms**

Aaron M. Wilkerson, Patton Boggs LLP, Chris Lee Gilbert, Munck Wilson Mandala, LLP, David Greer Henry, Looper Reed & McGraw, P.C., Dallas, TX, for Plaintiffs.

Charles E. Phipps, David W. Klaudt, Jeffrey Brian Mead, Locke Lord Bissell & Liddell LLP, Dallas, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*

WALTER S. SMITH, JR., Chief Judge.

**\*1** Before the Court are Defendants' Motions to Dismiss for Lack of Personal Jurisdiction. Having reviewed the motions, responses, replies, pleadings, and applicable legal authority, the Court finds that the motions should be granted.

*I. FACTUAL AND PROCEDURAL BACKGROUND*

**A. Parties and Causes of Action**
On November 5, 2007, Plaintiffs Applied Food Sciences, Inc. ("AFS") and Oncology Sciences Corporation ("OSC") (collectively "Plaintiffs") filed the instant action against Defendants New Star 21, Inc. ("New Star") and Piacere International, Inc. ("Piacere") (collectively "Defendants"). AFS and OSC are each Delaware corporations with their principal places of business in Austin, Texas. New Star and Piacere are both California corporations, with New Star's

principal place of business in El Monte, California and Piacere's principal place of business in Arcadia, California.

Plaintiffs' Complaint alleges multiple state and federal causes of action including trademark infringement, trade dress infringement, false designation of origin, trademark dilution, unfair competition, and patent infringement-all arising from the alleged sale by Defendants of coffee products named, packaged and marketed similarly to products sold by Plaintiffs. New Star, on May 23, 2008, and Piacere, on May 29, 2008, each filed a Motion to Dismiss for Lack of Personal Jurisdiction.

**B. Factual Contentions**
According to Plaintiffs' allegations, AFS is the sole owner of the trademark Caffe Sanora, used in connection with ground, brewed, and whole bean coffee. OSC is a wholly-owned subsidiary of AFS. AFS has licensed its trademark rights in Caffe Sanora to some third parties for use as a brand name for coffee products. Together, AFS and its licensees distribute Caffe Sanora products throughout the United States and beyond. In addition to the trademark, Caffe Sanora coffee packaging has a distinctive trade dress used to identify AFS as being the source of the coffee products so packaged. AFS is also the exclusive licensee of a United States Patent concerning a method of enhancing post-processing content of beneficial compounds in beverages naturally containing the same.

Plaintiffs further allege that Defendants have infringed upon Plaintiffs' trademark, trade dress, and patent, through the sale of various coffee products. Plaintiffs contend that Defendants operate multiple websites, and that through at least one of those websites Defendants offer for sale Caffe Piacere and Café Sanola coffee products.

Defendants assert in their respective motions to dismiss that they are not subject to personal jurisdiction in Texas, due to their lack of any physical presence in Texas and their dearth of contacts with Texas. Additionally, New Star claims that it does not in fact market or sell any coffee products anywhere.

Plaintiffs contend that Defendants are both subject to jurisdiction in Texas. Plaintiffs claim that New Star and Piacere are, for purposes of coffee-related sales, so intertwined as to constitute basically the same company. Plaintiffs assert that Larry Chou and Richard Forquer are each employed by and representatives of both entities. Defendants assert that (1) Richard Forquer is the president and CEO of

Piacere, and (2) Kevin Bai is the manager of New Star, and (3) Larry Chou never had the authority to act on behalf of either entity and was only briefly affiliated with both. Plaintiffs, however, claim that all three individuals appeared at a trade show in Anaheim, California in 2007 as representatives of New Star marketing Café Sanola coffee, and that Chou and Forquer actually run both companies. Plaintiffs also claim that both entities together operate cafesanola.com, garlicandspice.com, caffepiacere.com, and cafepiacere.com. Finally, Plaintiffs assert that those four websites combine to allow customers to (1) purchase the allegedly infringing products online, through PayPal, and (2) create online accounts to track their orders.

## II. RELEVANT LAW

### A. Standard of Review

**\*2** Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the Court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982). Where the Court rules without holding an evidentiary hearing, however, the plaintiff need not establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999). All undisputed allegations by the plaintiff, who seeks to assert personal jurisdiction over a defendant, will be accepted as true and all conflicts between the parties' allegations will be resolved in favor of the plaintiff. *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 211 (5th Cir.1999). However, the requirement of a *prima facie* case does not require the Court to credit conclusory allegations, even if un-controverted. *Panda Brandywine Corp. v. Potomac Elec. Power,* 253 F.3d 865, 868 (5th Cir.2001).

### B. Applicable Legal Authority

A defendant is subject to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.,* 745 F.2d 346, 347 (5th Cir.1984). A Texas court may exercise jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with due process. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991); *see* Tex. Civ. Prac. & Rem.Code Ann. § 17.042. The broad language of the Texas long-arm statute permits

an expansive reach, limited only by the federal constitutional requirements of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). As a result, the Court considers only whether it is consistent with federal due process for Texas courts to assert personal jurisdiction over Defendant. *Guardian Royal,* 815 S.W.2d at 226.

The Due Process Clause of the Fourteenth Amendment protects a person's liberty interest in not being subject to binding judgments of a forum with which that person has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Under the federal constitutional test of due process, a state may assert personal jurisdiction over a non-resident defendant only if (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Rudzewicz,* 471 U.S. at 476; *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999).

The first prong, the minimum contacts analysis, has been refined into two types of jurisdiction—general and specific. General jurisdiction exists when the defendant's contacts with the forum state are continuous, systematic and substantial, even if the cause of action does not arise from or relate to activities conducted within Texas. *Jackson v. FIE Corp.,* 302 F.3d 515, 530–31 (5th Cir.2002). Specific jurisdiction exists when the cause of action arises out of or relates to the non-resident defendant's less substantial contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal,* 815 S.W.2d at 230. For specific jurisdiction to apply, a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws such that it should reasonably anticipate being haled into the forum's courts. *Rudzewicz,* 471 U.S. at 474.

**\*3** In the second prong of the due process test, courts generally examine fundamental fairness by looking at five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court of*

Applied Food Sciences, Inc. v. New Star 21, Inc., Not Reported in F.Supp.2d (2009)
2009 WL 9120113

*Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). To prevail on this prong, the defendant must present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *See Jones v. Petty– Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir.1992) (citing *Rudzewicz,* 471 U.S. at 462).

## III. ANALYSIS

### A. General Jurisdiction

The Court begins by examining the relationship between Defendants New Star and Piacere, the state of Texas, and this litigation. Defendants are both California corporations with principal places of business in California. New Star has only four employees and approximately forty to fifty customers. New Star sold chili peppers or garlic to three customers based in Texas, and New Star's manager Kevin Bai traveled to Houston to collect payment once. Piacere has only one employee (in addition to Richard Forquer and his wife), and no representatives of Piacere have traveled to Texas in at least twenty years. Piacere did pay a third party for the use of the website cafepiacere.com, and the actual host of that website is believed by the parties to be located in Houston, Texas. Plaintiffs' factual contentions to support the exercise of personal jurisdiction do not dispute those facts, but instead rely heavily upon the asserted operation by Defendants of the various websites.

Accepting Plaintiffs' factual contentions for purposes of these motions to dismiss, the Court will assume for this analysis that both New Star and Piacere together operate all of the alleged websites. To begin, New Star and Piacere are not subject to general jurisdiction in Texas. As discussed above, general jurisdiction exists where a defendant has continuous, systematic, and substantial contacts with the forum state. Here, while it may be argued that by maintaining a website or websites Defendants are in continuous contact with the entire world, such contacts are not in this case substantial. Plaintiffs have not pointed to any specific accesses of the websites by Texas residents, nor any particular connections to Texas apparent on the websites themselves. The additional contacts that Plaintiffs claim New Star has with Texas are also inadequate. Plaintiffs point to two sales of dried chili peppers and garlic to Texas based corporations, which were negotiated in California and delivered in California. Also, one of the websites operated by Defendants was allegedly hosted from a server in Texas. These minimal contacts are wholly insufficient to constitute the continuous, systematic

and substantial contacts required for the exercise of general jurisdiction over Defendants.

### B. Specific Jurisdiction

 *4 The next question is whether specific jurisdiction may exist over Defendants in this case. Specific jurisdiction, as discussed above, exists where the cause of action arises out of a defendant's less substantial contacts with a forum state. The only possible alleged contacts of Defendants with Texas out of which Plaintiffs' causes of action arise relate to the websites whose names allegedly infringe Plaintiffs' trademarks and which offer for sale the allegedly infringing products. The maintenance of websites accessible by forum residents over the Internet may satisfy the standard of minimum contacts, depending upon the level of commercial activity that an entity conducts over the Internet. *See Mink v. AAAA Development LLC,* 190 F.3d 333, 336 (5th Cir.1999); *Zippo Mfg. Co. v. Zippo DOT Com, Inc.,* 952 F.Supp. 1119, 1123–24 (W.D.Penn.1997). In *Mink,* the Fifth Circuit adopted the "sliding scale" of *Zippo* in evaluating whether a nonresident defendant's Internet contacts are sufficient to subject it to the jurisdiction of the forum state. *Mink,* 190 F.3d at 336. At one end of the scale, passive websites on which the owner merely posts information do not support a finding of minimum contacts, while at the other end websites through which an owner does business or enters into contracts with forum residents do support such a finding. *See id.* For websites in the middle of the scale, which allow a user to exchange information with the host computer, the exercise of jurisdiction depends upon the level of interactivity and the commercial nature of that information exchange. *See id.*

In this case, Plaintiffs' allegations would place the websites at the more interactive end of the *Mink* scale, due to the possibility of actual sales occurring through the use of PayPal. However, regardless of the interactivity of the websites allegedly operated by Defendants, those allegations do not subject Defendants to jurisdiction in Texas. No allegations or evidence suggest that any of the interactivity was directed towards or accessed by anyone in Texas. Plaintiffs have not pointed to any sales originating from the websites to persons or entities located in Texas, nor have Plaintiffs alleged any Texas-specific direction of the websites. In both *Zippo* and *Mink,* the websites at issue had been accessed by forum residents. In *Zippo,* the defendant corporation had conducted electronic commerce over the Internet with forum residents. In *Mink,* the Fifth Circuit found an insufficient basis for jurisdiction where the defendant corporation's website included e-mail access, printable order forms, and a toll-free

phone number, because the defendant was not "doing business over the Internet or [engaging in] sufficient interactivity *with residents of the forum state." Mink,* 190 F.3d at 337 (emphasis added). As indicated by the Fifth Circuit in a more recent Internet-related minimum contacts analysis, the "ultimate inquiry is rooted in the limits imposed on states by the Due Process Clause ... [i]t is fairness judged by the reasonableness of Texas exercising its power over residents of [other states]." *Revell v. Lidov,* 317 F.3d 467, 476 (5th Cir.2002). The nature of the Internet is such that a website is easily accessible by individuals and entities throughout the world. Here, where such websites were allegedly operated by New Star and Piacere, but where those corporations are not alleged to have conducted electronic commerce with anyone in Texas, not alleged to have directed any of their advertising or Internet activities specifically towards Texas, and not alleged to have sold any infringing products to individuals in Texas, the maintenance of personal jurisdiction over Defendants would be unreasonable. Even in the strange realm of Internet-related contacts, the standard for personal jurisdiction remains that a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws such that it should reasonably anticipate being haled into the forum's courts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Here, Defendants have not purposefully availed themselves of the privilege of conducting business in Texas, and cannot be subject to the jurisdiction of Texas courts.

**\*5** It is not necessary to determine the second prong of the due process analysis and decide whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, because the arguments for asserting personal jurisdiction failed to meet the first prong.

### C. Waiver of Personal Jurisdiction Defense
Plaintiffs argue that Defendants waived their defense of lack of personal jurisdiction by waiting four months between filing an answer and filing their motions to dismiss. Defendants, however, asserted the lack of personal jurisdiction in their original answer, filed all subsequent documents subject to that affirmative defense, and filed no substantive motions other than their motions to dismiss. This is not a case where a

defendant waited until after the denial of a merit based motion to raise the defense of lack of personal jurisdiction. The Court finds that Defendants have not waived their defense of lack of personal jurisdiction.

### D. Plaintiffs' Request for Jurisdictional Discovery
As an alternative request should the Court not accept Plaintiffs' arguments in support of exercising personal jurisdiction, Plaintiffs asked that the Court grant a period of jurisdictional discovery. The Court may, in its discretion, grant such discovery "if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir.2005). Here, Plaintiffs have not pointed to any particular contacts that could possibly alter the personal jurisdiction analysis, and the Court is persuaded that jurisdictional discovery would not be of assistance in this case.

### IV. CONCLUSION

Defendants New Star and Piacere are small, California-based corporations with no physical presence in Texas, and minimal, if any, contacts with the state. Through the websites complained of by Plaintiffs, Defendants are not alleged to have conducted business or engaged in electronic interactivity with any residents of Texas. The alleged maintenance of those websites, accessible but not necessarily accessed from anywhere in the world and from Texas specifically, is insufficient to establish personal jurisdiction over Defendants. Therefore, due process does not permit this Court to exercise personal jurisdiction over Defendants New Star and Piacere. In light of the foregoing, it is

**ORDERED** that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Docket Nos. 15 and 17) are **GRANTED.**

### All Citations

Not Reported in F.Supp.2d, 2009 WL 9120113

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

CMC Steel Fabricators, Inc. v. Franklin Investment Corp., Not Reported in Fed. Supp...

Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 158 of 236   PageID 12365

2016 WL 3418974

2016 WL 3418974
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

CMC STEEL FABRICATORS, INC.
d/b/a Southern Post Co., Plaintiff,
v.
The FRANKLIN INVESTMENT CORP. d/
b/a Franklin Industries Co., Defendant.

CIVIL ACTION NO. 3:15-CV-2854-B
|
Signed 06/22/2016

**Attorneys and Law Firms**

David H. Harper, George Thomas Graves, IV, Jeffrey M. Becker, Haynes & Boone LLP, Dallas, TX, for Plaintiff.

Christopher J. Schwegmann, Lynn Pinker Cox Hurst, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

JANE J. BOYLE, UNITED STATES DISTRICT JUDGE

*1 Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Venue, or in the Alternative to Transfer Venue (Doc. 11).

This is a trademark infringement case. Plaintiff CMC Steel Fabricators, Inc. (CMC) filed this action against Defendant The Franklin Investment Corp. (Franklin) alleging that it infringed on CMC's trademark fence posts by selling similar products online. Franklin moves the Court to dismiss the case for lack of personal jurisdiction or improper venue, or to transfer the case under 28 U.S.C. § 1404(a). For the following reasons, the Court **DENIES** Defendant's Motion.

## I.

## BACKGROUND

*A. Motion to Dismiss*

The parties' personal jurisdiction and improper venue disputes turn on whether Defendant Franklin has minimum contacts with Texas sufficient for this Court to exercise personal jurisdiction over it. Franklin contends that it does not. Doc. 11, Def.'s Mot. 5–6. Franklin does not advertise, market, or have agents in Texas, but rather conducts most of its business in Pennsylvania. *Id.* at 5. The sum of Franklin's contacts are that it operates a website that Texans might access to buy infringing products, has made two sales to CMC's counsel through this website, and has made one sale to a Texas resident unrelated to the website. *Id.*, Ex. A, Kovalchick Decl. ¶¶ 5–6. It argues that these contacts are insufficient to establish personal jurisdiction, and that venue is improper because of the lack of personal jurisdiction. *Id.* at 6.

CMC counters, taking the position that operating a website accessible to Texans supports personal jurisdiction, and that Franklin purposefully availed itself of this forum by selling products to CMC's counsel and to online retailers with distribution centers in Texas. Doc. 12, Pl.'s Resp. 7, 9, 11–12. In the event that this Court finds that CMC fails to establish personal jurisdiction, CMC also requests jurisdictional discovery on, *inter alia*, whether Franklin contracted with these retailers and whether the retailers actually sold infringing products to Texans. *Id.* at 22–23.

*B. Motion to Transfer*

Franklin also moves to transfer venue under 28 U.S.C. § 1404(a) to the Western District of Pennsylvania. It intimates that this litigation revolves around either the website where it allegedly sold infringing products, or its principal place of business where it allegedly made wrongful decisions about such products. *See* Doc. 11, Def.'s Mot. 8–9. Both of which, Franklin argues, are centered in Pennsylvania, so the case should be transferred there. *Id.* CMC responds that relevant documents are located in both this district and the Western District of Pennsylvania, and that Franklin has not shown that the alternative forum is clearly more convenient. Doc. 12, Pl.'s Resp. 17, 21.

On January 22, 2016, Franklin filed the instant motion. CMC has responded, and Franklin has replied. Doc. 12, Pl.'s Resp.; Doc. 13, Def.'s Reply. Thus, Defendant's Motion is ready for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(2) allows for dismissal of an action when the Court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted). To establish the Court's personal jurisdiction over a defendant, the plaintiff need make only a *prima facie* case of jurisdiction. *Id.* In deciding whether the plaintiff has made a *prima facie* case, non-conclusory factual allegations in the complaint must be taken as true. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citation omitted). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Johnston*, 523 F.3d at 609.

**\*2** In establishing personal jurisdiction, two conditions must be met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067–68. To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068 (citations omitted).

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Johnston*, 523 F.3d at 610. Specific personal jurisdiction exists when the cause of action arises from the nonresident defendant's contacts with the forum state. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).

General jurisdiction is present when a corporate defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)). In assessing the defendant's conduct, the court considers the totality of the circumstances to determine whether exercising jurisdiction is appropriate. *Stuart*, 772 F.2d at 1192. Here, CMC alleges that the Court has specific jurisdiction because of Franklin's online contacts with Texas. While CMC suggests in its Complaint the Court has general jurisdiction, it does not argue this point in its Response. Accordingly, the Court will consider only whether it has specific jurisdiction over Franklin.

## III.

## ANALYSIS

*A. Personal Jurisdiction*

To determine whether CMC has made a *prima facie* showing of specific jurisdiction, the Court must address the issue of how online conduct may create personal jurisdiction. CMC makes two arguments for specific jurisdiction: (1) that Franklin's website creates jurisdiction, and (2) that its third-party sales do as well.

The first argument fails because CMC has not alleged that a single disinterested Texas resident purchased an infringing product through Franklin's online store or even used its website aside from CMC's counsel, whose purchase does not count towards Franklin's minimum contacts. *See* Doc. 12, Pl.'s Resp. 9, 23. The Fifth Circuit has adopted what is known as the *Zippo* sliding scale test for determining whether internet-based contacts establish personal jurisdiction over a nonresident defendant. *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (adopting test from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997)). The aim of the *Zippo* test is to "measure an internet site's connection to a forum state," using a three-point spectrum of connectivity: low, medium, or high.[1] *Id.* Under *Zippo*, personal jurisdiction is based on *actual* internet sales to forum residents, not the mere possibility of sales. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) ("Absent a defendant doing business over the internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate."). Also, sales to plaintiff's

agents are not relevant contacts in the jurisdictional analysis. *See 721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 595–96 (E.D. La. 2015) (collecting cases); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (holding that the "unilateral activity of another party or a third person is not an appropriate consideration" when determining if a defendant availed itself of the forum). Here, Franklin has not alleged actual sales except those to CMC's counsel, which do not count towards Franklin's contacts with the forum state. Thus, Franklin's internet-based contacts do not rise to the level sufficient to establish personal jurisdiction.

**\*3** CMC's second argument also fails. CMC suggests that Franklin purposefully availed itself of this forum by selling infringing products to third parties that subsequently sold them in Texas. *See* Doc. 12, Pl.'s Resp. 4, 9, 14. This is a stream-of-commerce argument. In the Fifth Circuit, "mere foreseeability or awareness" that a product will reach the forum state's market is "a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). CMC notes that consumers can purchase infringing fence posts on the websites of several third-party retailers who have distribution centers in Texas. Doc. 12, Pl.'s Resp. 4, 9, 14; Doc. 12-13, Ex. L; Doc. 12-14, Ex. M; Doc 12-15, Ex. N; Doc. 12-16, Ex. O; Doc. 12-17, Ex. P. But CMC does not allege that there was any special relationship between Franklin and these dealers or that the volume of forum sales was sufficient to demonstrate foreseeability or awareness. *See, e.g., Ainsworth*, 716 F.3d 176; *Luv N' Care*, 438 F.3d 468. Therefore, CMC has not alleged sufficient facts to lend force to its stream-of-commerce argument.

For these reasons, the Court concludes CMC has failed to make a *prima facie* showing of personal jurisdiction.

### B. Jurisdictional Discovery

In its Response, CMC has requested that it be permitted to conduct jurisdictional discovery. Doc. 12, Pl.'s Resp. 22. When seeking jurisdictional discovery, a plaintiff must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence

of the requisite contacts...the plaintiff's right to conduct jurisdictional discovery should be sustained.")). CMC's factual allegations pass muster under this standard, especially given the fact that several third-party retailers sell Franklin's allegedly infringing posts. *See* Doc. 12-13, Ex. L; Doc. 12-14, Ex. M; Doc 12-15, Ex. N; Doc. 12-16, Ex. O; Doc. 12-17, Ex. P. Accordingly, CMC should be allowed to conduct limited jurisdictional discovery on the following issues: the extent to which Franklin sold infringing products to Texans through its website; whether it contracted with the third-party retailers mentioned by CMC; and whether the retailers actually sold infringing products to Texans.

### C. Improper Venue

Franklin also moves to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3). Doc. 11, Def.'s Mot. 6. But the Court cannot determine whether venue is proper until CMC conducts jurisdictional discovery because venue will be proper if Franklin "resides" in Texas, and Franklin may be deemed to reside in Texas if it is subject to personal jurisdiction here. *See* 28 U.S.C. § 1391(b)(1), (c)(2), (d). Therefore, the Court defers ruling on this venue question.

### D. § 1404(a) Transfer

In the alternative, Franklin moves to transfer venue under 28 U.S.C. § 1404(a) to the Western District of Pennsylvania. Doc. 11, Def.'s Mot. 7. Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district or division where the action could have been brought originally,[2] provided the transfer would be for the convenience of parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). In assessing the interests of convenience and justice, courts look to a series of private and public factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). The balance of these factors must clearly weigh in favor of transferring to the new venue. *Id.* Franklin argues that the Western District of Pennsylvania is a more convenient forum because Franklin allegedly marketed the infringing products from its office in Pennsylvania and maintained its website there. Doc. 11, Def.'s Mot. 8–9. Because the private and public interest factors do not clearly weigh in favor of transfer, the Court concludes that transfer is not warranted under § 1404(a).

#### 1. Private Interest Factors

**\*4** The private interest factors courts consider are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am.*, 545 F.3d at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). Analyzing the private interest factors, the Court concludes that they modestly suggest the Western District of Pennsylvania would provide a more convenient forum. *In re Volkswagen of Am.*, 545 F.3d at 315.

First, the ease of access to sources of proof factor favors transfer only slightly. Franklin declares that all the documents related to its marketing and sales activities are located in Pennsylvania, whereas CMC states that its corporate and trademark documents are located in Texas. Doc. 11, Def.'s Mot, Ex. A, Kovalchick Decl. ¶ 9; Doc. 12, Pl.'s Resp. 16 (citing Doc. 12-1, Becker Decl. ¶ 4). Turning to the compulsory process factor, current employees of a party are considered to be willing witnesses whose testimony can be procured without reliance on the subpoena power, so their locations are not persuasive when considering whether the court can secure their attendance. *Smith's Consumer Prods., Inc. v. Fortune Prods., Inc.*, No. 3:14-CV-0627, 2015 WL 1037419, at \*3 (N.D. Tex. Mar. 9, 2015) (citations omitted). Franklin's employees are presumed to be willing witnesses and Franklin has not identified any other nonparty witnesses. *See* Doc. 11, Def.'s Mot. 9. Thus, this factor is neutral.

Likewise, the cost of attendance for willing witnesses is a neutral factor. "The party seeking transfer must specify...clearly the key witnesses to be called and their location and must make a general statement of what their testimony will cover," *Magana v. Toyota Motor Corp.*, No. 3:10-CV-1451, 2010 WL 5108850, at \*2 (N.D. Tex. Dec. 6, 2010) (citing 15 Charles Alan Wright et al., Federal Practice and Procedure § 3851 (3d ed. 2007)), which Franklin has not done. Doc. 11, Def.'s Mot. 9 (simply asserting "all of Defendant's witnesses reside in Pennsylvania."). Thus, Franklin has failed to satisfy its burden of showing why this factor supports transfer. Additionally, there are no other practical considerations that would favor transfer. Therefore, the private interest factors favor transfer only slightly.

2. Public Interest Factors
The public interest factors courts consider are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen of Am.*, 545 F.3d at 315 (quoting *In re Volkswagen AG*, 371 F.3d at 203). Analyzing the public interest factors, the parties dispute whether transfer is warranted given the competing local interests of Pennsylvania and Texas. Franklin argues that the location of the allegedly infringing product and misconduct should be the "critical and controlling consideration" in deciding venue, citing several cases for this proposition. Doc. 11, Def.'s Mot. 8–9 (citing *Paragon*, 2008 WL 3890495, at \*3; *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at \*3 (N.D. Tex. May 23, 2003); *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044–45 (S.D. Tex. 2007)). Additionally, it argues that the private sources-of-proof factor outweighs any public interest concerns as well as CMC's choice of forum.

**\*5** This case is comparable to *Paragon Industries*, where the court decided that, even though all of the wrongful activity occurred in Texas, the case should be transferred to Colorado—the location of the party asserting infringement claims—reasoning that a plaintiff's choice of forum should be entitled to substantial weight. 2008 WL 3890495, at \*2–3.[3] As the court concluded, both the state of an allegedly infringer and that of the injured corporation have a local interest in adjudicating an infringement action. *See id.* at \*3. Here, Texas and Pennsylvania citizens have a local interest in deciding the dispute because a Texas resident's property rights have allegedly been violated and the alleged wrongful activity happened in Pennsylvania. Thus, this factor is neutral. The Court concludes that CMC's choice of forum is entitled to substantial weight, and that the local interest and sources of proof factors do not favor transfer strongly enough to overcome the deference given to CMC's choice. *See id.* at \*3, 5.

Also, the remaining public interest factors do not clearly favor transferring the case. As Franklin admits, no administrative difficulties favor or weigh against transfer; no conflicts of law have been raised; both this Court and the Western District of Pennsylvania are equally capable of analyzing CMC's claims under the Lanham Act (15 U.S.C. §§ 1114, 1125); and this Court has more familiarity with adjudicating claims under Texas law, which modestly weighs against transfer. *See Paragon*, 2008 WL 3890495, at \*4. In sum, the public interest factors do not favor transferring the case. Therefore, the Court concludes that Western District of Pennsylvania is

not a clearly more convenient forum. Accordingly, Franklin's motion to transfer venue under § 1404(a) is **DENIED**.

**IV.**

**CONCLUSION**

For these reasons, the Court **DENIES** Franklin's Motion to Dismiss for Lack of Personal Jurisdiction or Venue, or in the Alternative to Transfer Venue (Doc. 11). The Court further **ORDERS** that CMC may conduct limited jurisdictional discovery on the issues of:

- the extent to which Franklin sold infringing products to Texans through its website;

- whether it contracted with the third-party retailers mentioned by CMC; and

- whether the retailers actually sold infringing products to Texans.

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3418974

---

Footnotes

1    The spectrum includes: (1) a low-end marker for "passive" websites whose internet-based contacts are not sufficient to establish personal jurisdiction; (2) a middle point for "sites with some interactive elements" that require deeper examination to determine whether such interactivity creates minimum contacts; and (3) a high-end marker for websites that "engage in repeated online contacts with forum residents," for which personal jurisdiction may be appropriate. *Id.*

2    CMC concedes that this action could have originally been brought in the Western District of Pennsylvania. Doc. 12, Pl.'s Resp. 15; *see also* 28 U.S.C. § 1404(a).

3    The court in *Paragon* gave weight to the defendant's choice of forum as a "true plaintiff" because the plaintiff had filed a declaratory judgment action in anticipation of litigation. *Id.* at *4.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 123613
Only the Westlaw citation is currently available.
United States District Court,
W.D. Louisiana,
Lake Charles Division.

Tammy GATTE, et. al.

v.

READY 4 A CHANGE, LLC, et al.

Nos. 2:11–CV–2083–PM–KK (LEAD),
2:12–CV–0991–PM–KK (MEMBER).
|
Jan. 9, 2013.

**Attorneys and Law Firms**

John Lee Hoffoss, Jr., Claude Pierson Devall, Donald W. McKnight, Newman Hoffoss & Devall, Lake Charles, LA, Henry Price Mounger, Kenneth H. Hooks, III, Dodson Hooks & Frederick, Baton Rouge, LA, for Tammy Gatte, et al.

Joseph R. Pousson, Jr., Kendrick James Guidry, Michael J. Williamson, Plauche' Smith & Nieset, Lake Charles, LA, for Ready 4 a Change, LLC, et al.

*MEMORANDUM RULING*

PATRICIA MINALDI, District Judge.

 **\*1** Before the court is the defendants, Judy Dohm and Ready 4 A Change, LLC's (collectively, "R4C defendants") Motion to Dismiss under Rule 12(b) for Lack of Jurisdiction, Improper Venue, Insufficient Service of Process, and Failure to State Claim [Doc. 22 in case no. 2:11–2083, Doc. 6 in case no. 2:12–0991]. The plaintiffs, Tammy Gatte (representative of the decedent Phillip Gatte's estate) and her son, Colby Gatte, timely filed a response [Doc. 24 in case no. 2:11–2083, Doc. 13 in case no. 2:12–0991]. The R4C defendants then filed a reply [Doc. 25 in case no. 2:11–2083, Doc. 16 in case no. 2:12–0991].[1]

Also before the court is the defendants, Clinica Victoria, Dr. Ezequiel Gamez Hinojosa, and Maria Guillermina Gamez's (collectively, "Clinica defendants") Motion to Dismiss [Doc. 18 in case no. 2:12–0991[2]]. The plaintiffs responded by filing a Motion to Continue Hearing and Briefing Deadline

on Defendants' Motion to Dismiss to Allow Discovery, or in the Alternative Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss [Doc. 29 in case no. 2:11–2083, Doc. 23 in case no. 2:11–0991]. The Clinica defendants subsequently filed a reply [Doc. 34 in case no. 2:11–2083]. The plaintiffs then filed a sur-reply [Doc. 42 in case no. 2:11–2083]. As a companion motion to this Motion to Continue Hearing and Briefing Deadlines to Allow Discovery, the plaintiffs also filed a Motion for Discovery currently pending before Magistrate Judge Kay, reasserting all of their arguments from their earlier Motion to Continue [Doc. 36 in case no. 2:11–2083]. The R4C defendants filed a response [Doc. 40 in case no. 2:11–2083], as did the Clinica defendants [Doc. 39 in case no. 2:11–2083].

For the foregoing reasons, the R4C defendants' Motion to Dismiss is GRANTED, the Clinica defendants' Motion to Dismiss is GRANTED, and the plaintiffs' Motion to Continue Hearing and Briefing Deadline on Defendants' Motion to Dismiss to Allow Discovery and related Motion for Discovery are DENIED.

**BACKGROUND**

The instant case arises out of two nearly identical personal injury/wrongful death actions filed on November 4, 2011, and March 2, 2012 in the 14th Judicial District Court of Calcasieu Parish,[3] against the defendants by the decedent Phillip Gatte's wife and son, Tammy Gatte and Colby Gatte (respectively). The two cases were subsequently removed to this court and then consolidated.[4]

This case arose after the decedent, Lake Charles resident Phillip Gatte, sought the help of Ready 4 A Change, LLC, ("R4C") a Minnesota-based company which specializes in connecting people who desire affordable weight loss surgery with hospitals and doctors in Mexico who provide this surgery.[5] Mr. Gatte first interacted with two R4C co-owners: Minnesota resident Judy Dohm and Florida resident Janet Smith (who is not named as a defendant in this action) in 2008 after coming across their website, www.bariatricweightloss-surgery.com.[6] Through email and telephone correspondence, Smith and Dohm arranged for Mr. Gatte to go to Clinica Victoria in Cancun, Mexico for weight loss surgery.[7]

 **\*2** Apparently this surgery was successful, because in 2011 Mr. Gatte again contacted R4C, this time initially

corresponding with R4C co-owner Alma Orozco (a Mexican citizen, also not named in this action) to set up a post-weight loss contouring and body sculpting surgery.[8] The plaintiffs allege that Mr. Gatte underwent an application and screening process through R4C's website to ensure he was eligible for surgery.[9] After a disagreement with Orozco on which medical facility and doctors he should pick, Mr. Gatte instead turned to Ms. Dohm for suggestions. Ms. Dohm subsequently directed Mr. Gatte to Dr. Rafael Velasco, a Mexican physician, who would perform Mr. Gatte's surgery at Clinica Victoria (the facility where Mr. Gatte had his first surgery).[10] Mr. Gatte then paid Ms. Dohm $1,353.92 as a "deposit fee," with roughly $400 of the fee going toward airfare to Cancun.[11] The plaintiffs note that a second check was then paid directly to Dr. Gamez at Clinica Victoria .[12]

As a result of this second surgery, allegedly due to the negligence of the doctors at Clinica Victoria, Mr. Gatte passed away from medical complications on October 26, 2011, the day after his surgery.[13] Mr. Gatte's wife and son then filed this personal injury/wrongful death lawsuit, naming as defendants R4C, Judy Dohm, Clinica Victoria, Dr. Gamez and Ms. Gamez (the owners/directors of Clinica Victoria), Dr. Rafael Velasco, and Dr. Hector Joaquin Corzo (who also allegedly performed Mr. Gatte's surgery).[14]

The R4C defendants and the Clinica defendants now bring their Motions to Dismiss.

