**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| THE NAUGHTYS LLC | |
|      Plaintiff, | |
| v. | Civil Action No. 4:21-CV-00492-O |
| DOES 1-580 | |
|      Defendants | |

## PLAINTIFF'S RENEWED MOTION FOR ALTERNATIVE SERVICE OF PROCESS

**Table of Contents**

**MOTION**................................................................................................................5

**MEMORANDUM OF LAW**.................................................................................5

**I.** Introduction.......................................................................................................5

**II.** Argument...........................................................................................................8

    **A.** Service of Process on the Defendants in Exhibit 1 By Email and
        By Website Publication is Proper Under Fed. R. Civ. P. 4(f)(3)......................8

        **1.** Service by Email and by Website Publication is Constitutional
            Because it is "Reasonably Calculated" to Provide Defendants
            with Notice of the Action...................................................................9

        **2.** Federal Courts Routinely Order Alternative
            Service as to Foreign Infringers......................................................12

        **3.** Service by Email is "Not Prohibited By International Agreement"...................15

**III.** Conclusion.....................................................................................................19

**Table of Authorities**

**CASES**

*Ackerman v. Global Vehicles U.S.A., Inc.,* 2011 WL 3847427
(E. D. Mo. Aug. 26, 2011)................................................................................................14

*Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.,* No. WA:13-CV-369,
2014 WL 11342502 (W.D. Tex. July 2, 2014)...............................................................8, 14, 15

*Baker Hughes Inc. v. Homa,* 2012 WL 1551727 (S. D. Tex. Apr. 30, 2012)................................14

*Brown v. China Integrated Energy, Inc.,* 285 F.R.D. 560 (C.D. Cal. 2012)..................................14

*BVE Brands, LLC v. Does 1-82*, No. 20-00505 (W.D. Tex. May 14, 2020)..................................13

*Chanel, Inc. v. Partnerships & Unincorporated Associations*, No. CV H-12-2085,
2012 WL 12894807 (S.D. Tex. Oct. 10, 2012).......................................................................11, 12

*Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695 (S.D. Fla. Apr. 29, 2010)............10

*Chanel, Inc. v. Zhong Zhibing*, No. 2:09-CV-02835-CGC, 2010 WL 1009981
(W.D. Tenn. Mar. 17, 2010)................................................................................................16

*Collins v. Doe*, No. CIV.A. H-10-2882, 2010 WL 4954727
(S.D. Tex. Nov. 30, 2010)................................................................................................13, 16

*Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752
(N.D. Cal. Mar. 27, 2012)................................................................................................10

*Fed. Trade Comm'n v. EMP Media, Inc.*, No. 218CV00035APGNJK,
2018 WL 664796 (D. Nev. Feb. 1, 2018)...............................................................................10

*FKA Distrib. Co., LLC v. Yisi Tech. Co.*, No. 17-CV-10226, 2017 WL 4129538
(E.D. Mich. Sept. 19, 2017)................................................................................................16

*GLG Life Tech Corp. Sec. Litig.,* 287 F.R.D. 262 (S.D.N.Y.2012)..............................................14

*Gramercy Ins. Co. v. Kavanagh*, No. 3:10-CV-1254-D, 2011 WL 1791241
(N.D. Tex. May 10, 2011)................................................................................................8

*In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2008 WL 2415186
(N.D. Cal. June 12, 2008)................................................................................................9

*James Avery Craftsman, Inc. v. Sam Moon Trading Enterprises, Ltd.*,
No. SA-16-CV-00463-OLG, 2018 WL 4688778 (W.D. Tex. July 5, 2018)..................................16

*LG Elecs., Inc. v. ASKO Appliances, Inc.,* 2009 WL 1811098 (D. Del. June 23, 2009)...............14

*Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-CV-02754-MSK-KMT,
2012 WL 122862 (D. Colo. Jan. 17, 2012)....................................................................16

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)........................................9

*Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. CIV.A. H-06-2683,
2007 WL 2964817 (S.D. Tex. Oct. 9, 2007)....................................................................9

*Popular Enterprises, LLC v. Webcom Media Grp., Inc.,* 225 F.R.D. 560
(E.D. Tenn. 2004)...................................................................................................8, 10, 16

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)................8, 9, 10, 11, 15

*RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238-JRG, 2012 WL 194388
(E.D. Tex. Jan. 23, 2012).............................................................................................9

