IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THE NAUGHTYS LLC | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-492-O |
| | § | |
| DOES 1-580 | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANT DOE 242'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pending before the Court is a Motion to Dismiss Plaintiff's Complaint [doc. 17] filed on April 28, 2021 by Defendant Doe 242 ("Doe 242"), who is identified as a store named Kuerqi that is located in China and owned by Wu Lian Yun.[1]

### I. BACKGROUND

Plaintiff, The Naughtys LLC, is engaged in the business of designing, manufacturing, distributing, and retailing Christmas ornaments known collectively as the "Naughty Santa" ornaments and owns copyrights for such ornaments. Plaintiff, in its Complaint for copyright infringement filed on April 2, 2021, alleges that Defendant Does 1-580, who are individuals and businesses residing in foreign jurisdictions, placed counterfeit "Naughty Santa" ornaments (the "Infringing Products") for sale on online webstores (the "Infringing Websites"), which were hosted by third-party e-commerce platforms, such as Amazon, Walmart, AliExpress, DHgate, and eBay (the "Marketplaces"), and such ornaments were sold and shipped to buyers in the United States, including Texas. (Plaintiff's Complaint ("Pl.'s Compl.") at 1-8.)

Doe 242, in its Motion to Dismiss, claims that Plaintiff's claims against it should be dismissed based on five reasons: (1) Plaintiff has not served any legal documents on Defendant; (2) service should be performed in accordance with the Hague Service Convention; (3) the Court

---

[1] This motion was referred to the undersigned on December 23, 2021 [doc. 168].

1

does not have personal jurisdiction over Defendant; (4) Defendant did not willfully infringe on Plaintiff's rights as Defendant purchased the "involved products" from its regular supplier, "Yi Wu Xing Mai e-commerce Co., Ltd." and thought supplier was the rightful owner of such products; and (5) the Temporary Restraining Order entered by the Court is too long and strict.[2] (Defendant's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mot. to Dismiss") at 2-3.)

In its response [doc. 47], Plaintiff states that, as the Court had already ordered Plaintiff to serve Defendant at its mailing address provided in Defendant's motion, the only remaining issue is whether the Court has personal jurisdiction over Defendant. (Plaintiff's Response to Doe 242's Motion to Dismiss ("Pl.'s Resp.") at 1.) Plaintiff claims that the Court has personal jurisdiction over Defendant because Defendant actually shipped an Infringing Product to Texas and "promoted, advertised, marketed, and offered for sale products that infringe on Plaintiff's copyrights . . . on Amazon while offering shipping to Arlington, Texas." (Pl.'s Resp. at 3.) In addition, Plaintiff argues:

> This lawsuit is certainly not . . . a "rare case," as this Court's exercise of jurisdiction is both "fair" and "just." Defendant's burden of defending this lawsuit in a state to which it sold Infringing Products does not outweigh Plaintiff's right to protect the integrity of its intellectual property—particularly because Plaintiff has presented evidence (which Defendant has not disputed) that Defendant infringed

---

[2] The Court, in this order, will only consider the issue of whether it should dismiss Plaintiff's claims against Defendant Doe 242 for lack of personal jurisdiction. As to Defendant Doe 242's issues with service, such issues will be addressed in a separate order relating to Plaintiff's Renewed Motion for Alternative Service of Process [doc. 142].

As to Doe 242's claim that it did not act willfully, a finding of willfulness under the Copyright Act does not require proof of knowing conduct but can also include reckless disregard. *See, e.g.*, *Graper v. Mid-Continent Cas. Co.* 756 F.3d 388, 394 (5th Cir. 2014) ("In an unpublished decision, we interpreted "willful" under the Copyright Act to cover situations where 'the defendant has *recklessly disregarded* the plaintiff's rights, or upon a showing that the defendant knew or should have known it infringed upon a copyrighted work.'") (quoting *Lance v. Freddie Records, Inc.* No. 92-7561, 1993 WL 58790, at *2 (5th Cir. 1993)) ; *Flowserve Corp. v. Hallmark Pump Co., Inc.*, No. 4:09-cv-0675, 2011 WL 1527951, at *6 (S.D. Tex. Apr. 20, 2011) ("Infringement can also be willful where a defendant acted with 'reckless disregard' for or 'willful blindness' to the rights of a copyright owner.") Thus, for purposes of a motion to dismiss, the fact that Doe 242 did not act intentionally or with knowledge that it was selling Infringing Products would not prevent Plaintiff from ultimately being successful in its Copyright Infringement claim against Doe 242. Consequently, the Court will not consider this issue at this time.

As to Doe 242's claim that the Temporary Restraining Order ("TRO") is too strict and too long, the Court notes that such TRO expired on May 1, 2021 [doc. 13].

