Case 4:21-cv-00492-O   Document 186   Filed 03/09/22   Page 1 of 13   PageID 1602

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 9 2022

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THE NAUGHTYS LLC | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-492-O |
| | § | |
| DOES 1-580 | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING PLAINTIFF'S RENEWED MOTION FOR ALTERNATIVE SERVICE OF PROCESS

Pending before the Court is Plaintiff's Renewed Motion for Alternative Service of Process [doc. 142], filed August 16, 2021.[1] Having carefully considered the motion, relevant filings, and caselaw, the Court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and **the District Court enter the proposed Order on Plaintiff's Renewed Motion for Alternative Service of Process [doc. 142-1] submitted by Plaintiff with its motion**.

### I.   BACKGROUND

Plaintiff, The Naughtys LLC, is engaged in the business of designing, manufacturing, distributing, and retailing Christmas ornaments known collectively as the "Naughty Santa" ornaments and owns copyrights for such ornaments. Plaintiff, in its Complaint for copyright infringement filed on April 2, 2021, alleges that Defendant Does 1-580, who are individuals and businesses residing in foreign jurisdictions, placed counterfeit "Naughty Santa" ornaments (the "Infringing Products") for sale on online webstores (the "Infringing Websites"), which were hosted by third-party e-commerce platforms, such as Amazon, Walmart, AliExpress, DHgate, and eBay (the "Marketplaces"), and such ornaments were sold and shipped to buyers in the United States, including Texas. (Plaintiff's Complaint ("Pl.'s Compl.") at 1-8.) On April 2, 2021, the District Court entered a Temporary Restraining Order ("TRO") that contained several provisions relating

---

[1] This motion was referred to the undersigned on December 23, 2021 [doc. 168].

to serving each Defendant with notice of the TRO as well as commencing discovery. In addition, the TRO stated:

> Plaintiff may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed. R. Civ. P. 4(f)(3), by sending an e-mail to the e-mail addresses provided for Defendants by third parties hosting their webstores, such as AliExpress, Amazon, DHgate, eBay, Walmart, Wish, etc. Providing notice via e-mail, along with any notice that Defendants receive from the Third[-]Party Providers, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(Court's *Ex Parte* Temporary Restraining Order with Asset Freeze and Other Equitable Relief [doc. 9] at 7.) The TRO further stated that it would expire, without notice, on April 16, 2022. (*Id.* at 8.) In an order dated April 13, 2022 [doc. 13], the District Court extended the TRO for an additional fourteen days until May 1, 2021 because "Plaintiff asserts that it has not yet received the requested contact information for most defendants" even though Plaintiff served the TRO on the Third-Party Providers as set forth in the TRO. (Order Extending Temporary Restraining Order [doc. 13] at 1.)

On April 27, 2021, Plaintiff filed a Request for Clerk to Issue Summons on Defendant Does 1-580 [doc. 14], attaching a spreadsheet listing Does 1-580 and each Doe's respective seller URL from each Doe's store on the Marketplace. In an order dated April 27, 2021 [doc. 15], the District Court directed Plaintiff, no later than April 29, 2021, "to file a brief with the Court with legal authority for Plaintiff's position that a clerk may issue summons to website URLs based on an infringing sale spreadsheet filed with the Court." (Court's April 27, 2021 Order [doc. 15] at 1.) The District Court also ordered Plaintiff "to explain to the Court how Plaintiff intends to identify the third-party marketplaces that Plaintiff" listed in its spreadsheet attached to its Request for Clerk to Issue Summons on Defendant Does 1-580. (*Id.*)

Thereafter, on April 28, 2021, Plaintiff filed its Supplemental Briefing in Support of Plaintiff's Request for Clerk to Issue Summons Pursuant to Fed. R. Civ. P. 4(b) [doc. 18]. In the briefing, Plaintiff stated, that pursuant to Rule 4(b) and the Advisory Committee notes, the clerk may issue a summons bearing the names of multiple defendants as long as the "addressee of the summons" is effectively identified. (Plaintiff's Supplemental Briefing in Support of Plaintiff's Request for Clerk to Issue Summons Pursuant to Fed. R. Civ. P. 4(b) ("Pl.'s Suppl. Br.") at 2.) Plaintiff further stated that "[m]ost of the Third[-]Party Providers have since provided Plaintiff with the defendants' financial, sales, and contact data, but no further information has been obtainable aside from the Identifying Information[2] Plaintiff has already provided the Court." (Pl.'s Suppl. Br. at 3.) Plaintiff then requested that the Clerk issue the Summons provided in its previous request. (*Id.*)