## A. The R4C Defendants' Motion

In their motion, the R4C defendants first argue that this court does not have personal jurisdiction over them, as both Ms. Dohm and R4C are domiciliaries of Minnesota, and Mr. Gatte's injuries all stemmed from the "acts or omissions of doctors in Cancun, Mexico and a hospital in Cancun, Mexico" and *not* from anything that happened in Louisiana.[15] Additionally, they allege that the only contact Mr. Gatte had with R4C came from the R4C website, and that this alone is insufficient to establish either specific or general personal jurisdiction over them.[16] Further, they allege that their burden in litigating in Louisiana would be substantial, since neither Ms. Dohm nor R4C has any contacts with this state.[17]

Next, they allege that service on Ms. Dohm was improper because the plaintiffs lured her into Louisiana under false pretenses (namely, to transport the Mr. Gatte's ashes from

Mexico to his family in Lake Charles).[18] The undersigned notes that this deficiency is not present in the second case, in which the plaintiffs instead served Ms. Dohm pursuant to Louisiana's long-arm statute, and thus the fraudulent service issue will not be addressed in this memorandum.[19] Next, the R4C defendants move to dismiss all claims against Ms. Dohm personally, because as a member of a limited liability company, they allege she cannot be held personally liable for any torts committed by the company.[20] Finally, they argue that venue is improper because they do not reside in Louisiana, and that the court should transfer this case to Minnesota .[21]

**\*3** The plaintiffs, in their response to R4C's motion, first assert that they have stated an actionable claim against the R4C defendants because the defendants' tortious conduct began when R4C lured Mr. Gatte into using their services, deceiving him into thinking he was choosing a safe, cheaper option to weight loss surgery in America.[22] They also allege that the R4C defendants did establish sufficient minimum contacts to create personal jurisdiction in Louisiana, as they had a "highly interactive" website which actively enticed potential clients like Mr. Gatte to seek out the services of R4C.[23] In their second motion, they note that, as per Ms. Dohm's affidavit, R4C has had at least sixteen clients from Louisiana, arguing that this constitutes sufficient continuous and systematic contacts with Louisiana in order to establish general jurisdiction.[24] Further, they argue that the extent of interaction between the R4C defendants and Mr. Gatte while he was in Louisiana preparing for his surgeries (phone calls to plan his travel to Mexico, payments to both R4C and Clinica Victoria while he was in Louisiana) also indicates sufficient minimum contacts with Louisiana.[25]

Next, they allege that Ms. Dohm must be personally liable, separate and apart from R4C, for Mr. Gatte's injuries because she "concocted a complicated scheme of intertwined websites in partnership with one or more Mexican doctors to solicit patients in the U.S. for medical treatment in Mexico."[26] Finally, the plaintiffs address the fraudulent service of process issue, which, as discussed *supra,* is not an issue in the second lawsuit.[27]

In the R4C defendants' reply, the defendants first argue that R4C did not have a duty to warn Mr. Gatte about the dangers inherent in post-bariatric surgery, and that the onus instead was on Mr. Gatte's doctors to warn him of

potential complications of surgery.[28] They allege that, despite the plaintiffs' contentions, neither R4C nor Ms. Dohm ever "reached out" to Mr. Gatte to induce him to obtain surgery through the R4C website.[29] They note that the R4C website was a passive website which Mr. Gatte simply used for informational purposes.[30] They then reassert that all of the alleged tortious conduct happened in Mexico, that this court clearly does not have jurisdiction over the other Mexican defendants, and that R4C is a small Minnesota business, and thus would be unduly prejudiced if it had to defend itself in court in Louisiana.[31]

**B. The Clinica Defendants' Motion**

The arguments in the Clinica defendants' motion to dismiss are similar to the R4C defendants' motion. In their motion, they move to dismiss the case for lack of personal jurisdiction and on *forum non conveniens* grounds. They argue that neither specific nor general jurisdiction exists for each Clinica defendant (Clinica Victoria, a medical facility incorporated in Mexico; Dr. Gamez, a physician and owner/director of Clinica Victoria; and, Ms. Gamez, the co-owner of Clinica Victoria Dr. Gamez' wife), and that none of them have any contacts with Louisiana.[32]

 **\*4** With respect to specific jurisdiction, they argue that Clinica Victoria did not solicit Mr. Gatte through any website, and did not have a partnership with the R4C defendants.[33] In support of their argument that general jurisdiction does not exist, they argue that Clinica Victoria has absolutely no contact with Louisiana (or the United States as a whole), and thus lacks "sufficient, substantial, continuous and systematic contacts" with this state.[34] They note that, while Clinica Victoria has a website (much like R4C), Clinica Victoria designed it to attract clients in Mexico only, and thus the site is not interactive enough to establish personal jurisdiction.[35] Finally, they argue that allowing Louisiana to exert jurisdiction over this case would violate notions of fair play and substantial justice, noting that this argument also should indicate to the court that venue is inconvenient and improper.[36]

In the plaintiff's response/Motion to Continue Hearing and Briefing Deadlines to Conduct Discovery and Motion for Discovery, they dissect the language on the R4C website, noting that there are several instances where the R4C site mentions Clinica Victoria, indicating that the R4C defendants

were actively promoting Clinica Victoria to American clients (and thus Clinica Victoria directly benefitted when clients chose it through the R4C website).[37] The plaintiffs argue that, to the extent the parties disagree on whether the Clinica defendants have an ongoing business relationship with the R4C defendants and have benefitted from R4C's "highly interactive" website, this "creates factual issues that remain outstanding and must be fleshed out [via discovery] prior to the Court considering a motion to dismiss or forum non grounds."[38]

The plaintiffs then repeat their arguments in favor of personal jurisdiction that they asserted in their response to R4C's motion: essentially, that because Clinica and R4C were in a mutually beneficial business relationship, any interaction Mr. Gatte had while in Louisiana with the R4C defendants attaches to the Clinica defendants as well.[39] In support of their argument that exerting jurisdiction over the defendants would not violate notions of fair play and substantial justice, they argue that Louisiana has an interest in this case, because the defendants could have used Louisiana laws to protect them: namely, if Mr. Gatte had failed to write them a check or his check was not honored, the "Louisiana civil justice system and criminal justice system" would have ensured the defendants would get paid.[40]

In response, the Clinica defendants first argue that the plaintiffs' requests for discovery should not be granted, as the court can resolve the issues of personal jurisdiction and *forum non conveniens* on the parties' briefs.[41] Further, they reassert their arguments in favor of the court finding no personal jurisdiction: (1) the Clinica defendants do not have a business relationship with R4C and thus did not solicit Mr. Gatte through R4C's website; (2) Mr. Gatte paying for his surgery while in Louisiana is not enough to show minimum contacts; and, (3) the fact that R4C has had sixteen other Louisiana clients is irrelevant to Clinica Victoria, because Phillip Gatte is the only Louisiana client they have had.[42] Finally, they aver that just because Mr. Gatte sent them a payment from Louisiana does not create personal jurisdiction.[43]

 **\*5** In the plaintiffs' sur-reply, they argue that the court should grant their discovery motion, because the undersigned "deserves to know the complete version of events, not simply those self-serving bits of information solicited by defendants' attorneys to escape this Court's power to rule upon matters occurring within its jurisdiction."[44] They note that additional

discovery will prove their contentions that the alleged tortious conduct did not begin in Mexico, but instead began in Louisiana when (1) the R4C website allegedly deceptively marketed unsafe medical procedures to Louisiana residents like Mr. Gatte; and, (2) Mr. Gatte made payments to the defendants in Louisiana to obtain their services.[45] They note that the Clinica defendants must have made some affirmative steps and "reached out" to Louisiana residents like Mr. Gatte in order to induce him to use their facility, since it would be nonsensical to assume that Mr. Gatte "magically" appeared at their facility with no prompting.[46] Instead, they argue that it is clear that their services were sold to Mr. Gatte in Louisiana, scheduled while he was in Louisiana, and paid for while he was in Louisiana, which indicates sufficient contacts in order to establish jurisdiction.[47]

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)

When a nonresident defendant brings a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court. *See Wilson v. Belin,* 20 F .3d 644, 648 (5th Cir.1994); *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). If the court rules on the motion without an evidentiary hearing, the plaintiff may satisfy this burden by making a prima facie showing of jurisdiction; proof by a preponderance of the evidence is not required. *See Wilson,* 20 F.3d at 648; *WNS, Inc. v. Farrow,* 884 F.2d 200, 204 (5th Cir.1989). In reviewing a motion to dismiss for lack of personal jurisdiction, the court will accept the uncontroverted allegations set forth in the complaint as true. *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). When there are conflicts between the parties' affidavits, the court must resolve the discrepancies in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists. *See Thompson,* 755 F.2d at 1165.

Where, as here, the court's jurisdiction is predicated on diversity of citizenship, the court may exercise jurisdiction over a nonresident defendant if: (1) the forum state's long-arm statute confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction comports with due process under the Constitution. *See Latshaw,* 167 F.3d at 211; *D.J.*

*Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir.1985). The Louisiana long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant as far as is permitted by due process. *See La.Rev.Stat.Ann. § 13:3201(B).* The inquiry, therefore, is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional requirements. *See Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990).

**\*6** The Supreme Court has held that due process is satisfied when the defendant: (1) has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state such that he could anticipate being haled into that state's courts; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–76 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The court must examine fairness only if the plaintiff first establishes that the nonresident defendant has sufficient minimum contacts with the forum state. *See Allred v. Moore & Peterson,* 117 F.3d 278, 286 (5th Cir.1997).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King,* 471 U.S. at 475, 105 S .Ct. 2174 (citations omitted).

Further, the "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Wilson,* 20 F.3d at 647. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *See id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the

cause of action but are "continuous and systematic." *See id.* (citing *Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. 1868).

## LEGAL ANALYSIS

### I. The Plaintiffs have not Made a Prima Facie Case for General Jurisdiction over the Defendants

In support of their argument that the R4C defendants had "continuous and systematic" contact with Louisiana as per the standard for establishing general jurisdiction, the plaintiffs cite several different facts: (1) the R4C defendants' advertising in Louisiana through their website; (2) numerous telephone and e-mail conversations between Ms. Dohm (and other R4C agents) and Mr. Gatte, both for his 2009 surgery and his 2011 surgery; (3) Ms. Dohm (and other R4C agents) making airline and hotel reservations for Mr. Gatte's travel from Louisiana to Mexico; (4) Mr. Gatte making all of his payments to the defendants (both for his 2009 and 2011 surgery) while in Louisiana; and, (5) Mr. Gatte using R4C on two occasions to set up weight-loss-related surgeries.[48] They also note that, according to an affidavit from Ms. Dohm, R4C has had at least sixteen clients from Louisiana (possibly more), which also indicates continuous and systematic contacts with Louisiana separate and apart from their interactions with Mr. Gatte.[49]

*7  The R4C defendants argue, in contrast, that they acted as nothing more than a facilitator, as a travel agent would for a tourist, to send Mr. Gatte to Mexico for his surgery.[50] They note that Ms. Dohm has no property in Louisiana, does not reside, vote, sell, or purchase things in Louisiana, and that at all times relevant to this cause of action, she resided in Minnesota.[51] In regard to R4C, they note that R4C "simply maintained a web-site [and] did not engage in mass mailings to potential clients, send anything tangible, attend conventions, or advertise in magazines distributed in Louisiana."[52] They further aver that this case does not arise out of any of the defendants' actions in Louisiana.[53]

The plaintiffs' arguments in support of general jurisdiction over the Clinica defendants are more tenuous. They argue that "Mr. Gatte's ... surgery at Clinica Victoria in Cancun [was] orchestrated through the Ready4AChange website."[54] They argue that the Clinica defendants and R4C defendants were in a business partnership together and advertised their services together on R4C's website.[55] Essentially, by asserting that a

business relationship exists between the R4C defendants and Clinica defendants, the plaintiffs use this as a way to bootstrap any and all contact the R4C defendants might have had with Mr. Gatte to the Clinica defendants in Mexico, using R4C as the link to connect the Clinica defendants to Louisiana.[56] They also argue that Mr. Gatte paid Clinica Victoria for his operations while in Louisiana, and that it is possible that the Clinica defendants and R4C defendants shared revenue when a client was referred from the R4C website to Clinica Victoria (although the plaintiffs assert that they need discovery to prove this contention).[57]

The Clinica defendants rebut the plaintiffs' contentions, most notably in Dr. Gamez's statement, in which he states that (1) Clinica Victoria is a hospital in Mexico; (2) it does not have any agents, business affiliates, or commission agents in Louisiana; (3) it does not do business nor is it authorized to do business in Louisiana; (4) it has no authorized agent for service of process in Louisiana; (5) it has no employees or offices in Louisiana; (6) it has no property in Louisiana; (7) it has never brought suit or been subject to jurisdiction in any United States court; (8) it does not have a business relationship with R4C; (9) it does not promote its services in Louisiana.[58]

### A. The Defendants' Internet Contacts: the R4C Website
First, the undersigned will address whether the R4C website supports a finding of general jurisdiction. Leading civil procedure scholars have addressed the affect of the internet on personal jurisdiction:

> Ultimately, personal jurisdiction over a defendant that maintains a website must, like personal jurisdiction over all other defendants, satisfy the jurisdictional constraints placed upon the federal court by the forum state or any applicable federal statute and the due process analysis established by *International Shoe Company v. State of Washington* and its progeny....

*8  Thus, the analysis applicable to a case involving jurisdiction based on the Internet (or any other modern technology) should not be different at its most basic level from any other personal jurisdiction case. If the defendant is not physically present in or a resident of the forum state, and has not been physically served in the forum state, the federal court must undertake the traditional personal jurisdiction analysis.

In broad strokes, therefore, a federal court must ask first if the defendant's contacts with the forum state are sufficiently continuous and systematic that they subject the defendant to the court's general jurisdiction.... Even though a given defendant's website is accessible at all times (that the website is running) from every state in the nation—indeed, throughout the world—the existing decisions indicate that mere accessibility is not sufficient for general jurisdiction. Instead, to be subject to general jurisdiction in a given state, a defendant must have continuous and systematic contacts with that state. Thus, for a website to support a finding of general jurisdiction on its own, the defendant must systematically contact the forum state through the Internet over a significant period of time ... Of course, even if the defendant's website is not sufficient in and of itself to establish jurisdiction, it may be an additional contact that facilitates a finding that the defendant's cumulative contacts with the forum state are sufficiently continuous and systematic to subject the defendant to the federal court's general jurisdiction.

4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1073.193 (3d ed.2002) (footnotes and citations omitted).

In the Fifth Circuit, the 2002 decision *Revell v. Lidov,* 317 F.3d 467 (5th Cir.2002) is the benchmark case on internet contacts and general jurisdiction. In *Revell,* a Texan resident sued a nonresident professor and university in the Northern District of Texas, alleging that the professor had defamed the plaintiff in an article that he had posted on the university's online bulletin board. *Id.* at 469. The nonresident defendants argued that the Northern District of Texas lacked personal jurisdiction over them, asserting that their website did not establish the requisite minimum contacts required to establish personal jurisdiction. *Id.* The Fifth Circuit agreed with the defendants, noting that "[t]hough the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of [the university] with Texas are not in any way 'substantial.' " *Id.* at 471. The court compared the facts in its case to the Sixth Circuit's *Bird v.. Parsons,* in which the Sixth Circuit found general jurisdiction lacking even though the defendant maintained a website open for commerce in the forum state, and over 4,000 forum state residents had registered domain names with the website. *Id.* The Fifth Circuit held that if general jurisdiction was lacking in *Bird,* then it certainly was lacking in its case, as the university's online bulletin board had received a scant twenty subscriptions total from Texan residents. *Id.*

**9 Here, the R4C website is like most websites: it is accessible at all times to every state in the nation. It displays both a phone number and an email address, allowing people who have discovered the website to reach out to R4C representatives in order to learn more about R4C's services.[59] While some Louisiana residents may have used the site to contact R4C for their services, there is no indication that either the R4C defendants (or the Clinica defendants, for that matter) have conversely affirmatively reached out and specifically contacted Louisiana residents through the website on a sufficiently continuous, systematic basis in order for general jurisdiction to attach. Further, even assuming all sixteen of R4C's Louisiana clients mentioned in Ms. Dohm's affidavit used the R4C website to interact with R4C, the reasoning in *Revell* indicates that this small number of clients in the forum state is too *de minimis* to establish general jurisdiction. *Id.* Thus, the website, by itself, is insufficient to prove up a prima facie showing of general jurisdiction.

### B. The Defendants' Traditional Contacts

In addition to mentioning the R4C website, the plaintiffs also cite three factors in favor of finding that general jurisdiction exists: Mr. Gatte's prior interactions with R4C and Clinica Victoria during his first surgery, R4C's record of sixteen clients from Louisiana since 2007,[60] and Mr. Gatte paying the Clinica defendants for his surgery while he was in Louisiana.[61] The R4C defendants submit, as proof that general jurisdiction is lacking, Judy Dohm's affidavit, in which she notes that only sixteen out of over a thousand of R4C's clients have been from Louisiana, thus accounting for a very small percentage of their total clientele.[62]

The undersigned remains unconvinced that the plaintiffs' proof of fleeting and limited contacts with Louisiana are sufficient to create a prima facie showing of general jurisdiction. First, addressing the argument that R4C has had at least sixteen clients from Louisiana, the undersigned notes that such an insignificant percentage (less than two percent) of business from one state does not indicate sufficient minimum contacts. *See Bearry v. Beech Aircraft Corp.,* 818 F.2d 375–76 (5th Cir.1987) (finding no general jurisdiction in Texas despite the fact that defendant sold products to seventeen dealers in Texas); *see also* J–L *Chieftain, Inc. V. Western Skyways, Inc.,* 351 F.Supp.2d 587 (E.D.Tex.2004) (finding no general jurisdiction in Texas despite 7 .14% of the defendant's sales coming from Texas).

Further, Mr. Gatte paying for R4C and Clinica Victoria's services while in Louisiana, whether through a website or not, is not sufficient to establish the requisite contacts. *See Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174 (holding that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction). Looking to the allegations made in the plaintiffs' complaint, it appears that while the defendants may have a relationship *with* clients Louisiana, this does not indicate purposeful availment *in* Louisiana. *See Access Telecom. Inc. v. MCI Telecom. Corp.,* 197 F.3d 694 (5th Cir.1999) (in holding that contacts were insufficient to exercise general jurisdiction, the court stated "while [defendant's] other contacts may be continuous and systematic contacts which constitute doing business *with* Texas, [defendant] has virtually no contacts which constitute doing business *in* Texas). Here, while the plaintiffs have pointed to evidence that the R4C defendants, at the very least, have done some business *with* people in Louisiana, the interactions seem to be centered around doing business *in* Minnesota (where R4C agents set up travel arrangements) and *in* Mexico (where the surgeries actually occured). Thus, general jurisdiction over the defendants is lacking.

**II. The Plaintiffs have not Made a Prima Facie Case for Specific Jurisdiction over the Defendants**

*10   The plaintiffs next argue that, even in the absence of general jurisdiction, the R4C defendants' contacts arising from this specific case are sufficient to establish specific jurisdiction. In addition to all of the interaction mentioned *supra* between Mr. Gatte and the defendants, the plaintiffs argue that the R4C website "reached out" to Mr. Gatte and induced him to come to Mexico for his surgery.[63] In support of their contention that this court has specific jurisdiction over the Clinica defendants, they again assert that there is a business relationship between the Clinica defendants and the R4C defendants, and thus any and all factors which point in favor of specific jurisdiction over the R4C defendants applies to the Clinica defendants as well.[64] They allege that they need to conduct jurisdictional discovery in order to flesh out this alleged business relationship.[65] The one factor exclusively relevant to the Clinica defendants that the plaintiffs cite in favor of specific jurisdiction over the Clinica defendants is that Mr. Gatte wrote a check to Clinica Victoria while he was in Louisiana.[66]

**A. The R4C Website**

In support of their argument that the R4C website supports a finding of specific jurisdiction because of how highly interactive it is, the plaintiffs cite heavily to the *Zippo* "sliding scale" standard first articulated in the Western District of Pennsylvania and later adopted by the Fifth Circuit, and argue that the R4C website is interactive enough to establish specific jurisdiction.[67]

In the Fifth Circuit, *Mink v. AAAA Development LLC,* 190 F.3d 333 (5th Cir.1999) is instructive on the specific jurisdiction via website inquiry. In *Mink,* the Fifth Circuit's Judge Parker noted that

> Courts addressing the issue of whether personal jurisdiction can be constitutionally exercised over a defendant look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet...." *Zippo,* 952 F.Supp. at 1124. In this situation, personal jurisdiction is proper. *See id.* (citing *CompuServe, Inc. v. Patterson,* 89 F .3d 1257 (6th Cir.1996)). At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. *See id.* (citing *Bensusan Restaurant Corp., v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), aff'd, 126 F.3d 25 (2d Cir.1997)). In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."*Id.* (citing *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996)). We find that the reasoning of *Zippo* is persuasive and adopt it in this Circuit.

*11   *Id.* at 336.

Judge Parker found, in applying the *Zippo* framework to the facts in *Mink,* that "there was no evidence that [the defendant] conducted business over the Internet by engaging in business transactions with forum residents." *Id.* at 337. The website simply acted as a passive advertisement for the company, with

the only "interactivity" factor being that the defendant could respond to emails potential clients sent through the website. *Id.* He noted that many of the hallmarks of interactivity other courts had found important when determining specific jurisdiction, such as allowing customers to order products or services online, were not available on the defendants' website. *Id.* Instead, the website directed potential customers to remit completed order forms by regular mail or fax. *Id.*

Here, the undersigned notes that the R4C website cannot be firmly classified as a passive, advertisement-only website. As in *Mink,* the website includes several different ways that potential clients can interact with R4C: there is a "live chat" option, and the site also prominently displays a telephone number and email address for interested potential clients who want to learn more about R4C.[68] Potential clients can also fill out applications online.[69] Based on the plaintiffs' allegations, Mr. Gatte obtained R4C's contact information through this website, and also filled out application/screening documents through the website.[70] A factor which strongly tips this inquiry toward a finding of interactivity is that the website allows clients to make down payments to R4C through the website.[71] While it is unclear whether Mr. Gatte actually made his down payment for the surgery online, the ability to pay for services or goods through a defendants' website is an important factor in determining whether specific jurisdiction exists. *See Tempur–Pedic Intern., Inc. v. Go Satellite, Inc., 758 F.Supp.2d 366, 373 (N.D.Tex.2010)* (holding that specific jurisdiction existed in Texas because a website "permits shipping to Texas and enables Texas residents to pay for an purchase products online"); *but see Percle v. SFCL Foods, Inc., 356 F.Supp.2d 629, 638 (M.D.La.2004)* (holding that specific jurisdiction did not exist because "the website does not allow consumers to order or purchase products or services online ..."). Thus, the website's interactivity cuts in favor of finding specific jurisdiction.

### B. Traditional Contacts

While the R4C website lean in favor of a finding of specific jurisdiction, the undersigned notes that the traditional contacts are more important to the inquiry in this case, as this case is distinguishable from *Mink* and its progeny. This is so because in cases like *Mink,* the gravamen of parties' causes of action result purely from activities conducted on websites. For example, in *Mink,* the plaintiff's cause of action arose out of the defendants violating a program developer's copyright and selling an identical product to the plaintiff's for financial gain. *Mink,* 190 F.3d 335. The defendants advertised the product

on their website. *Id.* Here, while the plaintiffs allege that the R4C defendants misled Mr. Gatte into undergoing surgery through their website, the fact remains that the gravamen of the complaint concerns activities that happened in Mexico. Mr. Gatte was allegedly induced by the defendants to travel to Mexico for his surgery, and ultimately, it was the alleged medical malpractice of doctors in Mexico which led to his demise.

**\*12** Turning to the traditional contacts cited by the plaintiffs, they mainly center around Mr. Gatte's phone and email conversations with the R4C defendants with various R4C agents. The R4C agents, in their emails, primarily discuss travel arrangements, and also advise Mr. Gatte to a limited extent on different weight loss surgeries, offering testimonials on how well Mexican weight loss surgery has worked for them and other clients.[72] In their briefs, the plaintiffs also place a significant amount of emphasis on the fact that Mr. Gatte also paid for both of his surgeries while in Louisiana.[73]

The Fifth Circuit's decision in *Stuart v. Spademan, 772 F.2d 1185 (5th Cir.1985)* sheds some light on whether these communications between a non resident defendant and a resident plaintiff are sufficient to constitute minimum contacts. In *Spademan,* Texan residents brought an action in the Northern District of Texas to recover damages for breach of contract against a nonresident defendant in the Northern District of Texas. *Id.* at 1187. The defendant was a ski designer who resided in Nevada. *Id.* at 1188. Initially, the Texan residents contacted the Nevadan defendant to send him some design improvements (namely, improvements to the ski's bindings) to the defendant's ski. *Id.* After subsequent negotiations by letter and telephone, the Texan plaintiffs assigned the patent to the Nevadan defendant, with the defendant to pay "royalties" to the plaintiffs in return. *Id.* When the defendant stopped making payments to the plaintiffs, they filed suit, and the defendant filed a motion to dismiss for lack of personal jurisdiction. *Id.* at 1189.

Chief Judge Randall found that Texas did not have personal jurisdiction over the Nevada defendant. First, she cited the benchmark Supreme Court case, *Burger King* to support the premise that an individual's contract with an out-of-state party alone does not automatically establish sufficient minimum contacts in the other party's forum. *Id.* at 1193. Applying the *Burger King* reasoning to the facts in *Spademan,* Judge Randall noted that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity

invoking the benefits and protection of the forum state's laws." *Id.* Addressing the plaintiffs' argument that personal jurisdiction should attach because the Nevada defendant mailed checks to them in Texas, Judge Randall noted that "[t]he agreement to mail payment checks into the forum state does not weigh heavily in the calculus of contacts ... Hence, [the defendant's] mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state." *Id.* at 1194.

Here, while some of the contact is the inverse of the events in *Spademan,*[74] Mr. Gatte and the defendants' activities while Mr. Gatte was in Louisiana are sufficiently analogous to come to the same conclusions on specific jurisdiction as in *Spademan.* Mr. Gatte exchanged information with R4C agents, who advised him where he should have his surgery done, made representations about the safety of the procedure, and set up his travel to Mexico.[75] In return, Mr. Gatte made a down payment to R4C. and later paid for his surgery by sending a check to Clinica Victoria.[76] While the plaintiffs do not style their cause of action as a breach of contract action against the R4C defendants, that is exactly what it appears to be: the R4C defendants' liability turns on their express written and oral representations to a client on the safety of a service. Just as in *Spademan,* the fact that Mr. Gatte resided in Louisiana while the parties were entering into a "contract" is not determinative on whether specific jurisdiction is proper in Louisiana, particularly since this "contract" was ultimately carried out in Mexico when Mr. Gatte underwent his surgery. Further, just as in *Spademan,* as in this case, the fact that a person in Louisiana wrote a check to residents of Minnesota (the R4C defendants) and Mexico (the Clinica defendants) alone does not weigh heavily on the calculus of contacts. Assessing the totality of the defendants' contacts with Louisiana, the undersigned finds that they are insufficient to establish specific jurisdiction.

**\*13** Finally, the undersigned will address the plaintiffs' argument that jurisdictional discovery is necessary in order to flesh out the business relationship between the R4C defendants and the Clinica defendants.[77] As the undersigned finds that the court does not have personal jurisdiction over the R4C defendants, the plaintiffs' Motion to Stay Hearing and Briefing Deadlines to Conduct Discovery and Motion for Discovery are rendered futile. The plaintiffs' motions presuppose that the plaintiffs have made a prima facie showing of personal jurisdiction over the R4C defendants

(the parties who had much more contact with Mr. Gatte while he was in Louisiana), and further presupposes that, if jurisdictional discovery proceeded, it would prove a sufficient business relationship such that any jurisdictional findings on the R4C defendants could be bootstrapped to the Clinica defendants.[78] As the undersigned finds that the plaintiffs cannot meet the first requirement of proving their prima facie case for personal jurisdiction over the R4C defendants, further jurisdictional discovery on the relationship between R4C and the Clinica defendants would be futile, and thus the undersigned will not allow jurisdictional discovery to proceed.

### III. Traditional Notions of Fair Play and Substantial Justice

Finally, the undersigned notes that even if, through jurisdictional discovery, the plaintiffs could establish a prima facie case for specific jurisdiction, a finding of jurisdiction over these defendants would still offend traditional notions of fair play and substantial justice. For this portion of the inquiry, a court must evaluate several factors, including the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen, AAA* U.S. at 292, 100 S.Ct. at 564–65.

First, the burden on both the Clinica defendants and the R4C defendants would be substantial if this case proceeded in Louisiana. The R4C defendants conducted their business activities in Minnesota, and thus any and all witnesses and evidence would presumably be in Minnesota. The same is true of the Clinica defendants, although in Mexico instead. Second, the current forum state's interest in resolving this dispute is slight: this case, at its heart, is a medical malpractice cause of action involving Mexican doctors and a Mexican medical facility, and thus the controlling legal standard for many of the alleged torts would presumably arise out of Mexican law. Regarding the third factor, the plaintiff's interest in obtaining convenient and effective relief, it is true that it would be more convenient for the plaintiffs to litigate this case in Louisiana, since they are Louisiana residents, and thus this factor cuts in favor of finding personal jurisdiction. Turning to the fourth factor, the judicial system's interest in obtaining

the most effective resolution of controversies: if this case remains in Louisiana, it may continue to be stymied by the fact that many of the central defendants reside in a different country. Indeed, two of the Mexican defendants have still failed to make an appearance in this lawsuit. The final factor (the shared interest of the several states in furthering social policies) also cuts against a finding of jurisdiction since, as mentioned before, this is, at its heart, a medical malpractice cause of action against Mexican defendants, which will require the application and interpretation of Mexican law. Thus, the traditional notions of fair play and substantial justice prong of the jurisdictional inquiry also cuts against a finding of jurisdiction.[79]

**CONCLUSION**

**\*14**  For the reasons stated herein, the undersigned finds that this court lacks personal jurisdiction over the defendants. Accordingly, this case will be dismissed for lack of personal jurisdiction, the R4C defendant's motion will be granted, the Clinica defendants' motion will be granted, and the plaintiffs' motion to extend hearing/briefing deadlines in order to conduct discovery and motion to conduct discovery will be denied.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 123613

Footnotes

1    The lead case was subsequently consolidated with a later case the plaintiffs filed on March 2, 2012 in the 14th Judicial Court, Calcasieu Parish, against the same defendants (and one additional defendant, Dr. Brian Gamborg, whom the plaintiffs later voluntarily dismissed), alleging identical facts and identical legal arguments (case no. 2:12–0991). The second case was then removed to this court on April 24, 2012 [Doc. 1 in 2:12–0991]. In both the earlier case and the later case, the plaintiffs also asserted claims against six other defendants: Dr. Rafael Velasco Marin, Dr. Ezequiel Gamez Hinojosa, Dr. Hector Joadquin Perez Corzo, Ms. Guillermina Gamez, and Clinica Victoria. The plaintiffs voluntarily dismissed the six parties without prejudice from the earlier case on April 23, 2012 [Doc. 18 in 2:11–2083], but did not dismiss them from the second case, which was removed to this court a day later, on April 24, 2012. Not. of Removal, [Doc. 1 in case no. 2:12–0991]. This issue (the defendants being party to the second lawsuit but not the first) became moot when the undersigned granted the parties' joint motion to consolidate the two cases on October 30, 2012. Order on Joint Mot. to Consolidate, [Doc. 32 in case no. 2:11–2083].

2    As noted in footnote 1, the plaintiffs voluntarily dismissed the Clinica defendants on April 23, 2012 from the first lawsuit, case no. 2:11–2083 [Doc. 18 in case no. 2:11–2083]. The plaintiffs have not dismissed the Clinica defendants from the second lawsuit (case no. 2:12–0991), which this court subsequently consolidated with case no. 2:11–2083 on October 30, 2012, right after the Clinica defendants filed their motion to dismiss in the second case on October 6, 2012. The undersigned notes that two other defendants, Dr. Rafael Velasco Marin and Dr. Hector Joaquin Corzo (who are also Mexican defendants, like the Clinica defendants), have not made an initial appearance in this matter.

3    Based on the plaintiffs' briefs in this motion, it appears that the plaintiff filed the second case to cure a potential procedural defect with the service of process on Ms. Dohm, whom the defendants allege was fraudulently induced into coming to Louisiana by the plaintiffs to be served with process, under the ruse of Ms. Dohm delivering the deceased Mr. Phillip Gatte's ashes to the plaintiffs. *See* R4C Defs.' Mot. to Dismiss, [Doc. 22–1 in case no. 2:11–2083] at pg. 22; *see also* Pls.' Resp. to R4C Defs' Mot. to Dismiss, [Doc. 13 in case no. 2:12–0991], at pg. 10. The plaintiffs served Ms. Dohm pursuant to Louisiana's long arm statute in the second case. *See* "Letter of Reference" [Doc. 1–5 in case no. 12–0991]. As this alleged procedural defect was present only in the first case, and not the second, the undersigned will not address the fraudulent inducement/service of process issue brought up by the R4C defendants in their first motions to dismiss.

4    [Doc. 32 in case no. 2:11–2083].

5    Pl.'s Compl., [Doc. 1–5 in case no. 2:11–2083], at ¶ 5.

6    Pls.' Resp. to R4C Defs.' Mot. to Dismiss [Doc. 24 in case no. 2:11–2083], at pg. 3.

7    *See* Email Correspondence between Mr. Gatte, Ms. Dohm, and Ms. Smith, Ex. 2 to Pls.' Resp. To R4C Defs.' Mot. to Dismiss, [Doc. 24–2 in case no. 2:11–2083].

8    *Id.; see also* Aff. of Judy Dohm, Ex. to R4C Defs.' Mot. to Dismiss [Doc. 6–3 in case no. 2:11–2083].

9    Pls.' Mem. in Supp. of Mot. to Cont. Hr'g and Briefing Deadline or Alternative Mem. in Opp. To Clinica Defs.' Mot. to Dismiss, [Doc. 23–1 in case no. 2:11–2083] at pg. 4.

10    [Doc. 6–3 in case no. 2:11–2083]; *see also* Aff. of Dr. Ezequiel Gamez Hinojosa, Ex. to Clinica Defs.' Mot. to Dismiss, [Doc. 18–3 in case no. 12–0991] at pg. 4.

11    [Doc. 6–3 in case no. 2:11–2083].