*The Knit With v. Knitting Fever, Inc.,* 2010 WL 4977944 (E. D. Pa. Dec. 7, 2010).....................14

*Toyo Tire & Rubber Co., Ltd. v. CIA Whell Grp.*, No. SA CV 15-0246-DOC,
2016 WL 1251008 (C.D. Cal. Mar. 25, 2016).................................................................10

*United States v. Real Prop. Known As 200 Acres of Land Near FM 2686
Rio Grande City, Tex*., 773 F.3d 654 (5th Cir. 2014)....................................................16

*Vinewood Capital, L.L.C. v. Al Islami,* 2006 WL 3151535 (N. D. Tex. Nov. 2, 2006)..........14, 15

*Viahart, LLC v. Does 1-54,*. No. 6:18-CV-604-RWS-KNM, 2021 WL 777083
(E.D. Tex. Jan. 29, 2021), *report and recommendation adopted*,
No. 6:18-CV-604-RWS-KNM, 2021 WL 765216 (E.D. Tex. Feb. 26, 2021)............................17

**STATUTES**

Art. 1, 20 U.S.T. 361, 1969 WL 97765 (Feb. 10, 1969)...........................................15

Fed. R. Civ. P. 4(f)(3)............................................................7, 8, 9, 14, 15, 17, 18, 19

## MOTION

It is uncontested that foreign counterfeiters provide fictitious addresses and names to online storefronts to conceal their identities to shield them from legal liability. And Plaintiff invested tens of thousands of dollars on boots-on-the-ground investigators that proves this fact.

When the Defendants make a sale on an online Marketplace, the Marketplace transmits the sale proceeds to them through a seller's account processing system (PayPal, etc.). Although many of the foreign Defendants provide fictitious names or addresses, or both, to the Marketplaces to conceal their identities, the Defendants do provide these Marketplaces with working email addresses to create accounts through which they sell counterfeit goods and receive profits from sales of counterfeit goods. Plaintiff has demonstrated that the addresses provided by the Defendants—and sometimes even confirmed by their counsel—are completely fictitious. Plaintiff has also shown that the Defendants in this case receive email at the address they provided their online Marketplace—this is why courts regularly authorize alternative service by email to foreign counterfeiters, and is why this Court should authorize alternative service in this matter.

The Naughtys LLC ("Plaintiff") therefore files this Motion for Alternative Service of Process, asking the Court to direct service of the summons and complaint by email and by website publication (https://creedon.com/naughtys) on the Defendants listed in the attached Exhibit 1, Appx. 2-49. A Memorandum of Law in support is filed concurrently with this Motion below.

## MEMORANDUM OF LAW

### I.     Introduction

Plaintiff brought this action on April 2, 2021 (Dkt. 1) against the 580 DOE Defendants listed in Dkt. 4-1 ("Defendants"), seeking relief against Defendants for copyright infringement through their promotion, advertising, marketing, distribution, offering for sale, and sale of infringing products ("Infringing Products") through online stores (the "Infringing Webstores") on

various e-commerce platforms, such as AliExpress, Amazon, DHgate, eBay, Walmart, and Wish (the "Marketplaces"). Plaintiff sought discovery from the Marketplaces immediately upon issuance of the TRO (Dkt. 9, the "TRO") in an attempt to properly identify each of the Defendants, but was thereafter only provided with 345 of the 580 requested physical addresses (*See* Dkt. 75-1)—all of which suggest that a great majority of the Defendants—perhaps all of the Defendants— are located abroad in foreign countries, primarily in China, and most of which are nonsensical, confusing, and plainly incorrect (e.g., many of the addresses provided by the Marketplaces either contain the word "Default" or "Unknown," or are comprised of a combination of a confusing, indiscernible jumble of lettering and numbers). Dkt. 75-1. Nonetheless, Plaintiff incorporated these addresses into its requested summonses. Dkts. 24, 33-35, 45. All of these summonses were issued by the Clerk for service on Defendants. Dkts. 25-31, 36-44, 46, 49-62.