2

> Plaintiff's rights. Further, Plaintiff's goodwill and reputation are irreparably damaged when Infringing Products are sold that are not authorized, produced, or manufactured by Plaintiff—which leads to damaged brand confidence and loss of future sales and goodwill. Defendant's illegal sale of the Infringing Products further irreparably harms Plaintiff because Defendant has denied Plaintiff's ability to control the nature and quality of the Infringing Products. Plaintiff thus has a critical interest in convenient and effective relief. Moreover, there is a public interest in preserving rights provided by federal copyright laws . . . .

(Pl.'s Resp. at 4 (internal citations omitted).) In support of its arguments, Plaintiff attached copies of the following: (1) Doe 242's store pages from Amazon.com that showed two several allegedly Infringing Products being advertised for sale; (2) an order form, dated February 2021, showing that one allegedly Infringing Product had been order from an address in Texas and was delivered in March; (3) a photograph of the mailing label and packaging from the delivered package; and (4) photographs of the front and back of the allegedly Infringing Product. (Plaintiff's Appendix to Plaintiff's Response to Doe 242's Motion to Dismiss [doc. 48] at 1-8.)

In Defendant's Reply to Plaintiff's Response [doc. 66], Defendant claims that Defendant is a "Chinese seller," does not live in the United States, operates a store "based on the international internet," and has not purposefully availed itself of the privilege of conducting business in Texas or purposefully directed his activities at Texas. (Defendant's Reply to Plaintiff's Response ("Def.'s Reply") at 2. In addition, Defendant claims that it is not registered to do business in Texas, has no regular and established place of business in Texas, does not maintain any offices, employees, or telephone listings in Texas, does not have any employees who visit Texas for business purposes, and does not pay taxes, maintain any bank accounts or participate in any meetings, trade shows, or other marketing-related activities in Texas. (Def.'s Reply at 2.) Defendant claims that the Court lacks personal jurisdiction over Defendants for two reasons: (1) there is insufficient evidence to prove Plaintiff's injury stemmed from Defendant's forum-related activities, and (2) Plaintiff's actions did not comport with the traditional notions of fair play and

3

substantial justice because Plaintiff "induced the defendant to send the product to Texas for non-commercial purposes." (*Id.*)

In an order dated June 9, 2021, the Court, in accordance with objections presented by some of Defendants at a hearing, ordered Plaintiff to, *inter alia*, file a brief establishing whether personal jurisdiction exists as to all 580 Defendants no later than June 18, 2021. (Court's June 9, 2021 Order on Preliminary Injunction [doc. 81] at 1, n.3.)[3] Plaintiff, on June 18, 2021 filed Plaintiff's Supplemental Brief Supporting Personal Jurisdiction [doc. 93]. In such brief, Plaintiff claimed that personal jurisdiction existed as to all 580 Defendants because (1) many of Defendants had actually sold products that infringe on Plaintiff's copyrights and (2) the Defendants advertised the Infringing Products for sale through Infringing Webstores via the Marketplaces, such as AliExpress, Amazon, DHgate, eBay, Walmart, and Wish, while offering shipping to the United States and Texas. (Plaintiff's Supplemental Brief Supporting Personal Jurisdiction at 1.) Plaintiff requested that, if the Court did not find that personal jurisdiction existed as to one or more Defendants, for the Court to direct the Marketplaces to provide Plaintiff with additional information relating to Defendants' sales of any products and of the Infringing Products to Texas. (*Id.* at 9.) Various Defendants filed responses to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction [docs. 99 (response filed by Does 58, 89, 108, and 171), 100 (response filed by the "Epean Defendants"[4] and the "Li Defendants"[5]), 108 (response filed by the "Shan

---

[3] Defendants were ordered to file a response to Plaintiff's brief no later than June 23, 2021, and Plaintiff was given until June 28, 2021 to file a reply. (Court's June 9, 2021 Order on Preliminary Injunction at 1, n.3.)

[4] The "Epean Defendants" are defined as Defendant Does 124, 385, 403, 408, 419, 428, 463, 478, 490, 535, 536, 537, 545, 546, 548, 549, 550 and are operated by Shanghai Epean Trading Co. Ltd. (Defendants' Response to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction [doc. 100] at 1.)

[5] The "Li Defendants" were originally defined as the 59 Defendants represented by Neal Massand (and are operated by Shangai Yinqiang E-Commerce Co., Ltd.). (Court's June 9, 2021 Order on Preliminary Injunction at 1, n.3; Defendants' Response to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction at 1-2.)

4

Defendants"[6])], and Plaintiff filed a Reply on June 28, 2021 [doc. 107].