In an order dated April 30, 2021, the District Court, noting that Plaintiff failed to answer the question asked in its previous order, denied Plaintiff's request for the Clerk to issue summons [doc. 23]. (Court's April 30, 2021 Order [doc. 23]. at 1-4.) The District Court stated that it did not agree that Defendants had been "effectively identified" based on a website URL, seller name, and a store ID. (*Id.* at 1.) The District Court further stated:

> There are legal mechanisms available to obtain identifying information for the purpose of service of process. This case is not the first case to use the "John Doe" moniker to initiate a civil action and it won't be the last. This case is also surely not the first time an online marketplace sold counterfeit products under an anonymous username.
>
> Service of process is not merely a clerical action that the Clerk of Court undertakes, but rather it is a due process right of each defendant to be effectively made aware of the claims against them. The heart of Rule 4 is for summons to be reasonably calculated to give a defendant notice of the pending action. Issuing summons to a website URL will not, under all the circumstances, apprise interested parties of the pendency of the action. The Court declines to expend judicial

---

[2] "Identifying Information" is defined by Plaintiff as seller name, ID, and website URL. (Pl.'s Suppl. Br. at 2.)

resources to issue summons for websites that Plaintiff cannot identify as a person or entity.

(*Id.* at 2 (internal citations omitted).) The District Court also noted that, in its TRO, it permitted an exception to the traditional service process requirements because the order was granted *ex parte* but that such exception did not indefinitely excuse Plaintiff from complying with Rule 4. (*Id.* at 2.) The District Court ordered Plaintiff to serve each Defendant in compliance with Rule 4, stating:

> It is clear Plaintiff has not exhausted all mechanisms available to it to *successfully* execute service of process against the people operating the website URLs. If some, or all, the websites cannot be effectively identified to the person or entity behind the website, those claims against those defendants will be dismissed with prejudice.

(*Id.* at 3-4.) The District Court further stated that, pursuant to Rule 4(m), Plaintiff had until July 2, 2021 to properly serve each of the 580 Defendant Does or the case would be dismissed. (*Id.* at 4 n.1.)

Subsequently, on May 3, 18, and 19, 2021, Plaintiff again filed a Request for Clerk to Issue Summons for multiple Defendant Does [docs. 24, 33-35, 45] and the Clerk issued such summonses [docs. 25-31, 36-44, 46, 49-62]. On June 5, 2021, Plaintiff filed a Motion for Alternative Service of Process [doc. 74]. Thereafter, on June 9, 2021, the District Court entered an Order on Preliminary Injunction [doc. 81] in which it, *inter alia*, deferred ruling on the Plaintiff's Motion for Alternative Service of Process and ordered additional briefing.[3] (Order on Preliminary Injunction [doc. 81] at 1 n.2.)

---

[3] Defendants were to file their objections to service of process, including to Plaintiff's Motion for Alternative Service of Process, no later than June 14, 2021 and Plaintiff's reply was due no later than June 21, 2021. (Order on Preliminary Injunction [doc. 81] at 1 n.2.)

On June 14, 2021, the Li Defendants[4] and the "Epean Defendants"[5] filed their Responses in Opposition to Plaintiff's Motion for Alternative Service of Process [docs. 87 and 88, respectively]. The "Shan Defendants"[6] filed their Memorandum in Opposition to Plaintiff's Motion for Alternative Service of Process [doc. 89] on June 15, 2021. Plaintiff, on June 21, 2021, filed its Reply in Support of Motion for Alternative Service of Process [doc. 97].

Thereafter, on July 1, 2021, Plaintiff filed a Motion to Issue Ruling [doc. 113], requesting that the "Court issue a ruling on its Motion for Alternative Service of Process [doc. 74] in light of Plaintiff's July 2, 2021 service of process deadline." (Plaintiff's Motion to Issue Ruling [doc. 113] at 1.) Plaintiff requested that, in the alternative, the "Court extend Plaintiff's service of process deadline so as to give Plaintiff reasonable time to effect service following the Court's ruling on Plaintiff's Motion for Alternative Service of Process." (*Id.*)

On July 2, 2021, the District Court issued an Order denying Plaintiff's Motion for Alternative Service of Process Under Rule 4(f)(3) [doc. 114]. In making this determination, the District Court stated:

> Here, Plaintiff makes no mention of reasonable <u>effort</u> set forth to investigate the physical addresses provided by Defendants, other than the alleged facial inaccuracies or illegible addresses of a few of the addresses. Plaintiff has not stated that . . . a person who understands Chinese or is otherwise familiar with Chinese

---

[4] The "Li Defendants" were originally defined as the 59 Defendants represented by Neal Massand (and are operated by Shangai Yinqiang E-Commerce Co., Ltd.). (Court's June 9, 2021 Order on Preliminary Injunction at 1, n.3; Defendants' Response to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction at 1-2.)