12    Gatte Check for Dr. Gamez, Ex. C to Pls.' Resp. to Clinica Defs.' Mot. to Dismiss [Doc. 23–5 in case no. 2:11–2083].

13    [Doc. 1–5 in case no. 2:11–2083] at ¶ 21.

14    [Doc. 23–1 in case no. 2:11–2083].

15    [Doc. 22–1 in case no. 2:11–2083] at pg. 5.

16    *Id.* at pg. 6.

17    *Id.* at pg. 11.

18    *Id.* at pgs. 3–4.

19    In their motion to dismiss filed in the second case (2:12–0991), the R4C defendants briefly address the fact that the plaintiffs allegedly fraudulently served Ms. Dohm in the first lawsuit, but do not go into depth on fraudulent service of process like they did in their first motion to dismiss. Otherwise, their second motion to dismiss is nearly identical to the motion to dismiss filed in the first case. *See* R4C Defs.' Mot. to Dismiss, [Doc. 6–1 in case no. 2:12–0991]. *See* also Gatte Service Instructions, [Doc. 2–5].

20    *Id.* at pg. 18.

21    *Id.* at pg. 25.

22    Pls.' Mem. in Opp. to R4C's Mot. to Dismiss [Doc. 13 in case no. 2:12–0991], at pg. 4.

23    [Doc. 24 in case no. 2:11–2083] at pg.8.

24    [Doc. 13 in case no. 2:11–0991] at pg. 4.

25    [Doc. 24 in case no. 2:11–2083] at pg. 7.

26    *Id.* at pg. 5.

27    *See* [Doc. 2–5 in case no. 2:11–2083].

28    R4C Defs.' Resp. Mem. to Pls.' Mem. in Opp. To Rule 12(b)(6) Mot., [Doc. 25 in case no. 2:11–2083] at pg. 1

29    *Id.* at 2. The R4C defendants attached as exhibits emails back and forth from Mr. Gatte and Ms. Dohm and an affidavit from Ms. Dohm, which they argue both indicate that Mr. Gatte was the one who sought out R4C's help, and not the other way around. *See generally* [Docs. 25–1, 25–2, 25–3, 25–4, 25–5, 25–6 in case no. 2:11–2083].

30    *Id.*

31    *Id.*

32    Clinica Defs.' Mot. to Dismiss, [Doc. 20 in case no. 2:12–0991], at pgs. 6–7.

33    *Id.* at pg. 11.

34    *Id.* at pg. 15.

35    *Id.* at pg. 16.

36    *Id* at 20, 23.

37    Pls.' Mot. To Continue Hr'g and Br. Deadlines to Conduct Disc, or in the Alternative Pls.' Mem. in Opp. to Clinica Defs.' Mot. to Dismiss [Doc. 29–1 in case no. 2:11–2083] at pg. 3.

38    *Id.* at pg. 6.

39    *Id.* at pg. 9.

40    *Id.* at pg. 11.

41    Clinica Defs.' Resp. in Opp. To Pls.' Mot. to Continue Hr'g and Briefing Deadline on Defs.' Mot. to Dismiss to Allow Disc. and Alt. Reply to Pls.' Resp. Mem., [Doc. 25 in case no. 2:11–2083], at pg. 2.

42    *Id.* at pgs. 2–3.

43    *Id.* at pgs. 7–8.

44    Pls.' Sur-reply to Clinica Defs.' Opp. Mem., [Doc. 35–1 in case no. 2:11–2083], at pg. 1.

45    *Id.*

46    *Id.* at 2.

47    *Id.*

48    [Doc. 13 in case no. 12–0991], at pgs. 7–8.

49    *Id.* at pg. 8.

50    [Doc. 6–1 in case no. 2:11–0991], at pg. 4.

51    *Id.* at pg. 6.

52    *Id.*

53    *Id.* at pg. 7.

54    [Doc.23–1 in case no. 12–0991], at pg. 12.

55    *Id.*

56    *See id.*

57    *Id.*

58    Statement of Dr. Gamez, Ex. 2 to Clinica Defs.' Mot. to Dismiss, [Doc. 18–3 in case no. 12:–0991].

59    "Website Printout," Ex. A to Pls.' Resp. to R4C Defs.' Mot. to Dismiss, [Doc. 13–1 in case no. 2:12–0991].

60    [Doc. 29–1 in case no. 2:11–2083], at pgs. 4–5.

61    [Doc. 23–1] at pg. 9.

62    Aff. of Judy Dohm, Ex. to R4C Defs.' Mot. to Dismiss, [Doc. 6–3].

63    [Doc. 13 in case no. 2:12–0991], at pg. 3.

64    [Doc. 23–1 in case no. 2:12–0991] at pg. 9.

65    *Id.*

66    *Id.*

67    *Id.* at pg. 4.

68    [Doc. 13–1 in case no. 2:12–0991].

69    *Id.*

70    [Doc. 13] at pg. 5.

71    *Id.*

72    [Doc. 13–2 in case no. 2:12–0991].

73    [Doc. 23–1 in case no. 2:12–0991], at pgs. 8–9.

74    For example, instead of the defendant mailing a check to the forum state like in *Spademan,* here, the check is being mailed from the forum state by the plaintiff.

75    *See generally* [Doc. 1–5 in case no. 2:11–2083].

76    [Doc. 23–1 in case no. 2:12–0991], at pg. 9.

77    [Doc. 23–1 in case no. 2:12–0991]; [Doc. 36 in case no. 2:11–2083].

78    *See generally id*

79    As this court lacks personal jurisdiction over this cause of action, the undersigned will not address the defendants' remaining 12(b)(6), venue, and forum non conveniens arguments.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

GNL Ridglea, LLC v. Guang Dong Hailea Group Co., Ltd., Not Reported in Fed. Supp...
Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 175 of 236   PageID 12382
2018 WL 5259657

2018 WL 5259657
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

GNL RIDGLEA, LLC, Plaintiff,

v.

GUANG DONG HAILEA GROUP
CO., LTD., et al., Defendants.

Civil Action No. 4:18-cv-00286-O-BP
|
Signed 10/05/2018

**Attorneys and Law Firms**

James D. Dendinger, Cozen O'Connor, Dallas, TX, for Plaintiff.

Stephanie D. Clouston, Nathaniel R. Lee, Alston & Bird LLP, Dallas, TX, for Defendants.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Hal R. Ray, Jr., UNITED STATES MAGISTRATE JUDGE

**\*1** Two groups of contested motions and a lone joint motion are before the Court in this product liability case concerning fire damage to property allegedly caused by a defective chiller and pump in a tropical fish tank. The first group consists of the 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Brief (ECF No. 7) and Appendix in Support (ECF No. 8) filed by Defendant Guang Dong Hailea Group Co., Ltd. ("Hailea") on May 7, 2018; the Response to Hailea's Motion (ECF No. 15) and Affidavit of Nick Sranske (ECF No. 16) filed by Plaintiff GNL Ridglea, LLC ("GNL") on May 29, 2018; Hailea's Reply in Support of its Motion to Dismiss (ECF No. 19) and Motion to Strike Nick Sranske's Affidavit (ECF No. 18) filed on June 12, 2018; GNL's Response to Hailea's Motion to Strike (ECF No. 21) filed on July 3, 2018; and Hailea's Reply in Support of its Motion to Strike (ECF No. 22) filed on July 17, 2018. The second group includes the Motion to Intervene and Memorandum Brief in Support (ECF No. 12) filed on May 22, 2018 by would-be Intervenor Plaintiff Central Garden and Pet Company

("Central Garden"); Central Garden's Motion for Leave to File Response in Opposition to Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Leave to Conduct Discovery on Jurisdictional Issues and Memorandum Brief (ECF No. 14) filed on May 29, 2018; and Hailea's Response in Opposition to Central Garden's Motion to Intervene (ECF No. 17) filed on June 12, 2018. The last motion is the parties' Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's Motion to Dismiss (ECF No. 25) filed on September 4, 2018.

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 7), **DISMISS WITHOUT PREJUDICE** GNL's Amended Petition (ECF No. 1-6), and **DENY AS MOOT** Central Garden's Motion to Intervene (ECF No. 12) and Motion for Leave to File Response in Opposition to Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Leave to Conduct Discovery on Jurisdictional Issues (ECF No. 14), Hailea's Motion to Strike (ECF No. 18), and the parties' Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 25).

**I. BACKGROUND**

GNL is a Texas limited liability company with its principal place of business in Richardson, Texas. (ECF No. 1-6 at 1). GNL owns and manages a building located at 6300 Ridglea Place in Fort Worth, Texas (the "Property"). (*Id.*). On March 26, 2015, a fire occurred in an office space at the Property that allegedly was caused by a defective Oceanic-brand chiller and pump for a tropical fish tank. (*Id.* at 2-3). GNL alleges that Hailea manufactured the chiller and pump. (*Id.* at 3). In its amended petition filed in the 153rd Judicial District Court of Tarrant County, Texas and removed to this Court, GNL alleges that it suffered fire damage to the Property and loss of business income, totaling approximately $730,197.53. (*Id.* at 2). GNL seeks to recover from Hailea under negligence and product liability theories. (*Id.* at 3-5). GNL also alleges that an unknown defendant, "John Doe," may have manufactured the chiller and pump. (*Id.* at 2).

**\*2** Hailea denies that it placed the chiller and pump at issue into the stream of commerce in Texas and, moreover, denies any contact with Texas. (ECF No. 7 at 15). In the Appendix attached to its Motion to Dismiss (ECF No. 8), Hailea filed the declaration of Jinye Yu, its Export Department Manager.

*(Id.* at 5-14). The translated version of the declaration states the following jurisdictional facts concerning Hailea:

1. Its principal place of business is in China, and it "has never had any offices or factories outside China." (*Id.* at 5).

2. It "is not a resident of Texas," "never purposefully availed itself of the privileges and benefits of Texas law," "never engaged in any business activities in Texas," and has not "engaged in activities with an intent to invoke or benefit from the protections of Texas's laws." (*Id.*).

3. It "has never had any employees or offices in Texas" nor have its "employees, shareholders, officers, and directors" ever "traveled to Texas for business-related activities." (*Id.* at 6).

4. In Texas, it has not "owned, leased, or rented property;" had "an address, business records, a telephone or fax number, or a bank account;" held a meeting of its directors or shareholders; filed suit in court; had a court exercise personal jurisdiction over it; "consented to jurisdiction in any court;" filed an income tax return or paid state or local taxes; "marketed, advertised, or promoted" its products; or had a registered agent or been authorized to do business. (*Id.*).

5. It "does not know if any of its products have ever been sold in Texas," but it has "never shipped any products to Texas." (*Id.* at 7).

Hailea sells its products to distributors or other companies, not to individual consumers. (*Id.* at 6). It has Original Equipment Manufacturer ("OEM") clients for whom it manufactures products, who in turn "label, market, distribute, and sell the products as their own." (*Id.*). OEM clients "are responsible for arranging shipping, and shipments are generally done F.O.B., such that liability passes to the OEM clients upon pickup for transport in China and the OEM client is responsible for all shipping." (*Id.*). Hailea has no "control over where or to whom" its OEM customers in the United States sell products, and it has no "exclusive distribution agreement with any United States OEM client or company." (*Id.*). Although it has OEM clients in the United States, its distributors and OEM clients are not located in Texas. (*Id.*).

Hailea denies that it ever manufactured Oceanic pumps, as alleged in GNL's complaint, but it does concede that it manufactured Oceanic chillers for IEI Company Limited ("IEI"), an OEM client located in Hong Kong, and sold them to IEI on an F.O.B. basis. (*Id.* at 6, 9). Hailea denies knowing where IEI sold or shipped the Oceanic chillers. (*Id.* at 6). Hailea denies any business relationship with IEI other than as manufacturer and OEM client. (*Id.* at 8-9). Hailea seeks dismissal for lack of personal jurisdiction, relying on *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F.Supp.2d 501, 508-09 (N.D. Tex. 2014), a similar case in which Judge Boyle dismissed a Chinese manufacturer of allegedly defective plumbing supplies.

In its Response to Hailea's Motion, GNL offers no evidence of jurisdictional facts of its own, but instead relies on the stream of commerce information provided by Hailea's and Central Garden's pleadings. (ECF No. 15 at 1). GNL argues that Hailea should have foreseen that its Oceanic chillers could end up in the stream of commerce in Texas because "it provided the Chiller at issue to IEI ... and Hailea did not limit where its Oceanic Chiller could be sold." (*Id.* at 10). GNL further argues that because Hailea has OEM clients in the United States, albeit not in Texas, the Court is able to exercise personal jurisdiction over Hailea. (*Id.*). GNL seeks to distinguish *Interline Brands* because there was no direct proof in that case that any of the manufacturer's products were ever purchased in Texas. Here, there is evidence, objected to by Hailea, that the allegedly defective Oceanic chiller at issue was purchased in Texas. (*See* ECF No. 16.). GNL argues that it would not be against notions of fair play and substantial justice for the Court to exercise personal jurisdiction over Hailea. (*Id.* at 11).

**\*3** In addition to GNL's and Hailea's pleadings on the jurisdictional issue, Central Garden moved to intervene as a plaintiff and sought leave to respond to Hailea's Motion to Dismiss. (ECF Nos. 12, 14). Central Garden asserts in its Motion to Intervene that it distributed the Oceanic chiller at issue and is an interested party. (ECF No. 12 at 1). Central Garden further asserts that it wished to pursue statutory defenses and indemnity claims against Hailea. (*Id.*). Central Garden asserts that the Court could exercise specific personal jurisdiction over Hailea because Hailea delivered the Oceanic chiller at issue into the stream of commerce with knowledge or reason to know or expect that this product would wind up in Texas. (ECF No. 14 at 13-14). Alternatively, Central Garden requests that the Court delay ruling on Hailea's Motion to Dismiss until the parties can conduct discovery on the jurisdictional issue. (*Id.* at 16-17).

Lastly, the parties filed a Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 25).

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

A court has personal jurisdiction over a foreign defendant if the forum state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Captain Manjit Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ). Texas' "long-arm statute extends to the limits of federal due process." *Id.* Thus, the Court has to conduct a two-step inquiry that "collapses into one federal due process analysis." *Id.* Due process requires that the defendant have minimum contacts with the forum state (*i.e.*, that the defendant "purposely availed himself of the benefits and protections of the forum state") and that exercising jurisdiction would be consistent with "traditional notions of fair play and substantial justice." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) ).

When a defendant has minimum contacts with the forum state, a court may exercise specific or general personal jurisdiction over the defendant. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Exercising specific personal jurisdiction over a defendant is appropriate when the defendant's "contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) ). A defendant must purposely avail itself of the benefits and privileges of the forum state for that state to exercise specific personal jurisdiction over the defendant. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008).

"[A] court may assert general [personal] jurisdiction over [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). Extensive contacts between a foreign defendant and the forum are required for general personal jurisdiction to be present. *Johnston*, 523 F.3d at 609. "Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general

jurisdiction." *Id.* at 609-10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) ).

If a plaintiff establishes that minimum contacts exist between the forum state and a defendant, "the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Captain Manjit Sangha*, 882 F.3d at 102 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ). A court must conduct a five-factor analysis to determine the fairness and reasonability of exercising jurisdiction over a defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). These factors are the: (1) burden on the nonresident defendant of having to defend itself in the forum; (2) forum state's interests in the case; (3) plaintiff's interest in obtaining convenient and effective relief; (4) interstate judicial system's interest in the most efficient resolution of controversies; and (5) shared interests of the states in furthering fundamental social policies. *Id.*; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

**\*4** Lastly, dismissal without prejudice is appropriate if the Court determines that it lacks personal jurisdiction over the defendant. *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 665 (5th Cir. 2004) ("The district court's ruling on personal jurisdiction did not address the merits ..., and, as a result, the claim ... should have been dismissed without prejudice for filing in an appropriate forum.").

### B. Motion to Intervene

Federal Rule of Civil Procedure 24(a) permits a party to seek intervention as of right while Rule 24(b) allows for permissive intervention. Fed. R. Civ. P. 24. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) ). "Federal courts should allow intervention where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cr. 1994) (internal quotation marks omitted).

A court may grant a plaintiff-intervenor's motion to intervene as of right if the intervenor satisfies a four-prong test:

(1) the application ... must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must

be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas*, 805 F.3d at 657 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) ).

A district court has complete discretion on whether to allow permissive intervention even if there is a common question of law or fact, or the requirements of Rule 24(b) are satisfied. *In Re Greyhound Secs. Litig.*, 1997 U.S. Dist. LEXIS 23051, at *7-9 (N. D Tex. Aug. 15, 1997). When deciding whether to permit intervention, the court should consider whether intervention will unduly delay the proceedings or prejudice existing parties. Fed. R. Civ. P. 24(b). Although intervention is not always improper after a case has been dismissed, it may be improper if a court ultimately determines that it is untimely. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016).

### C. Jurisdictional Discovery

District courts have broad discretion regarding whether to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283-84 (5th Cir. 1982). A party's request to conduct jurisdictional discovery should be granted if it makes a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A party seeking discovery on personal jurisdiction matters should identify the discovery needed, facts expected to be obtained, and how such information would support personal jurisdiction. *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, 2012 WL 114980, at *7, 2012 U.S. Dist. LEXIS 4192, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ). A court can deny leave to conduct jurisdictional discovery when the movant fails to specify the facts it believes discovery would uncover and how these facts would support personal jurisdiction. *Id.*; *see also King v. Hawgwild Air, LLC*, 2008 WL 2620099, at *8, 2008 U.S. Dist. LEXIS 49887 at *8 (N.D. Tex. June 27, 2008). But, "when the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly*, 213 F.3d at 855 (internal quotation marks omitted).

### III. ANALYSIS

### A. Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction Should be Granted.

**\*5** Judge O'Connor should grant Hailea's Motion to Dismiss for Lack of Personal Jurisdiction because the evidence presented shows that Hailea had no contact with Texas other than the presence of one Oceanic fish tank chiller that allegedly caused the fire at issue. This fact alone is insufficient for the Court to exercise either specific or general personal jurisdiction over Hailea.

### 1. Specific Personal Jurisdiction

Texas' "long-arm statute extends to the limits of federal due process." *Captain Manjit Sangha*, 882 F.3d at 101; *Johnston*, 523 F.3d at 609. Federal due process requires that Hailea have minimum contacts with the state of Texas. *Id.* (quoting *Wilson*, 20 F.3d at 647). Additionally, the exercise of jurisdiction must be consistent with traditional notions of fair play and substantial justice. *Id.* The Court is not satisfied that these two requirements have been met for it to exercise specific personal jurisdiction over Hailea.

Hailea does not currently sell or supply products to distributors or companies located in Texas, nor has it done so in the past. (ECF No. 7 at 7). Hailea only supplied Oceanic chillers, like the one that allegedly caused the fire at issue, to IEI, its OEM customer in Hong Kong. (*Id.* at 8). Hailea did not know where IEI sold or shipped the Oceanic chillers or if any were ever shipped to Texas. (*Id.*). It did not have control over where or to whom IEI sold these products. (*Id.*). Although Hailea does have OEM clients in the United States, its clients and distributors are not located in Texas. (*Id.* at 7). Even if they were, Hailea has no control over the clients' labeling, marketing, distribution, and sales. (*Id.*). These facts show that Hailea has no minimum contacts with Texas.

Moreover, GNL does not assert any facts to the contrary that could establish that Hailea does have minimum contacts with Texas. For instance, GNL conceded in its petition that it "believed" Hailea was the manufacturer of the Oceanic chiller at issue but did not know for certain. (ECF No. 1-3 at 4). GNL asserted that it is relying on a stream of commerce theory to establish that Hailea had minimum contacts with the state of Texas because it did not purchase the Oceanic chiller directly from Hailea. (*Id.* No. 15 at 4). This assertion bolsters Hailea's declaration that it never sold Oceanic chillers directly to any

clients in Texas, which further establishes that Hailea does not have minimum contacts with Texas.

GNL rests its jurisdictional argument on a stream of commerce theory and the foreseeability that a product sold in China might travel to Texas. GNL asserts that Hailea should have foreseen that its Oceanic chillers could end up in the stream of commerce in Texas because it sold the chiller to IEI and "did not limit where its Oceanic Chiller could be sold." (*Id.* at 10). But, the connection between Hailea's selling or supplying the allegedly defective Oceanic chiller to IEI and that chiller winding up in a Texas office building and catching fire is too attenuated for Hailea to have foreseen such a chain of events.

GNL's description of its stream of commerce theory that supposedly brought the Oceanic chiller at issue from Guangdong Province, China to Fort Worth, Texas illustrates the point. Hailea manufactured the allegedly defective Oceanic chiller to IEI's order and sold it to IEI on an F.O.B. basis. IEI then sold it to Central Garden (without Hailea's involvement in or control over the transaction), and the chiller traveled through one of several United States ports. (ECF No. 16 at 2-3). From there, the chiller was shipped to Central Garden's warehouse in Wisconsin and then to Dallas, Texas to one of Central Garden's distribution centers in the United States. (*Id.* at 3). From there, the chiller was shipped to Franks Tanks & Maintenance in Fort Worth, which then sold it to David Byrd of Accurate, the lessee of the office space that caught fire. (*Id.* at 3-4). Between Hailea's manufacture of the chiller to IEI's specifications and the fire at issue were six intervening transactions that brought the chiller from China to Fort Worth. Based on the evidence presented, Hailea did not know or have reason to know that by selling or supplying the allegedly defective Oceanic chiller to IEI, that chiller would be sold to someone in Texas and that Hailea would be hailed into this Court.

 **\*6** The undersigned agrees with Hailea that Judge Boyle's decision in *Interline Brands* is instructive here. In that subrogation case, a Chinese company manufactured plumbing products that it sold to distributors. 997 F.Supp.2d at 504. The Chinese manufacturer never sold its products directly to consumers, but often shipped its products to a United States distribution center in Nashville, Tennessee. *Id.* As a result, the products were sold for use in residential construction in Texas and allegedly caused water-related property damage to three of thirteen Texas residences at issue in that case. *Id.* Judge Boyle granted the manufacturer's

motion to dismiss for lack of personal jurisdiction because the Court could not infer that the defendant knowingly benefitted from the Texas market in the sale of its plumbing products. *Id.* at 508. The Court reasoned that it was not foreseeable that the Chinese manufacturer's products would be sold or supplied to Texas residents. *Id.* at 509. Consequently, specific personal jurisdiction did not exist, and in the absence of general personal jurisdiction, the Court granted the manufacturer defendant's motion to dismiss. *Id.* at 508-510.

The facts here are analogous to those in *Interline Brands*. Like the defendant there, Hailea is also a Chinese manufacturer that sells its products directly to distributors and companies as opposed to consumers. (ECF No. 7 at 7). Here, however, Hailea sold its Oceanic chillers to IEI, a Chinese OEM client not located in the United States. (*Id.* at 8). If one of Hailea's Oceanic chillers was defective and allegedly made its way to a Texas office space and caused a fire, it was due in no part to Hailea purposely availing itself of the Texas market or the benefits of Texas laws. Even more, Hailea was not aware that IEI was selling or supplying its Oceanic chillers to United States companies and distributors unlike the manufacturer in *Interline Brands* that knew its products were supplied to a United States distribution center in Nashville, Tennessee. If the Court refused to exercise specific personal jurisdiction over the Chinese manufacturer on those facts, then the exercise of specific personal jurisdiction over Hailea, which had less knowledge or reason to know that its chillers would wind up in Texas, is not warranted.

## 2. General Personal Jurisdiction

For the Court to exercise general personal jurisdiction over Hailea, its contacts with Texas must be "so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations*, 564 U.S. at 919, 131 S.Ct. 2846. As shown above, the evidence presented shows a lack of contacts between Hailea and Texas. Hailea is at home in China, but not in Texas. In the absence of continuous and systematic contacts, the Court cannot exercise general personal jurisdiction over Hailea.

Because Hailea has proven that it did not have sufficient contacts with Texas to support the exercise of either specific or personal jurisdiction, the undersigned recommends that Judge O'Connor grant Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and dismiss GNL's petition without prejudice.

**B. Central Garden's Motion to Intervene Should be Denied as Moot.**

Central Garden moved to intervene as of right, or in the alternative, permissively under Federal Rule of Civil Procedure 24. (ECF No. 12). In applying the four-prong test mentioned previously, the undersigned ordinarily would recommend that Judge O'Connor grant Central Garden's Motion to Intervene. This is because Central Garden timely filed its motion before discovery had commenced and did not seek to delay or reconsider phases of the litigation that had already concluded. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Additionally, Central Garden has a legally protectable interest relating to this lawsuit because it seeks indemnification from Hailea. (ECF No. 12 at 1). The disposition of this case could also lead to Central Garden's indemnity claims and statutory defenses being foreclosed, or at the very least, impeded. Having concluded that Central Garden does have legally protectable interests that may be impaired by this lawsuit, the Court is satisfied that Central Garden met its burden to demonstrate inadequate representation unless the Court permitted it to intervene.

**\*7** The undersigned considered Central Garden's Motion to Intervene and supporting Brief (ECF No. 12) and its Motion for Leave to Respond to Hailea's Motion to Dismiss and the proposed Response to Hailea's Motion to Dismiss (ECF No. 14). Neither these pleadings nor the evidence and exhibits attached to them alter the analysis of Hailea's 12(b)(2) Motion to Dismiss and the undersigned's conclusion that personal jurisdiction over Hailea is lacking in this case. Because the Court lacks personal jurisdiction over GNL's claims against Hailea, the same jurisdictional defect applies to Central Garden's proposed Complaint in Intervention (*Id.* No. 12-1). Accordingly, Judge O'Connor should dismiss Central Garden's Motion to Intervene (ECF No. 12) as moot.

Likewise, Central Garden's Opposition to Hailea's Motion to Dismiss and alternative request for leave to conduct jurisdictional discovery (*id.* at 14) should be dismissed as moot. As with GNL, Central Garden has failed to make a "preliminary showing of jurisdiction," and for that reason Central Garden's request for jurisdictional discovery should not be ordered. *Fielding*, 415 F.3d at 429. Based on the evidence presented by Hailea, the undersigned recommends that Judge O'Connor dismiss GNL's suit. As a result, jurisdictional "discovery would serve no purpose and should not be permitted." *Kelly*, 213 F.3d at 855. Accordingly,

the undersigned recommends that Judge O'Connor deny Central Garden's Motion to Intervene and request to conduct jurisdictional discovery as moot.

**C. Hailea's Motion to Strike Should be Denied as Moot.** GNL submitted Sranske's Affidavit in support of its arguments that the Court could exercise personal jurisdiction over Hailea under a stream of commerce theory. (ECF No. 16). Sranske's Affidavit seeks to establish that Central Garden allegedly purchased the defective Oceanic chiller that caught fire from IEI, which ordered the product from Hailea. (*Id.* at 2). Hailea moves to strike the Affidavit because Sranske lacks personal knowledge to attest to multiple facts and because his testimony contains objectionable hearsay. (ECF No. 18). The undersigned agrees that the Affidavit is defective and objectionable, but even if the statements in the Affidavit were accepted as true, which the undersigned did for purposes of considering the pending motions, the evidence does not prove that the Court should assert personal jurisdiction over Hailea. Therefore, the undersigned recommends that Judge O'Connor deny Hailea's Motion to Strike Sranske's Affidavit as moot.

**D. The Parties' Joint Motion to Stay Discovery Pending the Court's Ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction Should be Denied as Moot.**

The parties filed a Joint Motion to Stay Discovery Deadlines Pending the Court's Ruling on Defendant's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 25). The undersigned has considered the motions, pleadings, and applicable law. Having recommended that Judge O'Connor dismiss this lawsuit without prejudice for lack of personal jurisdiction, the undersigned also recommends that the parties' Joint Motion to Stay Discovery be denied as moot.

**IV. CONCLUSION**

The undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DISMISS WITHOUT PREJUDICE** GNL's Amended Petition (ECF No. 1-6), **GRANT** Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 7), and **DENY AS MOOT** Central Garden's Motion to Intervene (ECF No. 12) and Motion for Leave to File Response in Opposition to Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Leave to Conduct Discovery on Jurisdictional Issues (ECF No. 14), Hailea's Motion to Strike (ECF No. 18), and the parties' Joint Motion to Stay

GNL Ridglea, LLC v. Guang Dong Hailea Group Co., Ltd., Not Reported in Fed. Supp....
2018 WL 5259657
Case 4:21-cv-00492-O   Document 108-1   Filed 06/28/21   Page 181 of 236   PageID 12388

Discovery Pending the Court's ruling on Hailea's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 25).

**\*8** A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.

An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on October 5, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5259657

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2373440
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

GUIDECRAFT, INC., Plaintiff,

v.

OJCOMMERCE, LLC, OJCommerce.com,
Inc., Naomi Home, Inc., Defendants,

Civil Action No. 2:18-CV-01247
|
Signed 05/20/2019

**Attorneys and Law Firms**

Richard W. James, Law Office of Richard W. James, Brett W. Farrar, Steven Y. Zoffer, Michael P. Flynn, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, for Plaintiff.

Shlomo Y. Hecht, Pro Hac Vice, Shlomo Y. Hecht PA, Miramar, FL, Devin Freedman, Pro Hac Vice, Boies Schiller Flexner LLP, Miami, FL, for Defendants.

ECF No. 30

**REPORT AND RECOMMENDATION**

Lisa Pupo Lenihan, U.S. Magistrate Judge

**I. RECOMMENDATION**

**\*1** It is respectfully recommended that the Motion to Dismiss (ECF No. 30) filed by Defendants OJCommerce, LLC, OJCommerice.com, Inc. and Naomi Home, Inc., be granted on the basis of lack of personal jurisdiction, and the Complaint be dismissed without prejudice. It is further recommended that the Motion to Transfer Venue be dismissed without prejudice.

**II. REPORT**

**A. Factual Background & Procedural History**
Plaintiff Guidecraft, Inc. ("Plaintiff") is a manufacturer of children's toys and furniture. Amended Compl. at ¶ 10 (ECF No. 26). Plaintiff is a New York Corporation with its place of business in Winthrop, Minnesota, and "since 1966 has been engaged in designing, manufacturing, marketing, and selling [their products] in this Judicial District and elsewhere, principally through resellers and internet sales." *Id.* at ¶¶ 1, 10.

Defendants OJCommerce, LLC, OJCommerce.com, Inc., and Naomi Home, Inc. (collectively, "Defendants") are Delaware corporations owned, operated, and controlled by the same individual, with their principal place of business in Miramar, Florida.[1] *Id.* at ¶¶ 2-4, 6. From 2012 to 2018, Defendants were resellers of three of Plaintiff's products: its KITCHEN HELPER® line of children's stools, its Step-Up children's stools, and its High-Rise Step-Up children's stools. *Id.* at ¶¶ 29, 30.

Plaintiff alleges that it terminated Defendants as its resellers for violations of Plaintiff's MAPP pricing policies. *Id.* at ¶ 34. Plaintiff alleges that after being terminated as its resellers, Defendants began to develop, market and sell infringing versions of these products "throughout the United States and within this Judicial District." *Id.* at ¶ 35. Plaintiff alleges that the sale of these stools is being done "on the Internet through Defendant OJCommerce.com's interactive website, which provides a link that consumers click on to purchase the infringing products, as well as through online retailer Amazon." *Id.* at ¶ 36-38.

Plaintiff filed the Amended Complaint on December 11, 2018. (ECF No. 26). Plaintiff asserts counts under the Lanham Act of Trademark Infringement, Unfair Competition and False Designation of Origin, and Trade Dress Infringement. Amended Compl. at ¶¶ 71-96 (ECF No. 26). In addition, Plaintiff asserts counts of Copyright Infringement, Common Law Unfair Competition, Tortious Interference with Business Relations, Unjust Enrichment, and violation of Pennsylvania's Trademark Dilution Law. *Id.* at ¶¶ 97-123. On January 15, 2019, Defendants filed joint Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), and a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). (ECF No. 30). With the filing of Plaintiff's Briefs in Opposition (ECF Nos. 34, 35), this Motion is now ripe for disposition.

For the reasons set forth below, the Court respectfully recommends that the Motion to Dismiss be granted as to all Defendants for lack of personal jurisdiction.

**B. Standard of Review**

**\*2** The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In responding to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Where, as here, an evidentiary hearing is not held on the 12(b)(2) motion, the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.' " *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (other citation omitted). In deciding a Rule 12(b)(2) motion, although the court must accept the plaintiff's allegations as true and resolves all doubts

in its favor, *D'Jamoos*, 566 F.3d at 102 (citing *Miller Yacht Sales, supra*), plaintiff may not rest solely on the pleadings to satisfy its burden of proof. *See Pinker*, 292 F.3d at 368; *Carteret Sav. Bank*, 954 F.2d at 146. Rather, the plaintiff must present evidence that demonstrates a prima facie case for the exercise of personal jurisdiction. *See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). If the plaintiff succeeds, the burden then shifts to the defendant to demonstrate that an exercise of personal jurisdiction by the forum state would violate due process, i.e., the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. *Miller Yacht Sales*, 384 F.3d at 97 (citing *Burger King*, 471 U.S. at 476).

**\*3** The district court is vested with broad discretion in determining whether transfer of venue is appropriate. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (citations omitted); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

**C. Discussion**

**1. Personal Jurisdiction**

Defendants argue that this Court has no personal jurisdiction over the parties. OJCommerce's Br. in Supp. Mot. to Dismiss ("OJCommerce Br.") at p. 1 (ECF No. 32). None of the parties are citizens of Pennsylvania, and none of the conduct is alleged to have substantially occurred in Pennsylvania. *Id.* Furthermore, none of the Defendants have sufficient contacts with Pennsylvania to justify exercising personal jurisdiction over them in this forum. *Id.* at p. 3. Specifically, Defendants argue that simply maintaining an online sales website is not enough to show that Defendants "purposefully directed" their activities at this forum, and not enough to establish personal jurisdiction. *Id.* (citing *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)). Plaintiff must establish that Defendants "repeatedly and consciously chose to process" Pennsylvania customers' orders, according to Defendants. *Id.* (citing *Hershey Co. v. Pagosa Candy Co.*, 1:07-CV-1363, 2008 WL 1730538, at \*7 (M.D. Pa. Apr. 10, 2008)). Defendants maintain that the allegations of selling the infringing products "throughout the United States" including the Commonwealth of Pennsylvania and "this Judicial District" are insufficient to show purposeful availment and thus would not make exercising jurisdiction "comport with traditional notions of fair play and substantial justice." *Id.* at pp. 2-3 (citing *Marten*,

499 F.3d at 296 (3d Cir. 2007); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Defendants would have to travel almost 1,200 miles from Broward County, Florida, where all the witnesses and evidence are located, to the Western District of Pennsylvania. *Id.* at p. 4. Likewise, Plaintiff's witnesses and evidence are located 1,000 miles away in Minnesota. *Id.* Lastly, Pennsylvania has essentially no interest in this case when the Plaintiff is not even a resident of this state, in contrast to the interest Minnesota or Florida would have. *Id.* at pp. 4-5.