Following the TRO, Plaintiff has been in active reciprocal email communication with 331 of the Defendants—either individually or through retained counsel by email (the foregoing being the "Responsive Defendants"). Exhibit 2, Appx. 50. One hour after the Court issued its May 26, 2021 order (Dkt. 69), Plaintiff provided notice of said order to the Responsive Defendants by email, and to each Defendant with whom Plaintiff has not yet spoken through the email addresses these Defendants use to manage the Infringing Webstores shown on the attached Exhibit 1. Dkt. 75-2, PageID 8683-8684. Plaintiff's email successfully reached 300 of the 376 Defendants listed in the attached Exhibit 1. *Id*. Plaintiff has since settled its claims with 176 Defendants, and has filed Notices of Dismissal and Motions to Dismiss these Defendants. There are now 404 active Defendants in this case.

On July 2, 2021, the Court denied Plaintiff's initial Motion for Alternative Service because Plaintiff had not "actually attempt[ed] service of process on [the available] addresses or otherwise

investigate[d] the legitimacy of the addresses by means other than the bare assumption that service would be difficult or potentially impossible." Dkt. 114, PageID 12508, (the "Order"). The Court further ordered Plaintiff to "make a diligent attempt to serve all Defendants at the physical addresses provided no later than August 16, 2021" and stated that it would "reconsider a renewed motion for alternative service of process at that time, if necessary." *Id*.

Plaintiff diligently complied with the Court's Order. Plaintiff engaged private investigators in China to physically confirm and investigate the addresses provided by the Marketplaces[1]—of the 178 addresses investigated, 141 were identified as false, 36 came back inconclusive, and only 1 was verified as a true Defendant address. Dkt. 130-1, PageID 12640-12780; Dkt. 138-2; Dkt. 141; Exhibit 3, Appx. 52. Plaintiff also hired a private firm to serve process on 65 of the Defendants (including the 36 inconclusive and 1 verified Defendant) via the Hague Convention at a cost of approximately $30,000, which Plaintiff has already paid—this expense not including the cost of the address investigations discussed above. Dkt. 141; Exhibit 3, Appx. 52. Thus, in full compliance with the Court's Order, Plaintiff investigated the legitimacy of the addresses and is attempting service of process on the Defendants identified in its Service Status Report (Dkt. 141). Plaintiff now seeks to serve each Defendant for whom no address was ever disclosed, and each Defendant whose given address was identified as false through independent investigation (376 Defendants in total, identified in the attached Exhibit 1, Appx. 2-49), by email and by website publication at https://creedon.com/naughtys.

Federal Rule of Civil Procedure 4(f)(3) grants the Court wide discretion to order alternative service "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Because Plaintiff has already engaged in active, reciprocal communication with the 331

---

[1] As a reminder, the Marketplaces only provided Plaintiff with 345 of the requested 580 physical addresses.

Responsive Defendants, and because the true physical addresses of the Defendants in the attached

Exhibit 1 are not known, Plaintiff respectfully requests the Court to order that each Defendant in

the attached Exhibit 1 can be served by email and by website publication at

https://creedon.com/naughtys, both of which are reasonably calculated to provide each Defendant

with notice of the action, and is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

## II.    Argument

### A. Service of Process on the Defendants in Exhibit 1 By Email and By Website Publication is Proper Under Fed. R. Civ. P. 4(f)(3)

Fed. R. Civ. P. 4(f) governs service of process on individuals in foreign countries. In

addition to prescribing traditional means of service, Rule 4(f) permits service by "other means not

prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Although

service by "other means" under Rule 4(f)(3) is considered alternative service, "Rule 4(f) does not

create a hierarchy of preferred means of service, and service ordered pursuant to Rule 4(f)(3) is as

favored as service available under [Rule 4(f)(1) and Rule 4(f)(2)]." *Gramercy Ins. Co. v.*

*Kavanagh*, No. 3:10-CV-1254-D, 2011 WL 1791241, at *1 (N.D. Tex. May 10, 2011). "[S]ervice

of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one

means among several which enables service of process on an international defendant." *Affinity*

*Labs of Texas, LLC v. Nissan N. Am. Inc*., No. WA:13-CV-369, 2014 WL 11342502, at *1 (W.D.

Tex. July 2, 2014) (citing *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir.

2002)). Rule 4(f)(3) is "expressly designed to provide courts with broad flexibility in tailoring

methods of service to meet the needs of particularly difficult cases . . . [which] necessarily includes

the utilization of modern communication technologies . . . ." *Popular Enterprises, LLC v. Webcom*

*Media Grp., Inc*., 225 F.R.D. 560, 562 (E.D. Tenn. 2004).