The Court, in an Order dated July 13, 2021, noted that, with over 500 Defendants, it was necessary to direct the briefing on personal jurisdiction. (Court's July 13, 2021 Order at 1 [doc. 118].) The Court found that Defendants could be categorized into four groups: (1) Defendants who never sold a counterfeit product; (2) Defendants who sold a counterfeit product but only to Plaintiff's investigator or Plaintiff; (3) Defendants who sold counterfeit products in Texas, and elsewhere in the United States; and (4) Defendants who have only sold counterfeit products overseas. (*Id.*) The Court then set forth a briefing schedule for the parties to brief the issue of personal jurisdiction based on the four categories set forth above. (*Id.* at 1-2.)

Plaintiff, on July 27, 2021, filed Plaintiff's Second Supplemental Brief Supporting Personal Jurisdiction [doc. 125]. In this brief, Plaintiff listed the various Defendant Does that fit in the categories of (1) Defendants who never sold a counterfeit product (over 90 Defendant Does listed) and (2) Defendants who sold a counterfeit product but only to Plaintiff's investigator or Plaintiff (23 Defendant Does listed). (Plaintiff's Second Supplemental Brief Supporting Personal Jurisdiction ("Pl.'s Second Suppl. Br.") at 2-5.) As to categories (3) and (4) set forth above, Plaintiff indicated that such Defendants were unknown. (Pl.'s Second Suppl. Br. at 5.) Plaintiff stated as to category (3) that the "Marketplaces have only produced data as to overall sales by Defendants, but this data does not distinguish between sales are to [sic] Texas or otherwise" and indicated that it was seeking, in its Motion for Limited Jurisdictional Discovery [doc. 124, filed July 27, 2021], for "the Marketplaces to provides this data in a format that shows all sales to Texas

---

[6] The "Shan Defendants" were originally defined as the 62 Defendants represented by Warren Norred. (Court's June 9, 2021 Order on Preliminary Injunction [doc. 81] at 1, n.3. According to Plaintiff's Status Report Regarding Mediation [doc. 154] filed on October 7, 2021, all claims between Plaintiff and the 38 then-remaining Shan Defendants were resolved at mediation on September 16, 2021. *See also* Alternative Dispute Resolution Summary [doc. 151].

(to demonstrate minimum contacts), as well as sales of Infringing Products to Texas." (Pl.'s Second Suppl. Br. at 5 n.1.) Plaintiff also set forth three additional categories (numbered 5 to 7): (5) Defendants from whom Plaintiff purchased, and has received a copy of an Infringing Product (in addition to those Defendants named in Group 2) (over 125 Defendant Does listed, including Doe 242[7]);[8] (6) Defendants who sold copies of the Infringing Products to consumers who are not associated with Plaintiff (over 75 Defendant Does listed); and (7) Defendants for whom the Marketplaces have failed to provide any sales data as order in the TRO (Does 1-382 and 520-523 listed). (Pl.'s Second Suppl. Br. at 5-10.) The Shan Defendants,[9] on August 10, 2021, filed a Response in Opposition to the Plaintiff's Second Brief in Support of Personal Jurisdiction [doc. 136].

Thereafter, in an order dated November 22, 2021 [doc. 160], the Court, in light of the United States Court of Appeals for the Fifth Circuit's recently published opinion in *Admar International v. Eastrock, LLC*, 18 F.4th 783 (5th Cir. 2021),[10] and its discussion on personal

---

[7] According to information provided by Plaintiff, the allegedly Infringing Product that was sold by Doe 242 to Plaintiff's investigator was shipped to Texas via the United States Postal Service from the following address: "DEPT. CA # 1169, SHIPPING DEPT, 5215 S BOYLE AVE, VERNON CA 90058-3907." (Pl.'s Second Suppl. Br. at 6; *see* Plaintiff's Appendix to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction [doc. 94] at 1356-1361.) The package was addressed to Diane TN TwoFourTwo, 21504 Interstate 20, Wills Point, TX 75169-9329. (*Id.*)

[8] While the Court is unclear exactly how category 5 is different from category 2, it is not necessary, for purpose of deciding the present motion to dismiss, to make such a determination. However, Plaintiff should clarify this ambiguity in responding to any future motion to dismiss based on lack of personal jurisdiction.

[9] As noted in footnote 6, *supra*, according to Plaintiff's Status Report Regarding Mediation [doc. 154] filed on October 7, 2021, all claims between Plaintiff and the 38 then-remaining Shan Defendants were resolved at mediation on September 16, 2021. (*See also* Alternative Dispute Resolution Summary [doc. 151].)