[5] The "Epean Defendants" are defined as Defendant Does 124, 385, 403, 408, 419, 428, 463, 478, 490, 535, 536, 537, 545, 546, 548, 549, 550 and are operated by Shanghai Epean Trading Co. Ltd., with a physical address of 4th F., No.5 Jufeng Business Building, 698 Lingshi Road, JingAn District, Shanghai, China 200040 (Defendants' Response in Opposition to Plaintiff's Motion for Alternative Service of Process [doc. 88] at 1 and Exhibit 1; Defendants' Response to Plaintiff's Supplemental Brief Supporting Personal Jurisdiction [doc. 100] at 1.)

[6] The "Shan Defendants" were originally defined as the 62 Defendants represented by Warren Norred. (Court's June 9, 2021 Order on Preliminary Injunction [doc. 81] at 1, n.3. According to Plaintiff's Status Report Regarding Mediation [doc. 154] filed on October 7, 2021, all claims between Plaintiff and the 38 then-remaining Shan Defendants were resolved at mediation on September 16, 2021. *See also* Alternative Dispute Resolution Summary [doc. 151].

> addresses looked at the addresses and determined that each address was illegitimate. To be clear, a deficiency in a handful of addresses does not alleviate the obligation to serve Defendants who have provided legitimate addresses. Because the Hague Convention applies, the Court must **DENY** Plaintiff's Motion for Alternative Service of Process due to the Defendants' addresses being known (and provided) to Plaintiff but Plaintiff having refused to *actually* attempt service of process on these addresses or otherwise investigate the legitimacy of the addresses by means other than the bare assumption that service would be difficult or potentially impossible. With over 500 Defendants as active parties in this case, the Court must safeguard the interests of the Defendants who are seeking proper service of process under the rules over the convenience of the Plaintiff in serving the Defendants via email.

(Court's July 2, 2021 Order at 4-5.) The District Court further ordered Plaintiff to file a status report on August 2, 2021 "detailing the diligence Plaintiff has taken to serve all Defendants['] physical addresses under the Hague Convention." (*Id.* at 5.) The District Court also stated that "Plaintiff must make a diligent attempt to serve all Defendants at the physical addresses provided no later than August 16, 2021 and the Court will reconsider a renewed motion for alternative service of process at that time, if necessary." (*Id.*)

On August 2, 2021, Plaintiff filed its Service Status Report [doc. 130] in which it noted that: (1) none of Defendants have provided Plaintiff with all the information required by the Court's June 9, 2021 Order on Preliminary Injunction so Plaintiff has been unable to ascertain the extent of Defendants' true addresses; (2) most of the physical addressed provided by the third-party e-commerce sites affiliated with Defendants appear to be false or deficient in some way; (3) Plaintiff, in an effort to effect "Hague Service," has initiated discussions with an international process server firm that will take steps to attempt to serve Defendants at a cost of $370 in fees and expenses per attempt; (4) Plaintiff has hired various investigators to investigate the addresses previously supplied by the Marketplaces; (5) the results of sixty-three of these continuing investigations indicates that only one address has been verified as correct, six have been assessed

6

as inconclusive, and the rest have proven to be invalid. (Plaintiff's August 2, 2021 Service Status Report [doc. 130] at 1-2.)

Thereafter, on August 12, 2021, Plaintiff filed a Supplemental Status Report [doc. 138], indicating that Plaintiff had now investigated 178 Defendant addresses[7] and the results were as follows: (1) Defendant Doe 406's address had been verified as being located at the physical address provided by the Marketplace; (2) 141 Defendant Does' addresses were fake addresses; and (3) 36 Defendant Does' addresses produced inconclusive results. (Plaintiff's August 12, 2021 Supplemental Status Report [doc. 138] at 1-2.) On August 16, 2021, Plaintiff filed another Service Status Report [doc. 141], stating that, of the 580 Defendants in this suit, Plaintiff had settled its claims with 176 Defendants, leaving 404 active Defendants in the case. (Plaintiff's August 16, 2021 Service Status Report [doc. 141] at 1.) Plaintiff further stated that it "is in the process of serving 65 Defendants via the Hague Convention at a cost of approximately $30,000, which it has already paid—this not including the cost of the address investigations already paid for by Plaintiff." (*Id.* at 2.) Plaintiff indicated that, factoring in the considerable cost of service via the Hague Convention, "these 65 Defendants were chosen because there is some chance—albeit a low chance—of actually locating the Defendants." (Plaintiff's August 16, 2021 Service Status Report [doc. 141] at 2-3.)