In order for personal jurisdiction to exist over Defendants in the Western District of Pennsylvania, each Defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[2] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (other citations omitted). The minimum contacts requirement serves the purpose of "protect[ing] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted). This framework enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297. Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by " 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

**\*4** Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker,* 292 F.3d at 368). General jurisdiction applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action*, Pennzoil Prods. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted). In the instant matter, Plaintiffs submit that personal

jurisdiction exists over Defendants based solely upon specific jurisdiction. Amended Compl. at ¶ 10 (ECF No. 26); Pl.'s Br. in Opp. to OJCommerce ("Pl.'s Br. to OJCommerce") at p. 5 (ECF No. 34).

Specific personal jurisdiction requires the Court to conduct a three-part test. *D'Jamoos v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 102 (3d Cir. 2009). Initially, the court must determine whether the defendant has " 'purposefully directed' " its activities toward the forum state. *Id.* (quoting *Burger King Corp.,* 471 U.S. 462 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation.")))*. "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A.,* 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007)). Finally, if the plaintiff has established the first two elements, only then does the court proceed to the third part of the inquiry–whether the defendant's contacts with the forum state are such that maintenance of the action " 'does not offend traditional notions of fair play and substantial justice.' " *World-Wide Volkswagon,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316); *D'Jamoos,* 566 F.3d at 102. In this regard, the court of appeals observed:

> The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. [at 253]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir. 1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *O'Connor,* 496 F.3d at 317. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson,* 357 U.S. at 253.

*D'Jamoos,* 566 F.3d at 102-03. The inquiry under *D'Jamoos* must be applied to each claim and to each defendant independently.[3] *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy,* 238 F.3d 248, 255-56 (3d Cir. 2001)). Plaintiffs bear the burden of proof on the first two elements, and only if Plaintiffs meet this burden does the burden shift to Defendants to prove the third element. *Burger King,* 471 U.S. at 476-78.

In the context of operating a website and to what extent such a website subjects its owner to the jurisdiction of the state from where it is accessed, courts have looked to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) for guidance as to the nature of the website:

**\*5** [O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. [citation omitted]. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. [citation omitted].

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

In its Brief in Opposition, Plaintiff counters that Defendants are subject to the personal jurisdiction of this Court because they market and sell goods, including the infringing products, via the OJCommerce.com website, to consumers throughout the country, including Pennsylvania. Pl.'s Br. to OJCommerce at p. 7 (ECF No. 34). "The website allows users to select products, add them to their cart, and purchase them directly from the website. [citation omitted]. This is a clear representation that [Defendants] 'clearly do [ ] business over the Internet' as contemplated by the *Zippo* Court." *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). According to Plaintiff, having an interactive website that allows internet users to purchase directly from Defendants from anywhere in the country, as well as using Amazon.com to sell their products, come with "concomitant legal responsibilities" that constitute the minimum contact required as part of the jurisdictional analysis. *Id.* (citing

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458 JS ETB, 2012 WL 2001443, at \*1 (E.D.N.Y. June 4, 2012)).

The Court disagrees. While the commercially interactive nature of Defendants' website and its use of the Amazon site place Defendants' actions towards the more interactive end of the *Zippo* spectrum, Plaintiff has not met its burden of showing that Defendants made purposeful contact with the Western District of Pennsylvania.

The Court of Appeals articulated the controlling principle in determining whether websites are sufficiently interactive/commercial to show contacts directed to the forum:

As *Zippo [Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997)] and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Here, Plaintiff makes no allegations that could be construed as an action that purposefully targeted the Commonwealth of Pennsylvania on the part of Defendants. Plaintiff alleges that Defendant sells products "throughout the United States, including the Commonwealth of Pennsylvania ..." Amended Compl. at ¶¶ 37-38 (ECF No. 26). Plaintiff's argument in favor of this Court exercising personal jurisdiction boils down to the expectation that Defendants should be subject to jurisdiction anywhere in the United States where customers can access and purchase from the OJCommerce and Amazon websites, because they profit from the wide geographic reach of the internet. While the Court is cognizant of the benefits a business derives from being able to glean costumers thousands of miles away from the physical site of the business, such reach does not meet the definition of "purposeful availment" as interpreted by the Third Circuit, and neither does it satisfy the fairness inquiry. Plaintiff has not shown how Defendants knowingly made contact with Pennsylvania, or how it directly targeted its website toward Pennsylvania, other than through its commercial activities on the internet.

**\*6** Even if *arguendo* Defendants' internet activities met the first two prongs of the *D'Jamoos* test, subjecting them

to jurisdiction in this district would still not comport with traditional notions of fair play and substantial justice.

The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (quotation marks omitted), and "[t]he procedural and substantive interests of other nations." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

*O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 324 (3d Cir. 2007). Plaintiff argues that exercising personal jurisdiction in this context comports with notions of fair play and substantial justice, because "the very nature of internet sales means that the Defendants are likely to be subject to personal jurisdiction in districts in which it is not convenient for them to litigate, however, they must accept those responsibilities when they chose to do business in Pennsylvania." Pl.'s Br. to OJCommerce at p. 8 (ECF No. 34.)

Plaintiff also maintains that Pennsylvania has a significant interest in adjudicating this case as Plaintiff claims violations of Pennsylvania statutory and common law, and Pennsylvania has an interest in protecting its citizens from counterfeit products. *Id.* at p. 8. Plaintiff cites to *Telebrands Corp. v. Mopnado,* where the court found that the defendant purposefully availed itself of the privilege of doing business in New Jersey by selling its products through its Amazon storefront, even though the defendant is organized under Delaware law and has its principal office in California, with no physical presence of any kind in New Jersey. No. 14-07969, 2016 WL 368166, at *7 (D.N.J. Jan. 12, 2016). The court's reasoning in that instance was that the defendant was "intentionally using Amazon's vast, established infrastructure to sell and ship its products to consumers nationwide," and thus defendant took "advantage of Amazon's national presence" and purposefully availed itself of the privilege of doing business in New Jersey when it sold at least 626 units of its product to New Jersey. *Id.* However, the plaintiff in *Mopnado* was both headquartered and incorporated in New Jersey. *Id.* at * 8. Here, neither Plaintiff nor Defendants have any such relationship to Pennsylvania. Furthermore, as Defendants state in their brief, both parties' witnesses would have to travel more than 1,000 miles to the forum state,

making the interest Pennsylvania has in adjudicating this matter far less compelling. OJCommerce Br. at p. 4 (ECF No. 32.) As it would be a burden on Defendants to be subject to jurisdiction in this district, Pennsylvania's interest in the adjudication of this case is tenuous, and there is no compelling argument for Plaintiff to obtain convenient and effective relief in this district, the factors weigh against the Court's exercise of jurisdiction over Defendants.

*7 Accordingly, Plaintiff fails to show that Defendants purposefully directed their activities toward Pennsylvania, and moreover fails to show that any purported contact with Pennsylvania would allow the Court to exercise jurisdiction over Defendants in a way that comports with traditional notions of fair play and substantial justice. As a result, the Court finds that it lacks personal jurisdiction over Defendants. Therefore, it is respectfully recommended that Defendants' motion to dismiss under Rule 12(b)(2) be granted as to all Defendants and the claims against them be dismissed without prejudice.

## 2. Venue

Defendants also move to dismiss this action on the basis that venue in the Western District of Pennsylvania is improper. Pennsylvania is not Defendants' state of residence, nor is there an allegation that a substantial part of the events at issue took place in Pennsylvania. OJCommerce Br. pp. 5-6 (ECF No. 32). Defendants ask that the case be transferred to the Southern District of Florida as all Defendants reside there and at least two important witnesses for Defendant are independent contractors residing in Florida. Plaintiff's arguments in favor venue being proper are the same as to why personal jurisdiction is proper—this district is part of the entire geographic reach of Defendant's consumer market via their website and the Amazon website. Pl.'s Br. to OJCommerce at p. 9 (ECF No. 34).

Venue may lie in this judicial district if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" here, 28 U.S.C. § 1391(b)(2), or defendant is subject to personal jurisdiction and "there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b)(3). As the Court finds that it cannot properly exercise personal jurisdiction over Defendants, Plaintiff's chosen venue is improper. This is also true under 28 U.S.C. § 1391(b)(3), which provides for proper venue in "any judicial district

in which any defendant is subject to the court's personal jurisdiction with respect to such action." The Court finds that none of the provisions under § 1391 would allow this district to serve as a proper venue for the case at hand. As the Court has found that the exercise of personal jurisdiction over Defendants to be improper, it is respectfully recommended that Defendants' Motion to Dismiss under Rule 12(b)(3) be denied as moot.

Lastly, Defendants move to transfer venue to the Southern District of Florida under 28 U.S.C. § 1404(a). Mot. to Dismiss at ¶6(b) (ECF No. 30). Plaintiff argues that the Southern District of New York provides a more appropriate forum, should the Court consider transfer. Pl.'s Br. to OJCommerce at p. 13 (ECF No. 34). It argues that under the test set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), Defendants' choice of forum should not be given more weight than Plaintiffs, the fact that witnesses and records are located in Florida is not dispositive, and Plaintiff is a resident of the Southern District of New York. *Id.* at pp. 12-13.

Whether 28 U.S.C. § 1404(a) is applicable to transfers in the absence of personal jurisdiction is a matter of some controversy. There is, however, significant authority within the Third Circuit for application of § 1404(a) where venue is proper but where personal jurisdiction is lacking. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) *Gehling v. St. George's School of Medicine*, 773 F.2d 539 (3d Cir. 1985); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 164-65 (3d Cir. 1980) *rev'd on other grounds*, 434 U.S. 235 (1981). Where venue is improper *and* jurisdiction is lacking, as in the case at hand, courts look to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court has authority to dismiss a case with improper venue, or transfer venue for the sake of justice and judicial expediency despite the plaintiff's chosen venue being improper and there is a lack of personal jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The Third Circuit has restated the principles in *Goldlawr*:

> **\*8** *Goldlawr's* discussion of § 1406(a) acknowledges that dismissals will bar actions that are not refiled in the proper forum within the forum state's statute of limitations. By contrast, transfers, " 'in the interest of justice,' " "remov[e] whatever obstacles [that] may impede an expeditious and orderly adjudication of cases and controversies on their

merits." *Id.* at 466–67, 82 S.Ct. 913 (quoting 28 U.S.C. § 1406(a)).

*Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007). "Transfer in lieu of dismissal is generally appropriate to avoid penalizing plaintiffs by 'time-consuming and justice-defeating technicalities.' " *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 162 n. 11 (3d Cir. 2012) (quoting *Goldlawr*, 369 U.S. at 467). A transfer would be appropriate if is needed to overcome a bar by the statute of limitations. As Plaintiff indicates it would prefer transfer to the Southern District of New York if the court decides to transfer the case, the Court will analyze whether Plaintiff would be time-barred if it refiles the case in that court.

The statute of limitations for claims under the Lanham Act in the Southern District of New York is six years. *See Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 262 (S.D.N.Y. 2015) (finding that "the Lanham Act itself establishes no specific limitations period for unfair competition claims. [citations omitted] Therefore, a federal court must 'look[ ] to the most appropriate or analogous state statute of limitations.' [citations omitted] In this case, the most analogous state statute is New York's six-year statute of limitations for claims sounding in fraud."). According to Plaintiff, Defendants acted as Plaintiff's resellers from June 2012 to February 2018. Amended Compl. ¶ 29 (ECF No. 26). Plaintiff makes no allegations of any infringing activities on the part of Defendants during the period in which Defendants acted as Plaintiff's resellers. Thus, the Court presumes that Defendants began their illegal commercial activities after February of 2018. Plaintiff is well-within the statute of limitations period to refile its Lanham Act claims in the Southern District of New York. The same period applies to Plaintiff's common law unfair competition claim. *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 280 F. Supp. 2d 244, 258 (S.D.N.Y. 2003) (applying the six-year statute of limitations because defendants' behavior more closely resembles that of fraud rather than an injury to property, and thus finding that the Lanham Act is more analogous). In addition, Plaintiff's unjust enrichment claim also fall within the six-year period. *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years.")

Plaintiff's copyright infringement is subject to a three-year statute of limitations period in the Southern District of New York after the claim accrues. *Kregos v. Associated Press*, 3 F.3d 656, 661 (2d Cir. 1993) (citing 17 U.S.C. § 507(b).).

Plaintiff is within its limitations period for its copyright infringement claim. Plaintiff's tortious interference with business relations claims would also fall within a three-year statute of limitations period, and thus Plaintiff would not be time-barred as to that claim. *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 77 (S.D.N.Y. 1995) (applying three-year statute of limitations claim for tortious interference with contractual relations). Finally, a New York claim for trademark dilution analogous to the initial claim under Pennsylvania's trademark dilution law, whether under the Lanham Act or under New York Law, is also subject to a three-year period of limitation. *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000).

**\*9** Accordingly, it is respectfully recommended that the Motion to Transfer be denied. Plaintiff has ample time to refile the case in the Southern District of New York. The transfer provision under 28 U.S.C. § 1406(a) is not applicable in this instance. *See Greene v. Horry Cty.*, 650 F. App'x 98, 99 (3d Cir. 2016) ("[W]e are satisfied that the interests of justice did not require the District Court to transfer the action rather than dismiss it. After the District Court dismissed the complaint, Greene had ample time to refile in South Carolina within that state's three-year statute of limitations.").

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss be granted based on the lack of personal jurisdiction over Defendants. Furthermore, it is respectfully recommended that Defendants' Motion to Transfer Venue be denied without prejudice for Plaintiff to refile this matter in the venue of its choice.

In accordance with the Federal Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

**All Citations**

Slip Copy, 2019 WL 2373440

### Footnotes

1    As all three Defendants are corporate entities owned and controlled by the same individual, the Court will be understood to refer to all three when it refers to "Defendants."

2    The Due Process standard must be applied to each defendant. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)).

3    In this instance, there is no need to apply the inquiry independently to each defendant as there are no distinguishing factors among the three in terms of the jurisdictional analysis.

**End of Document**                                                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 5927591
Only the Westlaw citation is currently available.
United States District Court, W.D.
Texas, San Antonio Division.

MAVERICK WHISKEY, LLC, Plaintiff,

v.

BREWERY ON HALF MOON
BAY, INC., Defendant.

SA-19-CV-00136-JKP
|
Signed 11/12/2019

**Attorneys and Law Firms**

Charles W. Hanor, Hanor Law Firm, P.C. Hanor IP Law, San Antonio, TX, for Plaintiff.

Terry S. Sterling, Pro Hac Vice, Spaulding McCullough & Tansil LLP, Santa Rosa, CA, for Defendant.

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Jason K. Pulliam:**

ELIZABETH S. ("BETSY") CHESTNEY, UNITED STATES MAGISTRATE JUDGE

 *1  This Report and Recommendation concerns Defendant's Motion to Dismiss Based on Defective Service and Lack of Personal Jurisdiction [#23]. All non-dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#48] and Defendant's Motion to Dismiss was specifically referred for a report and recommendation [#49]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be **GRANTED**.

**I. Procedural and Factual Background**

Plaintiff Maverick Whiskey, LLC filed this action against Defendant Brewery on Half Moon Bay, Inc. seeking a declaratory judgment regarding its right to use the trademark "Maverick" and an injunction directing the United States Patent and Trademark Office ("USPTO") to cancel Defendant's trademark registration. Plaintiff alleges that Maverick Whiskey, a company owned by Kenneth Maverick, is named after Kenneth Maverick's great, great, great-grandfather, Samuel Augustus Maverick, a Texas rancher who refused to brand his cattle, made his own whiskey, and is responsible for the origin of the word "maverick" in the English lexicon. (Compl. [#1] at ¶¶ 28–44.) Kenneth Maverick started Maverick Whiskey in 2016 and filed a number of trademark applications, such as "Maverick Whiskey" and "Maverick Bourbon," in connection with his business. (Id. at ¶¶ 44–50.) The USPTO denied the applications and refused the registrations because Defendant, a business in Half Moon Bay, California, has owned a trademark registration for "Mavericks" for "beer and ale" and "wine" since 2002 and 2013, respectively. (Id. at ¶¶ 51–53.) Plaintiff alleges that Defendant's marks are named after Mavericks Beach, a surf destination next to Defendant's restaurant and brewery in Half Moon Bay, California—Half Moon Bay Brewing Company. (Id. at ¶¶ 77–82.)

Plaintiff believes Defendant's trademarks are invalid because Plaintiff was the first user of "Maverick" for whiskey and alleges it has been using the "Maverick" mark on its website, www.maverickwhiskey.com, since at least as early as May 2018 to advertise the sale of its products. (Id. at ¶¶ 61–63.) Plaintiff also contends that Defendant's marks, because they are named for a famous surfing beach adjacent to Defendant's property, are geographically descriptive and therefore prohibited from trademark registration under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2) (prohibiting registration of a mark that is primarily geographically descriptive of the goods or services named in the application. (Id. at ¶¶ 76, 85, 93–94.)

Plaintiff alleges that Defendant has threatened to sue Plaintiff for trademark infringement and unfair competition. (Id. at ¶¶ 56–61.) By this lawsuit, Plaintiff asks the Court to issue a declaratory judgment that Plaintiff's actions do not constitute trademark infringement, counterfeiting, false designation of origin, unfair competition, false advertising, or trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) or any other violation under state or federal law; that Plaintiff is entitled to the trademark registrations he seeks; and that the USPTO must cancel Defendant's registered marks.

**\*2** Plaintiff filed this lawsuit on February 14, 2019. After several attempts at service, service was purportedly returned as executed on May 17, 2019 [#15]. After obtaining an extension of time to respond or otherwise defend this suit, Defendant filed the motion currently before the Court, arguing for the dismissal of Plaintiff's Complaint for lack of effective service and lack of personal jurisdiction. The Honorable Fred Biery referred this case to the undersigned, and the Court granted various extensions to file responses and replies to the motion. The Court set the motion for a hearing; the parties moved for a continuance; and the Court ultimately held a hearing on September 20, 2019, at which both parties appeared through counsel. After the hearing, this case was reassigned to the docket of the Honorable Jason K. Pulliam and referred again to the undersigned.

After considering Defendant's motion, the responses, replies, and sur-replies thereto [#31, #40, #41, #42], the evidence submitted in support and in opposition to the motion, the arguments of counsel at the hearing, Plaintiff's post-hearing brief on personal jurisdiction [#46], Defendant's objections to Plaintiff's sur-reply and post-hearing brief [#43, #47], and the governing law the undersigned recommends that Defendant's motion to dismiss be granted and this case be dismissed for lack of personal jurisdiction.

Defendant moves for dismissal on two grounds: improper service and lack of personal jurisdiction. Although service was indeed defective, the undersigned finds it would be futile to reorder service to comply with the Federal Rules of Civil Procedure because Plaintiff has failed to establish a prima facie case of personal jurisdiction over Defendant. Accordingly, this case should be dismissed.

## II. Improper Service

Defendant contends that service was not sufficient or proper in this case because neither of the two summonses at issue was "directed to the defendant" as required by Rule 4(a)(1)(B). The record reflects that one of the summonses was directed to Christine Mendonca; the other was directed to Leonard Mendonca. (Summons [#14] at 1, 3.) Although both of these individuals are affiliated with Defendant, the address listed on the summonses is the personal address of the Mendoncas and not the address of Defendant, and the summonses do not indicate that either Christine Mendonca or Leonard Mendonca were served as representatives of

Defendant. (*See id.*) The summonses are directed at the Mendoncas as individuals. (*See id.*) Defendant asks the Court to conclude that process was insufficient under the Federal Rules of Civil Procedure and that the time for proper service has expired under Rule 4(m). *See* Fed. R. Civ. P. 4(m) (requiring service within 90 days of filing complaint).

Rule 12(b)(4) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss an action for defects in the form of the process. Such a motion "is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1353 (3d ed.). Rule 4(b) provides:

> On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served.

Fed. R. Civ. P. 4(b). Pursuant to Rule 4(a)(1), a summons must: (A) name the court and the parties and (B) be directed to the defendant, among other requirements. *Id.* at 4(a)(1). "Thus, process may be insufficient if the summons and complaint refer to a party in the wrong name." *Bowman v. Sanofi-Aventis U.S.*, No. A-09-CA-192-SS, 2009 WL 5083431, at *1 (W.D. Tex. Apr. 16, 2009). Plaintiff, as the serving party, bears the burden of proving the validity of service or good cause for failure to effect timely service. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990); *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980).

**\*3** Plaintiff's response to Defendant's motion to dismiss does not dispute that the summonses at issue were directed at the Mendoncas individually and not to Defendant. Yet Plaintiff maintains that directing the summonses to the Mendoncas, who are the founders of Defendant and current board members (as well as Christine Mendonca being Defendant's registered agent for service), was the only way to notice Defendant of this lawsuit, as Plaintiff's initial three attempts to serve summonses directed to "The Brewery on Half Moon Bay, Inc." and various corporate officers on behalf of Defendant at the address listed with the Secretary of State for California were unsuccessful. (*See* Summons [#4] at 1 (directing service at The Brewery on Half Moon Bay, Inc. at 390 Capistrano Road); Summons [#7] at 1 (directing

service at Craig Carroll for the Brewery on Half Moon Bay, Inc. at 390 Capistrano Road); Summons [#8] at 1 (directing service at Ken Pearlman for The Brewery on Half Moon Bay, Inc. at 390 Capistrano Road).) The Texas Secretary of State returned these three summonses as unexecuted for the stated reason: "Return to Send, Attempted—Not Known, Unable to Forward." (Ltr. [#9] at 1.) Plaintiff accuses Defendant of intentionally dodging service by illegally redirecting their mail to a U.S. Post Office Box, where the summonses were never claimed, in violation of California law. (Resp. [#31] at 2–3.)

Regardless of whether Defendant could legally designate a P.O. Box as its mailing address under California law, Plaintiff concedes that it did not direct the summonses that were ultimately served on the Mendoncas to Defendant as required by Rule 4(a)(1)(B). When process is insufficient, the Court has broad discretion to dismiss an action. *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013). Nonetheless, defects in the summons should generally not be a basis for dismissal unless the defects caused actual prejudice to the defendant. *Id.* Plaintiff argues there has been no prejudice to Defendant, as Defendant received actual notice of this lawsuit upon service to the Mendoncas, despite any defect in the summonses. Plaintiff therefore asks the Court to extend the time for service and order amended service under Rules 4(a)(2) and 4(m). Were it not for the issue of personal jurisdiction, discussed *infra*, the undersigned would be inclined to order replacement service as requested. However, because there is no personal jurisdiction over Defendant in this Court, reordering service would be futile and therefore is not recommended.

### III. Personal Jurisdiction

Defendant also moves for dismissal of Plaintiff's Complaint based on a lack of personal jurisdiction over Defendant. The Court should grant the motion.

#### A. Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides the mechanism for challenging personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where a non-resident defendant challenges personal jurisdiction, as here, the plaintiff bears the burden of making a *prima facie* showing of jurisdiction; the plaintiff need not establish jurisdiction by a preponderance of the evidence. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d

465, 469 (5th Cir. 2006). Once the plaintiff makes a *prima facie* case of personal jurisdiction, the burden shifts to the defendant to demonstrate that exercising jurisdiction over the defendant would be so unfair and unreasonable as to violate due process. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

A two-step analysis governs the inquiry into personal jurisdiction over nonresident defendants: (1) whether the long-arm statute of the forum state permits exercise of jurisdiction; and (2) whether such exercise comports with due process. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The Texas Supreme Court has interpreted the Texas long-arm provisions as conferring personal jurisdiction over nonresidents whenever consistent with constitutional due process. *Id.*; *see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Accordingly, this Court only need consider the latter inquiry. *Ham*, 4 F.3d at 415.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Due Process Clause permits a federal court to exercise personal jurisdiction "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant dos not offend 'traditional notions of fair play and substantial justice.' " *Latshaw v. H.E. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether the exercise of personal jurisdiction is "unfair and unreasonable" once minimum contacts are established, a court should consider: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999). This is not a balancing test; Defendant must present a "compelling case" of unreasonableness. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

**\*4** There are two types of personal jurisdiction—general and specific. General jurisdiction permits a court to assert jurisdiction over a defendant based on a forum connection

unrelated to the underlying suit. *Walden*, 571 U.S. at 283 n.6. Where the defendant's contacts are not sufficient to establish general jurisdiction (so pervasive such that defendant is basically at home in the forum state), a court may still exercise specific jurisdiction if (1) the defendant purposely directed its activities toward the forum state or purposely availed themselves of the privileges of conducting activities there; and (2) the controversy arises out of or is related to defendant's contacts. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010). The touchstone of either inquiry is whether the "defendant *himself*" has purposefully availed himself of the benefits of the forum; "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," and that connection must be "substantial." *Walden*, 571 U.S. at 284–85. When a defendant " 'purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there ....' " *World-Wide Volkswagen*, 444 U.S. at 297.

In determining whether personal jurisdiction exists, "the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quotation omitted). The "court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' Care*, 438 F.3d at 469 (citing *Wyatt*, 686 F.2d at 280). "[E]ven if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

## B. Analysis

Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over Defendant. Although Plaintiff's Complaint does not indicate whether it alleges general or specific jurisdiction over Defendant, Plaintiff clarified at the Court's hearing that it is only seeking to establish specific jurisdiction. Plaintiff contends that this declaratory judgment action arises out of Defendant's contacts with the forum state.

Plaintiff's Complaint generally alleges that the standards governing this Court's personal-jurisdiction inquiry have been satisfied in this case. (Compl. [#1] at ¶¶ 10, 11.) But these conclusory allegations are insufficient to support the exercise of personal jurisdiction without specific facts demonstrating that Defendant purposefully directed activities at the forum state. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."). The only specific facts alleged by Plaintiff in its Complaint regarding personal jurisdiction are the following:

- Defendant conducts commerce and does business in the State of Texas (*id.* at ¶¶ 8, 14, 17);

- Defendant sells and markets its Mavericks beer and branded products nationwide and in the State of Texas (*id.* at ¶¶ 9, 17, 19–20);

- Defendant has a nationwide distribution program with Southern Wine & Spirits, now known as Southern Glazers, which has offices in Texas (*id.* at ¶¶ 21–24);

- Defendant actively solicits business from Texas residents to eat and drink at its brewery and restaurant (*id.* at ¶ 25);

- Defendant maintains interactive websites soliciting business from Texas residents (*id.* at ¶ 26);

- Defendant maintains a general presence in the State of Texas (*id.* at ¶ 17);

**\*5** • Defendant caused injury to Plaintiff in the State of Texas (*id.* at ¶¶ 12, 18);

- Defendant expected its actions to be of consequence in the State of Texas and in this District" (*id.* at ¶ 13).

As previously stated, these factual allegations are only taken as true "to the extent they are not contradicted by affidavits." *Wyatt*, 686 F.2d at 282–83 n.13.

Defendant has submitted the sworn declaration of Craig Carroll, the Chief Executive Officer for Defendant, the contents of which directly contradict almost all of Plaintiff's jurisdictional allegations. (Carroll Decl. [#25].) Carroll asserts that it is a California corporation with its principal place of business in California; none of its shareholders are residents of Texas; it operates a bar/restaurant and brewery exclusively in California; it does not have a business presence, office, or employees in Texas; it does not participate in Texas

trade shows or beer or wine tastings in Texas; it does not advertise or market its products in Texas; it does not have a distributor or nationwide distribution program that includes distribution in the State of Texas; it does not sell its products in stores or restaurants in Texas; and it does not offer its products for sale to Texas residents through its website. (*Id.* at ¶¶ 1–7.) Plaintiff does not concede the truth of these facts but has not presented any evidence effectively refuting them either.

Plaintiff's evidence attached to its response to Defendant's motion primarily consists of partial print-outs of various online articles and websites demonstrating nothing more than that Defendant's brewery and restaurant cater to both Californians and California tourists generally [#31-7, #31-8]; Texas residents have visited both Mavericks Beach and Defendant's restaurant and brewery and written online reviews of their experiences [#31-14, #31-22, #31-41, #31-42]; Mavericks Beach offers "premier big-surfing waves"; [#31-10]; there is "a strong contingent of surfers in Texas" [#31-11]; Defendant's restaurant serves "Texas style spicy cole slaw" [#31-12]; and Texas is one of the most populated states in the country [#31-28, #31-29]. Defendant objects to much of this evidence as unauthenticated and incomplete and argues for its inadmissibility. (Objections [#40-3].) Regardless of whether this evidence is properly before the Court, none of this evidence establishes the requisite minimum contacts with the forum state by Defendant, only that some Texas residents have patronized Defendant's business and it is plausible that Texas surfers will visit Mavericks Beach and possibly visit Defendant's business in the future. These contacts do not reflect any purposeful conduct by Defendant directed at the forum. *See Walden*, 571 U.S. at 284–85. Serving California tourists, which include tourists from Texas, is not on its own purposeful availment of the benefits of Texas specifically.

Nor does Plaintiff direct the Court to any evidence that Defendant's officers or employees have traveled to Texas in conjunction with Defendant's brewery and restaurant. The only arguments Plaintiff makes about Defendant physically visiting Texas are that Leonard Mendonca, one of Defendant's founders, visited Austin, Texas on March 13, 2019 to present a lecture at the 2019 SXSW Conference and that Defendant is "likely to attend" a 2020 craft brewery event in San Antonio, Texas. But the description of Mr. Mendonca's talk on the SXSW schedule proffered by Plaintiff does not support Plaintiff's position that Mr. Mendonca visited Texas to market Defendant's Maverick beer or brewery generally, such that this case arose out of this contact with the forum, as is required

for specific jurisdiction. (SXSW Schedule [#31-31, #31-32].) The schedule, in addition to citing Mr. Mendonca's ownership in Half Moon Brewing Company, identifies him as the Chief Economic and Business Advisor to Governor Gavin Newsom of California, a Senior Partner of McKinsey & Company, and a Lecturer on Inequality at the Stanford Business School. (*Id.*) The title of Mr. Mendonca's lecture was "Food of the Dystopia: Beyond Bugs and Beans" and covered the future of food through science and innovation. (*Id.*) This contact does not give rise to specific personal jurisdiction over Defendant.

**\*6** As evidence of Defendant's possible 2020 visit to San Antonio, Plaintiff merely proffers a printout of a page from Defendant's website containing the logo for the Brewers Association, a national organization promoting American craft brewers, and a printout of a page from the Brewers Association website reporting that the 2020 Craft Brewers Conference will take place in San Antonio, Texas. (Websites [#31-47, #31-48].) Plaintiff argues that this evidence establishes that Defendant is a member of the Brewers Association and will likely be traveling to San Antonio for the annual event. Such speculation is also irrelevant to the question of whether this lawsuit arises out of *existing* contacts Defendant has with the forum state.

The only arguments raised by Plaintiff that could plausibly give rise to the exercise of personal jurisdiction over Defendant are Plaintiff's assertions that Defendant nationally distributes its beer through a distributor with offices in Texas and Defendant solicits patrons to visit its brewery and restaurant through an interactive website. Yet neither argument ultimately carries the day. As for the first argument, Plaintiff has not presented any evidence demonstrating that Defendant actually distributes or sells its beer in Texas, only that it has chosen to partner with a distributor that has offices in Texas for distribution of its "award-winning brews across the United States." (*See* "Brewbound" Article [#31-44]; "Southern Glazer's Wine and Spirits of Texas" [#31-45].) Defendant concedes that Southern Glazers has contacts with Texas, as well as offices in 43 other states, Canada, and the Virgin Islands. (Reply [#40] at 11.) The undisputed fact that Southern Glazers is a national distributor merely establishes that Defendant has a relationship with a third-party that conducts business in Texas, not that Defendant does. "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with ... other parties. *Walden*, 571 U.S. at 286. "But a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Again, the

declaration of Defendant's CEO before the Court attests to the fact that Defendant does not distribute or sell its beer products in Texas. (*See* Carroll Decl. [#25] at ¶¶ 1–7.) This declaration, sworn under penalty of perjury, is uncontroverted. Accordingly, Defendant's relationship with Southern Glazers, which conducts business in Texas, without more, cannot establish that Plaintiff has the minimum contacts with Texas necessary to subject it to personal jurisdiction there.

In support of Plaintiff's argument regarding Defendant's interactive websites, Plaintiff provides the Court with printouts from Defendant's primary website, www.hmbbrewingco.com, which contains links to make reservations at Half Moon Bay Brewing Company and to book special events at the brewery, as well as links to the websites of neighboring Mavericks Event Center and the Inn at Mavericks, both of which also allow for bookings directly through the website and through third party sites such as OpenTable and TripAdvisor. (Website [#31-34, #31-35, #31-36, #31-37, #31-8, #31-9, #31-40, #31-41, #31-42].) An article from an online publication contained in Plaintiff's evidence describes the Mavericks Event Center as available for weddings, retreats, and corporate events. (Article [#31-16].)

The parties dispute whether the Mavericks Event Center and the Inn at Mavericks are separate legal entities unrelated to the personal jurisdiction inquiry over Defendant or whether the interactive booking websites for these two businesses are relevant to Defendant's contacts with the forum for purposes of this lawsuit. (*See* Carroll Decl. [#40-2] ("The Inn at Mavericks is a legal entity separate and apart from defendant."); Post-Hearing Brief [#46] at 6 ("All of the Mavericks business are 'operated' by The Brewery on Half Moon Bay, Inc.").) Much of the parties' briefing focuses on this issue, including Plaintiff's Post-Hearing Brief on Personal Jurisdiction [#46]. Defendant objects to the Court's consideration of this filing on the basis that it was neither authorized at the Court's hearing nor filed after obtaining leave of court. (Objections [#47].) The Court need not address this objection because as detailed *herein* even if the Court were to consider all of the websites addressed in Plaintiff's briefing—the websites of Half Moon Bay Brewing Company, Mavericks Beer, Mavericks Event Center, and the Inn at Mavericks—it would still conclude that Plaintiff has not established specific personal jurisdiction over Defendant.