Courts have broad discretion in ordering service under Rule 4(f)(3) so long as the service comports with constitutional notions of due process. *Rio Properties, Inc*., 284 F.3d at 1016. To meet this requirement, the method of service ordered by the district court must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238-JRG, 2012 WL 194388, at *2 (E.D. Tex. Jan. 23, 2012) *(citing Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 312 (1950) (internal quotation marks omitted)). A strong consideration in whether to exercise such discretion is whether, after a party has "reasonably attempted to effectuate service on defendant . . . the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely to be futile." *See Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. CIV.A. H-06-2683, 2007 WL 2964817, at *4 (S.D. Tex. Oct. 9, 2007) (service by email is appropriate under Rule 4(f) of the Federal Rules of Civil Procedure if the court finds that such would be reasonably calculated to apprise the defendant of the pendency of the lawsuit); *see also In re LDK Solar Sec. Litig*., No. C 07-05182 WHA, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) (authorizing alternative service because "plaintiffs have shown the difficulty of serving the unserved defendants located abroad" in China).

1. **Service by Email and by Website Publication is Constitutional Because it is "Reasonably Calculated" to Provide Defendants with Notice of the Action**

"[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." *Rio Properties, Inc*., 284 F.3d at 1017. "In proper circumstances, this broad constitutional principle unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." *Id*. The *Rio Properties* court further held "without hesitation," that

email service of an online business defendant "was constitutionally acceptable[,]" in part, because the defendant conducted its business over the Internet, used email regularly in its business, and encouraged parties to contact it by email. *Rio Properties, Inc*., 284 F.3d at 1017.

Federal Courts have presumed delivery of an email if it is not returned undeliverable and the email address is used by the defendant in conducting business. *See Fed. Trade Comm'n v. EMP Media*, 2018 WL 664796, at * 2 (citing *Toyo Tire & Rubber Co., Ltd. v. CIA Whell Grp.*, No. SA CV 15-0246-DOC, 2016 WL 1251008 (C.D. Cal. Mar. 25, 2016) (finding that an email is presumed delivered when it is not returned as undeliverable)); *Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. Apr. 29, 2010) (finding that emails presumably reached the defendant when they were sent to email addresses provided to a domain name registrar, and the emails did not bounce back); *Popular Enterprises, LLC*, 225 F.R.D. at 562 (finding that an email presumably reached the defendant when it was sent to an email address provided to a domain name registrar, and the email did not bounce back).

By selling and marketing the Infringing Products online and utilizing the services of the various online Marketplaces, Defendants have embraced communication online and by email. See, e.g., *Facebook, Inc. v. Banana Ads, LLC*, 2012 WL 1038752, at *3 (N.D. Cal. Mar. 27, 2012) (service by email is "reasonably calculated to give actual notice" to defendants who "are all engaged in internet-based commercial activities and rely on email as a means of communication"). Because valid email addresses must be established and verified by the Marketplaces before Defendants are able to list their products, email is a means reasonably calculated to apprise Defendants of the pendency of this lawsuit. Thus, given the nature of Defendants' online businesses, which require an understanding of and proficiency in online communication, service by email and by website publication is more efficient, accessible, and preferred than service of

paper copies of pleadings overseas. Notwithstanding the foregoing, Plaintiff has already exchanged reciprocal email communications with the 331 Responsive Defendants (Exhibit 2, Appx. 50), and the Marketplaces automatically notified the Defendants of the TRO, the asset freeze, and the need to contact undersigned counsel (Dkt. 75-2, PageID 8683). All of the Defendants are, therefore, already aware of this lawsuit, and a majority of the Defendants have already engaged in active communications with Plaintiff.