[10] In *Admar International, Inc.*, the Fifth Circuit Court of Appeals held that the mere fact that Louisiana residents could access Defendant's website in Louisiana was insufficient to create minimum contacts necessary for personal jurisdiction, In this case, Admar International, Inc ("Admar"), a baby product company brought an action in Louisiana against its Wisconsin-based competitor, Eastrock, LLC ("Eastrock"), alleging that Eastrock committed copyright and trade dress infringement by displaying copies of Admar's products on Eastrock's website. The accused products were available on Eastrock's website, as well as on three third-party sites: Amazon.com, Target.com, and buybuybaby.com. *Id.* at 785. Eastrock had neither sold nor shipped a single accused product to a Louisiana resident through its website. *Id.* "As for Amazon and Target, Eastrock delivers the products to distribution centers—none of

6

jurisdiction and minimum contacts, requested additional briefing from Plaintiff and Defendant Doe 242[11] on the issue of personal jurisdiction. Subsequently, in an order dated November 24, 2021 [doc. 162], the Court granted Plaintiff's Motion for Limited Jurisdictional Discovery, giving Plaintiff thirty days to conduct the limited jurisdictional discovery and extending the deadlines for additional briefing on the minimum contacts issues set forth in its November 22, 2021 order [doc. 160] for forty-five days (or until January 15, 2022 for Plaintiff and January 20 for Defendant Doe 242).

On December 23, 2021, the Court, in light of the Fifth Circuit's recently published opinion in *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021), issued a Notice [doc. 167] requesting that the parties file supplemental briefing, no later than January 3, 2022, if they believed *Johnson* "impacts the personal jurisdiction objections certain Defendants have made in this case." Plaintiff, in its Supplemental Briefing Re: *Johnson v. TheHuffingtonPost.com, Inc.* ("Pl.'s Suppl. Br. Re: Johnson") [doc. 170] filed January 3, 2022, stated that "*Johnson* does not impact personal jurisdiction in this case." (Pl.'s Suppl. Br. Re: Johnson at 2.) Plaintiff argued that

---

which are in Louisiana—but is not involved in sales or shipments to consumers." *Id.* There was no information regarding what Amazon or Target had sold to Louisiana residents. *Admar Int'l., Inc. v. Eastrock, L.L.C.*, No. 3:20-CV-00904, 2020 WL 6880966, at *5 (W.D. La. Oct. 23, 2020). "Finally, Eastrock 'drop-ships' products for BuyBuyBaby—that is, BuyBuyBaby first sells a product to a consumer, and then it purchases the product from Eastrock, who then ships the item directly to the consumer." *Id.* Because Plaintiffs "essentially rest[ed] their case for personal jurisdiction on Eastrock's website," there was minimal discussion by the Fifth Circuit Court of Appeals of how any sales through these third-party sites impacted the issue of personal jurisdiction. *Id.* at 786. However, the Fifth Circuit, in a footnote, did state:

> Plaintiffs also suggest in passing that Eastrock may have established minimum contacts with Louisiana when it shipped an accused product for BuyBuyBaby. But Eastrock's delivery of a single $13 product to Louisiana is the type of isolated act that does not create minimum products. *See Pervasive Software*, 688 F.3d at 228 ("A corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirements of due process.").

*Id.* at 788 n.1.

[11] Plaintiff's deadline for submitting the additional briefing was December 1, 2021 and Defendant's response deadline was December 6, 2021. (Court's November 22, 2021 Order [doc. 160] at 2.)

7

Federal Rule of Civil Procedure ("Rule") 4(k)(2)[12] confers personal jurisdiction over Defendants as Plaintiff's claims arise under federal law and Defendants, who are not subject to the general jurisdiction of any state, have sufficient minimum contacts with the United States because: (1) Plaintiff alleges that Defendants offered for sale, through the Marketplaces, counterfeit items that infringe on Plaintiff's rights as the holder of a U.S. copyright; (2) Plaintiff alleges that these Defendants make actual sales of infringing items in the United States and shipped them to addresses within the United States; (3) each Defendant contracted with a Marketplace that specifically offers entry into the United States e-commerce market; and, (4) as a result, Defendants have purposefully availed themselves of doing business in the United States. (Pl.'s Suppl. Br. Re: Johnson at 1-4.)

On January 14, 2022, Plaintiff filed its Fifth Supplement Brief Supporting Personal Jurisdiction [doc. 172] in response to the Court's November 22, 2021 and November 24, 2021 Orders. In its supplemental brief, Plaintiff stated that, as to the limited jurisdictional discovery it had conducted, "with the exception of eBay, the Marketplaces failed to meaningfully comply with the valid, personally-served non-party discovery."[13] (Plaintiff's Fifth Supplemental Brief Supporting Personal Jurisdiction [doc. 172] ("Pl.'s Fifth Suppl. Br.") at 5.) According to the limited information obtained from eBay, ContextLogic, and DHgate, Plaintiff found that, while

---

[12] Rule 4(k)(2), which governs the territorial limits of effective service as to federal claims outside of state-court jurisdiction, states:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's court of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

[13] According to Plaintiff, Amazon failed to comply with the subpoena and AliPay claimed that they did not keep record of the requested transactions. (Pl.'s Fifth Suppl. Br. at 6.)