Plaintiff, also, on August 16, 2021, filed its Renewed Motion for Alternative Service of Process [doc. 142]. In its motion, Plaintiff once again set forth all the efforts it has made to comply with the District Court's July 21, 2021 order denying Plaintiff's original Motion for Alternative Service, stating:

> Plaintiff diligently complied with the Court's Order. Plaintiff engaged private investigators in China to physically confirm and investigate [345 of the

---

[7] Plaintiff investigated 178 Defendants' addresses out of the 404 remaining Defendants. (Plaintiff's August 16, 2021 Service Status Report [doc. 141] at 1.)

7

requested 580 physical] addresses provided by the Marketplaces—of the 178 addresses investigated, 141 were identified as false, 36 came back inconclusive, and only 1 was verified as a true Defendant address. Dkt. 130-1, PageID 12640-12780; Dkt. 138-2; Dkt. 141; Exhibit 3., Appx. 52. Plaintiff also hired a private firm to serve process on 65 of the Defendants (including the 36 inconclusive and 1 verified Defendant) via the Hague Convention at a cost of approximately $30,000, which Plaintiff has already paid—this expense not including the cost of the address investigations discussed above. Dkt. 141; Exhibit 3, Appx. 52. Thus, in full compliance with the Court's Order, Plaintiff investigated the legitimacy of the addresses and is attempting service of process on the Defendants identified in its Service Status Report (Dkt. 141). Plaintiff now seeks to serve each Defendant for whom no address was ever disclosed, and each Defendant whose given address was identified as false through independent investigation (376 Defendants in total, identified in the attached Exhibit 1, Appx. 2-49), by email and by website publication at https://creedon.com/naughtys.

(Plaintiff's Renewed Motion for Alternative Service of Process ("Pl.'s Renewed Mot.") at 7 (footnotes omitted).) Plaintiff requests that, pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(3), the Court enter an order that each of the 376 Defendants listed in Exhibit 1 to its Appendix ("Exhibit 1") [doc. 143-1] "can be served by email and by website publication at https://creedon.com/naughtys, both of which are reasonable calculated to provide each defendant with notice of the action, and is 'not prohibited by international agreement.'" (Pl.'s Renewed Mot. at 8.) In support of its request, Plaintiff argues that service of process on the Defendants listed in Exhibit 1[8] and by website publication is proper under Rule 4(f)(3) because (a) it is reasonably calculated to provide Defendants with notice of the action, (b) federal courts routinely order alternative service as to foreign infringers, and (c) it is not prohibited by international agreement. (Pl.'s Renewed Mot. at 8-19.)

Thereafter, on November 2, 2021, Plaintiff filed Plaintiff's Status Report and Request for Ruling on Plaintiff's Renewed Motion for Alternative Service of Process [doc. 157]. Plaintiff

---

[8] According to Plaintiff, the "addresses in the attached Exhibit 1 either remain unknown[ ] or were proven by independent investigation to be false." (Pl.'s Renewed Mot. at 11.) In addition, Plaintiff "has successfully emailed 300 of the 376 Defendants listed in the attached Exhibit 1." (*Id.*)

8

noted that its "to-date in service fees and investigation expenses" now totaled $46,377. (Plaintiff's Status Report and Request for Ruling on Plaintiff's Renewed Motion for Alternative Service of Process [doc. 157] ("Pl.'s Nov. 2, 2021 Status Report") at 4, n.3.) Plaintiff also indicated that there were only 291 Defendants[9] remaining and that "Plaintiff has taken all steps to effect service via the Hague Convention for the remaining 291 Defendants." (Plaintiff's Status Report and Request for Ruling on Plaintiff's Renewed Motion for Alternative Service of Process ("Pl.'s Nov. 2, 2021 Status Report") at 2.) According to Plaintiff, "[t]his means that Plaintiff has transmitted the necessary documents and payment to the Chinese Central Authority, which will attempt to make personal service on these Defendants" but that "[s]ervice requests from the Chinese Central Authority regularly take between 12-24 months to complete." (*Id.*; *see* Affidavit of Anthony Mboho [doc. 157-1].) Plaintiff further indicated that, because most of the addresses are not legitimate, personal service, when attempted by the Chinese Central Authority, will most likely fail. (*Id.* at 2-3.) Thus, Plaintiff requested that the Court rule on its Renewed Motion for Alternative Service of Process (as opposed to waiting for as many as 24 months while the Chinese Central Authority attempts to make personal service on the Defendants, which will likely fail). (*Id.* at 3-4.)