*7 In evaluating whether a website can support the minimum contacts necessary to confer personal jurisdiction over a given defendant, this Circuit relies on the approach set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).[1] *Mink v. AAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). "The *Zippo* decision categorized Internet use into a spectrum of three areas," employing a sliding scale from a passive website that merely advertises on the Internet to "situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states." *Id.* (citing *Zippo*, 952 F. Supp. at 1124). In the former, personal jurisdiction is proper; in the latter it is not. *Id.* "In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer." *Id.* In such situations, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Zippo*, 952 F. Supp. at 1124.

Most of the websites at issue in this case fall in the middle category, in which they allow direct booking and links to third-party bookings for restaurant, inn, and event reservations. Although Plaintiff provides the Court with evidence that Defendant sells limited merchandise such as gift cards and clothing through its websites, Mr. Carroll's declaration states that Defendant does not sell its beer or wine, the only products that use Defendant's registered "Mavericks" trademarks, in an online forum. (Carroll Decl. [#40-2] at ¶¶ 4, 5.) This assertion remains uncontroverted by Plaintiff's evidence. There is therefore no basis for asserting specific jurisdiction over Defendant based on an argument that the infringing products are actively sold in the forum state through one of Defendant's websites. In fact, Plaintiff's evidence demonstrates that the only webpages containing images of Mavericks Beer are purely passive websites that contain advertising materials; the page provided in Plaintiff's evidence, for example, directs visitors to "Look for a new batch of Mavericks Beers in 2018."[2] (*See* Mavericks Beer Website [#31-46].)

"Generally, advertisements are insufficient to establish personal jurisdiction," and the Fifth Circuit has held that website and print advertisement, even that containing an allegedly infringing mark, is insufficient to create specific personal jurisdiction over the out-of-state defendant behind the advertising. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir. 2002). Following this guidance, several district court in this Circuit has concluded that "even if [a defendant] had posted the allegedly infringing mark on

their websites ..., this would be insufficient to show specific personal jurisdiction." *Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at \*9 (S.D. Tex. July 11, 2007). The Court should find the same here—Plaintiff's evidence that Defendant's websites contain images of and reference Mavericks Beer is insufficient to confer specific personal jurisdiction over Defendant.

**\*8** Although Plaintiff is not arguing for general jurisdiction here, it is worth noting that a "website that is accessible nationwide (rather than targeted to the forum state) and that allows a patron to make reservations for or to obtain information about services that are not provided or paid for until the patron travels to a location outside the forum state, does not support general personal jurisdiction in the forum state." *Id.* at \*9 (collecting cases). To hold otherwise, "would mean that virtually any corporation with a website would be subject to general jurisdiction in every state." *Id.* (citing *Snyder v. Dolphin Encounters Ltd.*, 235 F. Supp. 2d 433, 441 (E.D. Pa. 2002)). Under this reasoning, the fact that the Brewery at Half Moon Bay, the Inn at Mavericks, and Mavericks Event Center provide the ability for users to interact by making reservations for dining, lodging, and future events is not a basis for the exertion of general jurisdiction over Defendant. *See BGDG Enterprises, LLC v. Barley & Swine*, No. A-13-CA-719-SS, 2014 WL 12479650, at \*5 (W.D. Tex. Jan. 23, 2014) (website, which allowed for reservations at defendant's restaurant, did not give rise to personal jurisdiction in Texas). Plaintiff's argument that "Defendant uses the internet to the max," employing three "interlinked, interactive websites," as well as Twitter, Pinterest, and Instagram to market its businesses (Sur-Reply [#41] at 5),[3] does not supplant the fundamental requirement that Defendant demonstrate some purposeful contacts aimed at the forum state.

Finally, the Court should not credit Plaintiff's argument that Defendant's allegedly willful trademark infringement itself caused injury in Texas and therefore is sufficient to create specific personal jurisdiction. *BGDG Enterprises*, 2014 WL 12479650, at \*6 ("reject[ing] any argument there is personal jurisdiction based solely on the allegation Defendants willfully infringed BDGD's trademark, therefore targeting and injuring BDGD in Texas"); *Fogo de Chao Churrascaria v. Fogo E. Brasa, L.L.C.*, No. CIV-A 3:03–CV–1351–B, 2004 WL 2607984, at \*4 (N.D. Tex. Nov. 17, 2004) ("the mere effect of a defendant's allegedly tortious activity 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum

state' " (quoting *Panda Brandywine Corp.*, 253 F.3d at 868–69)).

Nor does the fact that Defendant sent Plaintiff a cease and desist letter establish specific personal jurisdiction over Defendant. (*See* Cease and Desist Ltr. [#31-23].) Plaintiff's declaratory judgment does not "arise out of" the cease and desist letter but rather the validity of the parties' respective claims to trademarks. *See Ham*, 4 F.3d at 416. "The mere act of asserting a trademark or copyright right through a cease and desist letter does not subject that party to specific personal jurisdiction." *Expedite It AOG, LLC v. ClaySmith Eng'g, Inc.*, No. 3:09–CV– 1978–L, 2010 WL 2671314, at \*4 (N.D. Tex. June 30, 2010). *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (sending of a cease and desist letter, without more, is insufficient to confer personal jurisdiction over a non-resident defendant). However, where "a patentee casts its net of cease-and-desist letters too widely and entangles some non-infringing products, a plaintiff may have little recourse other than a declaratory judgment action to disentangle its non-infringing business." *Red Wing Shoe Co. Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). "In those instances, the cease-and-desist letters are the cause of the entanglement and at least partially give rise to the plaintiff's action." *Id.* at 1360. Such is not the case here.

In summary, Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over Defendant and ordering jurisdictional discovery, as requested by Plaintiff, would not alter the Court's analysis. Plaintiff's proposed requests for production [#46-14] seek information related to whether Texans have patronized Defendant's brewery and restaurant, the Inn at Mavericks, and the Mavericks Event Center; the relationship between Defendant and these other entities; social media advertising by Defendant; and information on third party websites such as TripAdvisor. This information, even if favorable to Plaintiff, would not establish purposeful contacts with Texas under the governing law on specific personal jurisdiction. Additionally, Plaintiff's request for all sales of Mavericks beer since 2016 is not only overbroad but also futile in light of the declaration on record, sworn under penalty of perjury, that Defendant does not sell or distribute its Mavericks beer in Texas. (*See* Carroll Decl. [#25] at ¶¶ 1–7.)

**IV. Conclusion and Recommendation**

**\*9**  Having considered Defendant's motion, the responses and replies thereto, the arguments of counsel at the Court's hearing on the motion, the evidence before the Court, and the governing legal standards, the undersigned recommends that Defendant's Motion to Dismiss Based on Defective Service and Lack of Personal Jurisdiction [#23] be **GRANTED** and this case dismissed for lack of personal jurisdiction over Defendant.

## V. Instructions for Service and Notice of Right to Object/ Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### All Citations

Slip Copy, 2019 WL 5927591

### Footnotes

1   The Court declines to embrace a modified or different framework for evaluating online contacts, as advocated by Plaintiff (Resp. [#31] at 9–10), due to changes in the use of the internet since 1997 when *Zippo* was decided. *See, e.g., Sioux Transp., Inc. v. XPO Logistics, Inc.*, 5:15-CV-05265, 2015 WL 9412930, at *6–7 (W.D. Ark. Dec. 22, 2015). The undersigned also does not find the expert report by Peter Beshay on internet advertising, submitted by Plaintiff, to be of assistance in its analysis. (Beshay Rep. [#31-30].) The report merely emphasizes the importance of online marketing in the digital age and emphasizes the interactive nature of Defendant's websites, facts that are both self-evident and that are established equally by examining the printouts from pages of the websites themselves. Accordingly, the undersigned need not address Defendant's objections to the admissibility of Beshay's Report on the basis that it is unsworn, unauthenticated, and therefore inadmissible. (Objections [#40-3].) The undersigned has not relied on Beshay's Report in issuing this recommendation because it did not find any probative evidence contained therein that would affect the undersigned's analysis or conclusion.

2   The undersigned is not persuaded by Plaintiff's argument that the use of the word "Mavericks" in reference to the Inn at Mavericks and the Mavericks Event Center makes this case not just about Mavericks beer and wine trademarks. (Sur-Reply [#41] at 10.) Plaintiff cannot credibly imply that these establishments are named after the trademarked alcoholic beverages, when Mavericks Beach is adjacent to all of these properties.

3   Defendant objects to the Court's consideration of Plaintiff's sur-reply because it was not filed after obtaining leave of court. (Objection [#43].) Again, the arguments contained in the sur-reply and the evidence attached thereto do not alter the conclusion of the undersigned that there is no personal jurisdiction over Defendant.

---

**End of Document**                                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6383886
Only the Westlaw citation is currently available.
United States District Court,
E.D. Louisiana.

Angelo MONISTERE

v.

Valentino LOSAURO, Clawz Designs,
Inc., and Fringey by Valentino, Inc.

Civil Action No. 13–22.
|
Dec. 4, 2013.

**Attorneys and Law Firms**

Neil J. Coig, Nolaip, LLC, New Orleans, LA, for Angelo
Monistere.

Valentino Losauro, Ft. Myers, FL, pro se.

Clawz Designs, Inc., Ft. Myers, FL, pro se.

Fringey by Valentino, Inc. Ft. Myers, FL, pro se.

### *ORDER AND REASONS*

CARL J. BARBIER, District Judge.

 **\*1** Before the Court is a *Motion to Vacate Default
Judgment, for Stay of Execution, and for Dismissal* brought
by Defendants Valentino Losauro, Clawz Designs, Inc.,
and Fringey by Valentino, Inc. (collectively, "Defendants")
(**Rec.Doc.20**). Also before the Court is Plaintiff Angelo
Monistere's opposition thereto. (**Rec.Doc.24**). Having
considered the motion, the parties' submissions, the record,
and the applicable law, the Court finds, for reasons expressed
below, that Defendants' motion should be **GRANTED.**

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff is the owner of a patent for a hair-cutting device
called a "finger razor." Plaintiff alleges that Defendants
have infringed on his patent by making, importing, and
selling infringing products. Defendants' allegedly infringing
products are called "the Clawz" and "the Fringey."

Defendants have a website that offers those products for sale
throughout the world and permits users to order the products
online. Defendants admit that they have sold products through
the website and also at conventions in Florida and California.
Defendants have sold one Clawz product to a Louisiana
resident through their website, but that Louisiana resident
was Plaintiff himself. Defendants claim that they have
never otherwise manufactured, marketed, advertised, sold, or
distributed their products in Louisiana and that they have
never performed services in Louisiana. Defendants have no
offices, property, or bank accounts in Louisiana and are not
registered to do business in Louisiana. The parties agree
that Plaintiff is domiciled in Louisiana and that Defendant
Valentino Losauro is domiciled in Florida. The parties also
agree that Defendants Clawz Designs, Inc. and Fringey by
Valentino, Inc. are both incorporated in Florida and both have
their principal place of business in Florida.

Plaintiff filed suit against Defendants in this Court on January
5, 2013. Defendants failed to appear in the suit, and the Court
entered a preliminary default against them on September 10,
2013. The Court then entered a default judgment against
Defendants on September 24, 2013. Defendants now move
for the Court to vacate the default judgment.

### PARTIES' ARGUMENTS

Defendants argue that the Court should grant relief from the
default judgment pursuant to Federal Rule of Civil Procedure
60(b)(4), and that the Court should dismiss Plaintiff's
complaint pursuant to Federal Rule of Civil Procedure 12(b)
(2), on the grounds that the judgment is void because the Court
has neither general nor specific personal jurisdiction over
Defendants. On the same grounds, Defendants also request
relief from enforcement of the default judgment.[1]

### *1. General Personal Jurisdiction*

Defendants argue that the Court lacks general personal
jurisdiction over them because they have no continuous or
systematic contacts with Louisiana. According to Defendants,
they do not manufacture, market, advertise, sell, or distribute
their products in Louisiana; they have no offices, property,
or bank accounts in Louisiana; they are not registered to
do business in Louisiana; and they have never performed
services in Louisiana.

**\*2** Plaintiff argues that Defendants' website subjects them to general personal jurisdiction in this forum, contending:

Defendants have engaged, and continue to be engaged, in interstate commerce with the entirety of the world through the internet, via an interactive website that is presented in seven languages, and permits ordering, research, and even training on how to use the infringing device.... This type of website has long ben [sic] considered to establish 'continuous and systematic' business contacts with a forum....

Pl.'s Opp., Rec. Doc. 24, p. 6. To support this contention, Plaintiff cites to *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 511 (D.C.Cir.2002).

### 2. Specific Personal Jurisdiction

Defendants argue that their only contact with Louisiana is a single website purchase of one of their products by Plaintiff, a Louisiana resident. Defendants contend that Plaintiff's purchase constitutes unilateral activity by Plaintiff and thus that the purchase does not constitute a minimum contact sufficient to subject Defendants to specific personal jurisdiction in Louisiana. Plaintiff argues that the sale of one allegedly infringing product to Plaintiff in Louisiana is a sufficient contact to justify the exercise of specific jurisdiction.

Defendants also contend that it would be unfair and unreasonable for this Court to exercise specific jurisdiction over them. According to Defendants, it would be overly burdensome to require them to litigate in Louisiana because their operation is very small and is based in Florida. Defendants also argue that all of the relevant evidence is located in Florida. Defendants claim that given the facts of this case, they could not reasonably have foreseen being haled into court in Louisiana.

### LEGAL STANDARD

*Federal Rule of Civil Procedure 60(b)* provides that a court must grant relief from a judgment if the judgment is void. *FED. R. CIV. P. 60(b)(4)* (2013); *Jackson v. FIE Corp.,* 302 F.3d 515, 525 (5th Cir.2002). A judgment is void if the defendant is not subject to the court's personal jurisdiction. *See Jackson,* 302 F.3d 515. Additionally, a "defendant is always free to ignore the judicial proceedings, risk a default

judgment, and then challenge that judgment on jurisdictional grounds." *Id.* at 522 (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706 (1982)). A defendant does not waive his right to object to personal jurisdiction by failing to appear in the suit before the court enters a default judgment. *Id.*

The Fifth Circuit has outlined the legal standard by which a district court must adjudicate a motion to dismiss for lack of personal jurisdiction:

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

**\*3** The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414, 104 S.Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414, 104 S.Ct. 1868 n. 8 ....

The forum state may create, and this court would be bound to apply, additional jurisdictional restrictions by statute, *Adams,* 220 F.3d at 667, but Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, *La. R.S.* 13:3201(B), so the two inquiries in this case collapse into one.

*Luv N' Care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir.2006), *cert. denied, Insta–Mix, Inc. v. Luv' N' Care, Ltd.,* 548 U.S. 904 (2006) (internal citations and footnotes omitted).

**DISCUSSION**

*1. General Personal Jurisdiction*

An individual is subject to general personal jurisdiction in the state of his domicile. *United States v. Henderson,* 209 Fed. App'x 401, 402 (5th Cir.2006) (citing *Milliken v. Meyer,* 311 U.S. 457, 463–64 (1940)). A corporation is subject to general personal jurisdiction both in its state of incorporation and in the state of its principal place of business. *See McIntyre Machinery, Ltd. v. Nicastro,* 131 S.Ct. 2780, 2787 (2011). Additionally, with respect to out-of-state corporations, "[a] court may assert general jurisdiction ... to hear any and all claims against [out-of-state corporations] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851, citing *Int'l Shoe,* 326 U.S. 310, 317 (1945)); *see also Revell v. Lidov,* 317 F.3d 467, 471 (5th Cir.2002) (stating that general jurisdiction requires a defendant to have substantial, continuous, and systematic contacts with the forum state).

Here, Valentino Losauro, an individual, is domiciled in Florida. Clawz Designs, Inc. and Fringey by Valentino, Inc. are both incorporated in Florida and both have their principal place of business in Florida. It is clear that Defendants are not subject to general personal jurisdiction in Louisiana based on their domicile, incorporation, or principal places of business. Additionally, the fact that Defendants have an internet presence that extends to Louisiana does not subject them to general personal jurisdiction in Louisiana courts. Other than the one product sold to Plaintiff, Defendants do not manufacture, market, advertise, sell, or distribute products in Louisiana, and they have never performed services in Louisiana. Defendants have no offices, property, or bank accounts in Louisiana and are not registered to do business in Louisiana. For these reasons, it could hardly be said that Defendants have substantial, continuous, and systematic contacts with this forum that render them essentially at home in Louisiana. Therefore, the Court does not have general personal jurisdiction over Defendants.

**\*4** Plaintiff's argument that the Court has general jurisdiction based on the reasoning in *Gorman* does not persuade the Court otherwise. In *Gorman,* the court held that there is general personal jurisdiction over a defendant who is "doing business" within a forum state. *Gorman v. Ameritrade*

*Holding Corp.,* 293 F .3d 506, 508 (D.C.Cir.2002). In *Gorman,* the defendant, Ameritrade, was continuously providing online brokerage services through its website for users all over the United States, including users within the District of Columbia. *Id.* at 508, 510. The court found that the website was not merely passive because it did not only provide information but rather allowed users to open brokerage accounts, transmit funds, buy and sell securities, and borrow from Ameritrade. *Id.* at 512. Ameritrade had engaged in multiple electronic transactions with residents of the District of Columbia. *Id.* at 510. According to the court, "As a result of their electronic interactions, Ameritrade and its District of Columbia customers enter into binding contracts, the customers become the owners of valuable securities, and Ameritrade obtains valuable revenue." *Id.* at 512–13. The court found that because the website made it possible for Ameritrade to engage in these transactions twenty-four hours a day, these contacts could be "continuous and systematic" enough to warrant the exercise of general jurisdiction, depending on "the frequency and volume of the firm's transactions with District residents." *Id.* at 513. Here, Defendants' contact with Louisiana does not even begin to approach the quality or quantity of the continuous business contacts that Ameritrade had with the District of Columbia in *Gorman;* therefore, Plaintiff's argument fails.

*2. Specific Personal Jurisdiction*

The Fifth Circuit uses the following standards to determine whether a court has specific jurisdiction over a defendant:

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. In *Nuovo Pignone v. STORMAN ASIA M/V,* 310 F.3d 374 (5th Cir.2002), we consolidated the personal jurisdiction inquiry into a convenient three-step analysis: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* at 378 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

*Luv N' Care,* 438 F.3d at 469 (5th Cir.2006) (internal citations and footnotes omitted).

### a. Does Plaintiff's Claim Arise from Defendants' Contacts with Louisiana?

**\*5** Plaintiff has brought a claim for patent infringement based on Defendants' internet sales of allegedly infringing products. Plaintiff purchased one allegedly infringing product in Louisiana from Defendants' website, and Plaintiff maintains that this transaction suffices as a minimum contact such that the Court should exercise specific jurisdiction. It is therefore clear in this case that Plaintiff's patent infringement claim arises from the internet sale of a product to Louisiana, and so the claim arises from Defendant's contacts with Louisiana.[2]

### b. Did Defendants Purposefully Direct Their Activities Toward Louisiana or Purposefully Avail Themselves of the Privileges of Conducting Activities in Louisiana?

The Fifth Circuit has held:

> When the cause of action relates to the defendant's contact with the forum, the "minimum contacts" requirement is satisfied, and "specific" jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980). If the contact resulted from the defendant's conduct and created a *substantial* connection with the forum state, even a single act can support jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2184 n. 18, 85 L .Ed.2d 528 (1985); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

*Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987) (emphasis added).

In the internet context, the Fifth Circuit has adopted the *Zippo* test to determine whether a defendant has purposefully availed itself of the forum state through its internet presence *See Mink v. AAAA Development, L.L.C.,* 190 F.3d 333, 336 (5th Cir.1999); *see also Revell,* 317 F.3d at 471–472. The *Zippo* test is as follows:

The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet...." In this situation, personal jurisdiction is proper.... At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate.... In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."

*Mink,* 190 F.3d at 336 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)).

**\*6** Using the *Zippo* test, district courts within the Fifth Circuit have exercised specific jurisdiction where the defendant has a website that permits users within the forum state to order or purchase products online, or where the defendant provides services to forum residents over the internet. *Gatte v. Ready 4 A Change, L.L.C.,* No. 11–2083, 2013 WL 123613, at \*11 (W.D.La. Jan. 9, 2013); *see Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.,* 106 F.Supp.2d 895, 901 (N.D.Tex.2000); *see also AdvanceMe, Inc. v. Rapidpay, L.L.C.,* 450 F.Supp.2d 669, 673–74 (E.D.Tex.2006); *see also Tempur–Pedic Int'l v. Go Satellite, Inc.,* 758 F.Supp.2d 366, 374–75 (N.D.Tex.2010). In *Gatte,* the court found that the defendant's website was highly interactive because it allowed users to engage in live chats with the defendant's employees, to fill out applications online, and to make down payments to the defendant through the website. *Gatte,* 2013 WL 123613, at \*11. The court found that the website's interactivity weighed in favor of finding specific jurisdiction but then declined to exercise personal jurisdiction for unrelated reasons. *Id.* at \*11–13. In *Peeper's,* the defendant's website enabled users to purchase products, and the court found that the defendant had purposefully availed itself of Texas by "*regularly* transact[ing] business with Texas residents over its ... website ." *Peeper's,* 106 F.Supp.2d at 901–02 (emphasis added). Specific jurisdiction was also found to be proper in an intellectual property case where the defendant was not *regularly* transacting business with Texas residents but did provide services over the

internet to Texas residents "at least twice." *AdvanceMe, 450 F.Supp.2d at 673–74.*

The Court has found particularly instructive the following three intellectual property cases from district courts within the Fifth Circuit: *Tempur–Pedic Int'l v. Go Satellite, Inc.,* 758 F.Supp.2d 366 (N.D.Tex.2010); *QR Spex, Inc. v. Motorola, Inc.,* 507 F.Supp.2d 650 (E.D.Tex.2007); and *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.,* No. 97–2595, 1999 WL 76794 (N.D.Tex. Feb. 3, 1999).[3] In *Tempur–Pedic,* the defendant operated two websites that sold products over the internet, making at least three sales to Texas residents. *Tempur–Pedic,* 758 F.Supp.2d at 370. One of these Texas sales was to a private investigator that the plaintiffs hired. *Id.* Applying the *Zippo* test, the court found that the website was interactive because it allowed users to purchase products online. *Id.* 373–74. Despite this, the defendant argued that the internet sales to Texas residents did not warrant the exercise of specific jurisdiction because one of the sales in Texas was "manufactured by [the] plaintiffs to create jurisdiction in Texas" and "such unilateral, manufactured sales cannot form the basis for personal jurisdiction." *Id.* The court found that specific jurisdiction was proper, noting that the defendant had admitted to entering into other sales to Texas residents other than the plaintiffs' private investigator. *Id.* at 373.[4]

**\*7** In *QR Spex,* the defendant sold products that allegedly infringed on the plaintiff's patent. *QR Spex, Inc. v. Motorola, Inc.,* 507 F.Supp.2d 650, 653 (E.D.Tex.2007). The plaintiff hired a private investigator, who purchased two of the allegedly infringing products by "reaching out to non-Texas retailers and having [a product] shipped to Texas." *Id.* at 661. The court stated:

> The Court finds it unnecessary to consider these purchases because they constitute [the plaintiff's] unilateral acts; albeit acts that successfully circumvented the measures [the defendant] undertook to avoid availing itself to this forum. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (rejecting the notion that "a consumer's unilateral act of bringing the defendant's product into the forum State was a sufficient constitutional basis for personal jurisdiction over the defendant."). In any event, the Court cannot conclude that these sales are evidence that [the defendant] purposefully availed [itself] to this forum.
>
> *Id.* at 661.

In *Origin Instruments,* the court made it clear that personal jurisdiction may not be established by the mere *possibility* that forum residents may purchase products on a defendant's website, without further proof that the defendant has purposefully availed itself of the forum state. *Origin Instruments,* 1999 WL 76794, at \*4.

Here, Defendants' website does not merely relate information passively; rather, the website allows users to place orders online. However, there is no evidence that Defendants have engaged in repeated transactions with Louisiana residents over the site. Therefore, this website falls into the middle category of the *Zippo* test such that the question of specific jurisdiction may be determined by the level of interactivity of the website. The Court acknowledges that Defendants' website is highly interactive because it allows users to purchase allegedly infringing products over the internet. However, Defendants have only made one sale through the website to a Louisiana resident—Plaintiff. For this one contact with Louisiana to constitute purposeful availment of this forum by Defendants, the contact must result from Defendants' purposeful conduct, not merely from the unilateral activity of Plaintiff.

Unlike the defendant in *Peeper's,* Defendants are not *regularly* transacting business with Louisiana residents; and unlike the defendant in *AdvanceMe,* Defendants have not engaged in at least two transactions involving Louisiana residents. Rather, Defendants have only transacted business in Louisiana once, and that sale was made to Plaintiff. Therefore, like the courts in *Tempur–Pedic* and *QR Spex,* the Court will not rely on purchases made by Plaintiff to establish that Defendants have purposefully availed themselves of Louisiana. Other than the single transaction involving Plaintiff, Defendants appear to have no contacts with Louisiana. Despite the fact that Defendants' website is interactive, and the possibility that additional Louisiana residents *could* purchase products on the website, the Court agrees with the court in *Origin Instruments* that personal jurisdiction may not be established by the mere *possibility* that Louisiana residents may purchase products on Defendants' website, without further proof that Defendants have purposefully availed themselves of this forum. For these reasons, the Court finds that Defendants have not purposefully availed themselves of Louisiana and thus that the exercise of specific jurisdiction is not proper in this case.[5] Therefore, it is unnecessary for the Court to engage in a discussion of fairness and reasonableness.

**\*8** The Court has neither general nor specific personal jurisdiction over Defendants in this matter. Therefore, the default judgment (**Rec.Doc.16**) is void and, and the Court must grant relief from that judgment pursuant to Federal Rule of Civil Procedure 60(b)(4).[6] The Fifth Circuit has made it clear that where a district court lacks personal jurisdiction over a defendant, the court has several choices. *Fogarty v. USA Truck, Inc.,* 242 F. App'x 152, 154 (5th Cir.2007). It may dismiss the action with prejudice, dismiss the action without prejudice, or transfer the case to a district court where personal jurisdiction and venue are proper. *Id.* Here, the parties agree that Defendant Valentino Losauro is domiciled in Florida. The parties also agree that Defendants Clawz Designs, Inc. and Fringey by Valentino, Inc. are both incorporated in Florida and both have their principal place of business in Fort Myers, Florida. (Defs.' Mtn., Rec. Doc. 20–1, p. 2–3). Therefore, the United States District Court for the Middle District of Florida, Fort Myers Division, has general personal jurisdiction over all three Defendants in this case.[7] Venue is also proper in that district court.[8] Therefore, the Court will transfer this case to that district. Additionally, because the Court lacks personal jurisdiction over Defendants in this matter, Defendants' *Motion for New Trial or to Amend Judgment* (**Rec.Doc.21**) should be denied as moot.

**CONCLUSION**

Accordingly,

IT IS ORDERED that Defendants' *Motion to Vacate Default Judgment* (**Rec.Doc.20**) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the *Default Judgment* (**Rec.Doc.16**) is hereby **VACATED,** and enforcement of that judgment is hereby **PROHIBITED.**

**IT IS FURTHER ORDERED** that this matter is hereby **TRANSFERRED** to the United States District Court for the Middle District of Florida, Fort Myers Division.

**IT IS FURTHER ORDERED** that Defendants' *Motion for New Trial or to Amend Judgment* (**Rec.Doc.21**) is **DENIED AS MOOT.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6383886

Footnotes

1    Alternatively, Defendants argue that if the Court finds that it does, in fact, have personal jurisdiction over Defendants, the Court should grant relief from the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6) on the grounds of "any other reason that justifies relief," including, but not limited to, mistake, inadvertence, surprise, or excusable neglect. On the same grounds, Defendants also request a stay of proceedings to enforce the default judgment pending the Court's decision on the merits, pursuant to Federal Rule of Civil Procedure 62(b)(4). Because the Court finds that it lacks personal jurisdiction over Defendants, the Court declines to address this alternative argument.

2    *Cf. Stomp, Inc. v. NeatO, L.L.C.,* 61 F.Supp.2d 1074, 1075–76 (C.D.Cal.1999) (in patent infringement case, court stated: "There is little question ... that the alleged contacts, [the defendant's] Internet sales of self-adhesive labeling systems, is closely related to the present action. The products being sold on [the defendant's] website incorporate the technology of the ... Patent at issue.").

3    The Fifth Circuit has not issued appellate opinions in any of these cases. It thus appears that the Circuit Court has not instructed district courts regarding how they should decide issues of specific jurisdiction under these particular fact patterns. For that reason, the Court's decision in this matter involves a fact-intensive inquiry and a comparative analysis of other district court cases.

     In addition to considering decisions from district courts in the Fifth Circuit, the Court has also found it useful to examine non-Fifth Circuit cases involving internet sales. For example, in *Stomp,* an intellectual property case, despite the fact that the court found that specific jurisdiction was proper, the court still took into consideration the fact that the internet sales in question were initiated by the plaintiff. *Stomp, Inc. v. NeatO, L.L.C.,* 61 F.Supp.2d 1074, 1075–76 n. 2 (C.D.Cal.1999). In *Stomp,* the defendant sold products that allegedly infringed on the plaintiff's patent over the defendant's internet website, and some of the products were sold to California residents. *Id.* at 1075–76. The court, using the *Zippo* test, found that the defendant's website was "highly commercial" because it allowed the user to purchase products online; therefore, there were sufficient minimum contacts to subject the defendant to specific personal jurisdiction in California. *Id.* at 1078.

The court found that "[a]lthough the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." *Id.* The court held that specific jurisdiction was proper, but the court did make the following remark in a footnote:

[The plaintiff] presents evidence of two sales made over the Internet by [the defendant] to California citizens. However, this evidence must be considered in light of the fact that these two sales were made to [the plaintiff] and a friend of his, both ... after this case and the instant motion had been filed.

*Id.* at 1076 n. 2.

Similarly, in *Shamsuddin,* an intellectual property case where the sales in question were made to two acquaintances of the plaintiff, the court declined to exercise personal jurisdiction. *Shamsuddin v. Vitamin Research Prods.,* 346 F.Supp.2d 804, 813 (D.Md.2004). The court reasoned:

[The defendant's[only contacts with Maryland are a commercial, interactive website which is accessible to Maryland residents (as it is to persons across the country and around the world), and two sales of the ... product to Maryland residents who are acquaintances of plaintiff.... Two sales to Maryland residents and maintenance of a commercial website do not rise to the level of contacts of such "quality and nature" that the exercise of personal jurisdiction over [the defendant] would comport with due process.

*Id.*

4     The *Tempur–Pedic* court stated:

The court recognizes that there are cases in this circuit that support the premise that a plaintiff cannot establish *in personam* jurisdiction based on such sales. *See, e.g., Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375 (5th Cir.1987) (noting that defendant's contact must not have resulted from the unilateral activity of the plaintiff in order for specific jurisdiction to be proper); *QR Spex, Inc. v. Motorola, Inc.,* 507 F.Supp.2d 650, 661 (E.D.Tex.2007) (refusing to consider sales that were initiated by plaintiff's investigator). But even if the court disregards the one sale to the Texas-based investigator plaintiffs hired, there are sufficient alleged sales to other Texas residents to establish a prima facie case for specific jurisdiction. In accusing plaintiffs of orchestrating as many as three sales to Texas, defendants appear to admit the existence of two other sales to Texas. The court could infer that plaintiffs, who failed to mention favorable evidence of additional sales in any prior court document, were previously unaware of such sales and therefore not responsible for arranging the two sales.

*Tempur–Pedic,* 758 F.Supp.2d at 374–75.

5     The Court's decision that specific jurisdiction is lacking here is bolstered by the decisions in *Stomp* and *Shamsuddin,* where two non-Fifth Circuit district courts both at least considered the fact that the internet sales in question were initiated by the plaintiff or by the plaintiff's associates.

6     Because the Court will vacate the default judgment and prohibit its enforcement, the Court need not address Defendants' alternative argument that the Court should grant relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6) and grant a stay of proceeding to enforce the judgment.

7     *See* discussion of general personal jurisdiction, *supra,* for details about determining whether a State has general jurisdiction over individual, natural persons and over corporate defendants.

8     Venue for a civil action is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391 (West 2013). Defendant Valentino Losauro, a natural person, is domiciled in Florida and is therefore a resident of Florida for venue purposes. *See id.* The two corporate Defendants will be deemed to reside in any judicial district where they are subject to personal jurisdiction, which includes the judicial district encompassing Fort Myers, Florida, because Fort Myers is their principal place of business. *See id.* Because all three Defendants reside in Florida, venue is proper in any district where any of them resides, and the corporate Defendants both reside in Fort Myers, Florida. *See id.* Therefore, venue is proper as to all three Defendants in the United States District Court for the Middle District of Florida, Fort Myers Division.

---

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:21-cv-00492-O Document 108-1 Filed 06/28/21 Page 204 of 236 PageID 12411

2000 WL 1030619
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

PEOPLE SOLUTIONS, INC., Plaintiff,

v.

PEOPLE SOLUTIONS, INC., Defendant.

No. Civ.A. 399−CV−2339−L.
|
July 25, 2000.

*MEMORANDUM OPINION AND ORDER*

LINDSAY, District J.

**\*1** Before the court is Defendant's Motion to Dismiss or, In the Alternative, Motion to Transfer Venue, filed December 6, 1999.[1] After careful consideration of the motion, response, reply, the record evidence, and the applicable law, the court grants Defendant's Motion to Dismiss, and denies as moot Defendant's Motion to Transfer Venue

I. *Factual and Procedural Background*

Plaintiff People Solutions, Inc. is a Texas corporation that provides human resources management, consulting, outsourcing, and executive search services Plaintiff uses the mark "PEOPLE SOLUTIONS" in its business, and has been granted federal registration of the mark by the United States Patent and Trademark Office.