Plaintiff has diligently attempted to verify the addresses of the Defendants in the attached Exhibit 1 through extensive and costly investigations of the physical addresses provided by the Marketplaces. Dkts. 130, 138, 141. The addresses in the attached Exhibit 1 either remain unknown, or were proven by independent investigation to be false. Dkt. 130-1, PageID 12640-12780; Dkt. 138-2; Dkt. 141; Exhibit 3, Appx. 52. The email addresses procured from the Marketplaces were the email addresses that each of the Defendants designated as their means of contact for business and notification purposes. Plaintiff emailed each Defendant with a known email address, notifying them of this lawsuit and inviting them to discuss settlement. Dkts. 74, 75-2. Plaintiff has successfully emailed 300 of the 376 Defendants listed in the attached Exhibit 1. Exhibit 2, Appx. 50. Given that each of the Defendants are parties to this lawsuit because they do business through e-commerce sites that utilize email for communication, service by email is reasonably calculated to apprise the Defendants of the pendency of this action and afford them an opportunity to present their objections. "[T]he Constitution requires nothing more." *Rio Properties, Inc*., 284 F.3d at 1018. As such, the Court may allow Plaintiff to serve Defendants by email.

The Court may additionally allow Plaintiff to serve the Defendants in the attached Exhibit 1 by website publication, as such would be reasonably calculated to notice any Defendants with a full inbox or with an invalid email address of this lawsuit. *See Chanel, Inc. v. Partnerships &*

*Unincorporated Associations*, No. CV H-12-2085, 2012 WL 12894807, at *2 (S.D. Tex. Oct. 10, 2012) (finding that service by email and website publication is proper, and is not prohibited under international agreement). Plaintiff thus respectfully requests that the Court also allow Plaintiff to serve the Defendants in the attached Exhibit 1 by website publication at https://creedon.com/naughtys, where Plaintiff has already posted all of the pleadings in this lawsuit, including the complaint and the issued summonses.

### 2. Federal Courts Routinely Order Alternative Service as to Foreign Infringers

The facts in this case are closely similar to those in *Chanel, Inc. v. Partnerships & Unincorporated Association*. *Chanel* involved trademark infringement claims against 1,000 Doe defendants who sold infringing products online, and the plaintiff supported its request to serve process by email by showing that the physical addresses associated with the website domains were fake. *Chanel, Inc.*, 2012 WL 12894807, at *1. Additionally, the plaintiff had "verified that all but four (4) of the defendants have at least one operational electronic mail ('e-mail') address[,]" and that the defendants "conduct business extensively, if not exclusively, through their Internet websites[.]" *Id.*, at *1, 2. The court accordingly allowed service of process by email because the physical addresses were unknown—finding that email service was reasonably calculated to give the defendants notice. *Id.*

Like the plaintiff in *Chanel*, Plaintiff has done all it can do to locate the Defendants' physical addresses, but each address—save the single address that was verified—has proven to be false or deficient in some way. Dkt. 130-1, PageID 12640-12780; Dkt. 138-2; Dkt. 141; Exhibit 3, Appx. 52. Plaintiff sought discovery from the Marketplaces to determine the Defendants' contact information, and thereafter sent notice of this suit to each email Plaintiff discovered. Dkts. 74, 75-2. Plaintiff has successfully emailed 300 of the 376 Defendants listed in the attached Exhibit 1.

Exhibit 2, Appx. 50. Accordingly, this Court should allow Plaintiff to serve the Defendants by email and by website publication, both of which are reasonably calculated to notify the Defendants of this suit.

The facts of this case are also nearly identical to *BVE Brands, LLC v. Does 1-82*, No. 1:20-CV-505- RP (W.D. Tex. May 14, 2020). In *BVE Brands*, a counterfeit version of the plaintiff's product was being sold by foreign sellers via online marketplaces. Dkt. 75-4, PageID 8695. The plaintiff was unable to verify the addresses for "nearly all" of the defendants, however, because the addresses available to the plaintiff were false. *Id.* The court held that "alternative service by email" was "permissible under the Hague Convention, Rule 4(f), and the requirements of due process" because the plaintiff had been unsuccessful in discovering the defendants' true addresses, and because the plaintiff established that the defendants "must use email to 'communicate with consumers' and 'maintain contact' with ecommerce platforms and 'must provide electronic mail addresses for their payment accounts to accept payments[.]" *Id.* at PageID 8708. The court specifically further noted that:

> Courts often authorize email service "when the record discloses diligent efforts by the plaintiff to obtain a physical address to effect traditional service, that the defendant does business on-line (particularly business related to the subject of the suit), and that the defendant has recently communicated using the e-mail address the plaintiff proposes to use for service." *Collins v. Doe*, No. CIV.A. H-10-2882, 2010 WL 4954727, at *1 (S.D. Tex. Nov. 30, 2010) (collecting cases). Most if not all of those circumstances are found here.