8

several Doe Defendants sold many products to customers in Texas, only the following Defendant Does each had one sale of an Infringing Product to customers in Texas: Does 477, 528, 538, 540, 542, 544, 552, 553, 564, 565, and 568. (Pl.'s Fifth Suppl. Br. at 6.) In addition, Defendant Doe 567 had three sales of infringing products to customers in Texas. (*Id.*)

Plaintiff argues that the minimum contacts requirement is satisfied and personal jurisdiction is proper at to all 580 Defendants because: (1) many of Defendants have actually sold Infringing Products into Texas and (2) Defendants advertised their Infringing Products for sale through the Infringing Websites via the Marketplaces while offering shipping to the United States and to Texas. (*Id.*) Plaintiff claims that "[t]his Court therefore has specific jurisdiction over the Defendants because the Defendants availed themselves of the privilege of conducting activities within the [sic] Texas, thereby invoking the benefits and protections of its laws." (Pl.'s Fifth Suppl. Br. at 7.) Plaintiff again argues that "[p]ersonal jurisdiction is also proper to each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2), as Defendants are not subject to the general jurisdiction of any other state, and Defendants have sufficient contacts with the United States to comport with the Fifth Amendment's guarantee of due process." (*Id.* at 7; *see* Pl.'s Fifth Suppl. Br. at 14-18.)

## II. RELEVANT LAW

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. "Personal jurisdiction over a non-resident defendant in a federal question case is determined by reference to the law of the state in which the court sits, unless otherwise provided by federal law." *Gardner v. Clark*, 101 F. Supp. 2d 468, 474 (N.D. Miss. 2000); *see McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v.*

*Gillespie,* 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process as set forth in the Fourteenth Amendment. *See McFadin*, 587 F.3d at 759; *Bullion*, 895 F.2d at 216.

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989); *Walker v. Williamson*, 131 F. Supp. 3d 580, 590 (S.D. Miss. 2015). Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546 (5th Cir. 1985); *see Walker*, 131 F. Supp. 3d at 590.

To establish personal jurisdiction over a defendant, that party must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state" and the exercise of jurisdiction over the defendant must not offend the "'traditional notions of fair play and substantive justice.'"[14] *Tayama v. RIOM Corp.*, No. 2:11-CV-167-J, 2012 WL 556007, at *3 (N.D. Tex. Feb. 21, 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Minimum contacts with a state are established through specific or general jurisdiction. *See Tayama* 2012 WL 556007 at *3.

"General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999)). "The 'continuous

---

[14] The Court need not analyze the second part of the inquiry, whether maintenance of the suit in the selected forum complies with traditional notions of fair play and substantial justice, if the first inquiry fails. *Viahart, LLC, v. Arkview, LLC*, No. 6:19-cv-00406, 2020 WL 4905542, at *2 (E.D. Tex. Aug. 20, 2020).

10

and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). To confer general jurisdiction, a defendant must have a sufficient business presence in the forum state. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Injecting a product, even in substantial volume, into a forum's "stream of commerce," without more, does not support general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

Specific jurisdiction exists when Defendant's contacts with the forum "'arise from, or are directly related to, the cause of action.'" *Revell*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "The minimum contacts review is fact-intensive and no single contact is decisive; the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court in the forum." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 675 (S.D. Tex. 2014) (internal quotations omitted).

"The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third party." *Evergreen Media Holdings, LLC*, 68 F. Supp. 3d at 675. "The touchstone of the personal-jurisdiction analysis is whether the defendant 'should reasonably anticipate being haled into court' in the forum, given its

relevant conduct." *Viahart, LLC*, 2020 WL 4905542, at*2 (quoting *Burger King*, 471 U.S. at 474). "But foreseeability is not the ultimate concern and is constrained by the above framework and by the principle that jurisdiction is primarily a question of authority rather than fairness. *Viahart, LLC*, 2020 WL 4905542, at *2. "Thus, jurisdiction may rest only on the defendant's purposeful contacts that manifest its intention to submit to jurisdiction." *Id.*

"The internet presents unique challenges in conducting a personal-jurisdiction analysis." *Viahart, LLC*, 2020 WL 4905542, at *3. "But the same framework and rules apply, and each case must be analyzed independently for compliance with due process, taking into account all internet and non-internet contacts." *Id.* In determining whether personal jurisdiction is proper on the basis of an interactive website, courts in the Fifth Circuit have found that it is not enough for a "Defendant . . . to have the potential to interact with, sell products to, and contract with Texas residents;" instead, the evidence in the record must "support a finding that this level of activity has taken place." *People Solutions, Inc. v. People Solutions, Inc.*, No. Civ.A. 399-CV-2339-L, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000).[15]