On February 16, 2022, Plaintiff filed a Notice of Supplement Authority [doc. 182] in which it attached an opinion issued on February 14, 2022 by the United States Court of Appeals for the Fifth Circuit in *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161 (5th Cir. Feb. 14, 2022), as further support of its Renewed Motion for Alternative Service of Process.

---

[9] According to Plaintiff's Report on Active Defendants and Pending Motions [doc. 181], as of February 11, 2022, there are only 276 active Defendants.

9

## II. RELEVANT LAW AND ANALYSIS

Rule 4(f), which governs the service of an individual in a foreign country, states, as relevant here:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed, may be served at a place not within any juridical district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> . . . .
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). In its Renewed Motion for Alternative Service of Process, as set forth above, Plaintiff requests that the Court, pursuant to Rule 4(f)(3), order service on all Defendants listed in Exhibit 1 [Appendix to Plaintiff's Renewed Motion for Alternative Service of Process doc. 143], pages 2-49] to Plaintiff's motion by email and publication on a website. Having carefully considered the motion, all relevant filings, and the caselaw, the Court concludes and recommends that Plaintiff's motion be **GRANTED** for the reasons set forth in the motion.

Specifically, the Court notes that Rule 4(f)(3)[10] permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). While there has been some discussion whether Plaintiff must serve Defendants in accordance with Rule 4(f)(1) and the Hague Convention, the Fifth Circuit recently confirmed that "[s]ervice pursuant to the Hague Convention listed in subjection (f)(1), does not displace subsection (f)(3), which permits service by other means." *Viahart, L.L.C.*, 2022 WL 445161, at *3. Thus, under Rule 4(f)(3),

---

[10] Rule 4(h)(2) allows a business entity to be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

10

"[s]ervice on a foreign defendant is . . . proper when it is a court ordered method that is not prohibited by international agreement and is reasonably calculated, under the circumstances, to notify the defendant of the case and afford them an opportunity to present objections." *Id.*

In this case, while Plaintiff has taken all steps to effect service via the Hague Convention for the remaining 291 Defendants,[11] Plaintiff has shown that such efforts will most likely be unsuccessful and/or result in delays of twelve to twenty-four months. Moreover, Plaintiff has shown that service by email and website is reasonably calculated to provide Defendants listed in Exhibit 1 with notice of the action due to the following reasons: (1) Plaintiff has diligently attempted to verify the addresses of the specified Defendants through extensive and costly investigations of the physical addresses provided by the Marketplaces and such addresses either remain unknown or were proven by independent investigation to be false; (2) the email addresses procured from the Marketplaces were the email addresses that each Defendant designated as their means of contact for business and notification purposes; (3) Plaintiff has successfully emailed 300 of the original 376 Defendants listed in Exhibit 1; (4) the specified Defendants do business through e-commerce sites on the Marketplaces that utilize email for communication and such email addresses are the designated means of contact for business and notification purposes; (5) service by website publication would provide notice to any specified Defendants that have a full inbox or invalid email address.

Moreover, there is no evidence that service by email and website publication is prohibited by international agreement in this case. *See Viahart, L.L.C.*, 2020 WL 445161, at *3. As noted above, while Plaintiff has attempted to serve Defendants via the Hague Convention, there is no

---

[11] As stated above, according to Plaintiff's Report on Active Defendants and Pending Motions [doc. 181], as of February 11, 2022, there are only 276 active Defendants.

requirement that Plaintiff do so before attempting service through Rule 4(f)(3) as opposed to Rule 4(f)(1). *Id.* In addition, there is no evidence that China has expressly objected to email service of process to Chinese Defendants. *See WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 6-20-cv-00952-ADA, 2021 WL 2870679, at *4 (W.D. Tex. July 8, 2021) ("China has not expressly objected to e-mail service of process to Chinese corporations under the Hague Convention.") Because Plaintiff has shown that service on the Defendants listed in Exhibit 1 via email and website publication is authorized pursuant to Rule 4(f)(3), the Court concludes that Plaintiff's motion should be **GRANTED**.

## RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that Plaintiff's Renewed Motion for Alternative Service of Process [doc. 142] be **GRANTED** and **the District Court enter the proposed Order on Plaintiff's Renewed Motion for Alternative Service of Process [doc. 142-1] submitted by Plaintiff with its motion**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest

injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 23, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

It is further **ORDERED**, that, in an effort to keep the Court's docket sheet and records updated, Plaintiff should provide the Court, **no later than March 21, 2022**, with an updated Exhibit 1 that lists only the remaining active Defendants that it intends to serve via email and website publication.

SIGNED March 9, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

13