Defendant People Solutions, Inc. is a California corporation that has its principal place of business in Pleasant Hill, California. Defendant is a research and consulting company that offers human resources related products and services to other organizations. Defendant maintains an internet website using the "PEOPLE SOLUTIONS" name. Defendant's web site provides detailed descriptions and interactive pages regarding the products and services it offers. The web site also contains interactive pages that allow customers to test Defendant's products, download product demos, obtain product brochures and information, and order products online

Plaintiff has sued Defendant over Defendant's alleged use of the "PEOPLE SOLUTIONS" trademark in its business. Plaintiff contends that it is the owner of the "PEOPLE SOLUTIONS" trademark and that Defendant should cease using it. Plaintiff filed its Complaint on October 13, 1999, asserting claims for federal trademark infringement, common law trademark infringement, unfair competition, state trademark infringement, and injury to business reputation. Defendant now moves to dismiss this action under Fed.R.Civ.P. 12(b)(3), contending that venue is improper in the Northern District of Texas.

II. *Defendant's Motion to Dismiss for Improper Venue*

In its Complaint, Plaintiff alleges that venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b) and (c). Under 28 U.S.C. § 1391(b), a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought in a judicial district where any defendant resides, if all defendants reside in the same state, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(b)(1) and (2).[2] For purposes of venue, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). Therefore, the court should examine whether it has personal jurisdiction over Defendant. Defendant contends that venue is improper here because the court lacks personal jurisdiction over Defendant, and because a substantial part of the acts giving rise to this action did not take place in this district Defendant therefore requests the court to dismiss this case for improper venue pursuant to Fed. R. Civ P. 12(b)(3).

A. *Personal Jurisdiction*

**\*2** A determination of personal jurisdiction over a nonresident defendant consists of two elements. First, the court must determine whether the nonresident is subject to jurisdiction under the law of the state in which it sits, and secondly, it must determine whether the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Stuart v. Spademan*. 772 F.2d 1185, 1189 (5 th Cir.1985); *CD Solutions, Inc. v. Tooker*, 965 F.Supp. 17, 19 (N.D.Tex.1997). Plaintiff contends that the exercise of personal jurisdiction over Defendant is appropriate in this case pursuant to the Texas long-arm statute. The Texas long-arm statute has been interpreted to extend as far as the limits of constitutional due process permit *Stuart*. 772 F.2d at 1189. Therefore, the court

is only intended to consider whether an exercise of jurisdiction over Defendant satisfies constitutional due process. *Stuart, 772 F.2d at 1189; CD Solutions,* 965 F.Supp. at 19.

The due process inquiry is further divided into two parts. First, it must be established that the nonresident has "minimum contacts" with the forum resulting from an affirmative act on its part. and second, if minimum contacts are established, the exercise of jurisdiction must be fair and reasonable to the defendant. *Id.* The "minimum contacts" required can be established either through contacts sufficient to support specific jurisdiction, or contacts that adequately support general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5 [th] Cir.2000); *Wilson v. Belin.* 20 F.3d 644, 647 (5 [th] Cir.), *cert. denied,* 513 U.S. 930 (1994). Specific jurisdiction arises when the Defendant has purposefully directed activities toward the forum state, from which the litigation arises or to which it relates. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *Alpine View,* 205 F.3d at 215. General jurisdiction will attach where the Defendant's contacts with the forum state are not related to the Plaintiff's cause of action, but are continuous and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 (1984); *Alpine View,* 205 F.3d at 215.

Defendant claims that this case should be dismissed because it is not subject to personal jurisdiction in Texas. Defendant is a California corporation with its principal place of business in Pleasant Hill, California. It is undisputed that Defendant has no offices in Texas, no employees in Texas, owns no property in Texas and has no registered agent for service in Texas. Defendant therefore argues that it does not have the "minimum contacts" with this forum that are required for personal jurisdiction. Plaintiff contends that the following contacts with Texas show that Defendant is subject to personal jurisdiction here: 1) Defendant has a web site which can be accessed and viewed by Texas residents; and 2) Plaintiff has a client located in Farmers Branch, Texas. The court will examine each of these contacts to determine whether they provide a basis for personal jurisdiction over Defendant, either alone or in combination.

### 1. Defendant's Web Site

**\*3** Plaintiff contends that specific jurisdiction over Defendant is present because it uses the "PEOPLE SOLUTIONS" name on its web site. The Fifth Circuit has recently addressed the impact of an Internet website that is accessible to Texas residents on the customary personal

jurisdiction analysis. *See Mink v. AAAA Development. LLC,* 190 F.3d 333 (5 [th] Cir.1999). Prior to the *Mink* decision, many courts faced with this issue, including this one, used the analysis presented in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). *See, e.g., Fix My PC. LLC v. N.F.N. Associates, Inc.,* 48 F.Supp.2d 640, 643 (N.D.Tex.1999); *Thompson v. Handa–Lopez, Inc.,* 998 F.Supp. 738, 742–43 (W.D.Tex.1998); *Mieczkowski v. Masco Corp.,* 997 F Supp. 782, 786 (E.D.Tex.1998). In *Mink,* the Fifth Circuit embraced the use of the *Zippo* analysis when evaluating minimum contacts which may be established by a Defendant's Internet activities. 190 F.3d at 336.

The *Zippo* decision instructs courts to look to the "nature and quality of commercial activity that an entity conducts over the Internet." 952 F.Supp. at 1124; *see also Mink,* 190 F.3d at 336. This test examines a Defendant's Internet activities in relation to a spectrum of three areas. *Mink,* 190 F.3d at 336. At one end of the spectrum are defendants who are conducting their businesses over the Internet, entering into contracts with residents of other states involving the "knowing and repeated" transmission of computer files over the Internet. *Id.* "Passive" web sites are at the other end of the scale. *Mink,* 190 F.3d at 336; *Thompson,* 998 F.Supp. at 743. These web sites do nothing more than provide information and advertising to those who access the site. *Mink,* 190 F.3d at 336; *Fix My PC,* 48 F.Supp.2d at 643. Passive web sites, on their own, do not provide for personal jurisdiction over the owner of the site. *Mink,* 190 F.3d at 336; *Fix My PC,* 48 F.Supp.2d at 643. Interactive web sites that allow Internet users to communicate and exchange information with the organization sponsoring the site are in the middle of the spectrum. *Mink,* 190 F.3d at 336; *Fix My PC,* 48 F.Supp.2d at 643; *Thompson,* 998 F.Supp. at 743. In this "middle ground," the exercise of jurisdiction depends upon "the level of interactivity and commercial nature of the exchange of information" conducted on the defendant's web site. *Mink,* 190 F.3d at 336, *quoting Zippo.* 952 F Supp. at 1124.

The facts related to Defendant's web site in this case are as follows: the web site contains several interactive pages which allow customers to take and score performance tests, download product demos, and order products online. The web site also provides a registration form whereby customers may obtain product brochures, test demonstration diskettes, or answers to questions. Defendant has sold no products exclusively through its web site. It further has sold no products or contracted for services with anyone in Texas

through the web site or as a result of any Texan's interaction with the web site.

 **\*4**  Defendant attempts to argue that these facts render its web site "passive" and thus not a basis for personal jurisdiction. Based upon the facts set forth above, the court disagrees with Defendant The court does not believe, however, that the evidence supports a finding that Defendant has, through its web site, repeatedly contracted with Texas residents over the Internet, as described in *Zippo,* 952 F.Supp. at 1124 and *Mink,* 190 F.3d at 336. Therefore, the court finds that Defendant's web site is of the type that falls into the "middle ground" identified in *Zippo* and adopted by the Fifth Circuit in *Mink,* 190 F.3d at 336. Despite this categorization of Defendant's web site, the court finds that in this case, the relevant facts do not support a finding of personal jurisdiction over Defendant Although Defendant appears to have the potential to interact with, sell products to, and contract with Texas residents on its web site, the evidence does not support a finding that this level of activity has taken place. Personal jurisdiction should not be premised on the mere possibility, with nothing more, that Defendant may be able to do business with Texans over its web site; rather, Plaintiff must show that Defendant has "purposefully availed itself" of the benefits of the forum state and its laws. Defendant's web site alone does not subject it to personal jurisdiction here; therefore the court must consider any additional contacts Defendant has with the forum.

### 2. *Defendant's Texas Client*

Plaintiff contends that its argument for personal jurisdiction is reinforced by the fact that Defendant has a client located in Farmers Branch, Texas.[3] According to Plaintiff, when this fact is considered in combination with Defendant's web site, personal jurisdiction over Defendant is established. The court disagrees. The record reflects that Defendant's contacts with this client are made through the client's Menlo Park, California and Chicago, Illinois offices. At the client's

behest, Defendant sends invoices to this client's branch offices in Texas. These attenuated contacts do not sufficiently establish a basis for personal jurisdiction over Defendant. *See Burger King,* 471 U.S. at 475; *Guardian Royal Exchange, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Furthermore, the combination of Defendant's web site with its contacts related to its Farmers Branch, Texas client does not sufficiently satisfy the "purposeful availment" requirement for personal jurisdiction.

For the reasons stated herein, this court has no personal jurisdiction over Defendant. Defendant's Motion to Dismiss is granted, and this action must be dismissed.

### B. *Venue*

Because the court has determined that it lacks personal jurisdiction over Defendant, it is not necessary to reach the issue of whether venue is proper in this district. Accordingly, Defendant's Motion to Transfer Venue is denied as moot.

### III. *Conclusion*

 **\*5**  The court has considered the parties' briefing on this matter, the record evidence, and the applicable case law. For the reasons stated herein, Defendant's web site and other contacts with Texas do not, alone or in combination, establish that the court may exercise personal jurisdiction over Defendant. This action is hereby dismissed without prejudice because the court does not have personal jurisdiction over Defendant. For this reason, the court did not reach the issue raised in Defendant's pending motion, specifically, whether the Northern District of Texas is the proper venue for this lawsuit, and Defendant's Motion to Transfer Venue is denied as moot.

### All Citations

Not Reported in F.Supp.2d, 2000 WL 1030619

---

Footnotes

1     Defendant filed its Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(3)—improper venue. The resolution of the venue issue in this case necessarily requires a determination of whether the court has personal jurisdiction over Defendant, because a defendant corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). The parties have fully briefed the issue of personal jurisdiction. Accordingly, the court treats Defendant's Motion to Dismiss as one filed pursuant to Fed.R.Civ.P. 12(b)(2)—lack of jurisdiction over the person.

2   Section 1391(b)(3) also provides that venue is properly laid in a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. Neither party has asserted that this subsection of the statute applies to the court's analysis of proper venue in this case.

3   Plaintiff does not allege that Defendant's contacts with the Farmers Branch client are related to the issues in this lawsuit; therefore, the court views this argument as an attempt to assert "general" personal jurisdiction over Defendant.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:21-cv-00492-O    Document 108-1    Filed 06/28/21    Page 208 of 236    PageID 12415

2007 WL 4292780
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

RA GLOBAL SERVICES, INC.
f/k/a, RealAmerica Co., and
George E. Burch III, Plaintiffs,

v.

Jonathan APPS, Abid C. Hamid, Anothony
B.B. Canning, Capialinq Limited, Harpal
Randhawa, GEM Management Ltd.,
Sundip Kumar, RA Global Services
Limited, New Broad Street Securities
Limited, and Hugh Fraser, Defendants.

Civil Action No. 3:07-CV-1562-L.
|
Dec. 6, 2007.

**Attorneys and Law Firms**

Parker D. Young, John M. Barcus, Figari & Davenport,
Dallas, TX, for Plaintiffs.

Kent R Smith, Lu Pham, Lynn Pham & Ross, Fort Worth, TX,
for Defendants.

*MEMORANDUM OPINION AND ORDER*

SAM A. LINDSAY, District Judge.

 *1  Before the court is Defendants' Motion to Dismiss,
filed September 18, 2007. After careful review of the
motion, response, reply, briefs, appendices, and the applicable
authority, the court, for the reasons herein stated, **grants**
Defendants' Motion to Dismiss.

**I. Factual and Procedural Background**
Plaintiffs RA Global Services, Inc., f/k/a RealAmerica Co.
("RA Global"), and George Burch III ("Burch") (collectively,
"Plaintiffs") bring claims for breach of contract, breach
of fiduciary duty, breach of duty of good faith and fair
dealing, fraudulent inducement, declaratory judgment, and

conspiracy.[1] Plaintiffs allege that in 2005, RA Global
needed operating capital and resources to fund its expansion
efforts. Pls.' 2d Am. Pet. ¶ 19. RA Global approached
Defendant Anthony B.B. Canning ("Canning") about this
need and ultimately entered into a contract ("Agreement")
with Defendant CapitalinQ Limited ("CapitalinQ"), which
Canning led RA Global to believe was owned or controlled
by Canning. *Id.* CapitalinQ was actually controlled by
Defendants Harpal Randhawa ("Randhawa") and GEM
Management, Ltd. ("GEM") (which is owned/controlled by
Randhawa). *Id.* ¶ 22. According to the Agreement, CapitalinQ
was to provide various services to RA Global, including
assisting with banking relationships, introducing RA Global
to sources of capital, and helping negotiate with the targeted
sources of capital. *Id.* ¶ 20. Canning represented to RA Global
that the advice and services rendered to RA Global would be
unbiased and independent. *Id.* ¶ 21.

Pursuant to the Agreement, CapitalinQ introduced RA Global
to Randhawa and GEM as sources of capital. *Id.* ¶ 22.
CapitalinQ also introduced RA Global to Defendant New
Broad Street Securities Limited ("NBSS") as a potential
investor. *Id.* ¶ 23. NBSS is owned by GEM. Pls.' Ex. B,
Kumar Dep. 81:20-22. On February 6, 2006, upon advice of
CapitalinQ, RA Global entered into a loan agreement with
GEM for $300,000 ("February Loan"), which was guaranteed
by Burch. *Id.* ¶ 24. On April 21, 2006, RA Global entered
into another loan agreement with GEM for $800,000 ("April
Loan", together with the February Loan, the "Loans"), which
was secured by a warrant for the issuance of 800,000 shares of
RA Global stock and was also guaranteed by Burch. *Id.* ¶ 26.
On April 25, 2006, Real America purchased a 49% interest in
Intergulf Oilfield and Marine Services, LLC ("IGOMS") that
entitled it to receive 80% of the net profits of IGOMS. *Id.* ¶ 28.

In late summer 2006, RA Global was unable to meet
the obligations of the Loans. *Id.* ¶ 29. Therefore, on
August 26, 2006, RA Global entered into a Memorandum
of Understanding ("MOU") with, among other creditors,
GEM, NBS S, and CapitalinQ (which RA Global owed
for outstanding fees and unreimbursed expenses). *Id.* The
MOU provided for: (i) the outstanding warrants and loan
agreements to be cancelled and replaced by new loan
agreements, (ii) the issuance of 15.5 million shares of fully
paid, nonassessable shares of RA Global stock, and (iii) the
execution of the Escrow Deed, which governed RA Global's
shares of IGOMS that were being held in escrow. *Id.* ¶ 30-32.
The Escrow Deed provides that if RA Global defaults, GEM
would receive the IGOMS shares, but if RA Global pays as

agreed, the IGOMS shares would be returned to RA Global. *Id.* ¶ 33.

**\*2** Pursuant to the MOU and the new loan agreements, GEM required RA Global to allow it to select a director on RA Global's board of directors ("the Board") so that GEM would have some control over RA Global's corporate governance. Pls.' Ex. A, Randhawa Dep. 72:17-24. Defendant Sundip Kumar ("Kumar") was appointed as a director on the Board and attended meetings by telephone. Pls.' Ex. B, Kumar Dep. 103:9-21, 116:17-24. Kumar was the informal chief financial officer ("CFO") of GEM and de facto CFO of NBSS. *Id.* 23:3-5, 87:16-18. Also pursuant to the MOU and the new loan agreements, Defendant Jonathan Apps ("Apps") was named CFO of RA Global and Defendant Abid C. Hamid ("Hamid") was named chief executive officer. Pls.' Ex. C, Burch Aff.¶ 13. Randhawa required that Apps and Hamid be the only signatories on RA Global's bank accounts. Pls.' Ex. D, Burch Aff.¶ 10, Ex. 4.

Although RA Global was originally supposed to have paid its loans by July 31, 2007, in return for an issuance of one million shares of RA Global, Plaintiffs contend that the creditors agreed to extend the deadline to approximately October 31, 2007. *Id.* ¶ 43-44. Plaintiffs filed this action in state court on August 23, 2007and sought injunctive relief. On August 28, 2007, RA Global received a "Notice of Default and Notice of Acceleration," and GEM demands that Fraser, the escrow agent, transfer the IGOMS shares to GEM. *Id.* ¶ 49-50.

On September 5, 2007, the state court issued a temporary restraining order that, among other things, prevented the transfer of the IGOMS shares to GEM and set a temporary injunction hearing for September 13, 2007. On September 13, 2007, GEM, Kumar, and Randhawa (the only three defendants that had been served at the time) removed the case to federal court. On September 10, 2007, Fraser decided that he should transfer the IGOMS shares to GEM on September 30, 2007. *Id.* ¶ 50. On September 14, 2007, Plaintiffs filed an Emergency Motion for Temporary Restraining Order, and on September 17, 2007, the court set a hearing on Plaintiffs' motion. On September 18, 2007, GEM, NBSS (which was served on September 13, 2007), Randhawa, and Kumar (collectively, "GEM Defendants") filed Defendants' Motion to Dismiss based on lack of personal jurisdiction, lack of subject matter jurisdiction[2], improper venue, and *forum non conveniens.*

## II. Personal Jurisdiction Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993); *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.;* proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana,* 259 F.Supp.2d 553, 556 (N.D.Tex.2003) (citing *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir.1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart,* 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**\*3** A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir.1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas,* 9 F.3d at 418 (*citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into

RA Global Services, Inc. v. Apps, Not Reported in F.Supp.2d (2007)
Case 4:21-cv-00492-O Document 108-1 Filed 06/28/21 Page 210 of 236 PageID 12417
2007 WL 4292780

court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King,* 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas,* 182 F.3d 291, 295 (5th Cir.1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n. 9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.' " *Eviro Petroleum, Inc. v. Kondur Petroleum,* 79 F.Supp.2d 720, 725 (S.D.Tex.1999) (quoting *Burger King,* 471 U.S. at 277). In fact, "[o]nly in rare cases ... will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991)).

### III. Discussion

**\*4** Because Plaintiffs do not contend that general personal jurisdiction exists and the record does not establish that GEM Defendants' contacts with Texas are continuous, systematic, and substantial, the court determines that it lacks general personal jurisdiction over GEM Defendants. Therefore, the court now looks to determine whether Plaintiffs have alleged

a prima facie case for specific personal jurisdiction over the GEM Defendants.

Plaintiffs argue that the court has specific personal jurisdiction over the GEM Defendants because their tortious acts gave rise to the claims being asserted. Plaintiffs specifically allege the tortious conduct to include:

> (1) the material omission of disclosure of GEM, NBSS, and CapitalinQ's relationship; (2) Randhawa's acts in furtherance of his plan to gain control over [RA Global] and its assets, including IGOMS; (3) Kumar's appointment as a GEM director and participation in board decisions at [RA Global]'s board meetings; (4) Randhawa's excessive control of [RA Global]'s business operations, including his negotiation of Martin's resignation and his attempt to do the same with Johnston; (5) the Defendants' agreement to extend the relevant loans and then subsequently reneging; (6) Randhawa's negotiation of Apps and Hamid's salaries and his control over them; (7) Randhawa's effective control over [RA Global]'s Texas bank accounts; (8) Randhawa's and GEM's obtaining of an appraisal of the IGOMS assets at [RA Global]'s expense without [RA Global]'s approval, and then hiding it from [RA Global]; (9) all Defendants' repeated purposeful communications with the forum; and (10) the series of contracts between the parties, all of which taken together drove [RA Global] into deep financial crisis in Summer 2007 and have caused it to suffer substantial damages, including the potential loss of the IGOMS stock.

Pls.' Resp. To Defs.' Mot. to Dismiss 13-14; *see generally* Pls .' 2d Am. Pet. (detailing Plaintiffs' allegations of defendants' tortious conduct). Plaintiffs also argue that considerations of fair play and substantial justice allow the court to exercise jurisdiction over the GEM Defendants because only in rare cases will these considerations prevent the exercise of personal jurisdiction when minimum contacts have been established and because the forum selection clauses do not govern any of Plaintiffs' claims.

GEM Defendants counter that they committed no tortious acts as a matter of law because GEM had no duty to disclose its stake in CapitalinQ, Plaintiffs have not alleged that Kumar breached his fiduciary duties as RA Global director, and Randhawa's actions did not rise to level a sufficient to create a duty in tort. GEM Defendants further argue that considerations of fair play and substantial justice prevent the court from exercising jurisdiction over the them because Plaintiffs' contacts with Texas are not significant, the GEM Defendants have no contacts in Texas, and England is the only location where all parties and issues can be joined.

**\*5** The underlying determination for evaluating jurisdiction is whether the defendant could reasonably expect to be haled into court in the forum state. *Burger King Corp.,* 471 U.S. at 474. If a nonresident defendant's alleged intentional tortious actions are specifically aimed at the forum state, "and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions." *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988) (citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). Stated differently:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of action arising from its offenses or quasi-offenses .... Even an act done outside that state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences of the effects are seriously harmful and were intended or highly likely to follow for the nonresident's conduct.

*Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 628, *reh'g denied,* 199 F.3d 441 (5th Cir.1999) (internal citations omitted).

Taking as true the uncontroverted allegations in Plaintiffs' Second Amended Complaint[3] and resolving all conflicts between the facts contained in the parties' affidavits in favor of Plaintiffs, the court determines that there is no evidence that GEM Defendants targeted their allegedly tortious activities at Texas. The court also determines that there is no evidence that the GEM Defendants knew that the brunt of Plaintiffs' injury would be felt in Texas.

Plaintiffs allege that the GEM Defendants committed various torts and that these torts were committed primarily for the purpose of (1) "abscond[ing] with the assets of [RA Global]," including the IGOMS shares; (2) paying off the "new" loans signed pursuant to the Memorandum of Understanding; and (3) gaining control of the company from the 15.5 million shares and warrants issued pursuant to the loan agreements and the MOU. Pls. Sec. Am. Compl. ¶ 50. Plaintiffs contend that because RA Global is headquartered in Texas, all of

its material business decisions originate from Texas, almost all of its board meetings are held in Texas, and all of its bank accounts are located in Texas, "to the extent any act or omission by Defendant had a financial impact on [RA Global], the effect or impact was felt wholly within the State of Texas." Pls.' Resp. To Defs.' Mot. to Dismiss 3.

RA Global is a Delaware corporation with its principal place of business in Texas. "The mere fact that a Delaware corporation had its headquarters in Texas at the time of the allegedly wrongful act is not sufficient minimum contacts to give Texas courts personal jurisdiction over a nonresident director who commits a tort against the corporation." *Rittenmeyer v. Grauer,* 104 S.W.3d 725, 733 (Tex.App.-Dallas 2003, no pet.). Moreover, the effects test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson,* 117 F.3d 278, 286 (5th Cir.1997). Rather, "the effects of an alleged intentional tort are to be assessed as a part of the analysis of the defendant's relevant contacts with the forum state. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case." *Id.* at 287. (internal quotation marks and citation omitted).

**\*6** Other than IGOMS, Plaintiffs do not allege injury to any specific assets. The IGOMS facility is located in Dubai. Prelim. Inj. Hr'g Tr. 18: 18-19, Nov. 19, 2007. Therefore, any tortious actions targeted at IGOMS are not specifically aimed at Texas and GEM Defendants would not know that the brunt of the injury would be felt in Texas. Accordingly, GEM Defendants would not reasonably anticipate being haled into court in Texas to answer for tortious actions relating to IGOMS.

Likewise, tortious actions committed in attempts to repay loans made pursuant to the MOU are not specifically aimed at Texas, and GEM Defendants would not know that the brunt of the injury would be felt in Texas. The MOU was negotiated in London and is governed by the laws of another country.

Plaintiffs' allegations regarding the tortious actions committed in attempts to gain or retain control of the company by obtaining 15 .5 million shares face a similar fate. The record establishes that, pursuant to the MOU, each lender received a proportionate share of RA Global stock in exchange for an agreement to extend its underlying loan. Prelim. Inj. Hr'g Tr. 65:17-21, Nov. 19, 2007. Any injury

caused by this transaction was caused by the tortious conduct surrounding the MOU, which, as previously discussed, was not specifically aimed at Texas.

There is insufficient evidence that GEM Defendants targeted their allegedly tortious activities at Texas or that the GEM Defendants knew that the brunt of Plaintiffs' injury would be felt in Texas. Moreover, Plaintiffs' reliance on Kumar's appointment as a GEM director and participation in board meetings and GEM Defendants' communications with the forum upon which Plaintiffs rely to establish personal jurisdiction to establish minimum contacts is misplaced. As GEM Defendants correctly point out, these contacts are insufficient to establish personal jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 215, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (accepting position as officer or director does not demonstrate purposeful availment); *General Elec. Capital Corp. v. Posey,* 2006 WL 708163 * 4 (N.D.Tex., March 20, 2006) (plaintiff cannot rely on fact that defendant was a director of corporation with its principal place of business in Texas, but instead must tie defendant's allegedly tortious conduct to the forum); *Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026, 1029 (5th Cir.) (exchange of communication in development of contract insufficient to be characterized as purposeful activity invoking benefits and protections of Texas laws), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561, *reh'g denied,* 467 U.S. 1257, 104 S.Ct. 3549, 82 L.Ed.2d 851 (1984). Therefore, the GEM Defendants do not have sufficient minimum contacts with Texas to permit the court to exercise personal jurisdiction over them.

Assuming *arguendo* that GEM Defendants have the requisite minimum contacts with Texas, the court concludes that this is one of the rare cases where the exercise of jurisdiction will not comport with fair play and substantial justice. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal,* 480 U . S. at 115. As previously stated, there are five factors the court examines in determining fairness and reasonableness of the exercise of personal jurisdiction. The court addresses each in turn.

 *7 With respect to the first factor, the defendant's burden, Plaintiffs argue that although this factor weighs in favor of GEM Defendants, their burden is counterbalanced by Plaintiffs' interests in litigating in Texas. GEM Defendants each have contacts outside of the country. Plaintiffs were introduced to the alleged tortfeasors and negotiated the

various contracts at the heart of this case in England or Dubai. Although GEM Defendants corresponded with Plaintiffs located in Texas, none of the GEM Defendants ever traveled to Texas in connection with matters relating to this case. Plaintiffs, on the other hand, often traveled to London to meet with various defendants in this case. It follows that a majority of the witnesses and evidence in this case is located outside of Texas. The property for which Plaintiffs seek injunctive relief is located in Dubai. This factor weighs against Plaintiffs.

With respect to the second factor, the forum state's interests, Plaintiffs contend that Texas has an interest because the case involves intentional torts directed at Texas residents. As discussed previously, however, the court finds no evidence that the tortious conduct was directed at this forum. This factor also weighs against Plaintiffs.

With respect to the third factor, the plaintiff's interest in convenient and effective relief, Plaintiffs argue that it weighs in their favor because they are residents of Texas. Since all defendants, the evidence, and virtually all likely witnesses in this case are located in Europe, Texas is not the forum best suited to fashion meaningful relief. Further, GEM and NBSS have filed a related lawsuit in England. Prelim. Inj. Hr'g Tr. 83:12-15, Nov. 19, 2007. The Texas forum is unable to "bring all the parties into one courtroom for a single resolution." *Ruston Gas Turbines,* 9 F.3d at 421. Moreover, Plaintiffs often traveled to England to meet and negotiate with the various international defendants. Although it may be inconvenient, it is not unreasonable to require them to travel to pursue litigation in a forum that can provide effective relief. The court determines that this factor also weighs against Plaintiffs.

With respect to the fourth factor, the judicial system's interest in efficient resolution of controversies, Plaintiffs concede that the "piecemeal litigation" of this case would not result in its efficient resolution. As the court concluded above, Texas is not the forum best suited to fashion meaningful relief. This factor also weighs against Plaintiffs.

With respect to the fifth factor, the state's shared interest in furthering social policies, *Asahi* guides the court's considerations:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant ..., as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 5

an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

**\*8** *Asahi,* 480 U.S. at 115. Based on the court's determination of the other four factors, this factor also weighs against Plaintiffs. The court recognizes that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114. In this case, however, the interests of Plaintiffs and the state of Texas is slight. The alleged tortious conduct occurred outside the United States, Plaintiffs fail to establish that the effects of the allegedly tortious conduct were felt in Texas, and there is related litigation pending in England. Because all five factors weigh in favor of GEM Defendants, the exercise of jurisdiction over them does not comport with fair play and substantial justice.

### IV. Conclusion

GEM Defendants do not have sufficient minimum contacts with Texas. Further, for the reasons herein stated, the exercise of jurisdiction over them will not comport with fair play and substantial justice. Accordingly, the court **grants** Defendants' Motion to Dismiss based on lack of personal jurisdiction. Because the court grants the motion based on its lack of personal jurisdiction, it will not reach the alternate bases upon which the GEM Defendants have moved to dismiss this action

against them. The court **dismisses** this action against GEM Defendants **without prejudice.**

As the court has dismissed this action for lack of personal jurisdiction and the temporary restraining order expires today, the issue of a preliminary injunction is now moot. Accordingly, Plaintiffs' Request for Injunctive Relief is **denied as moot.**

The court realizes that Plaintiffs' Motion for Contempt is pending. At this juncture, however, the court is unsure whether the motion is viable. To determine the motion's viability, the court must conduct research as to whether a party can be held in contempt for conduct committed prior to a court's determination of whether personal jurisdiction existed over that party. In other words, the question is whether a court has the authority to preserve the integrity of its orders until the issue of personal jurisdiction is resolved. The court will rule on Plaintiffs' motion after it determines this issue. If the court determines that it has authority to hold a person in contempt under these circumstances, it will proceed with the contempt matter.

**It is so ordered.**

### All Citations

Not Reported in F.Supp.2d, 2007 WL 4292780

---

Footnotes

1    Plaintiffs' allege that the court has specific personal jurisdiction over GEM Defendants because their tortious acts gave rise to the claims being asserted. They do not allege, and the court does not find, that there is general personal jurisdiction over GEM Defendants. Plaintiffs' breach of contract and declaratory judgment claims are not tort causes of action. Accordingly, Plaintiffs have failed to make a prima showing of personal jurisdiction over GEM Defendants with regard to their breach of contract and declaratory judgment claims.

2    GEM Defendants admit that their subject matter jurisdiction argument was based on a forum selection clause. Temp. Res. Order Hr'g Tr. 3:21-4:6, Sept. 19, 2007. The court finds that it court has subject matter jurisdiction based on complete diversity of citizenship and an amount in controversy in excess of $75,000 and that the forum selection argument relates to venue rather than subject matter jurisdiction. Accordingly, the court denies Defendants' Motion to Dismiss to the extent it is based on lack of subject matter jurisdiction.

3    The factual allegations in Plaintiffs' Third Amended Complaint, filed November 30, 2007, are identical to those in Plaintiffs' Second Amended Petition. Accordingly, the court reaches the same result whether it considers the allegations in the Third Amended Complaint or the Second Amended Petition.

---

End of Document                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 6877704
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

STONE METALS AMERICA, LLC, Plaintiff,

v.

Malcolm B. EUBANK, III and

Zetwerk Pvt. Ltd., Defendants.

No. 3:20-cv-253-K
|
Signed 11/05/2020

**Attorneys and Law Firms**

Justin W.R. Renshaw, Renshaw PC, Houston, TX, James Craig Erdle, Joseph D. Zopolsky, Glast Phillips & Murray PC, Dallas, TX, for Plaintiff.

Steven Chase Callahan, Grayson Cassada, Charhon Callahan Robson & Garza PLLC, Dallas, TX, for Defendants.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE

 *1  Defendant Zetwerk Manufacturing Businesses Pvt. Ltd. has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), see Dkt. No. 12, which United States District Judge Ed Kinkeade has referred to the undersigned United States magistrate judge for findings, conclusions, and recommendation, see Dkt. No. 18.

Zetwerk was sued as Zetwerk Pvt. Ltd. See Dkt. No. 1. In its Rule 12(b)(2) motion, it states that its proper name is Zetwerk Manufacturing Businesses Pvt. Ltd.

Plaintiff Stone Metals America, LLC has filed a response, see Dkt. No. 16, and Zetwerk has filed a reply, see Dkt. No. 17.

For the following reasons, and as explained below, the undersigned concludes that the motion to dismiss should be granted because the Court lacks personal jurisdiction over non-resident defendant Zetwerk.

**Background**

Stone Metals, a Texas limited liability company with its principal place of business in Richardson, Texas, employed Defendant Michael B. Eubank, a Florida resident, as a Regional Sales Manager, see Dkt. No. 16-1 at 2. As a requirement of his employment, Eubank executed a Confidential Information and Proprietary Rights Agreement, which strictly limits the disclosure and use of Stone Metals's information. See Dkt. No. 4-1; Dkt. No. 6-1 at 2-3.

Zetwerk is a foreign company located in the Republic of India. It posted a job listing on ZipRecruiter for a Business Development Manager "Texas, NY." Dkt. No. 16-2 at 3-4.

Zetwerk communicated with Eubank via email about the position. See Dkt. No. 4-2. During negotiations, Zetwerk received emails from Eubank disclosing contacts by "six more companies" and "two additional companies" that sought connections to Indian manufacturers, either because they sought alternatives to Chinese manufacturers or because the Chinese manufacturers had disclaimed an interest in those companies. See id. at 8-9.

Eubank accepted the business development manager position and gave notice of his resignation from Stone Metals on November 4, 2019. See Dkt. No. 16-1 at 3.

On November 15, 2019, Eubank's last date of employment with Stone Metals, Eubank deleted files consisting of Stone Metals's sales and projects in the company's Dropbox storage. See id.; Dkt. No. 16-4. On November 24, 2019, Eubank again logged into Stone Metals's company Dropbox and deleted additional files. See Dkt. No. 16-1 at 3; Dkt. No. 16-4. Stone Metals blocked Eubank's access to the company Dropbox the next day. See Dkt. No. 16-4 at 4.