Dkt. 75-4, PageID 8708. Accordingly, the *BVE Brands* court authorized alternative service of process by email on the 84 unnamed foreign defendants on May 14, 2020. *Id.* at 21.

Like the plaintiff in *BVE Brands*, Plaintiff has diligently sought to obtain physical addresses for the Defendants to effect traditional service, the Defendants all do business online,

and Plaintiff has even been in reciprocal email communications with most of the Defendants and their counsel. Exhibit 2, Appx. 50. The Court should therefore allow Plaintiff to serve the Defendants in the attached Exhibit 1 by email and by website publication, which are the options most likely to reach the Defendants. Such would not only follow precedent, but would also comply with the Federal Rules of Civil Procedure and the requirements of due process.

"[C]ourts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *Affinity Labs of Texas, LLC*, 2014 WL 11342502, at *3 (internal quotations omitted); *see also GLG Life Tech Corp. Sec. Litig.,* 287 F.R.D. 262, 266 (S.D.N.Y.2012) (service through a foreign resident's counsel in the United States constituted valid service); *Brown v. China Integrated Energy, Inc*., 285 F.R.D. 560, 562-566 (C.D. Cal. 2012) (service under the Hague Convention would take four to six months, and alternative service was proper); *Ackerman v. Global Vehicles U.S.A., Inc.,* 2011 WL 3847427, at *3–4 (E. D. Mo. Aug. 26, 2011) (service on defendant's counsel was proper "'so as to not further delay' the lawsuit"); *The Knit With v. Knitting Fever, Inc.,* 2010 WL 4977944, at *4–5 (E. D. Pa. Dec. 7, 2010) (service on defendant's counsel was proper where Hague Convention service would take up to three months, and after plaintiff sought a waiver of service from the defendant before seeking leave to serve by alternative means); *LG Elecs., Inc. v. ASKO Appliances, Inc.,* 2009 WL 1811098, at *4 (D. Del. June 23, 2009) ("pursuant to Rule 4(f)(3), service upon an attorney is warranted in order to prevent further delays in litigation"). "Courts have also found that avoiding the additional expense of serving a defendant in a foreign country is a valid justification for granting an alternative method of service." *Affinity Labs of Texas, LLC*, 2014 WL 11342502, at *3; *see also Baker Hughes Inc. v. Homa,* 2012 WL 1551727, at *16–17 (S. D. Tex. Apr. 30, 2012) (avoiding additional cost is a sufficient justification for seeking alternative service); *Vinewood Capital,*

14

*L.L.C. v. Al Islami,* 2006 WL 3151535, at *2 (N. D. Tex. Nov. 2, 2006) (attempting to effectuate service through the Texas Secretary of State "was not an unreasonable effort to easily accomplish service and limit the costs associated with international service of process"). Despite Plaintiff's already having paid over $30,000 to effect Hague Service (Exhibit 2, Appx. 50), these practical reasons further support an order for Plaintiff to serve the Defendants in the attached Exhibit 1 by email and by website publication pursuant to Fed. R. Civ. P. 4(f)(3).

For the above reasons, and to limit the unreasonable cost and time involved in further international service (which is not reasonably calculated to apprise the Defendants of this lawsuit, as discussed above), and because the true physical addresses of the Defendants remain unknown, Plaintiff respectfully requests the Court to order that each Defendant can be served by email, website publication, or even through Defendants' retained counsel or representative which whom Plaintiff has already spoken as of the date of this filing—all of which is reasonably calculated to provide each Defendant with notice of the action, and is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

### 3.  Service by Email and Website Publication is "Not Prohibited by International Agreement"

As discussed above, the Court may authorize service on a foreign individual "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). "Thus, so long as the method of service is not *prohibited* by international agreement the Court has considerable discretion to authorize an alternative means of service." *Affinity Labs of Texas, LLC*, 2014 WL 11342502, at *1 (emphasis in original) (citing *Rio Properties, Inc.,* 284 F.3d at 1014). "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *Id.*