---

[15] In *Mink*, the court adopted a standard for personal jurisdiction based on a nonresident Defendant's online presence from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *Mink*, 190 F.3d at 336. "Although Mink was a general jurisdiction case, Texas district courts have interpreted Mink's adoption of *Zippo* to apply in both general jurisdiction and specific jurisdiction cases." *Carrot Bunch Co. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 824-25 (N.D. Tex. 2002). The *Zippo* decision instructs courts to look to the "nature and quality of commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124; *see also Mink*, 190 F.3d at 336. This test examines a defendant's Internet activities in relation to a spectrum of three areas. *Mink*, 190 F.3d at 336. At one end of the spectrum are defendants who are conducting their businesses over the Internet, entering into contracts with residents of other states involving the "knowing and repeated" transmission of computer files over the Internet. *Id.* "Passive" websites are at the other end of the scale. *Id.* These websites do nothing more than provide information and advertising to those who access the site. *Id.*; *Fix My PC, LLC v. N.F.N. Associates, Inc.*, 48 F.Supp.2d 640, 643 (N.D. Tex. 1999). Passive websites, on their own, do not provide for personal jurisdiction over the owner of the site. *Mink*, 190 F.3d at 336; *Fix My PC*, 48 F.Supp.2d at 643. Interactive websites that allow Internet users to communicate and exchange information with the organization sponsoring the site are in the middle of the spectrum. *Mink*, 190 F.3d at 336; *Fix My PC*, 48 F.Supp.2d at 643. In this "middle ground," the exercise of jurisdiction depends upon "the level of interactivity and commercial nature of the exchange of information" conducted on the defendant's web site. *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124). "Personal jurisdiction under *Zippo* . . . contemplates actual internet sales to forum residents, not the theoretical possibility of sales." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, No. 3:20-CV-00904, 20 WL 6880966, at *6 (W.D. La. Oct. 23, 2020), *report and rec. adopted*, 2020 WL 6878346 (W.D. La. Nov. 23, 2020), *aff'd* 18 F.4th 783 (5th Cir. 2021).

If Plaintiff successfully establishes the first two steps for showing the court has specific jurisdiction over Defendant, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Sarkar v. Petroleum Co. of Trinidad & Tobago Ltd.*, No. H-15-2372, 2016 WL 3568114, at *14 (S.D. Tex. June 23, 2016). "In evaluating whether the exercise of personal jurisdiction over the defendants would be unfair, courts examine a number of factors, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies." *DLR, LLC v. Montoya*, 465 F. Supp. 3d 676, 681 (N.D. Tex. 2020).

### III. ANALYSIS

The Court first notes that, while multiple motions to dismiss filed by various Defendants were at one point pending in this case, the only remaining motion to dismiss currently pending before the Court is that filed by Defendant Doe 242, who, as stated above, has been identified as a store named Kuerqi that is owned by Wu Lian Yun. Thus, while the Court initially identified various categories of Defendants in response to the multiple motions to dismiss that were filed, the Court will focus on the arguments and facts relevant to Defendant Doe 242 in its motion to dismiss and related filings as that is the only remaining motion to dismiss currently pending before the Court.

#### A. **General Jurisdiction**

With respect to general jurisdiction, the Court notes that Plaintiff appears to concede that no Defendant in this case is subject to general jurisdiction in Texas, nor any other state. (Pl.'s Fifth Suppl. Br. at 7 and 10 ("Personal jurisdiction is also proper as to each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2), as Defendants are not subject to the general jurisdiction

13

of any other state" and "[G]eneral jurisdiction is not proper as to any Defendant in any state.").) The Court agrees with Plaintiff and, consequently, finds that general jurisdiction does not exist as to any Defendant, including Doe 242.

### B. Specific Jurisdiction

As to specific jurisdiction, as set forth above, the first two elements of a *prima-facie* case require Plaintiff to show: (1) Defendant has minimum contacts with Texas in that Defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there and (2) Plaintiff's cause of action arises out of or results from Defendant's forum-related contacts. *See Seiferth*, 472 F.3d at 271. Thus, the core jurisdictional issue is whether Doe 242's placement of Infringing Products on one of more websites on the Marketplace satisfy the requirements that Doe 242 purposely directed its activities toward Texas and that Plaintiff's claims arise out of or are related to Doe 242's contacts with Texas. *See Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cty*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'")

After viewing Plaintiff's assertions and the submitted evidence in the light most favorable to Plaintiff, the Court is not convinced that Doe 242's contacts with Texas are enough to give this Court specific personal jurisdiction over Doe 242 as the allegedly Infringing Products being sold by Doe 242 via the Marketplace were not targeted at residents in Texas. Plaintiff presents evidence that shows: (1) Defendant Doe 242 promoted, advertised, marketed, and offered for sale allegedly Infringing Products on Amazon.com, which indicated, presumably because the potential buyer was located in Texas, that such products could be shipped to Texas and (2) Plaintiff authorized,

through itself or some sort of investigator or agent, the purchase of an Infringing Product from Doe 242; and (3) Doe 242 did, in fact, ship an Infringing Product to Texas and that product was delivered to an address in Texas. (Appendix in Support of Plaintiff's Response to Doe 242's Motion to Dismiss ("Pl.'s App.") [doc. 48] at 2-10.) However, Courts have repeatedly rejected attempts by Plaintiffs, as was done in this case, to manufacture contacts with the forum state by having an agent or investigator pose as a buyer and purchase the alleged infringing products.[16]