On November 25, 2019, Eubank contacted one of Stone Metals's customers using a Zetwerk email address and requested that the customer send him information so he could provide a quote. See Dkt. No. 4-4; Dkt. No. 16-1 at 4. The customer replied to Eubank's email address with Stone Metals. See Dkt. No. 4-4; Dkt. No. 16-1 at 4.

Stone Metals sued Eubank and Zetwerk for claims arising from Eubank's alleged violations of the Confidential Information and Proprietary Rights Agreement. Stone Metals sued Eubank for breach of contract, conversion, harmful access to computer, and violation of the Computer Fraud and Abuse Act. Stone Metals sued both Eubank and Zetwerk for tortious interference with existing and prospective relations and conspiracy. *See* Dkt. No. 4.

 **\*2** Stone Metals alleges that Zetwerk interfered with its agreement with Eubank by hiring Eubank, accepting Stone Metals's proprietary and confidential information from Eubank, and profiting from it through sales that it would have not obtained otherwise. Stone Metals alleges that Zetwerk conspired with Eubank to steal Stone Metals's proprietary and confidential information with the goal to use that information for their own benefit and profit in direct unlawful competition with Stone Metals. *See id.* at 11-13.

Stone Metals also alleges that Eubank and Zetwerk are jointly and severally liable because "the tortious acts of the Defendants have created an indivisible injury." *Id.* at 16.

Zetwerk contends that Texas courts lacks personal jurisdiction over it. It asserts that Stone Metals fails to establish general jurisdiction because Zetwerk has no contacts with Texas. And Zetwerk argues that Stone Metals fails to establish specific jurisdiction because it has not performed a single act that demonstrates either purposeful availment of the benefits of the forum or conduct purposely directed at Texas. "Instead, [it asserts that] Stone Metals's contentions regarding Zetwerk's connections to Texas hinge solely on its bare allegations regarding" Eubank's conduct. Dkt. No. 13 at 3.

Stone Metals contends that the Court may exercise personal jurisdiction over Zetwerk because Zetwerk allegedly committed intentional torts in Texas by soliciting a business development manager for territory including Texas, hiring Eubank to fill that position, and, through Eubank, accessing Stone Metals's files and contacting Stone Metals's customers. Stone Metals argues that personal jurisdiction may be established by imputing Eubank's conduct to Zetwerk under an agency theory. Stone Metals also requests that the Court defer ruling on the motion and allow limited jurisdictional discovery "if the Court is inclined" to grant the motion to dismiss. Dkt. No. 16 at 12.

The undersigned now concludes that the Court should grant the motion to dismiss and deny Stone Metals's request for jurisdictional discovery.

## Legal Standards

### I. Personal Jurisdiction

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Due Process Clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

 **\*3** First, to establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id.* at 474; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Second, in determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's purposeful contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). Thus, "[i]n determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.' " *McFadin*, 587 F.3d at 759-60 (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Five factors guide a court's analysis of whether exercising personal jurisdiction is fair and reasonable: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.' " *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). "Second, [the] 'minimum contacts'

analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 41-16. The Supreme Court has observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.' " *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. It is, therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.*, 768 F.3d 429, 2014 WL 4799716, at \*2. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Johnston*, 523 F.3d at 614 (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

**\*4** Under both specific and general jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' " *Id.* 475 (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).

## II. Jurisdictional Discovery

When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (citation omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11–cv–629–A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly*, 213 F.3d at 855). A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.; see also King v. Hawgwild Air, LLC*, No. 3:08–cv–153–L, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008). A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction and where the plaintiff is waging a "fishing expedition" into jurisdictional facts. *Combat Zone Corp. v. John/Jane Does 1–13*, No. 3:12–cv–3927–B, 2013 WL 230382, at *2 (N.D. Tex. Jan. 22, 2013) (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).

## Analysis

### I. Stone Metals fails to establish personal jurisdiction.

The undersigned finds that Stone Metals has failed to establish a *prima facie* case that either general or specific jurisdiction exists over nonresident defendant Zetwerk.

### A. Stone Metals fails to establish general jurisdiction.

Although Stone Metals contends that it "appears" that there is general jurisdiction, Dkt. No. 16 at 10, Stone Metals fails to establish that Zetwerk was "at home" in the State of Texas or had a lasting physical presence here, *Goodyear*

*Dunlop Tires*, 131 S. Ct. at 2854. There is no evidence before the Court that Zetwerk has any contacts with Texas, much less that any contacts are continuous and systematic such that the Court may exercise general jurisdiction over an action against Zetwerk regardless of whether the action is related to Zetwerk's contact with the forum. *See Helicopetros Nacionales de Colombia, S.A.*, 466 U.S. at 414-15.

Zetwerk is a foreign company incorporated in the Republic of India with its principal place of business in Bengaluru, India. Its goal is "to provide reliable and predictable supply of high-quality manufactured products to our customers across the world," Dkt. No. 16-3 at 3, and its "long-term vision is to build an Amazon of Manufacturing, catering to global demand through a global supply footprint," Dkt. No. 16-2 at 4.

**\*5** Zetwerk maintains no offices, neither owns nor leases property, and has no bank accounts, employees, suppliers, or vendors in Texas. It has never been a Texas corporation, applied for or held a certificate to do business in Texas, or appointed an agent for service of process in Texas. *See* Dkt. No. 14-1. It has "customers across the world," including in North America. Dkt. No. 16-3 at 3. But, at the time that Zetwerk filed its motion to dismiss, it did not and had never had any Texas clients and had not profited from sales to a Texas company." Dkt. No. 13-1 at 1.

Zetwerk's job posting on an internet website for a Business Development Manager "Texas, NY" does not support a finding of general jurisdiction. *See CDx Holdings, Inc. v. Goldenson*, No. 3:12-cv-394-N-BH, 2012 WL 1308985, at *4 (N.D. Tex. Oct. 26, 2012) (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987)).

In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another but must examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986). Here, they do not.

### B. Stone Metals fails to establish specific jurisdiction.

Stone Metals contends that the Court has specific jurisdiction because Zetwerk committed intentional torts in Texas. Stone Metals alleges that Zetwerk conspired with Eubank to steal Stone Metals's proprietary and confidential information and

used that information to tortiously interfere with Stone Metals's relationships with current and prospective clients.

Stone Metals argues that personal jurisdiction can be based on imputing Eubank's Texas contacts to Zetwerk under an agency theory. *See Alliantgroup, L.P. v. Feingold*, CIV. A. H-09-0479, 2009 WL 2498551, at *6 (S.D. Tex. Aug. 12, 2009) (citing cases holding that an agent's jurisdiction contacts may be imputed to the principal).

Zetwerk argues that Eubank's actions cannot be imputed to it because Eubank is an independent contractor. *See O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143, 145 (E.D. Tex. 1995) (citing *Smith v. Piper Aircraft Corp.*, 425 F.2d 823, 826 (5th Cir. 1970)). Zetwerk asserts that, contrary to Stone Metals's allegations, Eubank is not and has never been a Zetwerk employee. Zetwerk explains that it engaged Safeguard International Limited, who in turn engaged Precision Global Consulting to hire Eubank as an independent contractor. *See* Dkt. No. 13-1. Construing this disputed fact in Stone Metals's favor, as the Court must do for purposes of this motion to dismiss, the undersigned will consider Eubank to be a Zetwerk employee.

The inquiry whether this Court may assert specific jurisdiction over nonresident defendant Zetwerk focuses on the relationship among Zetwerk, Texas, and the litigation, and it is Zetwerk's suit-related conduct that must create the connection with Texas. *See Walden*, 571 U.S. at 283-84. And the minimum contacts analysis looks to Zetwerk's contacts with Texas, not Zetwerk's contacts with someone who has contacts with Texas. *See id.* at 284.

Zetwerk's contacts with Texas are too tenuous to establish specific jurisdiction. Zetwerk solicited a business development manager for a region including but not limited to Texas. The person hired to fill the position was a Florida resident whose only Texas connection was the location of his former employer.

**\*6** And, even if specific jurisdiction could be established through an agency relationship, Stone Metals does not indicate what Texas contacts may be imputed to Zetwerk as Eubank's employer. Zetwerk and Eubank exchanged emails about the job while Eubank was in Florida. There was no contact between Zetwerk and Eubank in Texas. During negotiations, Zetwerk received two emails from Eubank stating that he had been contacted by eight unnamed companies seeking products from India. Stone Metals does not allege that any of those companies was in Texas. Eubank deleted some of Stone Metals's sales and projects files on his last day of employment with Stone Metals and after he went to work for Zetwerk. But Stone Metals does not allege that those files were for sales and projects in Texas. Eubank also solicited one of Stone Metals's clients in his capacity as Business Development Manager of Zetwerk, but that customer was not located in Texas. *See* Dkt. No. 4-4.

Stone Metals has failed to make a prima facie case of specific jurisdiction.

## II. The Court should deny the request for jurisdictional discovery.

Stone Metals requests limited jurisdictional discovery "if the Court is inclined to grant" the motion to dismiss. It seeks an opportunity to discover additional jurisdictional "facts surrounding Zetwerk's business development and expansion generally in Texas, and specifically with Eubank." Dkt. No. 16 at 12.

Zetwerk objects to this request because it "appears to be based on speculation that additional facts establishing jurisdiction may exist if Stone Metals is provided the broad and potentially invasive" discovery sought. Dkt. No. 17 at 7. It also objects because Stone Metals does not dispute the facts showing that Zetwerk has no contacts with Texas "but instead vaguely suggest there *may be* some fact that would support jurisdiction." *Id.* (emphasis in original).

Stone Metals is not entitled to jurisdictional discovery because it has not made a preliminary showing of personal jurisdiction. *See Fielding*, 415 F.3d at 429. And the Court need not allow a plaintiff to conduct a jurisdictional "fishing expedition" seeking facts to support a claim of personal jurisdiction. *See Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*, 3:14-cv-1824-BN, 2014 WL 5431630, at *8 (N.D. Tex. Oct. 27, 2014).

## Recommendation

The Court should grant Properly Named Defendant Zetwerk Manufacturing Businesses Pvt. Ltd.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [Dkt. No. 12] and should dismiss with prejudice Stone Metals's claims against Zetwerk.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

**All Citations**

Slip Copy, 2020 WL 6877704

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Swarovski Optik North America Ltd. v. Euro Optics, Inc., Not Reported in F.Supp.2d (2003)
Case 4:21-cv-00492-O Document 108-1 Filed 06/28/21 Page 220 of 236 PageID 12427
2003 WL 22014581

2003 WL 22014581
Only the Westlaw citation is currently available.
United States District Court, D. Rhode Island.

SWAROVSKI OPTIK NORTH
AMERICA LIMITED,

v.

EURO OPTICS, INC.

C.A. No. 03–090ML.
|
Aug. 25, 2003.

**Attorneys and Law Firms**

Glenn Richard Friedemann, Tillinghast Licht Perkins Smith & Cohen LLP, Providence, RI, for Swarovski Optik North America Ltd.

Dennis E. Carley, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, Joseph D. Smith, McCormick Law Firm, Williamsport, PA, for Euro Optics, Ltd.

*REPORT AND RECOMMENDATION*

ROBERT W. LOVEGREEN, United States Magistrate Judge.

 **\*1** Now before this Court is Euro Optics, Inc.'s ("Euro Optics") motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) (lack of jurisdiction over the person) and (3) (improper venue). Also before this Court is Swarovski Optik North America Limited's ("SONA") motion to strike Euro Optics' motion to dismiss, corresponding memorandum of law, and the affidavit of Alexander Roy, III. Plaintiff SONA has brought various federal and state claims for unfair competition, trademark infringement and dilution, trade name dilution, and tortious interference with prospective economic advantage. SONA's motion to strike was referred to a magistrate judge for determination. Euro Optics' motion to dismiss was referred for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(A) & (B); Local Rule of Court 32(c). A hearing was held on August 7, 2003. After examining the memoranda submitted, listening to the arguments of counsel and conducting my own independent research, I recommend that defendant's motion to dismiss be granted pursuant to Fed.R.Civ.P. 12(b)(2). I also reserve decision on the motion to strike should it be necessary to address after the District Court has acted upon this Report and Recommendation.

*Procedural History*

On March 13, 2003, SONA filed its complaint. On May 20, 2003, Euro Optics filed a motion to dismiss as its first responsive pleading, accompanied by a supporting memorandum of law and the affidavit of Alexander Roy, III. On June 2, 2003, SONA filed an objection to Euro Optics' motion to dismiss, a supporting memorandum of law, and several supporting affidavits. Also on June 2, 2003, SONA filed a motion to strike Euro Optics' motion to dismiss, supporting memorandum of law, and the affidavit of Alexander Roy, III. Notably, Euro Optics did not file a response to SONA's motion to strike.

*Facts*

SONA is a Rhode Island-based seller of high quality optical glass products, including binoculars, rifle scopes, observation telescopes, night vision scopes, and range finders. SONA sells its products in interstate commerce under the trademarks "Swarovski Optik," "Swarobright," and "Kahles."

Euro Optics is a Pennsylvania corporation with its principal and only place of business located in Pennsylvania. Euro Optics resells high quality optical glass products from several manufacturers, including SONA. Euro Optics, however, is not an authorized SONA dealer and proclaims on its web site that it obtains its products from European distributors.

It is undisputed that Euro Optics has no real estate, offices, or employees in Rhode Island. Further, no employee or agent of Euro Optics has ever visited Rhode Island. In fact, at the time of this writing, Euro Optics has never knowingly made a sale in Rhode Island or to a Rhode Island resident that could be used to support personal jurisdiction.[1] What Euro Optics does have, however, is a web site, eurooptic.com, which can be accessed from any computer in the world that is connected to the Internet. Notably, only residents of the United States can actually purchase products from Euro Optics' web site because the online order form only allows purchasers to choose a United States location, but not the District of Columbia, as a delivery address. In summary, Euro Optics has *no* connections with Rhode Island except a web site that can be accessed by Rhode Island residents, and through which Rhode Islanders "could" purchase products.

## I. Motion to Strike

**\*2** Plaintiff moves this Court to strike Euro Optics' motion to dismiss and its corresponding pleadings for being filed out of time. In particular, plaintiff alleges that defendant filed its first responsive pleading, its motion to dismiss, approximately one month late. Further, defendant neglected to file a response to plaintiff's motion to strike.

While this Court in no way condones Euro Optics' apparently dilatory actions, the Court will reserve decision on plaintiff's motion to strike at this time for several reasons. First, the case should be disposed of on the merits of the Fed.R.Civ.P. 12(b)(2) motion, a policy generally favored by the First Circuit. *See United States v. One 1987 BMW 325,* 985 F.2d 655, 658 (1st Cir.1993) (noting a strong policy favoring the disposition of cases on the merits). Second, the parties discussed some type of agreement to extend the time to answer the complaint or file responsive motions, although they dispute the terms of that agreement. Third, SONA was not terribly pro-active in counteracting Euro Optics' alleged delinquency. For example, SONA was not sitting on the court house steps on the twenty-first day after service of process waiting to file a motion for entry of default. In fact, SONA never filed a motion for entry of default. Instead, plaintiff moved to strike Euro Optics' first responsive pleading. Therefore, while this Court does not approve of Euro Optics' laggard conduct, the Court reserves decision on the motion to strike should it be necessary to decide after the District Court acts upon the Report and Recommendation.

## II. Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2)

### 1. Personal Jurisdiction and the Internet

This case requires the Court to explore the bounds of its ability to exercise personal jurisdiction over a company or individual on the basis of an Internet web site. *See generally* Richard S. Zembek, *Jurisdiction and the Internet: Fundamental Fairness in the Networked World of Cyberspace,* 6 Alb. L.J. Sci. & Tech. 339 (1996). The Internet, which has made the exchange of information and commerce accessible from essentially any computer in the world, has forced courts "to articulate a standard that both embodies traditional rules and accounts for new factual scenarios created by the Internet." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir.2003).

### a. Traditional Analysis

Under the traditional analysis, the burden of establishing personal jurisdiction over the defendant rests with the plaintiff. *Brian Jackson & Company v. Eximias Pharm. Corp.,* 248 F.Supp.2d 31, 34 (D.R.I.2003) (citing *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995); *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 463 (1st Cir.1990)). A prima facie standard is used to determine whether personal jurisdiction is appropriate wherein the court "must accept plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51 (1st Cir.2002) (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995)). These facts are taken as true whether or not disputed and are construed in the light most congenial to the plaintiff's jurisdictional claim. *Id.* (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998)).

**\*3** Personal jurisdiction is established when (1) the forum state has a long-arm statute that purports to grant jurisdiction over the defendant[2] and (2) exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Daynard,* 290 F.3d at 52 (citing *Foster–Miller,* 46 F.3d at 144). Rhode Island's long-arm statute has been interpreted to be conterminous with the constitutional limits under the Fourteenth Amendment. *See Brian Jackson,* 248 F.Supp.2d at 34–35 (citing *Almeida v. Radovsky,* 506 A.2d 1373, 1374 (R.I.1986)). Therefore, the question is whether asserting personal jurisdiction over Euro Optics is consistent with the Due Process Clause. *Id.*

There are two types of personal jurisdiction, general and specific. *Daynard,* 290 F.3d at 51 (quoting *Mass. Sch. of Law at Andover,* 142 F.3d at 34). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001) (citation omitted). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Id.* (quoting *Mass. Sch. of Law at Andover,* 142 F.3d at 34). To support specific personal jurisdiction, plaintiff must satisfy a tripartite formula:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.

Case 4:21-cv-00492-O Document 108-1 Filed 06/28/21 Page 222 of 236 PageID 12429

Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Brian Jackson,* 248 F.Supp.2d at 35 (quoting *Sawtelle,* 70 F.3d at 1289). In the case at bar, plaintiff conceded at oral argument that if the court has personal jurisdiction at all, it rests only on specific personal jurisdiction. This Court agrees.

### b. The Internet and Personal Jurisdiction

The precise question raised by this case is whether the operation of a commercially interactive web site accessible in the forum state is sufficient alone to support specific personal jurisdiction, or whether there must be additional evidence that the defendant has purposefully availed itself of the privilege of engaging in activity in the forum state, such as actual orders being placed on the web site by residents of the forum state. In the past, courts have responded to emerging technologies in adjusting the contours of personal jurisdiction. For example, in 1958, the Supreme Court noted that "[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase." *Hanson v. Denckla,* 357 U.S. 235, 250–51 (1958). In 1985, the Supreme Court again responded to an increase in the modes of interstate commerce by observing that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State" for personal jurisdiction to attach. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).

**\*4** Courts have responded to personal jurisdiction in the Internet age no differently than with other emerging technologies as the traditional framework has been deftly molded to fit today's technological realities. The majority trend is to apply a slightly modified personal jurisdiction analysis examining a "sliding scale" of Internet activity that is sufficient for jurisdiction. It should be noted, however, that neither the First Circuit nor this District Court have examined the exact contours of personal jurisdiction based upon the existence of a web site, particularly when the defendant has *no* other contacts with the forum state.[3]

The leading decision regarding personal jurisdiction in the Internet age is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Penn.1997). *Zippo* established a "sliding scale" of Internet activity through which courts could determine whether a party has subjected itself to personal jurisdiction. "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.* at 1124. At the other end of the continuum are cases where the defendant has only established a "passive" web site which does not allow for the transmission of information between parties. *Id.* Instead, telephone calls or mail are necessary to contact the seller; in the case of such "passive" sites, personal jurisdiction does not lie. *Id.* The middle ground is occupied by "semi-interactive web sites, through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 399 (4th Cir.2003). In this middle ground, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo,* 952 F.Supp. at 1124.

Here, defendant's web site seems to sit in the middle ground; that is, its web site is capable of exchanging information with forum residents, but it has not yet done so. Therefore, the Court would need to examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

### 2. Application

To determine whether Euro Optics has subjected itself to specific personal jurisdiction in this district, the Court, as noted *supra,* examines whether (a) the plaintiff's claim directly arises out of, or relates to, the defendant's forum-state activities; (b) the plaintiff purposefully availed itself of conducting activities in the forum state; and (c) the exercise of jurisdiction is reasonable in light of the Gestalt factors. *Brian Jackson,* 248 F.Supp.2d at 35 (quoting *Sawtelle,* 70 F.3d at 1389).

### a. Relatedness

**\*5** SONA's cause of action arises from alleged trademark infringement concerning a web site that is continuously available to Rhode Island residents and allegedly causes injury to SONA in Rhode Island. District courts in

this circuit have held that trademark infringement via a continuously available Internet web site satisfies the relatedness requirement. *See Cecil McBee v. Delicia Co. Ltd.,* No. 02–198, 2003 U.S. Dist. LEXIS 6123, at *10– 12 (D. Me. April 14, 2003) (Magistrate Judge Report and Recommendation), *aff'd,* 2003 U.S. Dist. LEXIS 11708 (D.Me. July 9, 2003); *Northern Light Tech., Inc. v. Northern Lights Club,* 97 F.Supp.2d 96, 106 (D.Mass.2000), *aff'd on other grounds,* 236 F.3d 57 (1st Cir.2001);[4] *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 44 (D.Mass.1997). In particular, the *Hasbro* court, by analogy, concluded that a review of the non-Internet trademark infringement case law establishes that advertising in the forum state satisfies the initial inquiry of relatedness. *Hasbro,* 994 F.Supp. at 42–44.

In the case at bar, Euro Optics' web site is continuously available to Rhode Island residents and allegedly infringes SONA's trademarks by placing its trademarks and products on its web site. Therefore, under the reasoning of *Cecil McBee, Northern Ligths,* and *Hasbro,* and because relatedness is a "flexible, relaxed standard," *Sawtelle,* 70 F.3d at 1389, this Court finds that the relatedness requirement has been met in the case at bar.

b. Purposeful Availment

The touchstone of the purposeful availment requirement in Internet jurisdiction cases is "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo,* 952 F.Supp. at 1124. To analyze this issue, the Court will examine several decisions which provide some guidance for the case at bar.

In *Cecil McBee v. Delicia Co. Ltd.,* a Magistrate Judge Report and Recommendation which was affirmed by the District Court in Maine, the plaintiff, Cecil McBee, a jazz musician who is a resident of Maine, sued a Japanese corporation. 2003 U.S. Dist. LEXIS 6123, at *1, *aff'd,* 2003 U.S. Dist. LEXIS 11708. The defendant sold women's fashions under the name "Cecil McBee" through retail shops named "Cecil McBee" in Japan. The defendant had no stores, offices, employees, etc. in the United States, and was based entirely in Japan. The defendant, however, operated a web site, www .cecilmcbee.net, which, while hosted in Japan and written almost entirely in Japanese, was accessible to United States residents, although United States residents could not buy products directly from the web site. Instead, the web site directed visitors to contact Cecil McBee stores directly to place orders. Between February 2002 and March 2003, three

Maine residents visited the web site and thereafter placed orders for merchandise with Cecil McBee stores in Japan. The Japanese stores then sent the merchandise to Maine. *Id.* at *1– 4.

**\*6** The defendant in *Cecil McBee* argued that personal jurisdiction was lacking in the District of Maine. The court analyzed the issue under the *Zippo* framework. *Id.* at *8– 9 (citing *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (adopting the *Zippo* framework for Internet jurisdiction cases)). The *Cecil McBee* court found that it had personal jurisdiction over the Japanese corporation because of the web site and the three sales that were made to Maine residents.

In *Hasbro, Inc. v. Clue Computing, Inc.,* Hasbro brought suit against Clue Computing for trademark infringement of the Hasbro CLUE® trademark. 994 F.Supp. at 36. Hasbro alleged that Clue Computing infringed upon its CLUE® trademark by registering and using the web site clue.com. *Id.* Plaintiff was a Rhode Island corporation, with its main manufacturing plant in Massachusetts, and defendant was a Colorado corporation. Defendant also did not have any employees, offices, etc. in Massachusetts, nor had defendant ever visited or worked in Massachusetts. Therefore, defendant filed a motion to dismiss for lack of personal jurisdiction. *Id.*

The defendant did, however, have a passive advertising web site, which was available to Massachusetts residents and on which defendant stated that it would "go to any customers site!" *Id.* at 38. Further, defendant stated on its web site that it performed work for Digital Equipment Corporation ("Digital"), a Massachusetts corporation. Defendant did not work for Digital directly, or perform work for it in Massachusetts. Instead, defendant was hired by a third party to perform a training contract which the third party held with Digital. Defendant, however, knew that Digital was a Massachusetts corporation and traveled on Digital's expense account. Therefore, even though defendant did not actually perform work in Massachusetts, the court found that personal jurisdiction existed because of defendant's web site, the recognition of working for a Massachusetts corporation on its web site, and the contract with a Massachusetts corporation, although admittedly through a third party. *Id.* at 43–46.

In *Toys "R" Us, Inc. v. Step Two, S.A.,* Toys "R" Us ("Toys"), a Delaware corporation, brought suit against Step Two, a Spanish corporation, for use of its web site for alleged trademark infringement. 318 F.3d at 448. Step Two did not

have any stores, offices, bank accounts, employees, etc. in the United States. Step Two did, however, maintain a web site which could be accessed by United States residents. Anyone could sign up to receive emails from Step Two's web site, but only residents of Spain could order merchandise from the web site. United States residents could purchase merchandise by calling a store in Spain directly, using a phone number provided on the web site. *Id.* at 449–51.

The *Toys "R" Us* court noted that "*the mere operation of a commercially active web site should not subject the operator to jurisdiction anywhere in the world.*" *Id.* at 454 (emphasis added). Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by [1] directly targeting its web site to the state, [2] knowingly interacting with residents of the forum state via its web site, or [3] through sufficient other related contacts." *Id.* The court found that Step Two did not purposefully direct its web site to New Jersey residents because it was written almost entirely in Spanish, and because two sales that Step Two had made to New Jersey residents were insufficient.[5] *Id.* at 454–55. The district court in *Toys "R" Us,* however, had denied the parties further jurisdictional discovery. Therefore, despite noting that the evidence adduced thus far was insufficient to support personal jurisdiction, the circuit court remanded the case to the district court for further jurisdictional discovery.

 **\*7**  In the case at bar, this Court finds that Euro Optics did not purposefully avail itself of conducting business in this forum. The *only* contact that Euro Optics has with Rhode Island is a web site that is available not only to Rhode Island residents, but to residents in every state in the Union. The fact that Rhode Island residents "can" order products from the site, without more, is insufficient to establish purposeful availment.

The cases examined *supra* do not convince the Court that jurisdiction is proper here. In *Cecil McBee,* a web site was combined *with actual sales to forum residents* to support jurisdiction. In the case at bar, the *only* contact is the *availability* of a commercially active web site. Without more, this Court finds that Euro Optics has not purposefully availed itself of the forum as did the defendant in *Cecil McBee.*

This Court considers *Hasbro* to stand at the outer reaches of when personal jurisdiction is available via Internet contacts. In *Hasbro,* the court found jurisdiction based mainly on a passive, advertising web site on which

the defendant stated he would travel anywhere and also advertised that he had performed work for a Massachusetts corporation. The defendant, however, performed the work for the Massachusetts corporation through a third party, and never actually did any work in Massachusetts. Therefore, even though extremely tenuated, non-Internet forum related activities did exist in *Hasbro.* The case at bar is different from *Hasbro* because although residents of any state can order products from Euro Optics' web site, unlike the defendant in *Hasbro,* Euro Optics has no sales to or performed work associated with the forum. This Court disagrees with *Hasbro* to any extent that it can be read to suggest that a web site which offers sales or services anywhere in the United States, without more, sufficiently supports personal jurisdiction anywhere in the United States.[6]

This Court finds that the reasoning of the Third Circuit in *Toys "R" Us* strikes the perfect balance for when jurisdiction is proper in cases where a commercially interactive web site exists, but it has not yet interacted with residents of the forum state. In *Toys "R" Us,* the Third Circuit stated that the

> mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by [1] directly targeting its web site to the state, [2] knowingly interacting with residents of the forum state via its web site, or [3] through sufficient other related contacts.

*Toys "R" Us,* 318 F.3d at 454 (emphasis added).

In the case at bar, Euro Optics is merely operating a commercially interactive web site. Therefore, Euro Optics should not automatically be subject to jurisdiction in every forum in the United States. *See id.* Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state." *Id.* Here, Euro Optics did not purposefully avail itself of conducting business in Rhode Island under any of the exceptions noted in *Toys "R" Us. Id.*

 **\*8**  First, Euro Optics has not directly targeted its web site to Rhode Island by sending emails, for example, to Rhode Islanders or stating anywhere on its web site that it has a unique connection to Rhode Island. *Cf. Hasbro,* 994 F.Supp. at 38 (finding jurisdiction based on, inter alia, defendant's statements on its web site that it performed significant work for a resident corporation of the forum state). This Court

finds that merely having Rhode Island available as a mailing address on its drop down list, *along with 49 other states,* is insufficient to support a contention that Euro Optics "directly target[ed] its web site" to Rhode Island. *Id.* To hold otherwise would subject Euro Optics to jurisdiction in every forum for the "mere operation of a commercially interactive web site." *Id.*

Second, Euro Optics has not "knowingly interact[ed] with residents of the forum state via its web site." *Id.* There is no evidence that Euro Optics ever made a sale to a Rhode Island resident or even sent an email to a Rhode Island resident. At oral argument, plaintiff's counsel noted that he placed an order, using a fabricated Rhode Island address, on defendant's web site and received a confirmation email for that order. Plaintiff's counsel never actually received the order, but he argued that the confirmation email establishes that defendant is willing to sell products to Rhode Island residents and thus has purposefully availed itself of doing business in Rhode Island.

This Court disagrees with SONA's argument for several reasons. First, SONA's counsel cannot "create" jurisdiction after the fact. *See Indymac Mortg. Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 232 (S.D.N.Y.2001) (citation omitted) ("It is well established that [personal] jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint ."). *Cf. Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830 (1989) (noting that for determining diversity of citizenship, the "existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed") (citation omitted). Here, there is no indication that plaintiff's counsel "ordered" a product from Euro Optics' web site before the complaint was filed. If that had been the case, plaintiff surely would have mentioned that contact in its memorandum in opposition to defendant's motion to dismiss. Instead, plaintiff's counsel only mentioned the false order at oral argument, which leads the court to conclude that counsel placed the order after the fact.

Further, even if plaintiff's counsel, or for that matter any other Rhode Island resident, had ordered a product from Euro Optics' web site prior to the filing of this suit, one sale could be "the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction." *Toys "R" Us,* 318 F.3d at 454–55 (suggesting that two sales originating from defendant's web site to residents of the forum state could simply be "fortuitous," "random," and "attenuated") (quoting *Burger*

*King Corp.,* 471 U.S. at 475). The Court need not analyze this particular scenario, however, because Euro Optics has never made a sale or shipped an item to a Rhode Island resident.

**\*9** Third, defendant does not have "sufficient other related contacts" to the forum state. *Toys "R" Us,* 318 F.3d at 454. As noted repeatedly, Euro Optics has had no contacts with Rhode Island or its residents besides the general availability of its web site. There is no evidence of sales, phone calls, email, facsimile transmissions, etc. to Rhode Island. Simply put, unlike the defendants in *Cecil McBee* (sales) and *Hasbro* (third party contract), Euro Optics, besides its web site, has *no* other contacts with Rhode Island or its residents. Therefore, this Court finds that Euro Optics has not purposefully availed itself of the privilege of conducting business in the forum state and recommends that Euro Optics' motion to dismiss be granted.[7]

### III. Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(3)

Plaintiff's motion also seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(3). *See* Euro Optics' Motion to Dismiss. Fed.R.Civ.P. 12(b)(3) permits the dismissal on the grounds that a case was filed in the improper venue. Euro Optics' memorandum, however, provides no argument under Fed.R.Civ.P. 12(b)(3). Further, at the July 7, 2003 hearing, Euro Optics waived any arguments it had under Fed.R.Civ.P. 12(b)(3). Therefore, this Court will not address Fed.R.Civ.P. 12(b)(3), particularly where the motion should be granted pursuant to Fed.R.Civ.P. 12(b)(2).

### Conclusion

For the reasons stated, I recommend that the District Court grant Euro Optics motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2). I also reserve decision on the motion to strike should it be necessary after the District Court acts on the Report and Recommendation. Any objection to this R & R must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed.R.Civ.P. 72(b); Local Rule 32. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1990); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

Case 4:21-cv-00492-O Document 108-1 Filed 06/28/21 Page 226 of 236 PageID 12433

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22014581

Footnotes

1  At one point, plaintiff's counsel ordered a product from Euro Optics' web site, although he never received it due to providing a fictional Rhode Island address. Plaintiff's counsel's "order," however, cannot be used to support personal jurisdiction. *See infra* at 11–12.

2  The Rhode Island long arm statute provides:

Every foreign corporation, every individual not a resident of this state ... and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island ... in every case not contrary to the provisions of the constitution or laws of the United States.

R.I. Gen. Laws § 9–5–33.

3  In the recent *Brian Jackson* case, this District Court provided some guidance regarding jurisdiction in the Internet age. 248 F.Supp.2d 31. *Brian Jackson,* however, did not address jurisdiction based on a web site. Instead, that case involved Internet communications such as emails that were purposely sent to the forum state, as well as other traditional contacts such as facsimile transmissions and telephone calls. *Id.*

4  The First Circuit's opinion in *Northern Lights* did not address the issue of personal jurisdiction via an Internet web site.

5  Toys identified two sales by Step Two to New Jersey residents. The residents obtained phone numbers for Step Two's stores in Spain from the web site and ordered products. Those two sales, however, were orchestrated by Toys employees or its attorneys and the court found that those contacts alone were insufficient.

6  Such a reading of *Hasbro* is at least arguable because the court relied heavily on the defendant's web site, and the proclamations on that web site, in finding jurisdiction.

7  The Court need not address the Gestalt factors because purposeful availment cannot be satisfied.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 2850989
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Leon THORNTON, Plaintiff,

v.

SYNY LOGISTICS, INC., Defendant.