Service of Defendants by email and by website publication is not prohibited by international agreement, and the Hague Service Convention does not apply to service on the Defendants (Article 1 of the Hague Convention provides, in part: "This Convention shall not apply where the address of the person to be served with the document is not known"). Art. 1, 20 U.S.T. 361, 1969 WL 97765, at *1 (Feb. 10, 1969). Many courts have upheld this notion and ruled that the Hague Convention does not apply where a defendant's foreign physical address is unknown.[2] Defendants in the attached Exhibit 1 appear to be residents of foreign countries who have failed to provide their true physical addresses in connection with the Infringing Webstores. Notwithstanding that some of the Marketplaces did not provide Plaintiff with some of the Defendants' addresses per the TRO, the physical addresses that the Marketplaces did provide were comprised of errors and incorrect information. Dkt. 74, PageID 8596. Further, Plaintiff's own independent boots-on-the-ground investigations revealed that, of 178 physical addresses investigated, 141 were identified as false, 36 came back inconclusive, and only 1 was verified as a true Defendant address. Dkt. 130-1, PageID 12640-12780; Dkt. 138-2; Dkt. 141; Exhibit 3, Appx. 52. The Defendants identified in the attached Exhibit 1 represent the Defendants for whom

---

[2] *See, e.g., United States v. Real Prop. Known As 200 Acres of Land Near FM 2686 Rio Grande City, Tex.*, 773 F.3d 654, 659 (5th Cir. 2014) (holding that defendant's address is unknown and that the Hague Convention does not apply); *James Avery Craftsman, Inc. v. Sam Moon Trading Enterprises, Ltd.*, No. SA-16-CV-00463-OLG, 2018 WL 4688778, at *4 (W.D. Tex. July 5, 2018) (asserting that the Hague Convention does not apply "where the address of the person to be served with the document is not known"); *Collins v. Doe*, No. CIV.A. H-10-2882, 2010 WL 4954727, at *1 (S.D. Tex. Nov. 30, 2010) (holding that email service was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *FKA Distrib. Co., LLC v. Yisi Tech. Co.*, No. 17-CV-10226, 2017 WL 4129538, at *1 (E.D. Mich. Sept. 19, 2017) (acknowledging that several courts have held that the Hague Convention allows service by email); *Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-CV-02754-MSK-KMT, 2012 WL 122862, at *3 (D. Colo. Jan. 17, 2012) (holding that the Hague Convention did not apply to defendant who lived in China and whose address was unknown); *Chanel, Inc. v. Zhong Zhibing*, No. 2:09-CV-02835-CGC, 2010 WL 1009981, at *3-4 (W.D. Tenn. Mar. 17, 2010) (holding that the Hague Convention does not apply and that email service on a defendant who ran an allegedly infringing online business "not only meets constitutional standards, but also is the method of service most likely to reach Defendant"); *Popular Enterprises, LLC*, 225 F.R.D. at 562 (recognizing that, while "communication by e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community[;]" and permitting email service after plaintiffs attempts to comply with the Hague Convention were unsuccessful because defendant's address was unknown).

Plaintiff has never been able to find a valid address, or Defendants whose given addresses have officially been debunked as false. Exhibit 3, Appx. 52. Accordingly, Defendants' addresses in the attached Exhibit 1 are unknown to Plaintiff, and the Hague Convention does not apply because service by email is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).

The facts in this case are also closely similar to those in *Viahart, LLC v. Does 1-54*,. No. 6:18-CV-604-RWS-KNM, 2021 WL 777083, at *1 (E.D. Tex. Jan. 29, 2021), *report and recommendation adopted*, No. 6:18-CV-604-RWS-KNM, 2021 WL 765216 (E.D. Tex. Feb. 26, 2021). In *Viahart*, foreign persons and entities were using the plaintiff's copyrighted images to sell infringing versions of plaintiff's products by various online e-commerce sites such as Alibaba, AliExpress, Amazon, eBay, and Wish. Dkt. 75-3, PageID 8685. Because the foreign defendant businesses operated online through third-party marketplaces, the plaintiff was unable to ascertain an accurate physical location for any defendant to perfect in-person service of process. Dkt. 75-3, PageID 8685. The *Viahart* court thus held that "service pursuant to Rule 4(f) [was] proper" and alternative service by the email addresses used to communicate with the various e-commerce platforms was "reasonably calculated to notify all foreign Defendants of th[e] suit." Dkt. 75-3, PageID 8691-8692.