Plaintiff cites the Court to no other evidence of Doe 242 purposely directing its activities or having contacts with Texas. Consequently, the Court concludes that it lacks personal jurisdiction over Defendant Doe 242. Doe 242 stands in stark contrast to a seller that is located in a foreign country and actually sold and shipped one or more allegedly Infringing Products on any

---

[16] *See, e.g., CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, No. 3:15-CV-2854-B, 2016 WL 3418974, at *2 (N.D. Tex. June 22, 2016) (refusing to find specific jurisdiction over Defendant based on Defendant's website because Plaintiff "has not alleged that a single disinterested Texas resident purchased an infringing product through [Defendant's] online store or even used its website aside from [Plaintiff's] counsel, whose purchase does not count towards [Defendant's] minimum contacts"); *721 Bourbon, Inc. v. House of Auth., LLC*, 140 F. Supp. 3d 586, 596 (E.D. La. 2015) ("[T]he Court will not rely on the sale of [the allegedly Infringing Product] to [Plaintiff's] investigator as a basis for exercising personal jurisdiction over [Defendant]."); *Monistere v. Losauro*, No. 13-22, 2013 WL 6383886, at *7 (E.D. La. Dec. 4, 2013) ("[T]he Court will not rely on purchases made by Plaintiff to establish that Defendants have purposefully availed themselves of Louisiana."); *Temper-Pedic Int'l, Inv. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 374-75 (N.D. Tex. 2010) (noting that there are cases in the Fifth Circuit that support the premise that a plaintiff cannot establish personal jurisdiction based on unilateral, manufactured sales to Plaintiff's agents); *U.S. Olympic Comm. v. Does 1-10*, No. C 08-03514 JSW, 2008 WL 2948280, at *2 (N.D. Ca. July 25, 2008) ("Because the gravamen of such claims involving deceiving and confusing customers, courts considering similar claims have rejected attempts by plaintiffs to manufacture contacts with the forum state by having an agent purchase the alleged infringing products."); *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 661 (E.D. Tex. 2007 ("The Court finds it unnecessary to consider [the two purchases of sunglasses that reached Texas as a result of the sales being initiated by an investigator] because they constitute [Plaintiff's] unilateral acts that successfully circumvented the measures [Defendant] undertook to avoid availing itself to this forum.); *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 88 (E.D.N.Y. 2006) (noting that Plaintiff's agents' purchase of products that allegedly infringed plaintiff's trademark had "nothing to do with Plaintiff's action for infringement since [they] cannot claim to have been confused as to with whom [they] [were] dealing"); *Origin Instruments Corp. v. Adaptive Comput. Sys., Inc.*, No. 397-2595, 1999 WL 76794 (N.D. Tex. Feb. 3, 1999) (holding that personal jurisdiction may not be established by the mere *possibility* that forum residents may purchase products on a defendant's website, without further proof that the defendant has purposefully availed itself of the forum state).

of the Marketplaces to one or more buyers in Texas that were not Plaintiff or Plaintiff's investigator.[17]

### C. Rule 4(k)(2)

As to Plaintiff's claim that the Court has jurisdiction over all Defendants pursuant to Rule 4(k)(2), this rule authorizes "personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996) (emphasis omitted). "The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment." *Submersible Sys., Inc.*, 249 F.3d at 420. For purposes of Rule 4(k)(2), the United States is the applicable forum for the minimum contacts analysis under general and specific personal jurisdiction. *See Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 234 (5th Cir. 2016). "The court uses the same legal standards developed in the Fourteenth Amendment