Civil Action No. 3:19-CV-2047-N
|
Signed 06/01/2020

**Attorneys and Law Firms**

Dan S. Boyd, Boyd & Stapleton, Dallas, TX, for Plaintiff.

Richard B. Roper, III, Austin Paul Smith, Thompson & Knight LLP, Dallas, TX, for Defendant.

**MEMORANDUM OPINION AND ORDER**

David C. Godbey, United States District Judge

 **\*1**  This Memorandum Opinion and Order addresses Defendant Syny Logistics, Inc.'s ("Syny Logistics") motion to vacate default judgment and transfer [13] and Syny Logistics's motion to strike [16]. For the reasons below, the Court grants the motion to vacate and transfer and moots the motion to strike.

**I. Origins of the Dispute**

This dispute arises out of Plaintiff Leon Thornton's employment as a truck driver with Syny Logistics, a freight shipping trucking company based in Illinois. Def.'s Mot. Vacate Default Judgment 2 [13]. On July 10, 2019, roughly three months after Thornton began his employment, Thornton drove to Georgia, as instructed, to deliver cargo and the trailer attached to his truck. *Id.* The parties agree that Thornton did not return to Illinois or leave the truck in Georgia as instructed, although they diverge on their explanations for these events. *Id.*; Compl. 2 [1]. It is not disputed, however, that Syny Logistics reported the truck and trailer as stolen. Law enforcement stopped Thornton in Mississippi on July 12, 2019, with only the truck in his possession, and Syny

Logistics claims that Thornton refused to respond to its queries regarding the location of the trailer. Def.'s Mot. Vacate Default Judgment 2 [13].

Syny Logistics fired Thornton the same day. *Id.* In August 2019, Thornton filed suit against Syny Logistics, alleging that it falsely accused him of stealing the truck and trailer and claiming defamation *per se.* Compl. 3 [1]. Thornton also alleged violations of Title VII and the Age Discrimination and Employment Act. *Id.* On January 17, 2020, the Court granted default judgment as to Syny Logistics, which had not responded to the complaint. January 17, 2020, Default Judgment 1 [11]. On February 13, 2020, Syny Logistics filed this motion to vacate default and transfer.

**II. Legal Standards**

*A. Motion to Vacate Default Judgment*

Federal Rule of Civil Procedure 60(b)(4) provides that district courts may vacate a final judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4). In the Fifth Circuit, a district court lacks authority to issue a final judgment against a party if it does not have personal jurisdiction over that party. *Broadcast Music, Inc. v. M.T.S. Enter., Inc.*, 811 F.2d 278, 281 (5th Cir. 1987).

*B. Motion to Transfer*

28 U.S.C. § 1404(a) authorizes district courts to transfer a case if the parties are bound by a valid and enforceable forum-selection clause that indicates a different district. 28 U.S.C. 1404(a); *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Federal law governs the enforceability of forum-selection clauses, and "a proper application of 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 59–60.

The Supreme Court recently clarified that courts "should not consider arguments about the parties' private interests" in determining whether a forum-selection clause is enforceable and may weigh only public-interest factors. *Id.* at 64 ("A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."). The public-interest factors include "administrative difficulties flowing

from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 309 (5th Cir. 2016) (internal quotation omitted).

### III. The Court Vacates the Default Judgment Because it Lacks Personal Jurisdiction Over Syny Logistics

**\*2** In determining whether a forum court has personal jurisdiction over litigants, the court must ensure that both the requirements of the Due Process Clause and the forum state's long-arm statute are met.[1] Due process is satisfied if (1) the defendant has purposefully availed itself of the benefits of the forum state by establishing minimum contacts with it and (2) subjecting the defendant to jurisdiction comports with "traditional notions of fair play and substantial justice." *Jackson v. Tanfoglio Giuseppe S.R.I.*, 615 F.3d 579, 584 (5th Cir. 2010) (internal citation omitted).

A defendant's contacts with a forum state may subject it to either general or specific personal jurisdiction. General jurisdiction exists when a party's contacts with a jurisdiction "are so continuous and systematic as to render them essentially at home in the forum state," regardless of whether the alleged claim is related to the defendant's actions in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations omitted). In contrast, specific jurisdiction, or "conduct-linked jurisdiction," exists when the claim against a non-resident defendant arises from or relates to the defendant's contacts with the state. *Id.* at 122; *Bristol-Myers Squibb Co. v. Superior Ct. of Ca., San Francisco Co.*, 137 S. Ct. 1773, 1780 (2017). Here, the Court holds that it has neither general nor specific jurisdiction over Syny Logistics.[2]

The paradigm cases for general jurisdiction over a corporation are the state where it is incorporated and the state where it has its principle place of business. *Daimler AG*, 571 U.S. at 137. Although general jurisdiction is not expressly limited to these forums and exists where a defendant has continuous and systematic contacts, the "continuous and systematic contacts test is a difficult one to meet" and requires "extensive contacts between a defendant and a forum." *Luv N' Care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

Here, Syny Logistics is domiciled in Illinois, which serves as both its place of incorporation and the location for its home office. Def.'s Mot. Vacate Default Judgment 1–2 [13]. Further, Syny Logistics' contacts with Texas are not so continuous and systematic that it may be considered "at home" in the state. The complaint contains no allegations discussing the frequency with which Syny Logistics does business within the state, and Syny Logistics alleges that it maintains no offices in Texas. *See id.* at 6. Thornton claims in his response that Syny Logistics "continually makes stops in all of the major cities in Texas and some of the minor ones" and that Syny Logistics' website shows it has relationships with three distribution centers in Texas. Pltf.'s Resp. Mot. Vacate Judgment 4–5 [15]. Even considering these claims and accepting them as true, the quality and quantity of Syny Logistics' business transactions within Texas are nowhere near sufficient to subject it to render it "at home" in Texas. *See Luv N' Care*, 438 F.3d at 469 ("Even repeated contacts with the forum residents by a foreign defendant may not meet the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."). The Court thus finds that it lacks general jurisdiction.

**\*3** Likewise, the Court determines that it also lacks specific jurisdiction over Syny Logistics. Specific jurisdiction requires that there be "an affiliation[n] between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

The facts alleged in the complaint do not establish specific jurisdiction. The relevant paragraph in the complaint states:

> On April 6, Thornton wanted to take off for a colonoscopy. Thornton was sent to Houston the following Friday. He worked May 23 through July 2. He wanted to take off for a funeral on the 12th. He went from Colorado to Houston. Defendant said to take the truck to Atlanta.... Thornton got to Atlanta but could not deliver the load.

Compl. 2 [1]. Thornton's sole allegation regarding Texas is that he was sent to Houston while employed with Syny Logistics. His claims — that Syny Logistics falsely accused him of stealing a truck and fired him because of race and age — do not arise from or relate to his stop in Houston. Thornton's discharge did not occur in Texas and was not allegedly premised on any of Thornton's actions as a Syny

Logistics' employee while he was in Texas. Syny Logistics claims its discharge of Thornton was based on his failure to deposit the trailer in Georgia, and Thornton's complaint states that the accusation and discharge occurred after he chose not to leave the truck in Georgia. Compl. 2–3 [1]. Thornton was stopped by law enforcement in Mississippi, and Syny Logistics fired him that same day, presumably while he was still in Mississippi.[3] *See id.* at 3; Def.'s Mot. Vacate Default Judgment [13].

Additionally, there are no facts in the complaint that tie Thornton's hostile work environment claim to his stop in Houston, Texas. Thornton claims in his response to the motion to vacate that Syny Logistics maintains multiple facilities in Texas.[4] Resp. Mot. Vacate Default Judgment 5 [15]. Even if this is true, Thornton alleged no facts showing that his hostile work environment claim is related to the operations Syny Logistics allegedly has in Texas. The Court thus determines that it lacks personal jurisdiction over Syny Logistics. Consequently, the Court grants the motion to vacate the default judgment [11] as void under Federal Rule of Civil Procedure 60(b)(4).

## IV. The Forum Selection Clause is Valid and Enforceable

Syny Logistics also contends that the parties are subject to a forum-selection clause in the employment contract that Thornton signed. That clause provides in relevant part:

> This agreement shall be construed and enforced in accordance with the laws of the State of Illinois. Any dispute or claim brought by either party to enforce the terms of this Agreement must be brought in the Circuit Court of Cook County, Illinois, Second Municipal District or the United States District Court, Northern District of Illinois.

Def.'s Mot. Vacate Default Judgment Ex. A-1 29 [13.2]. Following the Supreme Court's decision in *Atlantic Marine*, valid forum-selection clauses are generally enforced. Here, the parties do not appear to challenge the validity of the clause or disagree about its interpretation and applicability to this case.[5] Consequently, this Court addresses only the enforceability of the clause under *Atlantic Marine*.

 **\*4** Thornton's sole argument against enforcing the clause is that he cannot financially afford to litigate the case in

Illinois. Pltf.'s Resp. Mot. Vacate Default Judgment 6 [15] ("[I]f the case were transferred to Illinois, it would be the literal equivalent of rendering a take nothing judgment."). In support, Thornton cites a 1997 Fifth Circuit case that provides that a forum-selection clause may be unenforceable for several reasons, including when "the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *M/S The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972)). While *Haynesworth* appears to still be good law, the Supreme Court's more recent opinion in *Atlantic Marine* clarifies that party convenience may not be weighed in the enforceability calculus. *Atl. Marine Const. Co., Inc.*, 571 U.S. at 581–82 ("When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witness, or for their pursuit of the litigation."). Because Thornton asserts only a private interest — his financial circumstances — and does not argue that the enforcement of the clause would violate the public interests that this Court is permitted to consider, the Court determines the clause is enforceable. *See also DBS Solutions, LLC v. Infovista Corp.*, 2016 WL 3926505, at *4 (N.D. Tex. 2016) ("Even if the Court could consider this argument, the expense of trying a case in a particular forum has long been insufficient to satisfy a party's burden of demonstrating grave inconvenience.") (internal quotation omitted). The Court thus grants Syny Logistics' motion to transfer this case to the Northern District of Illinois.

## Conclusion

Because the Court lacks personal jurisdiction over Syny Logistics, the Court vacates the default judgment [11] against it. Further, the Court determines that the parties are subject to a valid and enforceable forum-selection clause and grants the motion to transfer this case to the Northern District of Illinois, Eastern Division, pursuant to that agreement. The Court moots Syny Logistics' motion to strike [16].

## All Citations

Slip Copy, 2020 WL 2850989

## Footnotes

1   "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

2   As Syny Logistics' contacts with Texas are insufficient to establish either general or specific jurisdiction over it, the Court does not reach the second prong of the due process inquiry.

3   The complaint does not make any allegations as to the location of the Syny Logistics' office that made the decision to discharge Thornton or the employee who communicated that decision.

4   Syny Logistics denies having any Texas-based offices, Def.'s Mot. Vacate Default 6 [13].

5   While federal law governs the question of enforceability, neither the Supreme Court nor the Fifth Circuit have determined whether federal law or state law applies to the question of forum-selection clause validity. *Atl. Marine Const. Co., Inc.*, 571 U.S. at 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."); *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 301–03 (5th Cir. 2016) (observing that the Fifth Circuit has not "said what source of law governs the 'validity' of a forum-selection clause" and declining to decide that issue). In this case, Thornton's sole challenge to the forum-selection clause references federal law. Pltf.'s Resp. Mot. Vacate Default Judgment 7–8, 11 [15]. Consequently, the Court assumes the parties have waived any arguments that state law applies to the issue of validity.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4905542
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas.

VIAHART, LLC, Plaintiff,

v.

ARKVIEW LLC et al., Defendants.

No. 6:19-cv-00406
|
Signed 08/20/2020

**Attorneys and Law Firms**

Wendy B. Mills, WB Mills, PLLC, Dallas, TX, for Plaintiff.

Gregory David Yoder, Best Choice Products, Inc., Tustin, CA, for Defendant Best Choice Products, Inc.

Alton L. Hare, Pillsbury Winthrop Shaw Pittman LLP, Washington, DC, Brian Christopher Nash, Pillsbury Winthrop Shaw Pittman LLP, Austin, TX, David Jeanchung Tsai, Pillsbury Winthrop Shaw Pittman, LLP, San Francisco, CA, for Defendants Comfortscape, LLC, Jesus Diaz Maso.

Benjamin Charkow, Amster, Rothstein & Ebenstein LLP, New York, NY, Debra Elaine Gunter, Eric Hugh Findlay, Findlay Craft PC, Tyler, TX, for Defendant Creative Kids Far East, Inc.

Debra Elaine Gunter, Eric Hugh Findlay, Findlay Craft PC, Tyler, TX, Mark Berkowitz, Amster Rothstein & Ebenstein, LLP, New York, NY, for Defendant PlayLearn USA, Inc.

Brandon James Leavitt, Eldredge Law Firm, Mansfield, TX, for Defendant Playshire, LLC.

Before Barker, District Judge

**ORDER**

J. Campbell Barker, United States District Judge

**\*1** This case arises from a dispute between manufacturers of certain engineering-type children's toys. Plaintiff alleges that defendants have infringed on its non-patent intellectual property related to the "Brainflakes" interlocking-disk toy.

Before the court are the following motions:

- Defendant PlayLearn USA, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (for lack of personal jurisdiction) and 12(b)(6) (for failure to state a claim upon which relief may be granted) (Doc. 11), which was briefed through the reply (Docs. 18 & 19).

- Defendant Comfortscape LLC's motion to dismiss pursuant to Rule 12(b)(2) (Doc. 39), which was briefed through the sur-reply (Docs. 59, 65, & 69).

- Defendant Jesus Diaz Maso's motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6) (Doc. 40), which was briefed through the sur-reply (Docs. 60, 66, & 70).

- Finally, defendant Creative Kids Far East, Inc.'s motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6) (Doc. 58), which was briefed through the sur-reply (Docs. 62, 67, & 71).

For the reasons set forth below, the court **grants** the motions to dismiss on Rule 12(b)(2) personal-jurisdiction grounds. Accordingly, the court will not address the alternative failure-to-state-a-claim argument in those motions to dismiss. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231-32 (5th Cir. 2012).

**Background**

Defendant PlayLearn is a New York corporation that does not maintain "any employees, office locations, or other presence in Texas" and does not engage in any advertising targeted specifically toward Texas residents, "by geographically-focused online marketing or otherwise." Doc. 11 at 6. It does operate its own e-commerce website and sell through Amazon.com Inc.'s e-commerce platform. Doc. 11-2. PlayLearn's sales through Amazon are "fulfilled by Amazon," meaning that Amazon stores the products in its facilities and "pick[s], pack[s], ship[s], and provide[s] customer service for [those] products." *Id.* It is unknown whether Amazon stored any of PlayLearn's products in Texas or performed any other fulfillment services in Texas. PlayLearn's only sales to Texas residents have been through Amazon. *Id.* PlayLearn argues that it cannot be automatically subject to the jurisdiction of this court simply because it operates an e-commerce site accessible in Texas and made some sales to Texas residents that were fulfilled by Amazon. Doc. 11 at 5-7.

Defendant Comfortscape is organized in Delaware. Doc. 65-1. Defendant Maso is a Florida resident and the president of Comfortscape. *Id.* Comfortscape, like PlayLearn, has no contacts with Texas other than its presence on Amazon's platform and sales through Amazon's fulfillment services. Doc. 39 at 4. Maso's only contacts with Texas are two personal trips and a layover in an airport. Doc. 40-1. Comfortscape argues that it cannot automatically be subject to the jurisdiction of this court simply because it uses Amazon's platform and fulfillment services. Doc. 39 at 4-5. Maso argues that he cannot be subject to the jurisdiction of this court because of actions attributable to Comfortscape, even if those actions would subject Comfortscape to the jurisdiction of the court. Doc. 40 at 6-8.

**\*2** Defendant Creative Kids is a New York corporation. Doc. 58 at 7. Creative Kids sells the product in question to another entity, "Creative Kids Online LLC," also based in New York, which sells the product to consumers and other businesses. *Id.* at 2-3. Creative Kids does no marketing, except through Amazon, and that marketing is not targeted to any particular state. *Id.* at 7. Creative Kids argues that it has no contacts with Texas that could subject it to the jurisdiction of this court.

With respect to PlayLearn, Comfortscape, and Maso, plaintiff argues that their presence on Amazon's platform and their sales to Texas residents through Amazon is sufficient to establish personal jurisdiction. Docs. 18 at 7-11; 59 at 5-10; & 60 at 5-9. Plaintiff makes the same argument as to Creative Kids but also attempts to argue, without citing authority, that Creative Kids' relationship with Creative Kids Online LLC subjects it to jurisdiction here. Doc. 62 at 5-6, 8-12.

**Legal Standard**

Federal courts follow the law of the forum state in determining the bounds of *in personam* jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). The Texas long-arm statute grants personal jurisdiction to the full extent allowed by federal due-process limits and, therefore, this inquiry becomes one of federal constitutional limits. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Due-process limitations dictate that a defendant is subject to personal jurisdiction only if it "has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." *Daimler AG*, 571 U.S. at 126 (cleaned up). This inquiry has two parts.

In the first part of the inquiry, the court must determine whether the defendant has purposefully availed itself of the privilege of conducting business in the forum state and of "the benefits and protections" of the forum's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). If so, it is "presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well." *Id.* Specific jurisdiction, as opposed to general jurisdiction, exists where "the suit arises out of or relates to" the foreign defendant's "minimum contacts" with the forum. *Daimler AG*, 571 U.S. at 127. Thus, the focus of the analysis is on the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). And this analysis involves three principles. First, the contacts must be those of the defendant itself, rather than the unilateral act of some third party, and those contacts must be with the forum state, rather than with persons in the forum state. *Id.* at 284-86. Second, the contacts must be purposeful, rather than random or fortuitous. *Id.* at 286 (citing *Burger King*, 471 U.S. at 475). Third, the defendant must seek some benefit or advantage by its contacts with the forum. *See Burger King*, 471 U.S. at 473-76.

In the second part of the inquiry, maintenance of the suit in the selected forum must comply with traditional notions of fair play and substantial justice. *Id.* at 476-78. The court need not analyze the second inquiry where the first inquiry fails.

The touchstone of the personal-jurisdiction analysis is whether the defendant "should reasonably anticipate being haled into court" in the forum, given its relevant conduct. *Id.* at 474. But foreseeability is not the ultimate concern and is constrained by the above framework and by the principle that jurisdiction is primarily a question of authority rather than fairness. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881-84 (2011). Thus, jurisdiction may only rest on the defendant's purposeful contacts that manifest its intention to submit to jurisdiction. *Id.*; *Wilson v. Belin*, 20 F.3d 644, 648-49 (5th Cir. 1994).

**\*3** The internet presents unique challenges in conducting a personal-jurisdiction analysis. But the same framework and rules apply, and each case must be analyzed independently for compliance with due process, taking into account all internet and non-internet contacts. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226-27 (5th Cir. 2012).

The Fifth Circuit has adopted the *Zippo* analysis to aid in evaluating internet-based contacts. *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir. 1999) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). *Zippo* created a sliding scale of internet contacts, starting at one end where a hypothetical defendant enters into contracts which "involve the knowing and repeated transmission of computer files over the internet." *Id.* This kind of defendant would be subject to specific jurisdiction for cases arising from those contacts. At the other end of the spectrum is a hypothetical defendant who maintains a "passive website that does nothing more than advertise." *Id.* Such a defendant would not be subject to specific jurisdiction in the forum. For cases in the middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Id.*

Technological advances and the internet have "alter[ed] the landscape of personal jurisdiction." But "technology cannot eviscerate the constitutional limits" of a court's power to exercise jurisdiction over a defendant. *J-L Chieftain, Inc. v. W. Skyways, Inc.,* 351 F. Supp. 2d 587, 593 (E.D. Tex. 2004) (citing *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir. 2002)). Thus, "even in the strange realm of internet-related contacts, the standard for personal jurisdiction remains that a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws." *Applied Food Scis., Inc. v. New Star 21, Inc.,* No. W-07-CA-359, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009) (citing *Burger King Corp.,* 471 U.S. at 474). As a result, courts have held that *Zippo* is not a replacement for the traditional analysis, but rather a supplement. *Vitamins Online v. Dynamic Inds.,* No. 2:13-cv-665, 2014 WL 545864, at *2 (D. Utah Feb. 10, 2014) (citing *Shrader v. Biddinger,* 633 F.3d 1235, 1242 n.5 (10th Cir. 2011)); *see also Pervasive Software Inc.,* 688 F.3d at 227 n.7.

The court is therefore conscious that in applying the traditional analysis, supplemented by *Zippo,* it must "ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.' " *be2 LLC v. Ivanov,* 642 F.3d 555, 558 (7th Cir. 2011). The defendant must somehow purposefully target the forum state. *Id.* (collecting cases); *Pervasive Software Inc.,* 688 F.3d at 227-28; *Guidecraft, Inc. v. OJCommerce, LLC,* No. 2:18-cv-1247, 2019 WL 2373440, at *5 (W.D. Pa. May 20, 2019) (citing *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir. 2003)).

Where, as here, the court does not hold an evidentiary hearing, the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. *Sangha v. Navig8 ShipManagement Private Ltd.,* 882 F.3d 96, 101 (5th Cir. 2018). The court need not constrain its inquiry to the pleadings and may consider the record. *Id.* Plaintiff's jurisdictional allegations must be taken as true, and conflicts of facts in the record must be resolved in favor of plaintiff, but that does not mean that a prima facie case has automatically been presented. *Id.*; *Wilson,* 20 F.3d at 648. Furthermore, the court need not credit conclusory allegations, even when uncontroverted. *Applied Food Scis.,* 2009 WL 9120113, at *2 (citing *Panda Brandywine Corp. v. Potomac Elec. Power,* 253 F.3d 865, 868 (5th Cir. 2001)).

### Discussion

Plaintiff's jurisdictional statement, as to personal jurisdiction, is as follows:

> This Court may properly exercise personal jurisdiction over Defendants, as each of the Defendants direct business activities toward and conduct business with consumers throughout the United States, including Texas residents through their respective websites and/or their respective online marketplace accounts, including without limitation, their Amazon accounts identified in Schedule A attached hereto (collectively, "Defendants' Internet Stores"). Further, Defendants operate or have operated interactive Internet Stores through which, Texas residents can purchase products bearing counterfeit versions of Viahart's trademarks.

**\*4** Doc. 1 at 4-5.

Having reviewed the briefing and exhibits, the court has identified the following potential contacts: (1) the maintenance of e-commerce platforms, including use of Amazon's platform (as to PlayLearn and Comfortscape); (2) the use of Amazon's fulfillment services (as to PlayLearn and Comfortscape); (3) serving as the owner or officer of an entity potentially subject to jurisdiction (as to Maso); and (4) sales to a related, but distinct, entity that, in turn, has contacts with Texas (as to Creative Kids). The court examines each in turn.

### A. Defendants PlayLearn and Comfortscape

PlayLearn argues that plaintiff attempts to establish jurisdiction over every defendant in every state merely by virtue of each defendant's e-commerce sites, which are

equally accessible and usable from anywhere in the country. *See generally* Doc. 11. In support of its motion, PlayLearn provided the declaration of its director of operations, Gabriel Newhouse. Doc. 11-2. That declaration states, in relevant part, that the product in question was available for sale on PlayLearn's own e-commerce website and on Amazon's e-commerce platform. *Id.* at 2. Importantly, sales to Texas residents were only made through Amazon and were "fulfilled by Amazon," meaning that Amazon stored the product in Amazon's facilities and "picked, packed, shipped, and provided customer service for th[ose] products." *Id.* at 2-3. As noted above, it is unknown whether Amazon performed any of those functions in Texas.

Comfortscape argues that it has no contacts with Texas other than its presence on Amazon's e-commerce platform and sales fulfilled by Amazon, and that those contacts are in-sufficient to establish personal jurisdiction. Doc. 39 at 4.

Plaintiff argues that PlayLearn and Comfortscape cannot hide behind Amazon because Amazon is merely an agent acting on their behalf. Docs. 18 at 7-10 & 59 at 6-9. Plaintiff argues, without pointing to any specific evidence, that the product must have been stored in an Amazon warehouse located in Texas and that the fulfillment services were performed in Texas. Plaintiff attempts to distinguish PlayLearn and Comfortscape's cited authorities but spends less time explaining why using Amazon's platform and fulfillment services constitutes an intentional contact with Texas. Plaintiff cites almost no authority to support its own arguments, and its arguments are unclear and unhelpful in relation to the legal framework at play and in relation to PlayLearn and Comfortscape's arguments and authorities.

The Fifth Circuit places particular emphasis on the intentionality of contacts made over the internet. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227-28 (5th Cir. 2012) ("In many cases where specific jurisdiction is unconstitutional, it is not because the defendant's contacts with the forum are 'insufficient;' after all one may be enough. Often the difficulty is not the lack of contacts but rather that such contacts that exist do not count because they have not been established purposefully by the defendant."). Therefore, "website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state." *Id.*

at 228 (quoting *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004)).

**\*5** The court is persuaded that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Guidecraft, Inc. v. OJCommerce, LLC*, No. 2:18-cv-1247, 2019 WL 2373440, at \*5 (W.D. Pa. May 20, 2019) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). That was the rationale and holding in *Pervasive Software*, though less clearly stated. 688 F.3d at 226-28. The *Guidecraft* case, like the instant case, dealt with a defendant that maintained its own e-commerce website and also sold products through Amazon. 2019 WL 2373440, at \*1. The court finds the analysis in that case persuasive. Here, plaintiff fails to identify any intentional contacts with the forum that go beyond use of the generally accessible Amazon e-commerce platform.

Plaintiff attempts to distinguish *Guidecraft* by arguing that that case did not involve the use of Amazon's fulfilment services. The court is unpersuaded. The Fifth Circuit has held that it "is unreasonable to expect that, merely by utilizing servers owned by a [Texas]-based company, [a foreign defendant] should have foreseen that it could be haled into a [Texas] court and held to account for the contents of its website." *GreatFence.com, Inc. v Bailey*, 726 Fed. App'x 260, 261 (5th Cir. 2018) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)). In *GreatFence*, the defendant did not have any role in selecting the location of the servers, and the "administration, maintenance, and up-keep" of the website had occurred outside Texas. *Id.*

In this case, PlayLearn and Comfortscape similarly cannot control where Amazon stores their products or location where any of the other fulfillment services are performed. Clearly, PlayLearn and Comfortscape chose to list their products on Amazon's e-commerce platform simply to "profit from the wide geographic reach of the internet," which is not enough to subject them to personal jurisdiction in any state where the internet may reach. *Guidecraft*, 2019 WL 2373440, at \*5. Furthermore, the fact that Amazon possesses capacity to fulfil and ship orders to any of the 50 states further undermines the idea that PlayLearn and Comfortscape's use of Amazon's platform and services is focused in a meaningful sense on Texas. So PlayLearn and Comfortscape's use of Amazon's services cannot establish jurisdiction.

*Viahart, LLC v. Arkview LLC, Slip Copy (2020)*
2020 WL 4905542

Neither can Amazon's actions be attributed to them to establish jurisdiction. The actions of an agent, but not the actions of an independent contractor, may subject the principal to personal jurisdiction. *O'Quinn v. World Indus. Constructors, Inc.*, No. 95-40258, 1995 WL 581830, at *2 (5th Cir. Sep. 19, 1995). It is established in Texas that "in order for a principal-agent relationship to be established, the principal must have the right to control both the means and the details of the process by which the agent accomplishes the actions at issue." *Id.* Here, the use of Amazon's fulfillment services establishes, at best, independent-contractor relationships. So Amazon's actions cannot subject PlayLearn or Comfortscape to jurisdiction in this forum.

Plaintiff cited *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 Fed. App'x 879 (Fed. Cir. 2017), for part of its argument. That case had nothing to do with personal jurisdiction and is there-fore inapplicable and unpersuasive. That portion of plaintiff's argument, like much of plaintiff's response, simply muddied the waters and conflated issues. Plaintiff also cited to *PetEdge, Inc. v. Fortress Secure Sols., LLC*, 144 F. Supp. 3d 249 (D. Mass. 2015). But that case was a patent infringement case, subject to the Federal Circuit's standard for personal jurisdiction arising from patent infringement. *Id.* at 252. The court finds the reasoning there distinct from the applicable law of the Fifth Circuit in this non-patent case. Similarly, plaintiff cited *Otter Prods. v. Cloudseller, LLC*, No. 19-cv-630, 2019 U.S. Dist. LEXIS 224515 (D. Colo. Dec. 3, 2019). Again, the court finds the reasoning and holding in that case to be unpersuasive under the applicable Fifth Circuit case law.

**\*6** The court is not persuaded that use of Amazon's fulfillment services is a sufficiently intentional contact with Texas. Furthermore, the court is not persuaded that the sale of product to Texas residents through Amazon's platform is anything more than the fortuitous result of that platform's global presence. Finally, PlayLearn and Comfortscape's maintenance of their own presences on the Amazon e-commerce platform, which took place outside Texas and was not targeted intentionally toward Texas, is also insufficient to confer jurisdiction in Texas. Plaintiff has pointed to no other potential contacts in support of jurisdiction. Therefore, the court finds that it lacks personal jurisdiction over PlayLearn and Comfortscape.

**B. Defendant Maso.**

Defendant Maso argues that he has no contacts with Texas that could subject him to personal jurisdiction in this court. Doc. 40 at 6. He further argues that he cannot be subjected to jurisdiction here simply because of the actions of his co-defendant Comfortscape. *Id.* at 6-7. He states that there is no reason to attribute Comfortscape's actions to him, even though he is president of the company, and that even if those actions could be attributed to him, they are insufficient to subject either Comfortscape or himself to jurisdiction. *Id.*

Plaintiff repeats its argument made as to PlayLearn and Comfortscape. Doc. 60 at 5-9. Plaintiff also disputes Maso's arguments regarding difference between his liability for Comfortscape's actions and his liability for his own actions, and about the possible need for an amendment to the complaint to clarify the allegations against Maso. *Id.* at 12-13.

The court need not analyze Maso's possible liability under any theory. Maso has no contacts of his own with this forum state that would subject him to jurisdiction here. And, regardless of whether Comfortscape's actions could be attributed to him, those contacts are insufficient to subject either Comfortscape or Maso to jurisdiction here, as discussed above. Therefore, the court finds that it lacks personal jurisdiction over Maso.

**C. Defendant Creative Kids.**

Creative Kids argues that it has no contacts with Texas that could support an exercise of jurisdiction. Doc. 58 at 5-8. In support of its argument, Creative Kids provided the declaration of Yisroel Schriber, its "director of e-commerce." Doc. 58-1. According to that declaration, Creative Kids does no marketing except on Amazon, and that marketing is not directed to any particular state. *Id.* at 2. Its only sales of the relevant product are to a related but distinct entity, Creative Kids Online LLC ("CK Online"), which is organized and located in New York. *Id.* at 2-3. Plaintiff's own evidence shows that both of these entities are properly registered in New York and are distinct. Docs. 62-8 & 62-9. CK Online operates its own e-commerce website and "makes sales to other online entities" such as Amazon and Ebay. Doc. 58-1 at 2-3.

Plaintiff again repeats its argument about e-commerce and Amazon's fulfillment services, despite Creative Kids' evidence that it does not make any sales online or use Amazon's fulfillment services. Doc. 62 at 8-12. Plaintiff also makes vague, confusing, and irrelevant arguments about the tradename under which CK Online markets and sells the product in question and about the internet domain name used

by CK Online. *Id.* at 5-6. Plaintiff also consistently treats the two entities as being the same. It may be that this is an attempt to argue that Creative Kids and CK Online should be treated as alter-egos. But plaintiff provided no authority for this argument in its response and did not provide a clear statement of how the entities are allegedly acting as alter egos. Nor did it provide any authority to show that an alter-ego theory can establish personal jurisdiction. Moreover, a defendant "may permissibly structure his primary conduct so as to avoid being haled into court in a particular state." *Stuart v. Spade-man*, 772 F.2d 1185, 1190 (5th Cir. 1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

**\*7** Plaintiff submitted a number of exhibits with its response, only one of which actually has to do with this defendant's contacts with Texas. That was a bill of lading, showing that Creative Kids shipped "toys and craft kits" to a buyer in Texas. Doc. 68-4. However, this document does not contradict Creative Kids' declaration, as it does not show or even indicate that the product in question in this case was actually part of that shipment. Accordingly, this exhibit cannot support an exercise of specific jurisdiction because it does not create a connection between the defendant, the forum, and the litigation.

Plaintiff did cite two authorities on its "alter-ego" argument in its sur-reply. Doc. 71 at 5. But neither of those cases had anything to do with personal jurisdiction. Instead they are cases regarding liability under Texas law. *See Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336 (Tex. 1968); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008). Therefore, plaintiff's argument is not persuasive.

In sum, the court cannot accept attorney argument as evidence and attorney argument cannot create a conflict of facts to be resolved in the plaintiff's favor. Plaintiff has not made a *prima facie* showing of jurisdiction, and the court finds that it lacks personal jurisdiction over Creative Kids.

## Conclusion

Plaintiff made an identical request for jurisdictional discovery in each of its responses. Docs. 18 at 13, 59 at 11-12, 60 at 11, & 62 at 14-15. But to be entitled to that kind of discovery, a plaintiff must make a preliminary showing of jurisdiction that "suggest[s] with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc.*, 318 F.3d at 456). Here, plaintiff has not made such a *prima facie* showing of jurisdiction and has not made the kind of preliminary showing required to obtain discovery. None of plaintiff's assertions or exhibits show "with reasonable particularity" the possible existence of any contacts other than those discussed and rejected in this order. Moreover, parties seeking jurisdictional discovery must "identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-cv-629, 2012 WL 104980, at \*7 (N.D. Tex Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). Plaintiff did not provide that key information, and so the court will not exercise its discretion to grant discovery. *Id.*

The motions to dismiss made by defendants PlayLearn USA, Inc.; Comfortscape LLC; Jesus Diaz Maso; and Creative Kids Far East, Inc. (Docs. 11, 39, 40, & 58) are **granted**. All claims against those defendants are **dismissed without prejudice**, and those defendants shall be **terminated**.

*So ordered by the court on August 20, 2020.*

## All Citations

Slip Copy, 2020 WL 4905542

End of Document                                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.