Like the plaintiff in *Viahart*, Plaintiff has expended significant resources and effort trying to locate physical addresses for each of the Defendants, but Plaintiff has proven that an overwhelming majority of the addresses are false. Plaintiff commenced discovery from the Marketplaces pursuant to the TRO (Dkt. 9) in order to determine the Defendants' contact information, and thereafter sent notice of this suit to each email Plaintiff discovered. Dkt. 75-2, PageID 8683. Plaintiff's email successfully reached 300 of the 376 Defendants listed in the attached Exhibit 1 (Exhibit 2, Appx. 50), and Plaintiff has been in active reciprocal email

communication with a majority of the Defendants. Accordingly, the Court should allow Plaintiff to serve the Defendants by email and by website publication, which are the options most reasonably calculated to notify the Defendants of this suit.

Furthermore, Plaintiff respectfully submits that an order allowing service of process by email and by website publication in this case will benefit all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously and equitably. It is necessary for merchants who operate entirely online to maintain contact with the Defendant's Marketplace host to ensure they are functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Counsel representing some of the Responsive Defendants have even suggested that their clients will find ways to drain (and indeed are currently draining) the funds held in the accounts restrained by the TRO (Dkts. 75-5; 112-1)—further exhibiting Plaintiff's urgent need to serve the Defendants expeditiously by email and by website publication to advance the proceedings. Plaintiff thus respectfully requests that this Court authorize alternative service of process on the Defendants by email and by website publication, which are the options most likely to reach the Defendants, would follow precedent, would comply with the Federal Rules of Civil Procedure and the requirements of due process, and would mitigate the unlawful draining of Defendants' restrained accounts.

Defendants' actual physical addresses are unknown to Plaintiff, as proven by Plaintiff's diligent efforts and attempts to contact them at the addresses obtained from the Marketplaces, which turned out to be false. Accordingly, the Hague Convention does not apply, and service by email is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Plaintiff thus

respectfully requests that this Court authorize alternative service of process on the Defendants by email and by website publication.

### III.    Conclusion

Plaintiff has diligently sought to prosecute this case and enforce its valuable intellectual property rights against the Defendants since the filing of this lawsuit. Plaintiff has further gone to great length, in full compliance with the Court's Order, to investigate the Defendants' physical addresses and actually initiate service of process via the Hague Convention. Dkt. 141.

376 of the Defendants' addresses to-date are either completely unknown, or have been verified as false through Plaintiff's extensive efforts and expense. An order allowing service of process by email and by website publication will benefit all parties and the Court by ensuring that Defendants receive immediate notice of this action, thus allowing proceedings to move forward expeditiously and equitably. Plaintiff thus respectfully requests that this Court authorize alternative service of process on all of the Defendants by email and by website publication, which are the options most likely to notice the Defendants, would follow precedent, would prevent Defendants' currently-restrained accounts from being locked up for an indefinite period pending the success of Hague service, and would, moreover, comply with the Federal Rules of Civil Procedure and the requirements of due process. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

For all of the foregoing reasons, Plaintiff respectfully requests that this Court authorize alternative service of process by email and by website publication at https://creedon.com/naughtys pursuant to Federal Rule of Civil Procedure 4(f)(3). Plaintiff will effect alternate service on Defendants via these means promptly upon this Court's authorization of such service.

Dated: August 16, 2021                  Respectfully submitted,

                                         **CREEDON PLLC**

                                         By: */s/ Charles A. Wallace*
                                         James H. Creedon
                                         Texas Bar No. 24092299
                                         Charles A. Wallace
                                         Texas Bar No. 24110501
                                         5 Cowboys Way, Suite 300
                                         Frisco, Texas 75034
                                         Tel.    972.850.6864
                                         Fax     972.920.3290
                                         jhcreedon@creedon.com
                                         cwallace@creedon.com

                                         ATTORNEYS FOR PLAINTIFF
                                         THE NAUGHTYS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

                                         By: */s/ Charles A. Wallace*
                                         Charles A. Wallace

## CERTIFICATE OF CONFERENCE

On August 16, 2021, undersigned counsel contacted each known counsel representing Defendants at the above email addresses pursuant to Local Rule 7.1 to ascertain whether or not above counsel would be opposed to Plaintiff's filing of its Renewed Motion for Alternative Service of Process. None of the above counsel responded to undersigned counsel, so this Motion is filed as "Opposed."

                                         By: */s/ Charles A. Wallace*
                                         Charles A. Wallace