---

[17] *See, e.g., Gen. Nutrition Inv. Co. v. Empire Supplements, Inc.*, No. 21-cv-0067, 2021 WL 1402338, at *4 (W.D. Pa. 2021) ("The claims here arise directly out of [Defendant's] infringing sales on Amazon.com's far-reaching and substantial infrastructure for the sale, storage, and shipment of goods. Based on the existing record, including the number of products sold, there is a substantial reason to believe that [Defendant] purposefully directed its activities to Pennsylvania."); *Carson Optical, Inc. v. RQ Innovasion Inc.*, No. 16-CV-1157 (SIL), 2020 WL 1516394, at *6 (E.D.N.Y. 2020) (finding that Defendant's conduct satisfies the minimum contacts test because the company intentionally marketed and sold its products nationwide, including in New York, through Amazon); *Telebrands Corp. v. Mopnado*, No. 2:14-07969, 2016 WL 368166, at *7 (D.N.J. 2016) (the defendant's argument that all of the contacts with the forum are by Amazon, not the defendant, "ignores the reality of the situation" because "Defendant is intentionally using Amazon's vast, established infrastructure to sell and ship its products to consumers nationwide, and is paying Amazon for the privilege, in the form of commissions and handling fees"). *But see Viahart, LLC v. Arkview LLC*, No. 6:19-cv-00406, 2020 WL 4905542, at *4 (E.D. Tex. Aug. 20, 2020) ("The court is not persuaded that use of Amazon's fulfillment services is a sufficiently intentional contact with Texas" and that the sale of product to Texas residents through Amazon's platform is anything more than the fortuitous result of that platform's global presence."); *Action Tapes, Inc. v. Ebert*, No. 3:05-cv-1239, 2006 WL 305769, at *4 (N.D. Tex. Feb. 9, 2006) ("Courts faced with the question of personal jurisdiction involving eBay transactions have consistently held that the typical online auction process is insufficient to confer specific jurisdiction over the defendant."). *Cf. Admar*, 18 F.4th at 788 (noting in a footnote that the sale of one $13 product to Louisiana through a "drop-ship" arrangement with buybuybaby.com "is the type of isolated act that does not create minimum contacts.").

Case 4:21-cv-00492-O Document 185 Filed 03/03/22 Page 16 of 19 PageID 3598

context—*i.e.*, the minimum contacts analysis in the assertion of specific jurisdiction—but the United States is the relevant forum." *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018).

The plaintiff has the initial burden to "plead and prove the requisite contacts with the United States and plead Rule 4(k)(2)'s applicability . . . but it [has] no burden to negate jurisdiction in every state." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). Once Plaintiff meets that burden through *prima facie* evidence,[18] the burden shifts to Defendant to "affirmatively establish that the court lacked personal jurisdiction under 4(k)(2) because there was a state where its courts of general jurisdiction could properly exercise jurisdiction over it" or that it has insufficient contacts with the United States as a whole. *Id.* (citing *Adams v. Unione Mediterranea Di Sicurta*, 346 F.3d 646, 650 (5th Cir. 2004)); *see Johnson*, 926 F. Supp. 2d at 883.

Because Defendant Doe 242 has not conceded to jurisdiction in another state[19] and there is no dispute that Plaintiff's claims arise under federal law,[20] the Court may have personal jurisdiction under Rule 4(k)(2) if Defendant Doe 242 has sufficient ties with the United States to satisfy due

---

[18] "Plaintiff must make a *prima-facie* case that [Rule 4(k)(2)] applies by 'showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements.'" *Johnson v. PPI Tech. Servs, L.P.*, 926 F. Supp. 2d 873, 883 (E.D. La. 2013) (quoting *U.S. v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999)). "Additionally, the plaintiff 'must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." *Id.* However, "absent any statement from [Defendant] that it is subject to the courts of general jurisdiction in another state, [this] requirement is met." *Liberty Media Holdings, LLC v. Letyagin*, 925 F. Supp. 2d 1114, 1117 (D. Nev. 2013) (internal quotations omitted).

[19] "The Court need not examine whether there is jurisdiction in each of the fifty states." *Foster v. GlobalSantaFe Offshore Serv.*, No. 13-00065, 2013 WL 4012705, at *3 (E.D. La. Aug. 6, 2013). "[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction," assuming that Defendant "has sufficient ties to the United States as a whole to satisfy constitutional due process concerns." *Adams*, 364 F.3d at 651; *see Foster*, 2013 WL 4012705, at *3.

[20] *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1095 (C.D. Cal. 2003) ("The effect of [Rule 4(k)(2) . . . is that jurisdiction may be exercised over copyright claims against a foreign defendant where sufficient contacts with, or injury to, U.S. residents is alleged, even though there are not sufficient contacts with any single state to justify jurisdiction in that state.")

process. *Adams*, 364 F.3d at 651. The evidence, however, has failed to establish any ties that Doe 242 has with any other state beyond the one sale of the allegedly infringing product to Plaintiff or Plaintiff's investigator in Texas as detailed herein. Consequently, as to Defendant Doe 242, the Court finds that Plaintiff has failed to plead and establish that Doe 242 had the requisite contacts with the United States to apply this basis of jurisdiction; thus, Rule 4(k)(2) does not provide the Court with personal jurisdiction over Defendant Doe 242.

### RECOMMENDATION

Based on the foregoing, the Court concludes that it does not have personal jurisdiction over Doe 242 and, consequently, **RECOMMENDS** that Doe 242's Motion to Dismiss Plaintiff's Complaint [doc. 17] be **GRANTED** and Doe 242 be **DISMISSED** from this case.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d

1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 17, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

SIGNED March 3, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv